**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CYNTHIA CLARK, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　Defendant. | Civil Case No.: 1:18-cv-3672 (RDB) |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

David L. Permut
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
T: (202) 346-4000
DPermut@goodwinlaw.com

Mark W. Mosier (admitted *pro hac vice*)
Andrew Soukup  (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
T: (202) 662-6000
mmosier@cov.com
asoukup@cov.com

*Attorneys for Defendant Bank of America, N.A.*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      Plaintiff's Claims Are Preempted. ..................................................................... 2

        A.      The National Bank Act Preempts Section 12-109. .................................. 2

                1.      Plaintiff Incorrectly Invokes a Presumption Against Preemption. ............. 2

                2.      Plaintiff Misstates the *Barnett Bank* Test and Cannot Reconcile Her Arguments With National Bank Act Precedent. ................................. 3

        B.      OCC Regulations Preempt Section 12-109............................................... 7

II.     Dodd-Frank Does Not Save Plaintiff's Claims From Preemption...................... 9

        A.      Section 1639d(g)(3) Does Not Expressly Require National Banks To Comply With State Escrow Interest Laws. ............................................. 9

        B.      Section 1639d(g)(3) Is Inapplicable Here Because Plaintiff's Escrow Account Is Not "Subject To" Section 1639d. ....................................... 12

III.    The Court Should Dismiss The Entire Complaint With Prejudice. ................... 14

        A.      Plaintiff's Unjust Enrichment Claim Is Barred By The Deed of Trust................ 14

        B.      Plaintiff's MCPA Claim Should Be Dismissed. ................................... 15

        C.      Dismissal With Prejudice Is Appropriate. ........................................... 18

CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ademiluyi v. PennyMac Mtg. Inv. Trust Holdings I, LLC,*
  929 F. Supp. 2d 502 (D. Md. 2013) ......................................................................................15

*Baptista v. JPMorgan Chase Bank, N.A.,*
  640 F.3d 1194 (11th Cir. 2011) ..............................................................................................5

*Barnett Bank of Marion County, N.A. v. Nelson,*
  517 U.S. 25 (1996) .......................................................................................... *passim*

*Citaramanis v. Hallowell,*
  613 A.2d 964 (Md. 1992) ........................................................................................15

*United States ex rel. Conrad v. GRIFOLS Biologicals Inc.,*
  2010 WL 2733321 (D. Md. July 9, 2010) ................................................................18

*D.B. v. Cardall,*
  826 F.3d 721 (4th Cir. 2016) ..................................................................................11

*Decohen v. Capital One, N.A.,*
  703 F.3d 216 (4th Cir. 2012) .............................................................................2, 7, 8

*Dolan v. United States,*
  560 U.S. 605 (2010) ................................................................................................13

*Epps v. JP Morgan Chase Bank, N.A.,*
  675 F.3d 315 (4th Cir. 2012) ....................................................................................3

*Francis v. Giacomelli,*
  588 F.3d 186 (4th Cir. 2009) ..................................................................................18

*Franklin National Bank of Franklin Square v. New York,*
  347 U.S. 373 (1954) ..................................................................................................5

*Hillson Partners Ltd. P'ship v. Adage, Inc.,*
  42 F.3d 204 (4th Cir. 1994) ....................................................................................17

*Litz v. Md. Dep't of Env't,*
  76 A.3d 1076 (Md. 2013) ........................................................................................16

*Lusnak v. Bank of America, N.A.,*
  883 F.3d 1185 (9th Cir. 2018) ..................................................................................2

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
    486 U.S. 825 (1988)...................................................................................................14

*McDonald v. LC Electronics USA, Inc.*,
    219 F. Supp. 3d 533 (D. Md. 2016) ..........................................................................17

*Miller v. Pac. Shore Funding*,
    224 F. Supp. 2d 977 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004) .........16

*Monroe Retail, Inc. v. RBS Citizens, N.A.*,
    589 F.3d 274 (6th Cir. 2009) .......................................................................................3

*Nat'l City Bank of Ind. v. Turnbaugh*,
    463 F.3d 325 (4th Cir. 2006) .......................................................................................3

*Pacific Capital Bank, N.A. v. Connecticut*,
    542 F.3d 341 (2d Cir. 2008).........................................................................................3

*SPGGC, LLC v. Ayotte*,
    488 F.3d 525 (1st Cir. 2007).....................................................................................5, 6

*Stewart Title Guar. Co. v. Sanford Title Servs., LLC*,
    2011 WL 5547997 (D. Md. Nov. 10, 2011) ...............................................................18

*In re TD Bank, N.A.*,
    150 F. Supp. 3d 593 (D.S.C. 2015).............................................................................3

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)......................................................................................................10

*Walton v. Wells Fargo Bank, N.A.*,
    2013 WL 3177888 (D. Md. June 21, 2013)................................................................16

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1 (2007)..........................................................................................................4

**Statutes**

12 U.S.C. § 25b(b) .............................................................................................................4, 8

12 U.S.C. § 371 ...................................................................................................................8, 12

12 U.S.C. § 5514(c) ..............................................................................................................10

15 U.S.C. § 1639d.......................................................................................................... *passim*

Dodd-Frank Act, Pub. L. No. 111-203, § 1461, 124 Stat. 1376 (2010) ........................13

Federal Reserve Act, Pub. L. No. 63-43, § 24 (1913) ...................................................................8

Md. Code Ann. Com. Law § 12-109 ................................................................................... *passim*

**Regulations**

12 C.F.R. § 34.4 ......................................................................................................................7, 8

OCC, Office of Thrift Supervision Integration; Dodd-Frank Act Implementation,
 76 Fed. Reg. 43,549-01 (July 21, 2011) ......................................................................6, 8, 11

**Other Authorities**

H.R. Rep. 111-94 (2009)............................................................................................................11

OCC Amicus Brief, *Lusnak v. Bank of America*, *N.A.,* No. 14-56755 (Apr. 23,
 2018), 2018 WL 3702582 .........................................................................................................9

Webster's Unabridged Dictionary 1115 (2d ed. 2001). ..............................................................7

## INTRODUCTION

Plaintiff's primary response to Bank of America's preemption arguments is to assert that a provision of the Dodd-Frank Act reflects Congress's determination that state laws requiring payment of interest on mortgage escrow accounts do not significantly interfere with national banks' exercise of their federal banking powers.

Plaintiffs' argument conflates two distinct inquiries under *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996).  First, a court determines whether Congress has "*expressly* conditioned the grant of [national bank] 'power' upon a grant of state permission." *Id.* at 34 (emphasis added).  If so, the bank must comply with the state law regardless of the extent to which it interferes with the bank's operations.  *Id.*  Second, if Congress has not made "an explicit statement that the exercise of [a national bank's] power is subject to state law," the court determines whether the state law "prevent[s] or significantly interferes" with the exercise of federal banking power. *Id.* at 33, 34.  In making this determination, the court evaluates the effect of the state law on the federal power at issue, mindful that state laws will "ordinarily" be preempted under this inquiry. *Id*. at 32.

When properly analyzed under *Barnett Bank*, Plaintiff's arguments fail. Because Section 1639d(g)(3) lacks an "explicit statement" that national banks are subject to state escrow interest laws, Congress has not expressly conditioned the grant of national bank's real-estate lending powers upon a grant of state permission.  And by requiring national banks to pay a specified rate of interest on mortgage escrow accounts, Maryland law prevents or significantly interferes with national banks' federal powers to make mortgage loans, establish escrow accounts, and set the pricing and other terms of those loans and accounts.  Plaintiffs' claims are thus preempted and the Complaint should be dismissed.

In short, Plaintiffs' claims fail as a matter of law because they are preempted and for additional reasons discussed below.  This Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.     Plaintiff's Claims Are Preempted.

Plaintiff does not dispute that her claims should be dismissed if Maryland's law requiring payment of interest on mortgage escrow accounts is preempted.  Despite her arguments to the contrary, Plaintiff's claims are preempted by the National Bank Act and by OCC regulations.

#### A.     The National Bank Act Preempts Section 12-109.

##### 1.     Plaintiff Incorrectly Invokes a Presumption Against Preemption.

Plaintiff suggests that a presumption against preemption should apply because "the Supreme Court . . . reaffirmed the presumption against preemption in a pharmaceutical failure-to-warn case." (Opp. 4).  But this is not a pharmaceutical case.  As the Fourth Circuit has confirmed— subsequent to Plaintiff's cited authority—the "precedent is clear" that the usual "presumption against preemption . . . does not apply" to the National Bank Act.  *Decohen v. Capital One, N.A.*, 703 F.3d 216, 222-23 (4th Cir. 2012); *see also Lusnak v. Bank of America, N.A.*, 883 F.3d 1185, 1191 (9th Cir. 2018) ("there is no presumption against preemption" under the National Bank Act), *cert. denied*, 2018 WL 4006331 (Nov. 19, 2018).  Indeed, the Fourth Circuit has "specifically declined" to apply a presumption against preemption to other consumer protection provisions in title 12 of the Maryland Code of Commercial Law.  *See Decohen*, 703 F.3d at 223.

Plaintiff also incorrectly contends that "a high threshold must be met if a state law is to be pre-empted for conflicting with the purposes of a federal act." (Opp. 6 (quotation marks and citation omitted)).  But Plaintiff is again importing preemption principles from other areas of the law, rather than applying National Bank Act preemption.  Under *Barnett Bank*, "the level of 'interference' that gives rise to preemption under the [National Bank Act] is not very high." *Monroe Retail,*

*Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009).  As a result, "national banks 'have often been given the benefit of the doubt in preemption questions.'"  *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 321 (4th Cir. 2012).  For preemption to apply, "the activity that is for-bidden by state law need not be required by federal law; it is sufficient that the activity that state law prohibits is federally authorized."  *Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351-52 (2d Cir. 2008) (citing *Barnett Bank*, 517 U.S. at 31).  Thus, "[t]he mere fact that a national bank *can* act consistently with both state and federal law in a particular area, does not preclude the possibility that the state law" may be preempted.  *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 615 (D.S.C. 2015).

Plaintiff faults Bank of America for arguing that the National Bank Act "ordinarily" preempts state laws.  (Opp. 9).  According to Plaintiff, this statement is "categorically wrong," because it amounts to an argument for a "presumption in favor of preemption."  (*Id.*)  But it is not just Bank of America's view that the National Bank Act "ordinarily" preempts state laws—that statement comes directly from the Supreme Court and the Fourth Circuit.  *See Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 331 (4th Cir. 2006) ("Further, the 'grants of both enumerated and incidental powers to national banks' are 'not normally limited by, but rather *ordinarily pre-empt*[], contrary state law.'" (quoting *Barnett Bank*, 517 U.S. at 32) (Fourth Circuit's emphasis)).  The National Bank Act "ordinarily" preempts state laws that interfere with national bank power for the two reasons discussed above:  there is no presumption against preemption, and the threshold for showing significant interference is "not very high."  *Monroe Retail*, 589 F.3d at 283.

### 2.  Plaintiff Misstates the *Barnett Bank* Test and Cannot Reconcile Her Arguments With National Bank Act Precedent.

Plaintiff contends that that the National Bank Act does not preempt Section 12-109 because this law "merely sets a minimum level of interest to be paid on escrowed funds" and thus "does

not 'prevent' or 'substantially interfere' with" Bank of America's "business." (Opp. 11). That argument misstates the preemption test and cannot be reconciled with other National Bank Act preemption decisions.

The *Barnett Bank* preemption test is not whether a state law interferes with a national bank's "business." The standard is whether the state law "prevent[s] or significantly interfere[s] with the national bank's *exercise of its powers*." *Barnett Bank*, 517 U.S. at 33 (emphasis added); *see also* 12 U.S.C. § 25b(b)(1)(B). To determine whether a state law interferes with a national bank's exercise of its federal banking powers, a court must identify the powers at issue, and then analyze the effect that the state law has on the exercise of those powers. In conducting this analysis, courts do not view a single state's law in isolation, but instead consider the interference that would arise if each state and local government were permitted to impose different and potentially conflicting requirements. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13-14 (2007) (National Bank Act preemption prevents "[d]iverse and duplicative superintendence of national banks' engagement in the business of banking").

The Supreme Court's National Bank Act preemption decisions demonstrate that a state law that significantly interferes with a discrete national bank power is preempted without regard to whether it significantly interferes with the national bank's overall "business." In holding that the National Bank Act preempted a state law prohibiting national banks from selling insurance in small communities, the Supreme Court never suggested that such a state law would significantly interfere with a national bank's profitability or its business in general. *Barnett Bank*, 517 U.S. at 37. The state law was preempted—even though federal and state law did not impose conflicting duties on national banks—because the law prevented a national bank from exercising a power granted by federal law. *Id.*

Similarly, in *Franklin National Bank of Franklin Square v. New York*, 347 U.S. 373, 377-78 (1954), the Supreme Court did not hold that the national bank's business would be significantly harmed if it could not use the words "saving" or "savings" in its advertising or business. *Id.* at 374. Although the state law did not otherwise limit a bank's ability to take deposits or advertise for such deposits, the Court nevertheless held that the state law was preempted because it interfered with national banks' exercise of their incidental power to advertise their banking services. *See id.* at 378-79.

Plaintiff contends that the state law in *Franklin National Bank* significantly interfered with the national bank's exercise of its powers because it prevented the bank from letting the public know about its services. (Opp. 12-13). But the state law did not prevent the bank from advertising—it simply prevented the bank from using one specific word in its advertising. If this limited restriction on advertising is preempted, then surely a state law regulating core banking decisions—whether to pay interest on a type of account and at what rate—must also be preempted.

Courts of appeals have similarly applied the *Barnett Bank* test by looking to whether a state law interferes with the national bank's exercise of its *powers*, not whether it interferes with its *business*. For example, in *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011), the Eleventh Circuit held that a state law regulating check-cashing fees was preempted because it substantially interfered with national banks' exercise of their federal power to determine the fees they charge for banking services. *See id.* at 1196-97. The court of appeals held that "[t]he state's prohibition on charging fees to non-account-holders, which reduces the bank's fee options by 50%, is in substantial conflict with federal authorization to charge such fees." *Id.* at 1198. And in *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 532-33 (1st Cir. 2007), the plaintiff challenged a national bank's practice of charging administrative fees on stored-value gift cards. *See id.* at 527. The First

Circuit explained that "a state law may be preempted by the National Bank Act when it frustrates or limits the ability of a national bank to exercise its statutorily granted powers." *Id.* at 531. Because federal law authorized the bank to sell stored-value gift cards, the court concluded that a state law regulating administrative fees was preempted because it "limits the bank's ability to exercise that power." *Id.* at 531.

Plaintiff has no meaningful response to these cases or to the many decisions holding that the National Bank Act preempts states laws restricting national banks' authority to set the terms for their products and services. Those cases hold that a state law significantly interferes with a national bank's exercise of its federal banking powers if it: (1) prohibits national banks from charging administrative fees for stored value gift cards, ATM use, or cashing certain checks; (2) regulates the order in which national banks post transactions to customer accounts; or (3) requires national banks to make certain disclosures about their loans or fee-charging practices. (Mem. 11-12 (collecting cases)). Just as in these cases, federal law authorizes Bank of America to establish escrow accounts without paying interest on them, and Section 12-109 prevents the Bank from doing so.[1]

Rather than addressing these cases, Plaintiff attempts to characterize Bank of America's preemption arguments as relying on a "field preemption" standard. (Opp. 9). Bank of America relies on the *Barnett Bank* standard, which is a form of conflict preemption and not "field preemption." *See* OCC, Office of Thrift Supervision Integration; Dodd-Frank Act Implementation, 76 Fed. Reg. 43,549-01, 43,556 (July 21, 2011). And contrary to Plaintiff's assertion, Bank

---

[1] Plaintiff incorrectly suggests (at 11) that state escrow interest laws are not preempted because other national banks voluntarily comply with them. Other banks' decisions to comply with a state law, for competitive or other reasons, does not imply that forced compliance by all national banks will not significantly interfere with the exercise of national bank powers.

of America does not contend that all state laws that affect a national bank "in any way" are preempted.  (Opp. 10).   National banks must comply with state laws that have only a minimal impact on their banking powers, which is typically the case for laws of general applicability such as contract, criminal, and property laws.  *See* 12 C.F.R. § 34.4(b) (identifying laws that generally are not preempted).  But the state law at issue here is not a law of general applicability—it specifically targets mortgage lenders and regulates their decision to pay interest on escrow accounts. Rather than invoking a "field preemption" standard, Bank of America seeks only a ruling that a state law that directly and significantly regulates its exercise of core federal banking powers, including the power to determine the terms on which banks provide credit, is preempted.[2]

### B.     OCC Regulations Preempt Section 12-109.

1.   The OCC's preemption regulations separately preempt Section 12-109 because that statute is a "state law limitation[] concerning" the "ability of a creditor to require or obtain . . . risk mitigants," the "terms of credit" of mortgage loans, and "[e]scrow accounts, impound accounts, and similar accounts."  12 C.F.R. § 34.4(a)(2), (4), (6).  Plaintiff's attempts to avoid the preemptive effect of these regulations are unpersuasive.

Plaintiff contends that "it is far from clear" that Section 12-109 is a "state law limitation" (Opp. 16), but she is mistaken.  A "limitation" is "a limiting condition" or "a restriction."  Webster's Unabridged Dictionary 1115 (2d ed. 2001).  Section 12-109 acts as a "restriction" on Bank

---

[2] Plaintiff suggests (at 14-15) that the National Bank Act does not preempt laws that are "undiscriminating" between national banks and other lenders.  That argument omits important qualifying language:  The undiscriminating laws that are not preempted are those "of general applicability" and "that form the legal infrastructure for conducting a banking or other business."  *Decohen*, 703 F.3d at 226.  Section 12-109 is neither generally applicable nor necessary "infrastructure" for business.

of America's federal banking powers by prohibiting it from requiring escrow accounts in connection with making mortgage loans unless the bank pays interest on the account balance.

Plaintiff incorrectly argues that the OCC should have followed the "case-by-case" preemption procedures set forth in 12 U.S.C. § 25b(b)(3).   (Opp. 16 & n.10).   Those procedures are inapplicable here for two reasons. *First*, because nothing in Dodd-Frank suggests that the preemption procedures were intended to apply retroactively, the OCC has reasonably concluded that they do not apply to regulations such as Section 34.4, which were in effect before Dodd-Frank was enacted.  76 Fed. Reg. at 43,557 (July 21, 2011).  *Second*, the procedures do not apply when, as here, preemption is based on "a provision of Federal law other than title 62 of the Revised Statutes."  12 U.S.C. § 25b(b)(1)(C).  Preemption in this case is based on the grant of mortgage-lending authority in 12 U.S.C. § 371, which is not part of title 62 of the Revised Statutes. *See id.* § 21 historical & statutory note (listing provisions of the United States Code that were part of Title 62 of the Revised Statutes, and omitting Section 371); Federal Reserve Act, Pub. L. No. 63-43, § 24 (1913) (enacting Section 371 as Section 24 of the Federal Reserve Act); 12 U.S.C. § 25b(b)(5)(A) (deference owed to "determinations made by the Comptroller regarding preemption of a State law by title 62 of the Revised Statutes *or* section 371 of this title" (emphasis added)).

2.  Plaintiff's attempts to dismiss the views of the OCC reflected in an amicus brief are unpersuasive.  As noted above, the procedures of 12 U.S.C. § 25b(b)(3) do not apply to regulations based on 12 U.S.C. § 371, let alone to OCC amicus briefs.

Moreover, the Fourth Circuit has directed that courts "must consider the guidance of the OCC" when assessing National Bank Act preemption.  *Decohen*, 703 F.3d at 223.  Dodd-Frank likewise states that the Court should give *Skidmore* deference to the OCC's amicus brief, *see* 12 U.S.C. § 25b(b)(5), which presents a well-reasoned application of the OCC's consistent and long-

held determinations that state laws like Section 12-109 are preempted because they meaningfully interfere with national bank powers.  *See generally* OCC Amicus Br., *Lusnak v. Bank of America, N.A.,* No. 14-56755 (filed Apr. 23, 2018), 2018 WL 3702582.

## II.      Dodd-Frank Does Not Save Plaintiff's Claims From Preemption.

Plaintiff invokes the Dodd-Frank provision codified at 15 U.S.C. § 1639d(g)(3) to support her argument that Bank of America must pay interest under state laws like Md. Code Ann. Com. Law § 12-109.  But Section 1639d(g)(3) requires lenders to pay interest on mortgage escrow accounts only "[i]f prescribed by applicable State or Federal law."  Plaintiff's arguments fail because Section 1639d(g)(3) lacks the "explicit statement" necessary to subject national banks to state regulation.  Moreover, Section 1639d(g)(3) is inapplicable here because Plaintiff has not alleged that her escrow account is "subject to" Section 1639d.

### A.      Section 1639d(g)(3) Does Not Expressly Require National Banks To Comply With State Escrow Interest Laws.

Plaintiff contends that Section 1639d(g)(3) expressly applies to national banks because the provision applies to "each creditor," and "creditor" is defined to include national banks.  (Opp. 19).  But the term "creditor" must be read in context, and the rest of Section 1639d(g)(3)—specifically, the phrase "[i]f prescribed by applicable State or Federal law"—makes clear that a "creditor" must pay interest only if required to do so by "applicable" law.  A preempted law, by definition, is not an "applicable law."  Section 1639d(g)(3) therefore does not impose new requirements on national banks; it simply requires lenders who are subject to a non-preempted state law requiring payment of interest on mortgage escrow accounts to pay interest on escrow accounts established under Section 1639d.

Plaintiff contends that Congress used the term "applicable" to account for the fact that only some states have laws requiring payment of interest on mortgage escrow accounts.  (Opp. 18-19).

But no statutory language was necessary to account for this state-to-state variance. Lenders can comply only with state laws that actually exist, and thus a statutory command that omitted the term "applicable" and simply required payment of interest "if prescribed by state law" would achieve the same result by imposing obligations on lenders only in states with laws requiring payment of interest. Plaintiff's interpretation should be rejected because it renders the term "applicable" superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (statutes should be construed so that "no clause, sentence, or word shall be superfluous" (quotation marks omitted)).

Nor is Plaintiff correct to argue that Bank of America's interpretation of "applicable" is "entirely circular." (Opp. 18). Section 1639d(g)(3)'s use of "applicable" reflects Congress's recognition that laws like Section 12-109 do not apply in certain situations, such as when they are preempted. When Congress enacted Section 1639d, the law was clear that national banks were not subject to state escrow laws. (Mem. 7-15, 21). Congress's use of "applicable" demonstrates that it did not intend to disturb such settled law and to require national banks to comply with state laws like Section 12-109.

Plaintiff also incorrectly argues (at 18) that Bank of America's interpretation of "applicable" renders Section 1639d(g)(3) "a legal nullity" that "would never apply to anything." Under Bank of America's interpretation, Section 1639d requires state-chartered banks and non-depository lenders to establish escrow accounts in certain circumstances, 15 U.S.C. § 1639d(a), (b), and to pay interest on those accounts as required by state law, *id.* § 1639d(g)(3). By imposing escrow account requirements on these lenders as a matter of federal law, Congress gave the federal Bureau of Consumer Financial Protection authority to enforce state escrow laws against state-chartered banks and non-depository lenders. *See* 12 U.S.C. § 5514(c).

This interpretation is consistent with Section 1639d's central purpose.  Plaintiff broadly refers (at 7) to the Dodd-Frank Act's efforts to combat "abusive" and "deceptive" practices.  But nothing in the legislative history suggests that Congress viewed national banks' practices of establishing escrow accounts as problematic.  To the extent the legislative history is relevant, it shows that Congress was concerned that "[s]ome mortgage originators . . . provide consumers only with details on principal and interest amounts."  *See* H.R. Rep. 111-94, at 54 (2009).  In the subprime market in particular, creditors could "quote low monthly payments" by excluding tax and insurance costs and gain a "competitive advantage" over creditors whose quotes included escrow payments.  *Id.*  Those tactics disadvantaged the consumers "more likely to need budgeting assistance," *id.* at 53, who were attempting to compare quotes, *id.* at 54.  That was the abuse that Congress targeted, and it explains why Congress enacted Section 1639d to provide federal oversight of state-chartered banks and non-depository lenders.  These lenders issue more than half of the mortgages in the United States,[3] and were the primary offenders in the subprime lending market that led to Dodd-Frank.  *See id.* at 51 ("[M]ore than half of subprime mortgages were made by mortgage brokers and lenders with no Federal supervision[.]"); 76 Fed. Reg. at 43,554 (July 21, 2011) ("[T]he worst subprime loans were originated by nonbank lenders and brokers where national bank preemption was not applicable." (footnote omitted)).

Finally, Plaintiff attempts to dismiss Bank of America's arguments on the statutory context and history of Congress's grant of real-estate lending powers to national banks as irrelevant.  (Opp. 19-20).  But courts "interpret[] relevant statutory terms 'not in a vacuum, but with reference to the statutory context, structure, history, and purpose.'"  *D.B. v. Cardall*, 826 F.3d 721, 736 (4th Cir.

---

[3] *See* Federal Reserve Bank, "Residential Mortgage Lending in 2016:  Evidence from the Home Mortgage Disclosure Act Data" at 3, *available at* https://www.federalreserve.gov/publications/files/2016_HMDA.pdf.

2016) (quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014)).  National banks are created by federal law and are extensively regulated by federal agencies.  When Congress wants to allow states to regulate national banks, it knows how to do so:  It accompanies an explicit grant of power with an explicit statement that the national bank must comply with state law.  *Barnett Bank*, 517 U.S. at 36.  Thus, when Congress previously required national banks to exercise their mortgage lending power in compliance with state laws, it did so by expressly amending the grant of mortgage-lending authority in 12 U.S.C. § 371.  (Mem. at 20-21).  Section 1639d(g)(3) looks nothing like the statutory provisions that expressly require national banks to comply with state laws, which confirms that Congress did not condition the exercise of national banks' real-estate lending power on compliance with state escrow laws.

### B. Section 1639d(g)(3) Is Inapplicable Here Because Plaintiff's Escrow Account Is Not "Subject To" Section 1639d.

Although Plaintiff relies heavily on Section 1639d(g)(3), she does not contend that her escrow account is governed by this provision.  Section 1639d(g)(3) requires lenders to pay interest only on mortgage escrow accounts that are "subject to" Section 1639d, and Plaintiff does not claim that she has such an account.  This concession is fatal to Plaintiffs' claims.

Plaintiff contends that Section 1639d(g)(3) is relevant to her claims because it is "helpful in demonstrating long-standing congressional intent that requiring national banks to comply with the state escrow interest statutes does not 'substantially interfere' with the banks federal powers.'" (Opp. 20-21).  But *Barnett Bank* does not instruct courts to divine congressional intent regarding whether a state law interferes with the exercise of federal powers.  Instead, a court determines whether Congress has "expressly conditioned" the exercise of the federal power on compliance with state law.  *Barnett Bank*, 517 U.S. at 34.  If Congress has done so, then the national bank must comply with the state law even if compliance significantly interferes with its operations.  *See id.*

But when Congress has not imposed an express condition, as is the case here, the court must determine whether the state law prevents or significantly interferes with the national bank's exercise of federal banking power. *See id.*

Even if Congress's intent were controlling, Section 1639d(g)(3) cannot properly be read to express a congressional intent as to escrow accounts that are not subject to this provision.  In enacting Section 1639d(g)(3), Congress chose to require lenders to pay interest in accordance with state law only on *some* escrow accounts—those that lenders *must* establish, as a matter of federal law, on mortgage loans referenced in Section 1639d(a) and (b).  It would ignore and frustrate the limits of congressional action and intent to read this provision as requiring lenders to pay state-law prescribed interest on *all* mortgage escrow accounts.  Accordingly, even if a congressional directive to require national banks to pay interest could be inferred from Section 1639d(g)(3), that directive cannot properly be extended to include escrow accounts, such as Plaintiffs' account, that are not subject to Section 1639d(g)(3).  *See Dolan v. United States*, 560 U.S. 605, 625 (2010) ("[I]t frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." (quotation marks omitted)).

Finally, Plaintiff suggests that Section 1639d(g)(3) was enacted to eliminate "[w]hatever uncertainty that might have previously existed as to the congressional intent regarding the applicability of state escrow interest laws" before Dodd-Frank was enacted.  (Opp. 7).  But she cites nothing in the statutory text or legislative history to support that view, and all available evidence refutes it.  Congress did not enact Section 1639d to amend or clarify existing law; it is a new provision that imposes obligations that never before existed.  *See* Dodd-Frank Act, Pub. L. No. 111-203, § 1461, 124 Stat. 1376 (2010) (referring to § 1639d as a "new section" to be "insert[ed]" into the Truth in Lending Act).  In enacting Title XIV of Dodd-Frank, Congress clearly changed

the federal laws regulating mortgages.  Section 1639d furthered that effort by imposing new obligations for mortgage lenders to establish escrow accounts in certain circumstances.  15 U.S.C. § 1639d(a), (b).  Section 1639d(g)(3) imposed a new requirement to pay interest on the balances held in the escrow accounts required under Section 1639d(a) and (b), but only if "applicable" law required payment of interest.  The intent of the Congress that enacted Dodd-Frank is relevant only to understanding these changes to mortgage regulation, not to interpreting the pre-existing national bank authority provided in 12 U.S.C. § 371.  *Cf. Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 839 (1988) (on questions of preemption, "the opinion of a later Congress as to the meaning of a law enacted . . . years earlier does not control the issue").

## III.    The Court Should Dismiss The Entire Complaint With Prejudice.

Plaintiff does not dispute that the Court should dismiss her TILA claim.  Nor does she dispute that the rest of her claims should also be dismissed if Section 12-109 is preempted.  Because Section 12-109 is preempted, *see* Part I *supra*, the entire complaint should be dismissed with prejudice.  Plaintiff's claims also fail for the additional reasons discussed below.

### A.    Plaintiff's Unjust Enrichment Claim Is Barred By The Deed of Trust.

Plaintiff concedes that "the existence of a contract generally bars recovery based on the quasi-contract theory of unjust enrichment."  (Opp. 24).  That concession provides a sufficient basis to dismiss the unjust enrichment claim.

Plaintiff attempts to avoid this result by arguing that "a claim for unjust enrichment may proceed where the defendant challenges whether a contract covers a particular subject matter."  (*Id.*)  But there is no dispute that the Deed of Trust covers the subject matter at issue here—indeed, it expressly states Bank of America must pay interest on Plaintiff's escrow account only as required

- 14 -

by "Applicable Law."  (Mem. Ex. A, § 3).  The only dispute is whether Section 12-109 is "applicable," an inquiry that turns on whether the law is preempted as applied to Bank of America. (Mem. 23-25).  Put another way, the parties disagree about whether Bank of America has complied with the contractual provision regarding payment of interest, but no party disputes whether the Deed of Trust covers that particular subject.  Because Plaintiff "has not alleged that the Note or Deed of Trust is void in any regard," nor established that the Deed of Trust does not govern the treatment of interest on Plaintiff's escrow account, dismissal is appropriate.  *See Ademiluyi v. PennyMac Mtg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 535 (D. Md. 2013).

Plaintiff also contends that the Complaint states a claim for unjust enrichment because Bank of America generates "float income" on Plaintiff's escrow funds.  (Opp. 24-25).  But again, the Deed of Trust embodies the parties' bargain:  Plaintiff must pay funds into her escrow account, and Bank of America must use those funds to make specified payments on Plaintiff's behalf and at no charge.  (Mem. Ex. A, § 3).  Plaintiff does not allege that she has not "received everything that [she] bargain[ed] for," and so "a necessary element justifying the remedy of restitution, *i.e.*, unjust enrichment, is lacking."  *Citaramanis v. Hallowell*, 613 A.2d 964, 972 (Md. 1992).

### B.    Plaintiff's MCPA Claim Should Be Dismissed.

Plaintiff concedes that, to state a claim under the MCPA, she must allege that she relied on a misrepresentation made by Bank of America.  (Opp. 25).  Plaintiff relies on two sets of alleged misrepresentations: (1) statements made in connection with the mortgage origination in 2013, and (2) periodic account statements that Bank of America has sent her.  Neither is sufficient to support a claim under the MCPA.

1.  Plaintiff concedes that she was told that she would not be paid interest on her escrow account when she obtained a mortgage in 2013.  (Opp. 26).  Plaintiff nevertheless argues that she

has pleaded a claim based on the Deed of Trust and the notice regarding her escrow account be-cause those documents state that applicable law does not require Bank of America to pay interest on her escrow account. (*Id.*) Even assuming Plaintiff can overcome her concession that Bank of America informed her that she would not be paid interest, any claim based on alleged misrepre-sentations in the mortgage documents are barred by the MCPA's three-year statute of limitations.

Plaintiff invokes the "discovery rule" in an attempt to save her stale claim (Opp. 29), and alleges that because she "is not an attorney, [she] had no reason to doubt the accuracy of these representations." (*Id.* at 26.) But the discovery rule "applies to discovery of facts, not to discovery of law. Knowledge of the law is presumed." *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 986 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). When Plaintiff learned in 2013 that Bank of America would not pay interest on her escrow account, she knew all of the facts necessary to bring her claim and thus the limitations period began to run at that time. *See, e.g.*, *Walton v. Wells Fargo Bank, N.A.*, 2013 WL 3177888, at *6 (D. Md. June 21, 2013) (rejecting argument that, where plaintiffs are "inexperienced laypersons," the limitations period should not run until they learn that the defendant's conduct was unlawful).

Nor can Plaintiff rely on the "continuing harm" doctrine to extend the limitations period for alleged misrepresentations made in the mortgage documents. (Opp. 29). Even if the alleged misrepresentations affected the amount of her monthly mortgage payments during the limitations period, claims based on the alleged misrepresentations in 2013 would still be barred because the purportedly inflated monthly payments are "merely the continuing ill effects from the original alleged violation." *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1090 (Md. 2013); *Miller*, 224 F. Supp. 2d at 986 (plaintiff's monthly payments under a mortgage agreement could not be used to extend limitations period for misrepresentations allegedly made in the mortgage documents).

2. To avoid statute-of-limitations problems, Plaintiff relies on periodic account statements that she has received in the last three years.  But Plaintiff has yet to identify any specific statements in those documents that she alleges are fraudulent.  Rule 9(b) imposes "strict requirements" on claims that sound in fraud, and Plaintiff all but concedes that her allegations do not satisfy those requirements because the Complaint does not even allege what those statements say.  *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 215 (4th Cir. 1994).  Plaintiff alleges that the account statements do not reflect payment of interest on her escrow account.  But under her theory of the case, that would be *an accurate statement* because she alleges that no interest was paid.  She now contends that the statements contain a misrepresentation because they do not state what her account balance would have been had Bank of America paid interest.  But without any allegation of what the account statements said, Plaintiffs cannot plausibly allege that the account statements were misleading because there is no reason to expect that Bank of America would issue periodic statements that provided a hypothetical balance for the counterfactual circumstance in which interest was being paid.

3.  Even if Plaintiff could allege a misrepresentation, her claims would still fail because she had not alleged that she relied on those statements.  Plaintiff concedes that she must allege reliance (Opp. 25), but the opposition never identifies where in the Complaint Plaintiff alleges reliance on any of Bank of America's supposed misrepresentations.  (*Id.* at 25-30).  No such allegation exists.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," and Plaintiff cannot salvage her MCPA claim with new representations about reliance appearing for the first time in her motion papers.  *See McDonald v. LC Electronics USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016) (Bennett, J.) (internal quotation marks omitted).

### C.      Dismissal With Prejudice Is Appropriate.

In a footnote, Plaintiff asks for leave to amend her Complaint if the Court dismisses any of her claims.  (Opp. 30 n.19).  The Court should deny that request and dismiss the Complaint with prejudice.

Plaintiff's request "violates Local Rule 103.6 of the District of Maryland, which requires a party seeking leave to amend to provide the court a proposed copy of the amended complaint." *United States ex rel. Conrad v. GRIFOLS Biologicals Inc.*, 2010 WL 2733321, at *7 (D. Md. July 9, 2010) (Bennett, J.).  On that basis alone, dismissal without leave to amend is justified because Plaintiff "failed to provide the district court with a means by which to determine whether the amendment would cure the defects in the initial complaint."  *See Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009).  Plaintiff's memorandum in opposition likewise has not forecasted how she can amend her Complaint to avoid preemption; to allege a viable unjust enrichment claim; or to allege an actionable misrepresentation upon which she relied to her detriment.

Dismissal with prejudice is particularly warranted for Plaintiffs' TILA claim.  Bank of America moved to dismiss the claim as barred by the applicable one-year statute of limitations. (Mem. 25-26).  Plaintiff offers no answer to Bank of America's argument that her TILA claim is untimely, and instead urges the Court to dismiss the claim without prejudice.  (Opp. 30).  "The failure to respond . . . is tantamount to a waiver of any opposition on the merits."  *Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, 2011 WL 5547997, at *3 (D. Md. Nov. 10, 2011).  Because the claim is time-barred, which Plaintiff does not dispute, dismissal with prejudice is appropriate on that claim as well.

### CONCLUSION

This Court should grant the motion and dismiss the Complaint with prejudice.

DATED:  February 25, 2019                 Respectfully submitted,

                                          By:    /s/ Mark W. Mosier
                                                 Mark W. Mosier (admitted *pro hac vice*)
                                                 Andrew Soukup (admitted *pro hac vice*)
                                                 COVINGTON & BURLING LLP
                                                 One CityCenter, 850 10th Street NW
                                                 Washington, D.C. 20001
                                                 T: (202) 662-6000
                                                 mmosier@cov.com
                                                 asoukup@cov.com

                                                 David L. Permut
                                                 GOODWIN PROCTER LLP
                                                 901 New York Avenue NW
                                                 Washington, D.C. 20001
                                                 T: (202) 346-4000
                                                 DPermut@goodwinlaw.com

                                                 *Attorneys for Defendant*
                                                 *Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2019, I caused the attached Reply Memorandum in Support of Defendant's Motion to Dismiss to be filed electronically, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

DATED:  February 25, 2019                    Respectfully submitted,

By:    /s/ David L. Permut
David L. Permut
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
T: (202) 346-4000
DPermut@goodwinlaw.com

*Attorney for Defendant Bank of America,*
*N.A.*