# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CYNTHIA CLARK, individually and on behalf of all others similarly situated,

     Plaintiff,

     v.

BANK OF AMERICA, N.A.,

     Defendant.

Civil Case No.: 1:18-cv-3672 (SAG)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

David L. Permut
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
T: (202) 346-4000
DPermut@goodwinlaw.com

Mark W. Mosier (admitted *pro hac vice*)
Andrew Soukup  (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
T: (202) 662-6000
mmosier@cov.com
asoukup@cov.com

*Attorneys for Defendant Bank of America, N.A.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.    Bank Of America's Federal Authority To Make Mortgages And To
        Provide Escrow Account Services. .......................................................................... 2

    B.    Plaintiff's Suit Alleges That Bank of America Violated State Law By Not
        Paying Interest On Mortgage Escrow Accounts. ..................................................... 4

PROCEDURAL STANDARD ................................................................................................. 4

ARGUMENT ....................................................................................................................... 5

I.    Federal Law Preempts Section 12-109 As Applied To National Banks. ............................ 5

    A.    There Is No Presumption Against Preemption By Federal Banking Laws. ........... 5

    B.    The National Bank Act Preempts Section 12-109. ................................................. 6

        1.    Federal Law Authorizes Bank Of America To Establish The Terms
            For Mortgage Loans And Escrow Accounts. .............................................. 7

        2.    Section 12-109 Prevents Bank Of America From Exercising These
            Banking Powers. ........................................................................................ 9

    C.    OCC Regulations Preempt Section 12-109 ........................................................ 13

    D.    Dodd-Frank Does Not Affect The Preemption Analysis. ................................... 16

        1.    Section 1639d(g)(3) Lacks The Necessary "Explicit Statement" To
            Give States Authority To Regulate National Banks. ............................... 17

        2.    Plaintiff's  Escrow Account Is Not "Subject To" Section 1639d. ........... 22

II.    Plaintiff's Claims Should Be Dismissed Because They Fail To State A Claim. .............. 24

    A.    The Breach-Of-Contract Claim Fails Because Bank Of America Has Not
        Agreed To Comply With Section 12-109. ........................................................... 24

    B.    The Unjust Enrichment Claim Is Barred By Plaintiff's Mortgage
        Agreement. ........................................................................................................ 26

C.      The TILA Claim Is Not Properly Pled And Is Time Barred In Any Event. ......... 26

D.      Plaintiff Does Not State A Claim Under The Maryland Consumer
        Protection Act. ................................................................................................... 27

        1.      Plaintiff Has Not Adequately Alleged A Misrepresentation Or
                Reliance.................................................................................................. 27

        2.      Any Claim Arising From The Mortgage Agreement Is Untimely............ 29

CONCLUSION.................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Akopyan v. Wells Fargo Home Mortg., Inc.*,
    215 Cal. App. 4th 120 (2013) ................................................11

*Anand v. Ocwen Loan Serv., LLC*,
    754 F.3d 195 (4th Cir. 2014) ................................................5

*Arnold Tours, Inc. v. Camp*,
    472 F.2d 427 (1st Cir. 1972) ................................................7

*Bank of Am. v. City & Cty. of San Francisco*,
    309 F.3d 551 (9th Cir. 2002) ................................................6, 11, 21

*Bank One, Utah v. Guttau*,
    190 F.3d 844 (8th Cir. 1999) ................................................21

*Baptista v. JPMorgan Chase Bank, N.A.*,
    640 F.3d 1194 (11th Cir. 2011) ................................................11

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
    517 U.S. 25 (1996) ................................................ *passim*

*Barr v. Flagstar Bank, FSB*,
    303 F. Supp. 3d 400 (D. Md. 2018) ................................................27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ................................................5

*Butler v. Citizens Bank, N.A.*,
    2018 WL 2840413 (D. Md. June 11, 2018) ................................................27

*Comm'r of Internal Revenue v. Keystone Consol. Indus., Inc.*,
    508 U.S. 152 (1993) ................................................22

*Decohen v. Capital One, N.A.*,
    703 F.3d 216 (4th Cir. 2012) ................................................6

*Downey v. Wells Fargo Bank, N.A.*,
    2014 WL 3510510 (D. Mass. July 11, 2014) ................................................12

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) ................................................18

*Epic Systems Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ............................................................................................22

*Epps v. JP Morgan Chase Bank, N.A.,*
  675 F.3d 315 (4th Cir. 2012) .............................................................................9, 25

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
  458 U.S. 141 (1982)..................................................................................13, 17, 25

*Flagg v. Yonkers Sav. & Loan Ass'n, FA,*
  396 F.3d 178 (2d Cir. 2005).............................................................................22, 25

*Franklin National Bank of Franklin Square v. New York,*
  347 U.S. 373 (1954)......................................................................................... *passim*

*Gordon v. Kohl's Dep't Stores, Inc.,*
  172 F. Supp. 3d 840 (E.D. Pa. 2016) .....................................................................11

*Gutierrez v. Wells Fargo Bank, N.A.,*
  704 F.3d 712 (9th Cir. 2012) ..................................................................................11

*Hebbeler v. First Mariner Bank,*
  2018 WL 3818855 (D. Md. Aug. 10, 2018) ...........................................................28

*Hudson v. Hous. Auth. of Balt. City,*
  935 A.2d 395 (Md. 2007) ........................................................................................28

*Humanoids Grp. v. Rogan,*
  375 F.3d 301 (4th Cir. 2004) ..................................................................................13

*Indep. Ins. Agents of Am., Inc. v. Hawke,*
  211 F.3d 638 (D.C. Cir. 2000) ..................................................................................7

*Kisor v. Wilkie,*
  139 S. Ct. 2400 (2019)......................................................................................15, 16

*Lloyd v. Gen. Motor Corp.,*
  916 A.2d 257 (Md. 2007) ........................................................................................29

*Lusnak v. Bank of America, N.A.,*
  883 F.3d 1185 (9th Cir. 2018) ...........................................................12, 13, 15, 23

*Makowski v. Bovis Lend Lease, Inc.,*
  2011 WL 1045635 (D. Md. Mar. 17, 2011)..............................................................5

*Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.,*
  439 U.S. 299 (1978)...................................................................................................5

*Martinez v. Wells Fargo Home Mortg., Inc.*,
  598 F.3d 549 (9th Cir. 2010) ................................................................15

*Master Fin., Inc. v. Crowder*,
  972 A.2d 864 (Md. 2009) ....................................................................29

*Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*,
  284 F. Supp. 2d 284 (D. Md. 2003) (Bennett, J.) ..........................24, 26

*McAnaney v. Astoria Fin. Corp.*,
  665 F. Supp. 2d 132 (E.D.N.Y. 2009) ..................................................24

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
  710 F.3d 551 (4th Cir. 2013) ..................................................................4

*Monroe Retail, Inc. v. RBS Citizens, N.A.*,
  589 F.3d 274 (6th Cir. 2009) ..................................................................9

*Nat'l City Bank of Ind. v. Turnbaugh*,
  463 F.3d 325 (4th Cir. 2006) .......................................................... *passim*

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
  513 U.S. 251 (1995) ..............................................................................13

*Neal v. Pentagon Fed. Credit Union*,
  2018 WL 5786119 (D. Md. Nov. 5, 2018) ............................................29

*New Mexico v. Capital One Bank (USA) N.A.*,
  980 F. Supp. 2d 1314 (D.N.M. 2013) ...................................................11

*Parks v. MBNA Am. Bank, N.A.*,
  54 Cal. 4th 376 (2012) ..........................................................................11

*Philips v. Pitt Cty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ..................................................................5

*Powell v. Huntington Nat'l Bank*,
  226 F. Supp. 3d 625 (S.D. W. Va. 2016) ..............................................11

*Rose v. Chase Bank USA, N.A.*,
  513 F.3d 1032 (9th Cir. 2008) .........................................................11, 28

*Smith v. Wells Fargo Bank, N.A.*,
  158 F. Supp. 3d 91 (D. Conn. 2016) .....................................................12

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F.3d 769 (4th Cir. 2013) ................................................................27

*SPGGC, LLC v. Ayotte*,
    488 F.3d 525 (1st Cir. 2007) ...................................................................11

*Starr Int'l Co., Inc. v. Fed. Reserve Bank of N.Y.*,
    742 F.3d 37 (2d Cir. 2014) ........................................................................7

*Strickland-Lucas v. Citibank, N.A.*,
    256 F. Supp. 3d 616 (D. Md. 2017) ........................................................26

*In re TD Bank, N.A.*,
    150 F. Supp. 3d 593 (D.S.C. 2015) ........................................................11

*Tiffany v. Nat'l Bank of Mo.*,
    85 U.S. 409 (1873) ....................................................................................5

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) ..................................................................................19

*Turner v. Lowden*,
    2013 WL 5634325 (D. Md. Oct. 15, 2013) ...........................................26

*U.S. Bank Nat'l Ass'n v. Schipper*,
    812 F. Supp. 2d 963 (S.D. Iowa 2011) ..................................................11

*United States v. Locke*,
    529 U.S. 89 (2000) ..................................................................................21

*United States v. Wilson*,
    503 U.S. 329 (1992) ................................................................................22

*Wachovia Bank, N.A. v. Burke*,
    414 F.3d 305 (2d Cir. 2005) ...................................................................15

*Walton v. Wells Fargo Bank, N.A.*,
    2013 WL 3177888 (D. Md. June 21, 2013) ...........................................29

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1 (2007) ...............................................................................6, 10

*Wells Fargo Bank N.A. v. Boutris*,
    419 F.3d 949 (9th Cir. 2005) ....................................................................7

*Wells Fargo Bank of Tex., N.A. v. James*,
    321 F.3d 488 (5th Cir. 2003) ..................................................................11

*Wis. League of Fin. Insts., Ltd. v. Galecki*,
    707 F. Supp. 401 (W.D. Wis. 1989) ......................................................22

*World Fuel Serv. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*,
    783 F.3d 507 (4th Cir. 2015) ....................................................................25

**STATUTES**

12 U.S.C. § 24(Seventh) .............................................................................2, 7

12 U.S.C. § 25b(b) ....................................................................................6, 14

12 U.S.C. § 36(c) .............................................................................................17

12 U.S.C. § 85 ..................................................................................................17

12 U.S.C. § 92a(a) ...........................................................................................17

12 U.S.C. § 371 .........................................................................2, 7, 14, 21

12 U.S.C. § 2605 ...............................................................................................3

12 U.S.C. § 2609 ...............................................................................................3

15 U.S.C. § 1639d ................................................................................ *passim*

15 U.S.C. § 1640 .............................................................................................26

Md. Code Ann. Com. Law § 12-109 ................................................... *passim*

Md. Code Ann. Com. Law § 13-301 ...............................................................28

Md. Code Ann. Com. Law § 13-303 ...............................................................27

Md. Code Ann. Cts & Jud. Proc. § 5-101 ......................................................29

**REGULATIONS**

12 C.F.R. § 7.4001(a).........................................................................................7

12 C.F.R. § 34.4 .................................................................................... *passim*

Bureau of Consumer Financial Protection, Escrow Requirements Under The Truth
    in Lending Act, 78 Fed. Reg. 4,726 (Jan. 22, 2013) ..................................3

OCC, Office of Thrift Supervision Integration; Dodd-Frank Act Implementation,
    76 Fed. Reg. 43,549 (July 21, 2011) .........................................................3

**OTHER AUTHORITIES**

Bruce E. Foote, Mortgage Escrow Accounts: An Analysis of the Issues (Cong.
    Research Serv. 1998) ...................................................................................8

H.R. Rep. No. 93-1113 (1974) ..................................................................................... 21

H.R. Rep. No. 111-94 (2009) ........................................................................... 2, 3, 20

OCC Amicus Br., *Lusnak v. Bank of America*, No. 14-56755 (filed Apr. 23,
    2018), 2018 WL 3702582 .......................................................................... 12, 15, 16

OCC Corporate Decision No. 99-06, 1999 WL 74103 (Jan. 29, 1999) ........................... 7

OCC Interpretive Letter 1041, 2005 WL 3629258 (Sept. 28, 2005) .......................... 2, 7

State of Maryland Opinion No. 90-025, 75 Md. Op. Atty. Gen. 218, 1990 WL
    595325 .................................................................................................................. 22

Webster's II New College Dictionary 55 (1999) ....................................................... 18

## INTRODUCTION

As a federally-chartered national bank, Defendant Bank of America, N.A. is authorized by federal law to make mortgage loans and to require or offer escrow accounts in connection with those loans. Bank of America has exercised these federal banking powers by establishing, for mortgage loan customers including Plaintiff, mortgage escrow accounts from which it makes tax, insurance, and other required payments. These escrow accounts are an essential tool to mitigate the financial risks that can result if borrowers fail to pay taxes or insure their properties.

This lawsuit seeks to prevent Bank of America from exercising its federal authority to establish and maintain escrow accounts unless Bank of America complies with a state law requiring payment of interest on escrow account balances. *See* Md. Code Ann. Com. Law § 12-109. Plaintiff's claims all depend on her contention that Bank of America violated this law, but each claim fails because federal banking law preempts this state law as applied to national banks.

The National Bank Act preempts state laws that "prevent or significantly interfere" with a national bank's exercise of its federal banking powers. *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Whether to pay interest on an escrow account—and, if so, at what rate—are core banking decisions with significant implications for the risk, pricing, and structure of a transaction. State-law requirements to pay a specified amount of interest prevent and significantly interfere with a national bank's exercise of its federal powers to make those core banking decisions in connection with real-estate loans. Federal regulations confirm this conclusion. The Office of the Comptroller of the Currency ("OCC")—the primary federal regulator of national banks—has issued regulations that preempt § 12-109 and similar state laws. 12 C.F.R. § 34.4(a)(2), (a)(4), (a)(6).

Plaintiff alleges that a provision of the Dodd-Frank Act requires national banks to comply with Section 12-109. But "where Congress has not expressly conditioned the grant of 'power'

upon a grant of state permission, the [Supreme] Court has ordinarily found that no such condition applies." *Barnett Bank*, 517 U.S. at 34.  The Dodd-Frank provision cited by Plaintiff, 15 U.S.C. § 1639(d)(g)(3), does not impose an express condition on the exercise of national bank powers. That provision does not refer to national banks, the National Bank Act, or preemption.  Instead, it requires a creditor to pay interest only "[i]f prescribed by applicable State . . . law," *id.*, but preempted state laws are not "applicable" to national banks.  Moreover, this provision cannot help Plaintiff because it applies only to escrow accounts "subject to" § 1639d, and Plaintiff does not allege that her account satisfies this requirement.

Dismissal of the Complaint is therefore proper because all of Plaintiff's claims are preempted. Plaintiff's claims also fail for the additional reasons set forth below.

## BACKGROUND

### A.    Bank Of America's Federal Authority To Make Mortgages And To Provide Escrow Account Services.

The National Bank Act authorizes national banks to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate."  12 U.S.C. § 371(a).  National banks are also authorized by the National Bank Act to exercise "all such incidental powers as shall be necessary to carry on the business of banking." *Id*. § 24(Seventh).  For over 40 years, the OCC has recognized that these grants of authority permit national banks to "provid[e] escrow services in a variety of contexts."  OCC Interpretive Letter 1041, 2005 WL 3629258, at *2 (Sept. 28, 2005) (citing Interpretive Letter (May 13, 1975)).

Lenders often establish an escrow account in connection with a mortgage loan to "ensure the timely payment of specified obligations affiliated with a property."  H.R. Rep. No. 111-94, at 53 (2009).  When a national bank establishes an escrow account like the one here, it collects additional money from borrowers to pay taxes and insurance bills. *See id.*; Compl. ¶ 1.  These tax and

insurance costs are collected on a pro-rata basis each month, *see* H.R. Rep. No. 111-94, at 53 (2009), which provides a "benefit to the borrowers as it relieves them of the tasks of paying such regular tax and insurance obligations in a lump sum."  OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998).  An escrow account is thus "a budgeting device" that spreads out the cost of tax and insurance payments over the course of the year, and it gives borrowers "[t]he convenience of paying one bill"—the monthly mortgage payment—"instead of several." Bureau of Consumer Financial Protection, Escrow Requirements Under The Truth in Lending Act, 78 Fed. Reg. 4,726, 4,744 (Jan. 22, 2013).  Given these benefits, borrowers with escrow accounts have "a lower probability of default and possible foreclosure." *Id.*

National banks often require escrow accounts when making a mortgage loan to reduce the risk of loss to the property securing the mortgage loan from tax liens or property damage.  Federal law closely regulates, among other things, when a mortgage lender may require an escrow account, the reporting obligations associated with such an account, and the maximum balance that may be held in an account. *See, e.g.*, 12 U.S.C. §§ 2605, 2609.  But no federal law requires national banks to pay interest on these escrow account balances.

The OCC has promulgated regulations addressing when national banks must comply with state laws in exercising their federal banking powers. *E.g.*, 12 C.F.R. § 34.4.  These regulations permit national banks to exercise their real-estate lending authority "without regard to state law limitations concerning . . . [t]he ability of a creditor to require or obtain . . . risk mitigants," "[t]he terms of credit," and "escrow accounts, impound accounts, and similar accounts." *Id.* § 34.4(a)(2), (a)(4), (a)(6).   The regulations are "based on the OCC's experience with the potential impact of such laws on national bank powers and operations."  OCC, Office of Thrift Supervision Integration; Dodd-Frank Act Implementation, 76 Fed. Reg. 43,549-01, 43,557 (July 21, 2011).

- 3 -

**B.**    **Plaintiff's Suit Alleges That Bank of America Violated State Law By Not Paying Interest On Mortgage Escrow Accounts.**

In August 1995, Plaintiff purchased a home in Maryland financed through Washington Mutual, Compl. ¶ 27, and in February 2013 she entered into a new mortgage agreement with Bank of America, *id.* ¶ 28.  In addition to her monthly principal and interest payments, Plaintiff alleges that she has made monthly payments into an escrow account for payment of property taxes and insurance.  *Id.* ¶¶ 1, 31, 56.  When Plaintiff obtained her mortgage, she was notified that because "federal law and regulations that Bank of America and its subsidiaries are subject to do not require the payment of interest on escrow accounts," she would "not receive interest on [her] escrow account, even if [her] state has a law concerning the payment of interest on escrow accounts." Declaration of Arsheen Littlejohn ("Littlejohn Decl."), Ex. B.

Plaintiff nevertheless filed this putative class action lawsuit on the theory that Maryland law requires Bank of America to pay interest on her escrow account.  Compl. ¶¶ 2, 49, 58.  Plaintiff relies on a provision of Maryland law stating that "lending institutions" that maintain escrow accounts must pay at least "the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year[.]"  Md. Code Com. Law § 12-109.  Plaintiff asserts claims for breach of contract, unjust enrichment, and violations of Section 12-109, the Truth in Lending Act ("TILA"), and the Maryland Consumer Protection Act ("MCPA").  Compl. ¶¶ 45-97.  Plaintiff also seeks to represent a class of Maryland borrowers.  *Id.* ¶ 34.

## PROCEDURAL STANDARD

Bank of America's motion to dismiss based on federal preemption arises under Fed. R. Civ. P. 12(b)(6).  *See, e.g.*, *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 553-54 (4th Cir. 2013).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

In deciding the motion, the Court may consider Plaintiff's Deed of Trust, *see* Littlejohn Decl., Ex. A, the notice Plaintiff received regarding her escrow account, *id.*, Ex. B, and her Note, *id.*, Ex. C. *See, e.g., Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (holding that courts may consider documents "attached to the motion to dismiss"). These documents may be considered because they are integral to the complaint and authentic; the "very existence" of the documents "give rise to the legal rights [Plaintiff] asserts." *Makowski v. Bovis Lend Lease, Inc.*, 2011 WL 1045635, at *2 (D. Md. Mar. 17, 2011) (Bennett, J.); *see also Anand v. Ocwen Loan Serv., LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (considering a Deed of Trust on appeal from a motion to dismiss).

## ARGUMENT

### I.   Federal Law Preempts Section 12-109 As Applied To National Banks.

Plaintiff's claims depend on the allegation that Bank of America is subject to a state-law requirement that lending institutions must pay interest on escrow account balances. Her claims should be dismissed because the National Bank Act and OCC regulations preempt this law.

#### A.   There Is No Presumption Against Preemption By Federal Banking Laws.

More than 150 years ago, Congress enacted the National Bank Act "to facilitate . . . a national banking system." *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 315 (1978). By establishing a system of federally chartered banks that derive their powers from federal law, Congress sought to "protect [national banks] against possible unfriendly State legislation." *Tiffany v. Nat'l Bank of Mo.*, 85 U.S. 409, 412 (1873). In determining whether federal banking law preempts state laws that seek to regulate national banks, federal courts have recognized that Congress intended to "protect national banks against intrusive regulation by the States,"

*Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002), and to prevent the "[d]iverse and duplicative" regulation of national banks that would occur if their banking activities were subject to multiple states' laws, *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13-14 (2007).

Importantly, Fourth Circuit "precedent is clear" that the usual "presumption against preemption, which governs fields traditionally regulated by the states, does not apply" to the National Bank Act. *Decohen v. Capital One, N.A.*, 703 F.3d 216, 222-23 (4th Cir. 2012). When the National Bank Act provides that national banks "may" exercise their federal "authorization, permission, or power," and contains no "express language" or "'indication' that Congress intended to subject" their federal banking powers "to local restriction[s]," the Supreme Court has concluded that "no such condition applies." *Barnett Bank*, 517 U.S. at 34-35. In other words, the "enumerated and incidental powers" granted to national banks under the National Bank Act "ordinarily pre-empt[], contrary state law." *Id.* at 32 (quotation marks omitted); *see also Watters*, 550 U.S. at 11 ("States can exercise no control" over national banks, "nor in any wise affect their operation, except in so far as Congress may see proper to permit" (quotation marks omitted)).

**B.    The National Bank Act Preempts Section 12-109.**

To determine whether the National Bank Act preempts state law, a court must first identify the specific federal banking powers at issue, and then analyze the effect that the state law has on the exercise of those powers. If the state law "prevent[s] or significantly interfere[s] with [a] national bank's exercise" of its federal banking powers, it is preempted as applied to national banks. *Barnett Bank*, 517 U.S. at 33; *see also* 12 U.S.C. § 25b(b)(1)(B) (codifying this preemption standard). Under this well-settled approach, Section 12-109 is preempted because it prevents Bank of America from exercising its federal power to establish the terms and conditions for mortgage loans and escrow accounts.

## 1.   Federal Law Authorizes Bank Of America To Establish The Terms For Mortgage Loans And Escrow Accounts.

Congress has expressly authorized national banks to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate."  12 U.S.C. § 371(a).  Congress also has authorized national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking," *id.* § 24(Seventh), meaning a national bank may engage in any activities that are "convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers."  *Arnold Tours, Inc. v. Camp*, 472 F.2d 427, 432 (1st Cir. 1972); *accord Starr Int'l Co., Inc. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37, 41 n.4 (2d Cir. 2014); *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 960 (9th Cir. 2005); *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 640 (D.C. Cir. 2000).

These grants of federal authority include the power to establish the terms and conditions of mortgage loans.  One "term" of a mortgage loan is the price, or interest rate, charged to a borrower as "compensati[on] . . . for an extension of credit." 12 C.F.R. § 7.4001(a).  Interest rates and loan origination fees are important tools that banks use to manage their credit risk, but banks can charge lower interest rates and reduce origination fees if that risk can be mitigated in other ways.

National banks are also empowered to establish, as a "term" of a mortgage, a requirement that a borrower make tax and insurance payments into an escrow account as specified by the bank. The OCC has long recognized that the grants of authority in 12 U.S.C. § 371 and § 24(Seventh) include the power "to provide . . . escrow services."  OCC, Corporate Decision No. 99-06, 1999 WL 74103, at *2 (Jan. 29, 1999).[1]

---

[1] *See also* OCC Interpretive Letter 1041, 2005 WL 3629258, at *2 (Sept. 28, 2005) ("OCC has approved national banks providing escrow services in the context of collecting real estate taxes."); OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998) ("National banks have long been permitted to service the loans that they make and servicing frequently entails the

Lenders use escrow accounts to ensure that funds are available to pay taxes and insurance premiums, and thus to protect the value of their security interest from superior liens and property damage. *See, e.g.*, Bruce E. Foote, Mortgage Escrow Accounts: An Analysis of the Issues 1 (Cong. Research Serv. 1998) (explaining that many banks have required escrow accounts since the 1930s as a way to prevent municipalities from obtaining tax liens superior to the bank's mortgage lien). While banks could charge higher interest rates or origination fees as compensation for this risk, or lend in lower amounts, escrow accounts provide an alternative way for a bank to mitigate the risk of loss arising from the borrower's failure to pay taxes or have the property properly insured. Banks often are unwilling to make secured mortgage loans without these escrow accounts. *See id.* at i, 2 (noting that "most residential mortgages require" an escrow arrangement, which permits a lender "to protect the priority of its mortgage lien and ensure the protection of its collateral").

This case implicates Bank of America's exercise of these federal banking powers. Bank of America made a mortgage loan to Plaintiff. As Plaintiff acknowledges, one of the terms in the loan agreement required Plaintiff to make monthly payments into an escrow account from which Bank of America would make tax and insurance payments on Plaintiff's behalf. *See* Compl. ¶¶ 1, 31, 56; Littlejohn Decl., Ex. A, § 3. As part of doing so, Bank of America informed Plaintiff that she would not receive any interest on the escrow account balance. Littlejohn Decl., Ex. B. Having mitigated a risk of loss to the loan collateral via an escrow account on terms specified as part of the mortgage agreement, Bank of America charged Plaintiff a 4.25% interest rate on her mortgage loan. *See id.*, Ex. C, § 2.

---

assurance that local real estate taxes are paid on time, particularly when such loans involve tax and insurance escrow accounts.").

2.     **Section 12-109 Prevents Bank Of America From Exercising These Banking Powers.**

Plaintiff seeks to prohibit Bank of America from exercising its federal authority to establish escrow accounts, and to set the terms of those accounts, unless the bank complies with Section 12-109's requirement to pay interest at a specified minimum rate on escrow account balances.  The National Bank Act preempts this state-law requirement because it prevents Bank of America's full exercise of its federal banking powers.  *See Barnett Bank*, 517 U.S. at 33.

a.  "[T]he level of 'interference' that gives rise to preemption under the [National Bank Act] is not very high," *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009), and "national banks have often been given the benefit of the doubt in preemption questions," *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 321 (4th Cir. 2012) (quotation marks omitted).  Thus, the Fourth Circuit has stressed that national banks' powers—including their incidental powers—"*ordinarily pre-empt*" contrary state law.  *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 331 (4th Cir. 2006) (quoting *Barnett Bank*, 517 U.S. at 32 (Fourth Circuit's emphasis)).

The Supreme Court's decision in *Franklin National Bank of Franklin Square v. New York*, 347 U.S. 373 (1954), demonstrates this point.[2]  There, a New York law prohibited banks from using the words "saving" or "savings" in their advertising or business.  *Id.* at 374.  The law did not otherwise limit a bank's ability to take deposits or advertise for such deposits.  The Supreme Court nevertheless held that the state law was preempted because it interfered with national banks' incidental power to advertise their services.  *Id.* at 378-79.

---

[2] The *Barnett Bank* Court repeatedly cited *Franklin National Bank* as an example of the National Bank Act's strong preemptive force.  *Barnett Bank*, 517 U.S. at 33-35.

The Court should reach the same result here.  Plaintiff seeks to prohibit Bank of America from exercising its federal authority to include a term in mortgage loans requiring an escrow account unless the bank pays interest on that account balance.  Plaintiff also seeks to strip national banks of the power to decide whether, and how much, interest to pay on escrow accounts by mandating that interest must be paid on such accounts, at a rate equal to the yield on U.S. Treasury securities.  Maryland law thus seeks to regulate quintessential banking decisions—whether to pay interest on an account the bank requires to protect loan collateral and, if so, at what rate.  Section 12-109's requirement to pay interest makes escrow accounts a less attractive mechanism for mitigating lending risks, and compels banks to (i) use other means (such as higher mortgage interest rates or loan origination fees, or reduced loan amounts) to mitigate its risk, (ii) do nothing and assume greater risk, or (iii) refrain from making the loan at all.  Where state law so directly restricts and burdens a national bank's federally-granted lending authority, nothing more is required to show preemption.  *See, e.g.*, *Watters*, 550 U.S. at 13 ("Beyond genuine dispute, state law may not significantly burden a national bank's own exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the [National Bank Act].").

The Maryland law, standing alone, significantly interferes with Bank of America's exercise of its federal banking powers, and therefore is preempted.  *Id.*  But the state law's interference with national banks' federal powers is only magnified when the Court considers, as it must, the cumulative effect of permitting each state to impose different regulations for escrow accounts.  *Id.* at 13-14.  If Maryland may require national banks to pay its own specified rate of interest on mortgage escrow accounts, then so, too, may every other state and local government.  The Fourth Circuit has explained that when "national banks are unable to operate under uniform, consistent,

and predictable standards, their business suffers, which negatively affects their safety and sound-ness." *Nat'l City Bank*, 463 F.3d at 332 (quoting 69 Fed. Reg. 1904 (Jan. 13, 2004)).  The National Bank Act thus preempts inconsistent state-to-state "requirements" precisely because they are "costly and burdensome," interfere the ability "manage . . . risks," and subject national banks to "uncertain liabilities and potential exposure," sometimes even "deter[ing] them from making cer-tain products available in certain jurisdictions."  *See id.*

This case is no different from many prior cases in which courts have held that the National Bank Act preempts state laws that purport to restrict national banks' authority to set the terms for their products and services.  For instance, states cannot prohibit national banks from charging ad-ministrative fees on stored value gift cards, *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 532-33 (1st Cir. 2007), fees for ATM use, *Bank of Am.*, 309 F.3d at 561-64, fees for cashing certain checks, *Bap-tista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 (11th Cir. 2011); *Wells Fargo Bank of Tex., N.A. v. James*, 321 F.3d 488, 491 & n.3 (5th Cir. 2003), or even disproportionate fees for ancillary products, *Gordon v. Kohl's Dep't Stores, Inc.*, 172 F. Supp. 3d 840, 865-66 (E.D. Pa. 2016); *New Mexico v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1314, 1328-30 (D.N.M. 2013).  Nor can states require national banks to reimburse certain fees to state banks, *U.S. Bank Nat'l Ass'n v. Schipper*, 812 F. Supp. 2d 963, 966, 973 (S.D. Iowa 2011), or regulate how national banks post transactions to customer accounts, *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 723 (9th Cir. 2012); *Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal. App. 4th 120, 158 (2013); *Powell v. Huntington Nat'l Bank*, 226 F. Supp. 3d 625, 639 (S.D. W. Va. 2016); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 609 (D.S.C. 2015).  States cannot even require banks to make certain disclosures about their loans or fee-charging practices.  *See Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008); *Parks v. MBNA Am. Bank, N.A.*, 54 Cal. 4th 376, 389 (2012);

*Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 105-06 (D. Conn. 2016); *Downey v. Wells Fargo Bank, N.A.*, 2014 WL 3510510, at *6 (D. Mass. July 11, 2014).

b.  The recent Ninth Circuit decision, *Lusnak v. Bank of America*, *N.A.,* 883 F.3d 1185 (9th Cir. 2018), is an outlier in the long line of national bank preemption cases discussed above.  In *Lusnak*, the Ninth Circuit reached the erroneous conclusion that "no legal authority establishes that state escrow interest laws prevent or significantly interfere with the exercise of national bank powers" and held that the National Bank Act did not preempt a California law requirement to pay interest on mortgage escrow accounts.  *Id.* at 1197.

*Lusnak* departs from the Supreme Court's decisions in *Barnett Bank* and *Franklin National Bank*—and appellate and district court cases applying those decisions—and this Court should not follow it.  As explained above, the Supreme Court and Fourth Circuit have made clear that grants of power to national banks "ordinarily pre-empt[] contrary state law."  *Barnett Bank*, 517 U.S. at 32; *Nat'l City Bank*, 463 F.3d at 331.  *Lusnak* disregarded this settled law by holding that a state law does not prevent or significantly interfere with national banks' exercise of their federal banking powers without addressing in any meaningful way the specific federal powers at issue or analyzing how the state law (or the cumulative effect of multiple states' divergent laws) affects those powers.

The OCC agrees that *Lusnak* "errs in matters of fundamental importance to the national banking system."  OCC Amicus Br., *Lusnak v. Bank of America*, No. 14-56755 (filed Apr. 23, 2018), 2018 WL 3702582, at * 1.  As the OCC stated in an amicus brief, *Lusnak* "comprehensively misinterpreted *Barnett Bank*" and its preemption standard, and "a proper application of *Barnett* should have resulted in the panel affirming the preemption of the California escrow statute."  *Id.* at *9.  In the OCC's view, the *Lusnak* district court, not the court of appeals, correctly applied

*Barnett Bank* to preempt the California law at issue. *Id.* at *15-16. The OCC's criticisms of *Lusnak*, which reflect the agency's extensive experience in regulating national banks, are entitled to deference. *Cf. Humanoids Grp. v. Rogan*, 375 F.3d 301, 307 (4th Cir. 2004) (noting that deference to a federal agency's views are appropriate even where those views are expressed in an "amicus brief filed during the course of litigation").

In sum, the National Bank Act "ordinarily" preempts state laws that purport to regulate national banks' exercise of their federal powers. *Barnett Bank*, 517 U.S. at 34. Because Section 12-109 prevents and significantly interferes with Bank of America's exercise of its federal authority to set important terms of its mortgage escrow accounts, it is preempted.

### C. OCC Regulations Preempt Section 12-109.

1. OCC regulations confirm that applying Section 12-109 to national banks would "prevent or significantly interfere" with Bank of America's exercise of its powers to offer escrow accounts and to set the terms of its mortgage loans. *Barnett Bank*, 517 U.S. at 33. The OCC's regulations "have no less pre-emptive effect than federal statutes," *Nat'l City Bank*, 463 F.3d at 330 n.3 (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)), because Congress has entrusted the OCC with "primary responsibility for surveillance of 'the business of banking' authorized by § 24 Seventh," *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995). For this reason, the Fourth Circuit has recognized that the OCC may issue regulations with preemptive effect. *See Nat'l City Bank*, 463 F.3d at 331.

The OCC has done so here by issuing regulations that preempt Section 12-109. *See* 12 C.F.R. § 34.4(a). These OCC regulations provide that national banks may exercise their mortgage-lending authority "without regard to state law limitations concerning … [e]scrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 34.4(a)(6). The regulations further provide that national banks may exercise their mortgage-lending authority without regard to state laws

- 13 -

relating to the "terms of credit," *id.* § 34.4(a)(4), or "[t]he ability of a creditor to require or obtain

. . . risk mitigants," *id.* § 34.4(a)(2).  An escrow account is a "term of credit" and a "risk mitigant"

because it affects the payment a borrower must pay each month and the nature of the security that

the borrower has given to the bank to ensure the borrower does not default on the loan.

 Following Congress's enactment of the Dodd-Frank Act in 2011, the OCC reexamined its

preemption regulations, including Section 34.4, and "confirm[ed] that the specific types of laws

cited in the rules are consistent with the standard for conflict preemption in the Supreme Court's

*Barnett* decision."[3]  76 Fed. Reg. at 43,549, 43,557 (July 21, 2011).  For example, the OCC

concluded that laws that "affect the ability of national banks to underwrite and mitigate credit risk"

and "manage credit risk exposures" interfere with the banks' powers "in the lending arena."  *Id.*

With respect to escrow accounts, the OCC specifically concluded that

> state laws that would affect the ability of national banks to under-
> write and mitigate credit risk, manage credit risk exposures, and
> manage loan-related assets, such as laws concerning . . . risk mitiga-
> tion . . . [and] escrow standards . . . would meaningfully interfere
> with fundamental and substantial elements of the business of na-
> tional banks and with their responsibilities to manage that business
> and those risks.

*Id.*  As a result, the OCC continues to conclude that national banks may exercise their mortgage-

lending authority "without regard to state law limitations concerning . . . [t]he ability of a creditor

---

[3] Dodd-Frank's requirement that the OCC conduct a "case-by-case" preemption analysis of state
laws in some situations, *see* 12 U.S.C. § 25b(b), is inapplicable here for two reasons.  *First*, regu-
lations such as Section 34.4, which were "in effect prior to [July 21, 2011,] are not subject to the
case-by-case requirement."  76 Fed. Reg. at 43,557.  *Second*, when a regulation is promulgated
under a grant of authority "other than title 62 of the Revised Statutes," the statute does not require
the OCC to make a case-by-case preemption determination.  12 U.S.C. § 25b(b)(1)(C).  Section
34.4 was promulgated under 12 U.S.C. § 371, which is not part of title 62 of the Revised Statutes.
*See* 12 C.F.R. § 34.4(a) (invoking Section 371).

to require or obtain . . . risk mitigants, . . . [t]he terms of credit [and] . . . [e]scrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 34.4(a)(2), (a)(4), (a)(6).

2.   Plaintiff may argue that 12 C.F.R. § 34.4(a) is entitled to "little, if any, deference" because the regulation purportedly departs from the *Barnett Bank* standard.  *See Lusnak*, 883 F.3d at 1193.  But the Fourth Circuit has held that courts should defer the OCC's reasonable constructions of the National Bank Act, as is present here.  *See Nat'l City Bank*, 463 F.3d at 332.  *Lusnak* ignored decisions applying 12 C.F.R. § 34.4 to preempt state laws relating to the origination, processing, and servicing of mortgages.  *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010) (applying § 34.4 to preempt state laws because "OCC regulations possess the same preemptive effect as the [National Bank Act] itself"); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 321 (2d Cir. 2005) (applying § 34.4 to preempt state law).  The OCC has criticized *Lusnak* for failing to defer to its preemption regulations, which "are grounded in its supervisory judgment regarding the potential effect of those interactions on bank activities" and "had been informed by several years of litigation experience with the *Barnett* analysis."  OCC Amicus Br., 2018 WL 3702582, at *10; *accord* 76 Fed. Reg. at 43,557 (OCC's preemption regulations are "based on the OCC's experience with the potential impact of such laws on national bank powers and operations").

3.   If there were any ambiguity in 12 C.F.R. § 34.4, the OCC's reasoned interpretation of its regulations establishes that the regulation preempts Section 12-109.  As the Supreme Court recently reaffirmed, courts should defer to an agency's "fair and considered judgment" on the interpretation of an ambiguous regulation, even if that interpretation is advanced in a legal brief and even if the agency is not a party.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 n.6 (2019).  In an amicus brief filed in *Lusnak*, the OCC agreed with Bank of America's interpretation that 12 C.F.R.

§ 34.4 preempts state law requirements to pay interest on mortgage escrow accounts.  *See* OCC

Amicus Br., 2018 WL 3702582, at *9, 14–16.  The OCC explained that "[t]he OCC's regulation,

12 C.F.R. § 34.4, directly addresses the issue" and "specifies that statutes like the California stat-

ute"—which is materially similar to Maryland's—"are preempted by federal law."  *Id*. at *9.

The OCC's regulations are best read as unambiguously preempting Section 12-109.  But if

the Court concludes that the regulations are unclear, it should resolve that ambiguity by deferring

to the OCC's interpretation in the *Lusnak* amicus brief.  *See Kisor*, 139 S. Ct. at 2417.  The OCC's

interpretations are reasonable and, as the OCC explained, "are grounded in its supervisory judg-

ment" and "informed by several years of litigation experience" with preemption analysis, as well

as its expertise in the "types of state laws that can materially affect and confine—and thus are

inconsistent with—national bank real estate lending powers."   OCC Amicus Br., 2018 WL

3702582, at *10, 14; *accord* 76 Fed. Reg. at 43,557 (OCC's preemption regulations are "based on

the OCC's experience with the potential impact of such laws on national bank powers and opera-

tions").  This interpretation is precisely the type of "fair and considered judgment" developed

through "substantive expertise . . . knowledge and experience" to which *Kisor* instructs courts to

defer.  *Kisor*, 139 S. Ct. at 2417.

In short, the Court should hold that Section 12-109 is preempted by both the National Bank

Act and the unambiguous language of the OCC's regulation.  But if the Court concludes that the

regulations are ambiguous, the OCC's substantive expertise, knowledge, and experience counsel

in favor of deference to the OCC's views expressed in its amicus brief.  *See id*.

### D.     Dodd-Frank Does Not Affect The Preemption Analysis.

As part of the Dodd-Frank Act, Congress amended the Truth-in-Lending Act to require

lenders to establish mortgage escrow accounts in certain circumstances.  15 U.S.C. § 1639d.  When

an escrow account is established under this provision, the lender must pay interest on the account

if "applicable" state or federal law requires it to do so. *Id.* § 1639d(g)(3). Plaintiff contends that this provision requires national banks to comply with laws like Section 12-109. *See* Compl. ¶ 24. The Court should reject this contention for two reasons. *First*, Congress did not expressly state in Section 1639d(g)(3) that national banks must comply with state escrow interest laws, as *Barnett Bank* requires. *Second*, the provision requires payment of interest only on escrow accounts that must be established under Dodd-Frank, and Plaintiff has not alleged that her escrow account was required under Dodd-Frank.

### 1. Section 1639d(g)(3) Lacks The Necessary "Explicit Statement" To Give States Authority To Regulate National Banks.

When Congress intends for national banks to comply with state law, it says so explicitly. Because Section 1639d(g)(3) does not expressly require national banks to comply with state escrow laws, Congress has not expressly conditioned the exercise of national bank's federal real-estate lending powers on compliance with state laws such as Section 12-109.

a. Congress may require national banks to comply with state law, but such a requirement may not be inferred from statutory language that does not clearly impose this requirement. In enacting some statutory provisions, Congress has "accompan[ied] a grant of an explicit power with an explicit statement that the exercise of that power is subject to state law." *Barnett Bank*, 517 U.S. at 34 (collecting examples of explicit statements); *see also Franklin Nat'l Bank*, 347 U.S. at 378 n.7 (same). For example, 12 U.S.C. § 36(c) authorizes national banks to operate branches, but only in the manner "authorized to State banks by the law of the State in question." Similarly, 12 U.S.C. § 92a(a) empowers national banks to act as fiduciaries, but only if they do so "not in contravention of State or local law." Likewise, 12 U.S.C. § 85 authorizes national banks to charge interest, but only "at the rate allowed by the laws of the State . . . where the bank is located." These examples illustrate that when Congress intends national banks to comply with state law, it says so

explicitly, and customarily in the same provision that grants national banks authority to act.  *See Barnett Bank*, 517 U.S. at 34; *Franklin Nat'l Bank*, 347 U.S. at 378 n.7.

By contrast, "where Congress has not *expressly* conditioned the grant of 'power' upon a grant of state permission, the [Supreme] Court has ordinarily found no such condition applies." *Barnett Bank*, 517 U.S. at 34 (emphasis added).  In *Franklin National Bank*, for example, the Supreme Court held that Congress did not intend to require national banks to comply with state laws when the federal grant of authority contained "no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by *express language* in several other instances."  347 U.S. at 378 (emphasis added).

b.  Plaintiff relies on a statutory provision that states: "If prescribed by *applicable* State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that *applicable* State or Federal law."  15 U.S.C. § 1639d(g)(3) (emphasis added).  This provision does not apply to national banks because it lacks an "explicit statement that the exercise of" federal power to establish mortgage escrow accounts "is subject to state law."  *Barnett Bank*, 517 U.S. at 34.

By definition, a preempted law cannot be an "applicable" law.  The word "applicable" means "able to be applied; appropriate," Webster's II New College Dictionary 55 (1999), and a preempted law is neither "able to be applied" nor "appropriate."  *Cf. Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 475 (4th Cir. 2014) (federal statutes preempt "otherwise applicable state law duties" where the two conflict, such that the state law is no longer applicable).  The Supreme Court embraced this concept in *de la Cuesta*:  Where a deed of trust provided that it "is to be governed by the 'law of the jurisdiction' in which the property is located," the Court held that this provision did not require a national bank to comply with preempted state law.  458 U.S. at 157 n.12.  So too

here.  Congress's use of the word "applicable" reflects its recognition that laws like Section 5-601 would not always apply in certain situations, as in the case of state laws preempted by the National Bank Act and OCC regulations.  At a minimum, this language falls short of the necessary "explicit statement" that Congress intended to condition federal banking power on compliance with state law.

The phrase "applicable" does not reflect Congress's recognition that some states have escrow interest laws and some do not.  Congress accounted for the absence of escrow interest laws in some states not with the word "applicable," but with the phrase "[i]f prescribed by."  15 U.S.C. § 1639d(g)(3).  Interpreting "applicable" to account for the absence of escrow interest laws in some states would render "[i]f prescribed by" superfluous, in violation of the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

Dodd-Frank's structure confirms this conclusion.  When Congress wanted to modify the extent to which national banks were required to comply with state law, it did so explicitly in Subtitle D of Title X of Dodd-Frank by amending the National Bank Act.  *See* Pub. L. No. 111-203, 124 Stat. 1376, §§ 1041-48 (2010).  That subtitle is titled "Preservation of State Law," and its eight sections set forth, among other things, the preemption standards for national banks, *see id*. § 1044, and require national bank subsidiaries to comply with state law, *see id.* § 1045.  Although Congress could have expressly identified laws like Section 12-109 as being among the state laws "preserved" as applied to national banks, it did not do so.

Unlike these amendments to the National Bank Act, Section 1639d does not mention national banks, the National Bank Act, or preemption.  Section 1639d also is codified in a different

Title of the United States Code and as part of a different statutory regime.  It thus lacks the necessary "explicit statement that the exercise of" Bank of America's banking powers are "subject to state law." *Barnett Bank*, 517 U.S. at 34.

c. The background and purpose of Section 1639d further support this interpretation.  Congress enacted Section 1639d as part of Title XIV of the Dodd-Frank Act, also known as the Mortgage Reform and Anti-Predatory Lending Act.  *See* Pub. L. No. 111-203, 124 Stat. 1376, §§ 1461-62 (2010).  The Mortgage Reform and Anti-Predatory Lending Act was Congress's response to specific lending practices that triggered the financial crisis.  In contrast to national banks that are subject to federal oversight, "the worst subprime loans were originated by nonbank lenders and brokers where national bank preemption was not applicable."  76 Fed. Reg. at 43,554; *see also* H.R. Rep. No. 111-94, at 51 (2009) (noting that "more than half of subprime mortgages were made by mortgage brokers with no Federal supervision" and another "quarter were made by finance companies" that were only "indirectly regulated by the Federal Reserve Board").  Because escrow accounts entail "startup and operational costs," 78 Fed. Reg. at 4,747 (Jan. 22, 2013), lenders—an particularly nonbank lenders—have economic incentives not to offer them.  When drafting the Dodd-Frank Act, Congress observed that subprime borrowers were significantly less likely to have escrow accounts, notwithstanding that these borrowers were most likely to benefit from an escrow arrangement that provided them with a single monthly bill.  *See* H.R. Rep. No. 111-94, at 53-54.  As a result, the Act was aimed primarily at subjecting nonbank entities' mortgage lending practices to minimum federal consumer protection standards.  *See* 78 Fed. Reg. at 4,726-27, 4,744-46 (Jan. 22, 2013).

Section 1639d amended the Truth-in-Lending Act by imposing new federal requirements on creditors, including national banks.  But the Supreme Court and other courts have repeatedly

- 20 -

rejected the view that *federal* restrictions on national bank powers leave states free to impose *state* restrictions on those powers as well.  *See Barnett Bank*, 517 U.S. at 33-34 (preemption when federal law "contains no 'indication' that Congress intended to subject that power to local restriction"); *Bank of Am.*, 309 F.3d at 565 (federal anti-preemption provision "does not save the Ordinances against preemption by the . . . National Bank Act"); *Bank One, Utah v. Guttau*, 190 F.3d 844, 850 (8th Cir. 1999) (federal anti-preemption provision did not "grant[] the states any additional authority to regulate national banks"); *cf. United States v. Locke*, 529 U.S. 89, 106-07 (2000) ("We think it quite unlikely that Congress would use a means so indirect . . . to upset the settled division of authority" between state and federal governments).

d.  History further supports this reading.  When Congress wanted to make national banks exercise their mortgage lending power in compliance with state laws, it did so by expressly amending the grant of mortgage-lending authority in Section 371.  For example, Section 371 once limited interest rates to "the maximum rate authorized by law to be paid . . . by State banks."  44 Stat. 1233 (1927).  That express restriction no longer exists; Congress removed it in 1974 as part of a reform "to authorize wider real estate lending and investment powers for national banks."  H.R. Rep. No. 93-1113, at 6 (1974); *see* Pub. L. No. 93-383, 88 Stat. 633, 716 (1974).  In its current form, nothing in Section 371 expressly conditions national banks' exercise of their mortgage-lending authority upon compliance with state law.

Moreover, Section 1639d(g)(3) looks nothing like the language that Congress has generally used to require national banks to comply with state law.  Of the laws cited in *Franklin National Bank* and *Barnett Bank* as examples of "express language" subjecting national banks to local restrictions, none qualifies the reference to state law with a word like "applicable."  *See Barnett Bank*, 517 U.S. at 34; *Franklin Nat'l Bank*, 347 U.S. at 378 n.7.

- 21 -

Finally, when Congress enacted Section 1639d, courts and regulators had long agreed that federally-chartered depository institutions are not subject to state escrow laws, including laws requiring the payment of interest on escrow account balances. *See, e.g.*, 12 C.F.R. § 34.4(a)(2), (a)(4), (a)(6); 12 C.F.R. § 560.2(b)(6); *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 181-85 (2d Cir. 2005); *Wis. League of Fin. Insts., Ltd. v. Galecki*, 707 F. Supp. 401, 404-06 (W.D. Wis. 1989). The State of Maryland agreed, concluding that Section 12-109 "may not be applied" to federal savings associations "because the Maryland requirement has been preempted by federal law." State of Maryland Opinion No. 90-025, 75 Md. Op. Atty. Gen. 218, 1990 WL 595325, at *1.

Nothing in Dodd-Frank indicates that Congress intended to overturn these regulatory and judicial decisions. Congress is generally presumed to be aware of "a settled judicial and administrative interpretation," *Comm'r of Internal Revenue  v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993), and Congress's silence indicates an intent to preserve—not disrupt—the long-held view that states lack authority to regulate national banks' escrow accounts. *Cf. Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1626-27 (2018) ("Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." (internal quotation omitted)); *United States v. Wilson*, 503 U.S. 329, 336 (1992) ("It is not lightly to be assumed that Congress intended to depart from a long established policy."). In enacting Section 1639d, Congress changed the law to require lenders to establish escrow accounts in certain circumstances, but it did not change the law regarding whether lenders were required to pay interest on those accounts.

## 2.    Plaintiff's Escrow Account Is Not "Subject To" Section 1639d.

Plaintiff's Section 1639d theory fails for a second and independent reason. Even if Section 1639d(g)(3) made state laws like Section 5-601 "applicable" to national banks, it does so only in

the case of an "escrow account that is *subject to*" Section 1639d.  15 U.S.C. § 1639d(g)(3) (emphasis added).  Plaintiff does not allege that her escrow account is "subject to" Section 1639d.

Not all escrow accounts are "subject to" Section 1639d.  In general, Section 1639d requires lenders to establish escrow accounts only in four situations:  when a mortgage "is made, guaranteed, or insured by a State or Federal governmental lending or insuring agency," *id.* § 1639d(b)(2); for certain so-called "jumbo" mortgage loans, *id.* § 1639d(b)(3); when otherwise required "by Federal or State law," *id.* § 1639d(b)(1); or when so required pursuant to regulation, *id.* § 1639d(b)(4).  Unless one of these situations is present, an escrow account is not required, and the account is not "subject to" Section 1639d's requirements, including the provisions governing the administration of escrow accounts in Section 1639d(g), which—as its title indicates—applies only to Section 1639d(b)'s "mandatory escrow . . . accounts."

Here, Plaintiff has not alleged that Section 1639d(b) required Bank of America to establish her escrow account.  That means her escrow account is not "subject to" Section 1639d.  Rather, her escrow account is a voluntary one contemplated by 15 U.S.C. § 1639d(f), which permits escrow accounts to be established "on terms mutually agreeable to the parties to the loan" and "at the discretion of the lender or servicer, as provided by the contract between the lender or servicer and borrower."  *Id.* § 1639d(f)(1)-(2).  Plaintiff and Bank of America have done so here by entering into an escrow agreement that does not require Bank of America to pay interest on any escrow account balance.

Plaintiff may argue that Section 1639d's application to her mortgage agreement is irrelevant because that provision nevertheless "expresses Congress's view" that Section 12-109 and similar laws "would not necessarily prevent or significantly interfere" with Bank of America's federal real estate lending powers.  *Lusnak*, 883 F.3d at 1194-95.  But Congress does not regulate

- 23 -

national banks by hinting at views about interference with federal banking powers. Instead, Congress expressly legislates the scope of those powers, and courts require "explicit statement[s]" from Congress before they will condition the exercise of federal banking powers upon compliance with state laws. *Barnett Bank*, 517 U.S. at 34; *see also* Part I.D.1 *supra*. To the extent Congress alluded to any view about Section 12-109's interference with national banks' powers, there is no reason to think that Congress expressed a view about escrow accounts, like Plaintiff's, that are not even subject to Section 1639d. *See* Part I.D.2.a *supra*.

## II.     Plaintiff's Claims Should Be Dismissed Because They Fail To State A Claim.

Plaintiff's claims depend on her allegation that Section 12-109 requires Bank of America to pay interest on her escrow account. Because that allegation fails as a matter of law, all of Plaintiff's claims should be dismissed. Plaintiff cannot assert any state-law claims "seek[ing] to impose additional state law standards, which may vary from state to state," as that "is exactly [the] type of variance which Congress seeks to preclude by means of . . . preemption." *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 (D. Md. 2003) (Bennett, J.); *accord McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 169 n.39 (E.D.N.Y. 2009) (plaintiffs cannot "use the general common law causes of action as a back door to imply specific requirements . . . that would more than incidentally impact lending operations, that the state could not otherwise enact directly through statute or regulation."). Plaintiff's claims also fail for the reasons set forth below.

### A.      The Breach-Of-Contract Claim Fails Because Bank Of America Has Not Agreed To Comply With Section 12-109.

Plaintiff's breach-of-contract claim accuses Bank of America of violating Section 3 of her Deed of Trust. *See* Compl. ¶¶ 29-30; Littlejohn Decl., Ex. A, § 3. Plaintiff is mistaken.

The Deed of Trust provides that Bank of America "shall not be required to pay [Plaintiff] any interest or earnings" on her escrow account balance "[u]nless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds."  Compl. ¶ 29; Littlejohn Decl., Ex. A, § 3.  "Applicable Law" is defined as "all *controlling applicable* federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  Compl. ¶ 30; Littlejohn Decl., Ex. A, at p. 2, § (J) (emphasis added).  Section 12-109 is not "Applicable" for purposes of the Deed of Trust for the same reason it is not "applicable" under Section 1639d(g)(3):  A preempted state law cannot be "applicable" or "controlling" on Bank of America.

Nor did Bank of America consent to comply with Section 12-109 via the Deed of Trust's choice-of-law provision in Section 16.  That provision states that the Deed of Trust "shall be governed by federal law and the law of the jurisdiction in which the Property is located."  Littlejohn Decl., Ex. A, § 16.  When presented with the same argument regarding a materially indistinguishable choice-of-law clause, the Supreme Court rejected the suggestion that a defendant "agree[d] to be bound by local law," reasoning that the choice of law provision "includes federal as well as state law."  *de la Cuesta*, 458 U.S. at 157 n.12.

A choice of law provision that incorporates all state law necessarily "encompasses federal statutory law," including the National Bank Act.  *See World Fuel Serv. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 521 (4th Cir. 2015).  Thus, the Fourth Circuit has concluded that parties are contractually bound by *specific* state laws only where, for example, "the contract contained an explicit election of a specific Maryland statute."  *Epps*, 675 F.3d at 328.  "General choice of law provisions" of the sort in Plaintiff's Deed of Trust are insufficient to "incorporate particular laws as contract terms."  *Flagg*, 396 F.3d at 186.  Because Bank of America

"is not required by law to pay interest" due to federal preemption, the mortgage agreement's choice-of-law provision "does not commit [Bank of America] to pay interest to the [Plaintiff] on this mortgage escrow account." *Id.*

**B.      The Unjust Enrichment Claim Is Barred By Plaintiff's Mortgage Agreement.**

Plaintiff's contract with Bank of America precludes her claim for unjust enrichment. "It is well-settled law in Maryland that a claim for unjust enrichment may not be brought where the subject matter of the claim is governed by an express contract." *Mastercraft Interiors, Ltd.*, 284 F. Supp. 2d at 288 n.2. Because Plaintiff alleges the existence of a written contract governing Bank of America's obligations to pay interest on escrow accounts, Compl. ¶ 28, and incorporates these allegations into her unjust enrichment claim, *id.* ¶ 79, that claim should be dismissed. *See Turner v. Lowden*, 2013 WL 5634325, at *7 n.15 (D. Md. Oct. 15, 2013) (Bennett, J.) (dismissing claim because "unjust enrichment would be inappropriate if the relationship was governed by a contract, which Plaintiff appears to believe exists").

**C.      The TILA Claim Is Not Properly Pled And Is Time Barred In Any Event.**

Plaintiff also brings an independent claim under the Truth in Lending Act's private cause of action. *See* 15 U.S.C. § 1640(a); Compl. ¶¶ 89-97. Plaintiff has not alleged a violation of TILA because she has not alleged that Section 1639d(g)(3) applies to her escrow account. *See* Part I-D *supra*. Plaintiff therefore fails to state a claim under TILA.

In any event, Plaintiff's TILA claim is untimely. As relevant to Plaintiff's claim, a private action under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Courts in this district have consistently held that "[t]he 'date of the occurrence of the violation' is the date on which the borrower accepts the creditor's extension of credit." *Butler v. Citizens Bank, N.A.*, 2018 WL 2840413, at *4 (D. Md. June 11, 2018) (Bennett, J.) (quoting *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 627 (D. Md. 2017)). Plaintiff

alleges that she entered into her mortgage agreement with Bank of America, thereby accepting Bank of America's credit, in 2013.  Compl. ¶ 28.  Because she waited more than five years to file this lawsuit, Plaintiff's TILA claim is time barred on the face of the Complaint, and the Court can dismiss it on that ground alone.  *See id.*

### D.  Plaintiff Does Not State A Claim Under The Maryland Consumer Protection Act.

To state a claim under the MCPA, Plaintiff must plead with specificity (1) that Bank of America engaged in an unfair, abusive, or deceptive practice or misrepresentation, (2) that Plaintiff relied on the misrepresentation, and (3) that Plaintiff's reliance caused her an actual injury.  *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018); Md. Code Ann. Com. Law § 13-303.  Because an MCPA claim "sounds in fraud," that claim "is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."  *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013).  Plaintiff must therefore plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [was] obtained thereby."  *Id.* (quotation marks omitted).  Dismissal is required both because Plaintiff has failed to allege all necessary elements with specificity and because certain of her claims are also untimely.

### 1.  Plaintiff Has Not Adequately Alleged A Misrepresentation Or Reliance.

Plaintiff accuses Bank of America of engaging in deceptive conduct, *see, e.g.*, Compl. ¶¶ 66, 68, but she fails to state a claim under the MCPA because she has not alleged an actionable misrepresentation or omission.[4]

---

[4] If Plaintiff intends to suggest that Bank of America's failure to pay interest on her escrow account is *per se* "deceptive," Compl. ¶ 68, the claim likewise fails.  The MCPA specifically identifies which statutory violation are *per se* "[u]nfair, abusive, or deceptive," and a violation of Section

Plaintiff first identifies Bank of America's mortgage agreement as deceptive because Bank of America allegedly misrepresented that it would "comply with applicable state and federal law." Compl. ¶ 69.  But Plaintiff was told when she signed the Deed of Trust that Bank of America would not pay interest on her escrow account because federal law did not require such payments. Littlejohn Decl., Ex. B.  In short, Bank of America fully disclosed the practice challenged here.

Moreover, any "dispute between the parties as to whether" Bank of America complied with its obligations under the Deed of Trust "sounds in contract rather than in tort" and cannot form the basis for an MCPA claim.  *See Hebbeler v. First Mariner Bank*, 2018 WL 3818855, at *7 (D. Md. Aug. 10, 2018) (dismissing an MCPA claim deriving from the terms of a written forbearance agreement).

Alternatively, Plaintiff points to "monthly and other periodic statements" that are allegedly misleading "because they do not include applicable interest amounts." Compl. ¶ 73.  Plaintiff does not identify *any* statements with particularity, much less statements that are arguably false or misleading.  And this argument cannot be reconciled with Plaintiff's general theory of the case. Plaintiff alleges that Bank of America did not pay interest on her escrow account, *id.* ¶ 2, and thus there is nothing false or misleading about an escrow statement that accurately reflects the fact that no interest was paid.[5]

---

12-109 is not among them.  *See* Md. Code Ann. Com. Law § 13-301(14).  It is a "fundamental principle of construction, long recognized in Maryland," that "the expression of one thing"—here, the *per se* violations of the MCPA—indicates the exclusion of others.  *Hudson v. Hous. Auth. of Balt. City*, 935 A.2d 395, 402 (Md. 2007).

[5] If Plaintiff contends that all escrow account statements must state the amount of interest paid— even if that amount is zero—that contention necessarily fails because she identifies no Maryland law that imposes such a requirement.  In any event, federal law would preempt such a state-law disclosure requirement.  *See* 12 C.F.R. § 34.4(a)(9); *Rose*, 513 F.3d at 1038.

Even if Plaintiff identified a misleading statement with particularity, the Complaint is devoid of any allegation of reliance. "For both material misrepresentation and material omission claims under the MCPA, a party must prove reliance." *Neal v. Pentagon Fed. Credit Union*, 2018 WL 5786119, at \*23 (D. Md. Nov. 5, 2018); *see Lloyd v. Gen. Motor Corp.*, 916 A.2d 257, 277 (Md. 2007) ("The consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost *as a result of his or her reliance* on the sellers' misrepresentation." (emphasis added)). Plaintiff must plead—with particularity—the choice she made in reliance on the alleged misrepresentations. She has not done so. Without reliance, her MCPA claim fails and should be dismissed.

### 2.    Any Claim Arising From The Mortgage Agreement Is Untimely.

Plaintiff's MCPA claim is also untimely because it allegedly arises from alleged misrepresentations in her mortgage agreement. Compl. ¶ 70. An MCPA claim must be filed "within three years from the date it accrues." Md. Code Ann. Cts & Jud. Proc. § 5-101; *Master Fin., Inc. v. Crowder*, 972 A.2d 864, 872 (Md. 2009). Plaintiff's cause of action accrued when she knew or reasonably should have known that Bank of America made a misrepresentation. *See Walton v. Wells Fargo Bank, N.A.*, 2013 WL 3177888, at \*6 (D. Md. June 21, 2013). Plaintiff alleges that she received "a monthly or periodic mortgage statement or escrow summary report," Compl. ¶ 72, and that these reports did not "include interest" allegedly due under Section 12-109, *id.* ¶ 71. Given Maryland's requirement to pay interest on the escrow account and to provide an escrow balance statement "annually," Md. Code Ann. Com. Law §§ 12-109(b)(2)(iii), 12-109(b)(3), Plaintiff should have known that Bank of America was not paying interest no later than one year from the date she executed her mortgage agreement in February 2013. Compl. ¶ 28. Thus, any MCPA claim arising from the mortgage agreement's terms accrued by 2014 at the latest, meaning

Plaintiff should have filed her MCPA claim by 2017.  Her November 2018 complaint is therefore untimely and should be dismissed.

## CONCLUSION

This Court should grant this motion and dismiss the complaint with prejudice.

DATED:  September 27, 2019                    Respectfully submitted,


                                              By:      /s/ David L. Permut
                                                   David L. Permut
                                                   GOODWIN PROCTER LLP
                                                   901 New York Avenue NW
                                                   Washington, D.C. 20001
                                                   T: (202) 346-4000
                                                   DPermut@goodwinlaw.com

                                                   Mark W. Mosier (admitted *pro hac vice*)
                                                   Andrew Soukup (admitted *pro hac vice*)
                                                   COVINGTON & BURLING LLP
                                                   One CityCenter, 850 10th Street NW
                                                   Washington, D.C. 20001
                                                   T: (202) 662-6000
                                                   mmosier@cov.com
                                                   asoukup@cov.com


                                                   *Attorneys for Defendant*
                                                   *Bank of America, N.A.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 27, 2019, I caused the attached Memorandum in Support of Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted to be filed electronically, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

DATED:  September 27, 2019                    Respectfully submitted,

By:   /s/ David L. Permut
David L. Permut
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
T: (202) 346-4000
DPermut@goodwinlaw.com

*Attorney for Defendant Bank of America,*
*N.A.*

- 31 -