**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CYNTHIA CLARK, individually and on behalf of
all others similarly situated,

     Plaintiff,

     v.

                                 Civil Case No: 1:18-cv-3672-SAG

BANK OF AMERICA, N.A.,

     Defendant.

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ........................................................................................................................ 3

   I.   State Escrow Interest Statutes Are Not Preempted By Federal Law. ................................. 3

      A.   State Law Is Only Preempted If It "*Prevent*s Or *Significantly Interfere*s
           With The Exercise By The National Bank Of Its Powers." .......................................... 4

      B.   State Escrow Interest Statutes Like § 12-109 Do Not
           Prevent Or Significantly Interfere With BofA's Powers ............................................... 6

      C.   BofA's Arguments Are Not Persuasive ......................................................................... 8

   II.   Dodd-Frank Does Affect The Preemption Analysis ........................................................ 18

      A.   By Enacting § 1639d(g)(3), Congress Explicitly Expressed
           Its View That State Escrow Interest Laws Are Not Preempted. ................................... 18

      B.   Whether Plaintiff's Escrow Account Is "Subject To" Section 1639d Is Irrelevant To
           Whether § 12-109 Is Preempted By Federal Law ...................................................... 21

   III.   Plaintiff Properly Pleads State Law Claims .................................................................... 22

      A.   Plaintiff States A Claim For Breach Of Contract ....................................................... 22

      B.   Plaintiff States A Claim For Unjust Enrichment ......................................................... 25

      C.   Plaintiff States A Claim For Violation Of The Maryland Consumer Protection Act .. 26

      D.   Plaintiff Respectfully Requests That The Court Dismiss Its TILA Claim Without
           Prejudice .................................................................................................................... 31

# TABLE OF AUTHORITIES

*Cases*

*Aguayo v. U.S. Bank,*
   653 F.3d 912 (9th Cir. 2011) ............................................................................................... 10, 14

*Akopyan v. Wells Fargo Home Mortg., Inc.,*
   215 Cal. App. 4th 120 (2013) .................................................................................................. 13

*Anderson Nat. Bank v. Luckett,*
   321 U.S. 233 (1944) .................................................................................................................. 5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................................. 3

*Ass'n of Banks in Ins., Inc. v. Duryee,*
   270 F.3d 397 (6th Cir. 2001) .................................................................................................. 12

*Ayres v. Ocwen Loan Servicing, LLC,*
   129 F. Supp. 3d 249 (D. Md. 2015) ....................................................................................... 27

*Bank of Am. v. City & Cty. of San Francisco,*
   309 F.3d 551 (9th Cir. 2002) .................................................................................................. 14

*Bank of Am., N.A. v. Lusnak,*
   2018 WL 4006331 (U.S. Nov. 19, 2018) ............................................................................... 16

*Baptista v. JPMorgan Chase Bank, N.A.,*
   640 F.3d 1194 (11th Cir. 2011) .............................................................................................. 13

*Barnett Bank of Marion County, N.A. v. Nelson,*
   517 U.S. 25 (1996) ........................................................................................................... passim

*Bd. of Governors of the Fed. Res. Sys. v. Dimension Fin. Corp.,*
   474 U.S. 361 (1986) ................................................................................................................ 18

*Beca v. City of Baltimore,*
   279 Md. 177 (1977) ................................................................................................................ 23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................................. 3

*Boardley v. Household Fin. Corp. III,*
   39 F. Supp. 3d 689 (D. Md. 2014) ......................................................................................... 27

*Brethren Mut. Ins. Co. v. Buckley,*
   437 Md. 332 (2014) ................................................................................................................ 23

*Brooks v. Mortg. Inv'rs Corp.*,
2014 WL 105477 (D. Md. Jan. 8, 2014) ................................................................. 28

*Bruesewitz v. Wyeth LLC*,
562 U.S. 223 (2011) ................................................................................................... 4

*Cal. Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987) ................................................................................................... 8

*Casero v. Chicago Title Ins. Co.*,
744 F. App'x 821 (4th Cir. 2018) .............................................................................. 3

*Cf. Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) ..................................................................................... 9

*Chamber of Commerce of the U.S. v. Whiting*,
563 U.S. 582 (2011) ................................................................................................... 6

*Cuomo v. Clearing House Ass'n, L.L.C.*,
557 U.S. 519 (2009) ................................................................................................... 9

*CX Reinsurance Co. v. Leader Realty Co.*,
219 F. Supp. 3d 542 (D. Md. 2016) ......................................................................... 31

*Decohen v. Capital One, N.A.*,
703 F.3d 216 (4th Cir. 2012) ................................................................................... 14

*Dennis v. City of Rockville*,
286 Md. 184 (1979) .................................................................................................. 23

*Design & Funding, Inc. v. Betz Garage, Inc.*,
292 Md. 265 (1981) .................................................................................................. 23

*Diamond v. Chase Bank*,
2011 WL 3667282 (D. Md. Aug. 19, 2011) ........................................................... 31

*Dole v. United Steelworkers of Am.*,
494 U.S. 26 (1990) ................................................................................................... 18

*Downey v. Wells Fargo Bank, N.A.*,
2014 WL 3510510 (D. Mass. July 11, 2014) .......................................................... 13

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990) ................................................................................................ 4, 7

*Epps v. JP Morgan Chase Bank, N.A.*,
675 F.3d 315 (4th Cir. 2012) ............................................................................ passim

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ................................................................................................. 18

*First Nat. Bank of San Jose v. California*,
　262 U.S. 366 (1923) ........................................................................................ 11

*First Nat'l Bank in Plant City v. Dickinson*,
　396 U.S. 122 (1969) .......................................................................................... 8

*First Nat'l Bank in St. Louis v. Missouri*,
　263 U.S. 640 (1924) .......................................................................................... 9

*First Nat'l Bank v. Missouri*,
　263 U.S. 640 (1924) ..................................................................................... 7, 11

*Flagg v. Yonkers Sav. & Loan Ass'n, FA*,
　307 F. Supp. 2d 565 (S.D.N.Y. 2004) ........................................................... 24

*Flagg v. Yonkers Sav. & Loan Ass'n, FA*,
　396 F.3d 178 (2d Cir. 2005) ........................................................................... 24

*Franklin Nat. Bank of Franklin Square v. New York*,
　347 U.S. 373 (1954) ................................................................................... 12, 13

*Gen. Motors Corp. v. Abrams*,
　897 F.2d 34 (2d Cir. 1990) ............................................................................... 4

*Goodman v. PraxAir, Inc.*,
　494 F.3d 458 (4th Cir. 2007) .......................................................................... 31

*Gordon v. Kohl's Dep't Stores, Inc.*,
　172 F. Supp. 3d 840 (E.D. Pa. 2016) ............................................................. 13

*Gutierrez v. Wells Fargo Bank, NA*,
　704 F.3d 712 (9th Cir. 2012) ..................................................................... 10, 13

*Harrison v. Westinghouse Savannah River Co.*,
　176 F.3d 776 (4th Cir. 1999) .......................................................................... 29

*Healy v. BWW L. Group, LLC*,
　2017 WL 281997 (D. Md. Jan. 23, 2017) ...................................................... 28

*Hebbeler v. First Mariner Bank*,
　2018 WL 3818855 (D. Md. Aug. 10, 2018) .................................................... 28

*Hill v. Hampstead Lester Morton Court Partners, LP*,
　2013 WL 1314393 (D. Md. Mar. 28, 2013) .................................................... 31

*Hoang v. Georgetown Contractors, Inc.*,
　2010 WL 4485729 (D. Md. Nov. 9, 2010) ...................................................... 25

*Hymes v. Bank of Am., N.A.*,
  Case No. 18-CV-2352 (RRM) (ARL), 2019 U.S. Dist. LEXIS 172107
  (E.D.N.Y. Sep. 30, 2019) ................................................................................ passim

*In re TD Bank, N.A.*,
  150 F. Supp. 3d 593 (D.S.C. 2015) .................................................................. 10, 13

*Jones v. Koons Auto., Inc.*,
  752 F. Supp. 2d 670 (D. Md. 2010) ........................................................................ 25

*Lloyd v. Gen. Motors Corp.*,
  916 A.2d 257 (Md. 2007) ........................................................................................ 30

*Luna v. Harris*,
  888 F.2d 949 (2d Cir. 1989) ...................................................................................... 8

*Lusnak v. Bank of America, N.A.*,
  883 F.3d 1185 (9th Cir. 2018) ......................................................................... passim

*Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp.*,
  439 U.S. 299 (1978) ................................................................................................... 9

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ................................................................................................. 19

*McClellan v. Chipman*,
  164 U.S. 347 (1896) ................................................................................................... 5

*Meyer v. Vantium Capital, Inc.*,
  2014 WL 4267626 (D. Md. Aug. 27, 2014) ............................................................ 28

*Monroe Retail Inc. v. RBS Citizens, N.A.*,
  589 F.3d 274 (6th Cir. 2009) ................................................................................... 12

*MTBR LLC v. D.R. Horton, Inc.*,
  2008 WL 3906768 (D. Md. Aug. 22, 2008) ............................................................ 25

*National Bank v. Commonwealth*,
  76 U.S. 353 (1869) ..................................................................................................... 5

*National City Bank of Indiana v. Turnbaugh*,
  463 F.3d 325 (4th Cir. 2006) ................................................................................... 14

*Neal v. Pentagon Fed. Credit Union*,
  2018 WL 5786119 (D. Md. Nov. 5, 2018) .............................................................. 30

*New Mexico v. Capital One Bank (USA) N.A.*,
  980 F. Supp. 2d 1314 (D.N.M. 2013) ..................................................................... 13

*Parks v. MBNA Am. Bank, N.A.*,
  54 Cal. 4th 376 (2012) .................................................................................................. 13

*Powell v. Huntington Nat'l Bank*,
  226 F. Supp. 3d 625 (S.D.W. Va. 2016) ...................................................................... 13

*RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*,
  640 F.Supp.2d 660 (D. Md. 2009) ................................................................................ 25

*Rice v. Norman Williams Co.*,
  458 U.S. 654 (1982) ....................................................................................................... 6

*Rose v. Chase Bank USA, N.A.*,
  513 F.3d 1032 (9th Cir. 2008) ...................................................................................... 13

*Sacco v. Bank of Am., N.A.*,
  2012 WL 6566681 (W.D.N.C. Dec. 17, 2012) ............................................................ 18

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ........................................................................................... 6, 15, 18

*Smith v. Wells Fargo Bank, N.A.*,
  158 F. Supp. 3d 91 (D. Conn. 2016) ............................................................................ 13

*SPGGC, LLC v. Ayotte*,
  488 F.3d 525 (1st Cir. 2007) ........................................................................................ 13

*Stewart v. Bierman*,
  859 F. Supp. 2d 754 (D. Md. 2012) .............................................................................. 27

*Swedish Civil Aviation Admin. v. Project Management Enterprises*,
  190 F. Supp. 2d 785 (D. Md. 2002) .............................................................................. 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................................ 3

*U.S. Bank Nat. Ass'n v. Schipper*,
  812 F. Supp. 2d 963 (S.D. Iowa 2011) ......................................................................... 13

*Utility Line Servs., Inc. v. Washington Gas Light Co.*,
  2013 WL 3465211 (D. Md. July 9, 2013) .................................................................... 26

*Washington Home Remodelers, Inc. v. State, Office of Attorney Gen., Consumer Prot. Div.*,
  45 A.3d 208 (Md. 2012) ................................................................................................ 26

*Watters v. Wachovia Bank, N.A.*,
  550 U.S. 1 (2007) ............................................................................................... 7, 11, 14

*Wells Fargo Bank of Texas NA v. James*,
  321 F.3d 488 (5th Cir. 2003) ........................................................................................ 14

*Windesheim v. Larocca,*
    116 A.3d 954 (Md. 2015) ........................................................................................... 30

*Wright v. Commercial and Sav. Bank,*
    297 Md. 148 (1983) .................................................................................................... 23

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ............................................................................................ passim

**Statutes**

12 U.S.C. § 24 ................................................................................................................... 10

12 U.S.C. § 25 ............................................................................................................ passim

12 U.S.C. § 371(a) ........................................................................................................... 10

15 U.S.C. § 1602 ................................................................................................... 8, 20, 21

15 U.S.C. § 1639d(g)(3) ............................................................................................ passim

15 U.S.C § 25b(b)(3)(B) .................................................................................................... 6

Md. Code Cts. & Jud. Proc. § 5–101 .............................................................................. 30

Md. Com. Law Code § 12 ......................................................................................... passim

Md. Com. Law Code § 13 ................................................................................................ 26

**Other Authorities**

John D. Hawke, Jr., Comptroller of the Currency, 23 OCC Q.J. 69 (Sept. 2004) ........ 15

H.R. Rep. No. 111-94 ................................................................................................... 7, 20

**Rules**

Fed.R.Civ.P. 8(c) .............................................................................................................. 31

Fed R.Civ P. 12(b)(6) ...................................................................................................... 31

**Regulations**

76 Fed. Reg. 557 .............................................................................................................. 17

78 Fed. Reg. 4 .................................................................................................................. 20

12 C.F.R. § 34.4 .................................................................................................... 17, 18, 21

## **INTRODUCTION**

Bank of America, N.A. ("BofA"), like many mortgage lenders, regularly requires borrowers to maintain escrow accounts to cover payments for property taxes and insurance on mortgaged properties. It collects the funds from borrowers in advance, holds the funds in escrow accounts, and then directly pays property taxes and insurance premiums when they become due. Because the funds paid into an escrow account remain the borrower's money until actually paid out, Maryland requires lenders to pay interest on the escrowed funds. *See generally* Md. Com. Law Code § 12-109. The statute provides in relevant part:

> A lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property and creates or is the assignee of an escrow account in connection with that loan shall pay interest to the borrower on the funds in the escrow account at an annual rate not less than the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as published by the Federal Reserve in "Selected Interest Rates (Daily) -- H.15", as of the first business day of the calendar year.

Md. Com. Law Code § 12-109(b)(1). BofA does not dispute that it is a "lending institution" for purposes of the statute. Nor does BofA dispute that the accounts at issue in this case are "escrow account[s]" for purpose of § 12-109. Nor does BofA dispute that other national banks, including its direct competitors, dutifully comply with § 12-109 and other similar state escrow interest statutes. Nevertheless, Plaintiff Cynthia Clark ("Clark" or "Plaintiff") alleges—and BofA does not deny—that BofA refuses to comply with § 12-109.

BofA contends it need not follow § 12-109 solely because the National Banking Act of 1864 (the "NBA") and regulations promulgated pursuant to it by the Office of the Comptroller of Currency ("OCC") preempt such statutes. BofA is incorrect, as a federal court of appeals recently confirmed. *See Lusnak v. Bank of America, N.A.*, 883 F.3d 1185 (9th Cir. 2018) *rehearing en banc denied* No. 14-56755 (9th Cir. May 16, 2018) (Dkt. No. 52), cert denied 139 S. Ct. 567. In its well-

reasoned opinion, the Ninth Circuit analyzed a nearly identical California escrow interest statute under the applicable preemption standard set forth in *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996)—a standard that has been codified by Congress in the Dodd-Frank Wall Street Protection Act of 2010 (the "Dodd-Frank Act"), *see* 12 U.S.C. § 25b—and held that the state escrow interest statute did not "prevent or significantly interfere with the national bank's exercise of its powers," and was therefore not preempted. *Lusnak*, 883 F.3d at 1194. The Eastern District of New York recently followed *Lusnak*, holding that New York's state escrow interest law likewise was not preempted as it did not prevent or significantly interfere with national banking powers. *Hymes v. Bank of Am., N.A.,* No. 18-CV-2352 (RRM) (ARL), 2019 U.S. Dist. LEXIS 172107, at *46-59 (E.D.N.Y. Sep. 30, 2019).

BofA rejects the *Lusnak* and *Hymes* courts' conclusion, but offers little to support its contention that paying interest accruing on a borrower's own funds "prevents or significantly interferes" with a specific power granted to national banks by the NBA, certainly nothing that should persuade this Court. Because the *Lusnak* and *Hymes* courts correctly held that state escrow interest statutes are not preempted, this Court should similarly deny BofA's motion.

## FACTUAL BACKGROUND

Plaintiff purchased a house in Westminster, Maryland in or about August 1995, financing the purchase with a loan from BofA's predecessor-in-interest, Washington Mortgage Company. Complaint ¶ 27. On or about February 13, 2013, Plaintiff entered into a mortgage agreement in the form of a deed of trust (the "Deed of Trust"), pursuant to which BofA took a security interest in her home. *Id*. ¶ 28. Not only is there no provision in the Deed of Trust that permits BofA to withhold interest accrued on escrow funds, the Deed of Trust expressly states that BofA will pay interest on escrowed funds if "[a]pplicable [l]aw requires interest to be paid on the Funds." *Id*. ¶

2

29. And Maryland law explicitly requires lenders to pay interest on funds placed in escrow accounts. *Id.* ¶¶ 21-23 (citing Md. Com. Law Code § 12-109).

Since 2013, Plaintiff has continuously made monthly mortgage payments to BofA, a portion of which has been placed in the escrow account. *Id.* ¶ 31. Yet, despite requirements in the Deed of Trust and applicable Maryland law, BofA has failed to pay interest on the funds Plaintiff placed in escrow. *Id.* ¶ 32. BofA likewise systematically refuses to pay interest on funds held in escrow accounts of members of the Class. *Id.* ¶¶ 20, 26. Instead, BofA profited off the funds held in escrow by generating float income, which BofA retained for itself. *Id.* ¶¶ 19, 33.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). All reasonable inferences from well-pleaded facts must be drawn in the pleader's favor. *Casero v. Chicago Title Ins. Co.*, 744 F. App'x 821, 822 (4th Cir. 2018). If, when so construed, the combined allegations plead enough facts to nudge the claim across the line from conceivable to plausible, the case should not be dismissed. *Twombly*, 550 U.S. at 570.

## ARGUMENT

**I.     State Escrow Interest Statutes Are Not Preempted By Federal Law.**

There are "two cornerstones" of preemption jurisprudence: "First, the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)

(internal quotes omitted). "[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). Second, courts normally assume that the State's historic police powers are not preempted "unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565.

BofA carries the burden of proving its preemption defense. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof."). And there can be no doubt there is no presumption *in favor* of preemption here, as BofA seems to incorrectly imply. Indeed, far from it, "[w]here, as here, we are confronted with state consumer protection laws, 'a field traditionally regulated by the states, **compelling evidence** of an intention to preempt is required.'" *Lusnak*, 883 F.3d at 1191 (quoting *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990) (emphasis added)). Accordingly, because this case involves state regulation of consumer credit, BofA must affirmatively demonstrate that Congress intended to preclude states from enforcing their escrow interest laws. *Id*. This BofA cannot do.

A.  State Law Is Only Preempted If It "*Prevents* Or *Significantly Interferes* With The Exercise By The National Bank Of Its Powers."

In 1996, the Supreme Court examined whether a Florida statute that prohibited national banks from selling most types of insurance was preempted by a federal statute that expressly permitted national banks to sell insurance in small towns. *See Barnett Bank*, 517 U.S. at 28. The Court began its analysis by acknowledging the "question is basically one of congressional intent." *Id*. at 30. The Court explained how that intent can be determined:

> Sometimes courts, when facing the pre-emption question, find language in the federal statute that reveals an explicit congressional intent to pre-empt state law. More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. A federal statute, for example, may

4

create a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Alternatively, federal law may be in "irreconcilable conflict" with state law. Compliance with both statutes, for example, may be a "physical impossibility," or, the state law may "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 31 (citations omitted). The Court found an "irreconcilable conflict" between the two statutes because the "federal statute authorizes banks to engage in activities that the State Statute expressly forbids." *Id.* Because "Congress would not want States to forbid or impair *significantly*, the exercise of a power that Congress explicitly granted," the Court inferred that Congress had intended to preempt Florida's statute. *Id.* at 33 (emphasis added). Importantly, however, the Court emphasized that states are not "deprive[d] . . . of the power to regulate national banks, where . . . doing so does not ***prevent*** or ***significantly interfere*** with the national bank's exercise of its powers." *Id.* (emphasis added).[1]

Congress subsequently codified this preemption standard in 2010 when it enacted the Dodd-Frank Act, which reaffirmed that the *Barnett Bank* standard for preemption applies to determine whether state consumer financial laws are preempted by the NBA. *See* 12 U.S.C. § 25b(b)(1)(B).[2] Congress also clarified that the OCC's preemption determinations are only entitled

---

[1] *See, e.g., Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 247-52 (1944) ("This Court has often pointed out that national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions. . . . It has never been suggested that non-discriminatory [state] laws [administrating abandoned deposit accounts] of this type are *so burdensome* as to be inapplicable to the accounts of depositors in national banks." (emphasis added)); *McClellan v. Chipman*, 164 U.S. 347, 358 (1896) (application to national banks of state statute forbidding certain real estate transfers by insolvent transferees would not "destro[y] or hampe[r]" national banks' functions); *National Bank v. Commonwealth*, 76 U.S. 353, 362 (1869) (national banks subject to state law that does not "interfere with, or impair [national banks'] efficiency in performing the functions by which they are designed to serve [the Federal] Government").

[2] Dodd-Frank also permits a state consumer financial law to be preempted where (1) its application has a "discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State," or (2) the consumer financial law is expressly preempted by a provision

to *Skidmore* deference. *See* 12 U.S.C. § 25b(b)(5)(A); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (explaining that an agency's views are "entitled to respect" only to the extent that they have the "power to persuade"). These Dodd-Frank provisions were not an "actual change in the law," but "merely codified existing law as set forth by the Supreme Court." *Lusnak*, 883 F.3d at 1192; *see also Hymes*, 2019 U.S. Dist. LEXIS 172107, at *24 (holding 12 U.S.C. 25b(b) codified *Barnett Bank*).[3]

    B.    <u>State Escrow Interest Statutes Like § 12-109 Do Not Prevent Or Significantly Interfere With BofA's Powers.</u>

    Under both *Barnett Bank* and Dodd-Frank, the operative question is whether a state law requiring BofA to pay borrowers a minimum level of interest on sums held in escrow—interest accruing on the borrowers' own money—***prevents*** or ***significantly interferes*** with BofA's exercise of its national bank powers. "[A] high threshold must be met if a state law is to be pre-empted for conflicting with the purposes of a federal act." *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011). Preemption should only be found where federal and state law stand in "irreconcilable conflict." *Barnett Bank*, 517 U.S. at 31; *see also Rice v. Norman Williams Co.*, 458 U.S. 654, 659, 664 (1982) (prohibiting courts from "seeking out conflicts between state and federal regulation where none *clearly* exists" (emphasis added)). Such a conflict may exist where compliance with both state and federal law is impossible, or where "the state law . . . stand[s] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress."

---

of federal law other than title 62 of the Revised Statutes. *See* 12 U.S.C. § 25(b)(1)(A) & (C). Neither applies here.

[3] The only actual change in preemption law made by Dodd-Frank is that it requires the OCC to follow specific procedures in making any preemption determination. *See* 12 U.S.C. § 25b(b)(1)(B) (requiring the OCC to make any preemption determination on a "case-by-case basis"); § 25b(b)(3)(B) (requiring the OCC to consult the Bureau of Consumer Financial Protection when making a preemption determination).

*Barnett Bank*, 517 U.S. at 31. As said in *Hymes*, "in view of the purposes and objectives of Congress expressed in both the NBA and Dodd-Frank, the Court concludes that [a state escrow interest statutes] is not—and has never been—such an obstacle." 2019 U.S. Dist. LEXIS 172107 at *59. "Minor interference with federal objectives is not enough." *Lusnak*, 883 F.3d at 1194.[4]

Congress defines the scope of federal banking authority, *First Nat'l Bank v. Missouri*, 263 U.S. 640, 656 (1924), and "when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English*, 496 U.S. at 79. Whatever uncertainty that might have previously existed as to the congressional intent regarding the applicability of state escrow interest laws like § 12-109 to national banks was eliminated in 2010 when Congress enacted Title XIV of the Dodd-Frank Act. Title XIV was designed "to correct abusive and deceptive lending practices that contributed to the mortgage crisis, specifically with regard to the administration of escrow accounts for property taxes and insurance." *Lusnak*, 883 F.3d at 1189 (citing H.R. Rep. No. 111-94, at 53-56).

As part of Title XIV, Congress enacted 15 U.S.C. § 1639d(g)(3), which provides: "***If prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law***." 15 U.S.C. § 1639d(g)(3) (emphasis added). If Congress believed that state escrow interest statutes significantly interfered with national banks' powers, it would have exempted national banks. But Congress chose not to. *See* 15 U.S.C. § 1602(g) (defining "creditor" broadly to include national banks); *see also Hymes*,

---

[4] *See also Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) ("[F]ederal control shields national banking from *unduly* burdensome and duplicative state regulation." (emphasis added)); *id.* at 12 ("[W]hen state prescriptions *significantly* impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." (emphasis added)).

2019 U.S. Dist. LEXIS 172107, at *37-38 (rejecting argument that Congress intended to exempt national banks).

Congress's enactment of Section 1639d(g)(3) removed any lingering doubt that enforcement of state escrow interest laws is fully consistent with (and not in conflict with) national banks' powers *as Congress intends those powers*. Certainly, no compelling showing can be made that Congress intended for § 12-109 to be preempted when the language of Dodd-Frank confirms the exact opposite. *See Lusnak*, 883 F.3d at 1194-95; *Hymes*, 2019 U.S. Dist. LEXIS 172107, at *14-15; *see also Barnett Bank*, 517 U.S. at 34 (decisions finding NBA preemption do not "control the interpretation of federal banking statutes that accompany a grant of an explicit power with an explicit statement that the exercise of that power is subject to state law"); *First Nat'l Bank in Plant City v. Dickinson*, 396 U.S. 122, 130-31 (1969) (no preemption of state banking law where Congress made national banks subject to applicable state law in the substantive area).[5] Thus, enforcing § 12-109 against BofA in Maryland neither frustrates nor "significantly interfere[s] with the national bank's exercise of its powers," as those powers are intended by Congress. *Barnett Bank*, 517 U.S. at 33.

C.    BofA's Arguments Are Not Persuasive.

A substantial portion of BofA's brief essentially ignores the 2010 enactment of Section 1693d(g)(3). BofA offers various authorities discussing the general powers of national banks and

---

[5] *See also Wyeth*, 555 U.S. at 575 ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [may be] between them."); *Cal. Coastal Comm'n v. Granite Rock Co*., 480 U.S. 572, 583-84 (1987) (no preemption of state permit requirement for mining in national forest given that Forest Service regulations "expressly contemplate coincident compliance with state law as well as federal law"); *Luna v. Harris*, 888 F.2d 949, 953 (2d Cir. 1989) (no preemption of New York law setting conditions on patients' ability to take methadone home where relevant federal regulations provided that state law applied).

how the OCC historically interpreted those powers, but none of them change the fact that it is the intent of *Congress* that controls the analysis. BofA identifies no authority for the proposition that Congress's specific, expressed intention can be somehow trumped by a conflicting interpretation from the OCC. Despite clear statutory language expressing Congress's view that BofA can comply with state escrow interest statutes without compromising its intended federal powers, BofA provides several arguments why § 12-109 is nevertheless preempted. None are persuasive.

      *1.  States have enforced their banking laws against national banks for at least 85 years.*

BofA's overarching argument is that national banks are "ordinarily" preempted from state law because requiring national banks to comply with differing state-law requirements would run afoul of Congress's intent "to facilitate . . . a national banking system." Br. at 5 (quoting *Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 315 (1978)). In essence, BofA contends there is a presumption in favor of preemption. This is categorically wrong. "States . . . have always enforced their general laws against national banks—and have enforced their banking-related laws against national banks for at least 85 years." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 534 (2009).[6]

BofA nevertheless contends that by requiring it to pay escrow interest, § 12-109 improperly interferes with its authority under the NBA to set the "terms and conditions of mortgage loans." Br. at 6. According to BofA, a court examining preemption must "first identify the *specific* banking powers at issue" and then analyze whether the state law at issue prevents or substantially interferes with that power. Br. at 6 (emphasis added). BofA asserts that § 12-109 substantially interferes with three such "specific banking powers": (1) BofA's authority to "make, arrange, purchase or sell

---

[6] *Cf. Aguayo v. U.S. Bank*, 653 F.3d 912, 921 (9th Cir. 2011) ("*[F]ull field* preemption effectively gives the court a presumption of preemption."). The NBA is not entitled to such field preemption. *See* 12 U.S.C. § 25b; *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 656 (1924).

loans," 12 U.S.C. § 371(a); (2) BofA's "incidental powers" to carry out "the business of banking," 12 U.S.C. § 24 (Seventh); and (3) BofA's implicit power to provide "escrow services," which is derived from the first two powers. Br. at 7. BofA incorrectly argues that § 12-109 "strip[s] national banks of the power to decide whether, and how much, interest to pay on escrow accounts," thereby increasing lending costs and risks, and requiring national banks to charge borrowers higher interest rates and fees. Br. at 10.

As a threshold matter, the three supposed "powers" identified by BofA are anything but "specific." According to BofA, Congress has granted it the "specific power" to lend money, and therefore any state regulation that in *any way* affects a national bank's lending decisions (e.g., costs, risks, profitability) is preempted. If BofA were correct, national banks would effectively be immune from all state law (e.g., zoning, building requirements, utility regulation) because every regulation imposes a cost, which affects the bank's profitability and, therefore, rates. This is *not* the law, as even BofA's own authorities recognize.[7] The NBA is not entitled to such *field preemption*. *See Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 323 (4th Cir. 2012) ("Neither do we find field preemption applicable, as the NBA and OCC regulations do not 'occupy the field.'"); *First Nat'l Bank*, 263 U.S. at 656. *See also Epps*, 675 F.3d at 324 (state law requiring

---

[7] *See, e.g., Gutierrez v. Wells Fargo Bank, NA,* 704 F.3d 712, 727 (9th Cir. 2012) ("Although Wells Fargo insists that a state law prohibiting misleading statements necessarily touches on 'checking accounts,' such an expansive interpretation—with no limiting principle—'would swallow all laws.'" (quoting *Aguayo v. U.S. Bank*, 653 F.3d 912, 925 (9th Cir. 2011) (declining national bank's invitation to interpret the term "lending operations" expansively because "every action by the bank, due to the nature of its business, affects its ability to attract, manage, and disburse capital, and could be said to 'affect' its lending operations")); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 617 (D.S.C. 2015) (state law challenge to bank's practice of assessing overdraft fees despite sufficient funds being available not preempted because requiring bank to refrain from such a practice was only an "incidental impairment" that did not "prevent or significantly interfere with" TD Bank's exercise of its federally conferred banking powers, and did not stand as an obstacle to the accomplishment of the full purposes and objectives of Congress or the OCC).

post-repossession notice not preempted because although it is "related" to extension of credit, it does not obstruct, impair or condition national bank's federally authorized power to extend credit).

Rather, "[s]tates are permitted to regulate the activities of national banks where doing so does not *prevent or significantly interfere* with the national bank's or the national bank regulator's exercise of its powers." *Watters,* 550 U.S. at 12 (emphasis added). Section 12-109 does not *prevent* or *significantly interfere* with BofA issuing loans or requiring escrow accounts. It merely sets a minimum level of interest to be paid on escrowed funds—interest accruing on the borrowers' owns funds. Countless factors play a role in a lender's pricing calculations, including a borrower's financial status, geographic location, and overhead costs. Escrow costs—to the extent being required to refund a portion of the interest accruing on someone else's money can fairly be considered a "cost"—are just one factor. It does not "*prevent*" or "*substantially* interfere" with BofA's business. The mere fact that other national banks, including BofA's mortgage-lending competitors, comply with state escrow interest statutes undermines BofA's position.

Notably, *Barnett Bank* cautioned that a state-federal conflict of law must be "irreconcilable" to justify preemption. *Barnett Bank*, 517 U.S. at 31. In *Barnett Bank*, as in many of the authorities discussed therein, a state statute ran head on into a specific power granted to the national bank. *See, e.g., First Nat. Bank of San Jose v. California*, 262 U.S. 366, 368-69 (1923) (national bank's power to receive deposits preempted state escheat law that limited that power). Here, there is no such state statute preventing or inhibiting escrow accounts. Section 12-109 merely requires that if BofA chooses to use escrow accounts, it must pay a minimum level of interest.

   *2. BofA's authorities are inapposite.*

BofA cites *Monroe Retail Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009), for the proposition that the "level of 'interference' that gives rise to preemption under the NBA is

not very high." Br. at 9. But BofA reads *Monroe Retail* out of context. In finding that a state garnishment law significantly impaired national banks' functions, the divided Sixth Circuit panel merely rejected the argument that "significantly interfere" under *Barnett Bank* means to "effectively thwart" because it would render "prevent" in the "prevent or significantly interfere" standard redundant. *Monroe Retail Inc.*, 589 F.3d at 283 (citing *Ass'n of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 409 (6th Cir. 2001)). Plaintiff does not contend that *Barnett Bank* requires the state law to "thwart" federal law, but it must still "significantly interfere" with it. And § 12-109 does not.

BofA's reliance on *Franklin Nat. Bank of Franklin Square v. New York*, 347 U.S. 373, 375-79 (1954), likewise misses the mark. In that case, a federal statute granted national banks the right to receive savings deposits, but a state statute prohibited them from using the word "savings" in advertisements (so as to "foster" and favor the development of state-chartered savings banks). The Supreme Court found that the state statute prevented national banks from seeking business that they were specifically authorized by Congress to conduct. *Id*. at 377-78 (rejecting any "interpretation that would permit a national bank to engage in a business" without the "right to let the public know about it," absent congressional indication to the contrary).

The state law advertising ban at issue in *Franklin* prevented or significantly interfered with the lender's business because how could a lender sell a service to the public—as Congress specifically authorized it to do—if the lender could not "let the public know" about it? In contrast, § 12-109 does not prevent or significantly inhibit BofA from lending or requiring escrow accounts. It merely provides that if BofA chooses to hold borrowers' funds in escrow, it must pay to the borrower interest accruing on such funds. Additionally, unlike in *Franklin*, Congress has expressly indicated its view here that compliance with the state escrow interest statute does not significantly

interfere with national banks' powers, as those powers are intended by Congress. *See* 15 U.S.C. § 1639d(g)(3).

BofA provides a string citation to cases in which courts have supposedly found that the NBA "preempts state laws that purport to restrict national banks' authority to set the terms for their products and services." Br. at 11-12.[8] At best, the cases stand for the unremarkable proposition that the NBA authorizes national banks to exercise "incidental powers," and that *absent a contrary expression from Congress*, OCC regulations will generally preempt conflicting state law. None of BofA's cases involved a situation like here where Congress has expressly indicated that national banks should comply with the specific type of state regulation, thereby demonstrating that Congress does not consider the type of regulation to significantly interfere with national banks' powers as they are intended by Congress. *See* 15 U.S.C. § 1639d(g)(3). And, notably, many of BofA's authorities predate Dodd-Frank and applied the wrong, overly deferential *Chevron*

---

[8] *See Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 (11th Cir. 2011) (state statute prohibiting check cashing fees preempted by OCC regulation specifically authorizing them); *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 532 (1st Cir. 2007) (state law prohibiting expiration dates and administrative fees on gift cards preempted by OCC regulation requiring national banks to disclose expiration date and administrative fee); *Gordon v. Kohl's Dep't Stores, Inc.*, 172 F. Supp. 3d 840, 865 (E.D. Pa. 2016) (state law claims related to "payment protection plan" preempted by OCC regulation); *New Mexico v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1314, 1322 (D.N.M. 2013) (similar); *U.S. Bank Nat. Ass'n v. Schipper*, 812 F. Supp. 2d 963 (S.D. Iowa 2011) (state regulation of ATM network intermediaries preempted by OCC regulation); *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d at 723 (state law challenge to "high to low" transaction posting and overdraft fees preempted by OCC regulation); *Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal. App. 4th 120, 153, 155 Cal. Rptr. 3d 245, 268 (2013) (similar); *Powell v. Huntington Nat'l Bank*, 226 F. Supp. 3d 625, 640 (S.D.W. Va. 2016) (similar); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 609 (D.S.C. 2015) (similar); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032 (9th Cir. 2008) (state law requiring lenders to disclose fees on convenience checks preempted by OCC regulation allowing national banks to make non-real estate loans "without regard to state law limitations concerning … disclosure and advertising"); *Parks v. MBNA Am. Bank, N.A.*, 54 Cal. 4th 376, 387, 278 P.3d 1193, 1200 (2012) (similar); *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 105 (D. Conn. 2016) (state law requiring lender to itemize certain amounts on statements preempted by OCC regulation); *Downey v. Wells Fargo Bank, N.A.*, No. CIV.A. 12-11340-DJC, 2014 WL 3510510, at *6 (D. Mass. July 11, 2014) (similar).

standard. *See, e.g., National City Bank of Indiana v. Turnbaugh*, 463 F.3d 325, 333 (4th Cir. 2006) ("Accordingly, we find that the federal [OCC] regulations at issue are reasonable interpretations of the NBA and are entitled to *Chevron* deference.").[9]

BofA argues that if national banks are required to comply with states' various escrow interest requirements, the "cumulative effect" will prevent national banks from operating under "'uniform, consistent and predictable'" standards, which will be "'costly and burdensome.'" Br. at 10-11 (quoting *National City Bank of Indiana*, 463 F.3d at 333). "But, as the Supreme Court has stated, national banks 'are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA.'" *Decohen v. Capital One, N.A.*, 703 F.3d 216, 226 (4th Cir. 2012) (quoting *Watters*, 550 U.S. at 11). For instance, national banks must already follow state usury laws, their contracts are already governed by state laws, and their acquisition and transfer of property are based on state law. *Id.* (citing *Watters*, 550 U.S. at 11). National banks are also already subject to notice requirements of state laws. *Id.* (citing *Epps*, 675 F.3d at 318; *Aguayo*, 653 at 915). Surely, § 12-109 will not burden BofA "any more than the state laws it presumably already complies with." *Id.* The Fourth Circuit has expressed "little sympathy" for national banks complaining about the need to "examine [the laws] of all fifty states," because that is "exactly what national banks already do." *Id.*

Moreover, the "undiscriminating nature" of § 12-109 "undermines a central purpose of the federal preemption doctrine." *Id.* (citing Statement of John D. Hawke, Jr., Comptroller of the

---

[9] *See also Wells Fargo Bank of Texas NA v. James*, 321 F.3d 488, 493 (5th Cir. 2003) (state statute prohibiting check cashing fees preempted because absent an indication from Congress regarding whether national banks are empowered to charge check-cashing fees regulations, *Chevron* requires courts to defer to OCC's interpretation); *Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551 (9th Cir. 2002) (municipal ordinance prohibiting banks from charging ATM fees to non-depositors preempted by OCC regulation because courts should give "great weight to any reasonable construction" from OCC).

Currency, 23 OCC Q.J. 69 (Sept. 2004); *Epps*, 675 F.3d at 315). In other words, the fact that § 12-109 does not treat national banks differently from other lenders cautions against preemption.

       3.   *BofA identifies no basis to depart from* Lusnak*.*

     Notably, BofA presented many of these same arguments and authorities to the Ninth Circuit in *Lusnak* and to the Eastern District of New York in *Hymes.* Both were unimpressed, holding that the California and New York state escrow interest statutes at issue in those cases did not "prevent or significantly interfere with the national bank's exercise of its powers," as required to establish a preemption defense. *Lusnak*, 883 F.3d at 1194; *see also Hymes*, 2019 U.S. Dist. LEXIS 172107, at *26. BofA calls *Lusnak* an "outlier" that reached an "erroneous conclusion." Br. at 12. But other than stating in a conclusory fashion that the Ninth Circuit "disregarded . . . settled law" by failing to "address[] in any meaningful way the specific federal powers at issue" and "analyzing how the state law . . . affects those powers," BofA offers no basis to depart from *Lusnak*. Br. at 12.  *Hymes* further undermines BofA's assertion that *Lusnak* is an outlier.

     BofA also cites an amicus brief filed by the OCC in support of its unsuccessful *en banc* petition in *Lusnak*. *Id*. But, again, the OCC's preemption determinations are only entitled to deference to the extent that it followed the required procedures, 12 U.S.C. § 25b(b)(1)(B), and its reasoning is persuasive. *See* 12 U.S.C. § 25b(b)(5)(A); *Skidmore*, 323 U.S. at 140. Here, the OCC's conclusions are not persuasive because they ignore that Congress has indicated that state escrow interest statutes do not significantly interfere with national banks' powers, as those powers were intended by Congress. Indeed, the OCC's amicus brief failed to persuade even a single judge in the Ninth Circuit to request a vote to rehear the matter. *See Lusnak*, Case No. 14-56755 (9th Cir. May 16, 2018) (Dkt. No. 52). Not surprisingly, the U.S. Supreme Court denied certiorari. *Bank of Am., N.A. v. Lusnak*, 139 S. Ct. 567 (2018).

BofA attempts to bolster its reliance on the OCC's amicus brief in *Lusnak* with citation to a recent Supreme Court case, *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), arguing that the *Lusnak* amicus brief constitutes the kind of "fair and considered judgment" to which courts should defer. However, BofA misunderstands *Kisor*. As the Court explained in that case, "we presume that Congress intended for courts to defer to agencies when they interpret their own ambiguous rules . . . . *[b]ut when the reasons for that presumption do not apply, or countervailing reasons outweigh them, courts should not give deference to an agency's reading, except to the extent it has the 'power to persuade.' " Id.* at 2414 (emphasis added). The Court goes on to state that no deference is due where the agency's interpretation does not "in some way implicate its substantive expertise." *Id.* at 2417.

The *Lusnak* amicus brief consists, nearly entirely, of the agency's analysis of relevant case law, the interpretation of which is not within the OCC's expertise. The passing reference in the *Lusnak* amicus brief to OCC's "supervisory judgment" and "litigation experience" cited by BofA does not bring the interpretation of relevant case law inside the OCC's substantive expertise. Indeed, the Ninth Circuit, in denying the rehearing supported by the *Lusnak* amicus brief, implicitly found that the OCC's arguments did not merit deference and the Supreme Court did not grant cert to review that decision. *See Lusnak*, 9th Cir. No. 14-56755, Dkt. No. 52 (May 16, 2018). Further, in *Hymes*, the Eastern District of New York explicitly found that the *Lusnak* amicus brief was not entitled to deference because it did not implicate the OCC's substantive expertise. *Hymes*, 2019 U.S. Dist. LEXIS 172107, at \*44-46. This Court should hold similarly.

4.  *OCC regulations do not control preemption determination.*

BofA's reliance on OCC regulations is likewise misplaced. BofA points to 12 C.F.R. § 34.4, which provides that "[a] national bank may make real estate loans . . . without regard to state

law limitations concerning . . . escrow accounts." 12 C.F.R. § 34.4(a)(6). As a threshold matter, it is far from clear that a statute requiring lenders to credit interest accruing on a borrower's own funds can be fairly considered a "state law limitation[]." Nor has the OCC complied with Dodd-Frank's procedural requirements.[10] Moreover, BofA fails to consider the savings clause at 12 C.F.R. § 34.4(b) and, in particular, the fact that federal law now makes state laws governing escrow-interest payments applicable to national banks pursuant to 12 C.F.R. § 34.4(b)(9) (state laws are not preempted where they are "made applicable by Federal law"). Congress clearly expressed its intent in 2010 that national banks should comply with state escrow interest laws and that such laws are not inconsistent with national banks' powers.

As the *Lusnak* court correctly noted, the OCC's regulation is entitled to "little, if any, deference." *Lusnak*, 883 F.3d at 1193. *See also Hymes*, 2019 U.S. Dist. LEXIS 172107, at *26 (same). In *Wyeth*, the Supreme Court noted that when Congress has not authorized an agency to preempt state law directly, the Court "ha[s] not deferred to an agency's *conclusion* that state law is preempted." 555 U.S. at 576 (emphasis added). Rather, it "ha[s] attended to an agency's explanation of how state law affects the regulatory scheme" based on the agency's "unique understanding of the statutes [it] administer[s] and [its] attendant ability to make informed determinations about how state requirements may pose an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 576–77 (citations omitted). And

---

[10] BofA argues that because 12 C.F.R. § 34.4 was already in effect prior to the enactment of Dodd-Frank, it is not subject to the case-by-case requirement of § 25b(b)(1)(B). Br. at 14 n.3. But, as the commentary BofA cites makes clear, the case-by-case requirement is applicable for all determinations made after the enactment of Dodd-Frank. *See* 76 Fed. Reg. at 43,557 and n.52. BofA also argues, confusingly, that there is no case-by-case requirement here because 12 U.S.C. § 25(b)(1)(C) does not require it. Br. at 14, n.3. But subsection (C) has nothing to do with the preemption analysis here. Rather, only subsection (B) is applicable, which specifically requires a case-by-case analysis.

the weight to be accorded an agency's explanation of a state law's impact on a federal scheme "depends on its thoroughness, consistency, and persuasiveness." *Id*. at 577; *see Skidmore*, 323 U.S. at 140. In other words, "[t]he Supreme Court … has indicated that regulations of this kind should receive, at most, *Skidmore* deference— and even then, only as to a conflict analysis, and not as to the *legal conclusion* on preemption." *Lusnak*, 883 F.3d at 1192 (emphasis in original).[11]

BofA cites *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982), for the proposition that federal regulations have the same preemptive effect as federal statutes. Br. at 13. But that does not mean that the OCC can issue regulations or governing interpretations that conflict with the expressed intent of Congress. Congress's intent controls, and the extent of the regulators' authority is necessarily constrained by congressional intent. *See Bd. of Governors of the Fed. Res. Sys. v. Dimension Fin. Corp*., 474 U.S. 361, 368 (1986) ("The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress."); *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 42-43 (1990) (deference to interpretation of act by Office of Management and Budget foreclosed where interpretation was inconsistent with clear congressional intent). Here, the OCC's interpretation is not persuasive because it is contrary to the clearly expressed intent of Congress.

## II.   Dodd-Frank Does Affect The Preemption Analysis.

A.   <u>By Enacting § 1639d(g)(3), Congress Explicitly Expressed Its View That State Escrow Interest Laws Are Not Preempted.</u>

The lynchpin of conflict preemption analysis is congressional intent and the controlling

---

[11] *See Sacco v. Bank of Am., N.A*., No. 5:12-CV-00006-RLV, 2012 WL 6566681, at *8 (W.D.N.C. Dec. 17, 2012) ("[T]o deem as preempted under 12 C.F.R. § 34.4 any state regulation of a means utilized by the bank to pursue its right to recover a debt – at least absent an additional determination by the OCC or Congress pursuant to section 34.4(b)(9) – would essentially be to substitute the *Barnett Bank* directive with a more wide-ranging preemption standard.").

question is whether the state law a plaintiff seeks to enforce substantially interferes with the defendant's federal powers as Congress intends those powers. By enacting 15 U.S.C. § 1639d(g)(3), Congress made clear that it views the application of state escrow statutes as being consistent with, and not in conflict with, national banks' exercise of their powers, erasing any uncertainty that may have existed previously. BofA nevertheless contends that § 1639d(g)(3) does not affect the preemption analysis because it "does not expressly require national banks to comply with state escrow laws." Br. at 15-16. Instead, according to BofA, § 1639d(g)(3) only requires lenders to comply with "applicable" state laws, and § 12-109 is not "applicable" because it is preempted.

BofA's argument—that § 12-109 is preempted because § 1639d(g)(3) does not "appl[y]" to it because § 12-109 is preempted—is entirely circular. It also renders § 1639d(g)(3) a legal nullity because, if all state escrow interest statutes are preempted as BofA contends, then there are no "applicable" state escrow interest statutes, and § 1639d(g)(3) would never apply to anything and thus is wholly unnecessary. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 392-93 (2013) ("Under this most basic of interpretative canons, . . . [a] statute should be constructed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citations and internal quotation marks omitted)). As the Ninth Circuit noted in *Lusnak*, the inclusion of "applicable" in § 1639d(g)(3) "makes sense" because "not all states have escrow interest laws" and thus, Congress was simply "refer[ring] to state escrow interest laws

*where they exist.*" *Id*. (emphasis added).[12] *Lusnak*, 883 F.3d at 1195.[13] Further, by requiring lenders to pay interest "in the manner as prescribed by" the relevant state law, "Congress demonstrated an awareness of, and intent to address, the differences among state escrow interest laws." *Lusnak*, 883 F.3d at 1195.

Indeed, even if Congress included "applicable" because it believed that a different state escrow interest law—not § 12-109—could apply and require a national bank to pay out interest on consumer escrow accounts, that, alone, conclusively demonstrates that such payments do not "significantly interfere" with a national bank's powers. *See also Hymes*, 2019 U.S. Dist. LEXIS 172107, at *36 (rejecting BofA's "ill-fitting reading of 'applicable'" to suggest that it was intended to exempt national banks). In short, BofA's position strains the plain meaning of the statutory language, which unambiguously commands that "each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. § 1639d(g)(3).

BofA argues that § 1639d(g)(3) is irrelevant because it does not specifically "mention national banks, the NBA, or preemption." Br. at 18-19. But Section 1639d(g)(3) need not specifically mention national banks, the National Bank Act, or preemption for it to apply. Indeed, the statute clearly says that "each *creditor*" shall pay interest, and Congress specifically defined "creditor" to include national banks. *See* 15 U.S.C. § 1602(g). If Congress wanted to exclude

---

[12] The relevant legislative history also supports this conclusion. *See* H.R. Rep. No. 111-94 at 91 ("Servicers must administer such accounts in accordance with the Real Estate Settlement Procedures Act (RESPA), [Flood Disaster Protection Act], and, *if applicable*, the law of the State where the real property securing the transaction is located, including making interest payments on the escrow account *if required under such laws*.") (emphasis added).

[13] *See* Consumer Financial Protection Bureau, *Escrow Requirements Under the Truth in Lending Act*, 78 Fed. Reg. 4,726, 4,745 (Jan. 22, 2013) ("Under some State regulations, creditors are not required to pay interest on consumers' funds held in escrow.").

national banks from § 1639d(g)(3), it could have done so explicitly, but chose not to.

BofA alternatively contends that Congress "could have expressly identified laws like § 12-109 as being among the state laws 'preserved' as applied to national banks" in Subtitle D of the Dodd-Frank Act ("Preservation of State Law") and 12 U.S.C. §25b ("State law preemption standards for national banks and subsidiaries clarified"), but did not do so. Br. at 19. Similarly, BofA asserts that Congress's failure to mention the NBA or preemption in § 1639d(g)(3) supports preemption. But these arguments just repackage BofA's same flawed presumption of preemption arguments. *See, e.g., Wyeth*, 555 U.S. at 602-03 (noting that "pre-emption jurisprudence explicitly rejects the notion that mere congressional silence on a particular issue may be read as pre-empting state law"). As explained above, Dodd-Frank codified the *Barnett Bank* preemption standard for national banks, directing courts to analyze whether state statutes are preempted with reference to that standard. It is irrelevant that the NBA does not specifically reference state laws like § 12-109, just as it does not specifically reference numerous other state laws that are not preempted.

Nor is it relevant that § 1639d(g)(3) appears in the Truth in Lending Act ("TILA") rather than the NBA. Indeed, it is unsurprising that § 1639d(g)(3) was inserted into the TILA, as the TILA governs consumer credit transactions, including home loans. *See* 15 U.S.C. § 1602(dd)(5). This does not in any way alter or limit § 1639d(g)(3)'s application to each "creditor," as defined by 15 U.S.C. § 1602(g). In fact, 12 C.F.R. § 34.4(b)(9) provides that state laws "made applicable by Federal Law" are not preempted, regardless of where the federal law in question is codified.

B. <u>Whether Plaintiff's Escrow Account Is "Subject To" Section 1639d Is Irrelevant To Whether § 12-109 Is Preempted By Federal Law.</u>

BofA next argues that § 12-109 is preempted because Plaintiff does not allege that her escrow account is "subject to" § 1639d(g)(3). Br. at 22-23. But Plaintiff's escrow account need not be "subject to" § 1639d(g)(3) for the language in that statutory provision to be relevant to the

preemption inquiry. That is, the language in §1639d(g)(3) is helpful in demonstrating long-standing congressional intent that requiring national banks to comply with state escrow interest statutes does not "substantially interfere" with the banks federal powers *as Congress intends those powers. See Wyeth*, 555 U.S. at 565 ("the purpose of Congress is the ultimate touchstone in every pre-emption case"). In other words, by enacting § 1639d(g)(3), Congress made clear that it views the application of state escrow statutes as being *consistent with*, and not in conflict with, national banks' exercise of their powers.

The Ninth Circuit has already explicitly and correctly endorsed this principle. Though the Ninth Circuit found that "Lusnak's escrow account was not a federally mandated account 'subject to' section 1639d," it nonetheless concluded that California's mortgage interest law was not preempted because § 1639d(g)(3)'s language "requiring banks to pay interest on escrow account balances '[i]f prescribed by applicable State [] law' expresses Congress's view that such laws would not necessarily prevent or significantly interfere with a national bank's operations." *Lusnak*, 883 F.3d at 1194-95, 1197. The Eastern District of New York then followed suit in *Hymes*. 2019 U.S. Dist. LEXIS 172107, at *46. In short, whether Plaintiff has stated a § 1639d(g)(3) claim is beside the point. The language in § 1639d(g)(3) reflects Congress's view that the application of state escrow statutes is consistent with, and not in conflict with, national banks' exercise of their powers. As such, § 12-109 is not preempted and BofA's argument should be rejected.

## III.     Plaintiff Properly Pleads State Law Claims.

### A.     Plaintiff States A Claim For Breach Of Contract.

BofA's breach of contract arguments all rest on the same flawed premise that § 12-109 is preempted, and for the reasons stated above, fail accordingly. Because § 12-109 is not preempted,

it is part of the agreement. It is a long-standing and "familiar principle of [Maryland] law that subsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms." *Design & Funding, Inc. v. Betz Garage, Inc*., 292 Md. 265, 276 (1981) (citing *Beca v. City of Baltimore*, 279 Md. 177, 182, 367 A.2d 478, 481 (1977); *Dennis v. City of Rockville*, 286 Md. 184, 406 A.2d 284 (1979)). The Maryland Court of Appeals has "long held that 'parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident.'" *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 344, 86 A.3d 665, 671 (2014) (citing *Wright v. Commercial and Sav. Bank*, 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983)).

Here, Plaintiff states a breach of contract claim because she and BofA entered into a Deed of Trust under which BofA was required to comply with all applicable Maryland and federal laws. As the Motion references, the Deed of Trust specifically defines "Applicable Law" as "all *controlling applicable* federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final non-appealable judicial opinions." Doc. 14-1 at 33 (emphasis added); Complaint ¶ 30. Section 3 of the Deed of Trust specifies that interest be paid on escrowed funds because "Applicable Law requires interest to be paid on the Funds." Complaint ¶ 29; Doc. 14-4. Section 3 is more specific than the general choice of law provision BofA cites (section 16 of the Deed of Trust) because it directly addresses the requirement to comply with Maryland's escrow interest law.[14] With BofA stripped of its preemption argument that "controlling applicable" law cannot include § 12-109, Plaintiff plausibly

---

[14] Section 16 of the Deed of Trust even contains a conflict provision providing that the definition of Applicable Law controls. Doc. 14-4 at 12.

alleges that BofA breached Section 3 by not complying with § 12-109, which, by operation of Maryland law, must be read into the agreement and requires interest on Plaintiff's escrowed funds.

BofA's authority arguing otherwise is unavailing. BofA cites *Epps*, 675 F.3d at 328, for the proposition that a party *is only* bound by an explicit reference to a specific statute. Br. at 24. But *Epps* does not say that. Rather, in *Epps*, the party was bound to a specific state law where there was an explicit reference to it, but that does not conflict with the above-cited Maryland law. *Epps*, 675 F.3d at 328.

BofA next cites *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178 (2d Cir. 2005), for the proposition that "'[g]eneral choice of law provisions' . . . are insufficient to 'incorporate particular law as contract terms.'" Br. at 25 (quoting *Flagg,* 396 F.3d at 186 ). But *Flagg* is distinguishable on several grounds. As a threshold matter, *Flagg* applied New York, not Maryland contract law. *Flagg* also involved regulations promulgated pursuant to the Home Owners' Loan Act, which "occupy the field" and are subject to broader field preemption. *See Lusnak*, 883 F.3d at 1196. Moreover, *Flagg* did not have the benefit of Congress's expression of intent that now exists in 15 U.S.C. § 1639d(g)(3). Lastly, the *Flagg* decision turned on a principle of New York law that "[s]tate laws that become terms of the agreement between the contracting parties are enforceable by a breach of contract action, unless federal law has specifically preempted the breach of contract action as well." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 307 F. Supp. 2d 565, 583 (S.D.N.Y. 2004), *aff'd*, 396 F.3d 178 (2d Cir. 2005). However, the court found that a general choice-of-law clause "does not have the specificity required as a matter of law to incorporate ***otherwise preempted state statutes*** into the mortgage agreement, particularly when the Supremacy Clause implications are taken into account." *Id*. at 584 (emphasis added). By contrast, here, because § 12-109 is not preempted. *Flagg* is inapposite. *See also Hymes*, 2019 U.S. Dist. LEXIS

24

172107, at \*26 (agreeing that *Flagg* does not apply).

With no valid basis to argue either that Plaintiff's claims are preempted, or that the Deed of Trust does not incorporate § 12-109, there is no basis to dismiss Plaintiff's breach of contract claim. *See Hymes*, 2019 U.S. Dist. LEXIS 172107, at \*60 ("Because [the state escrow interest law] is not preempted, and the Bank has offered no other legal reason to doubt that it therefore governs the mortgage agreements at issue, the Bank's motions to dismiss these claims are denied.")

B.   Plaintiff States A Claim For Unjust Enrichment.

BofA next contends that Plaintiff's unjust enrichment claim should be dismissed because the parties' obligations are governed by a written contract. Br. at 26. As a threshold matter, the Federal Rules of Civil Procedure permit Plaintiff to plead inconsistent theories in the alternative. *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 688 (D. Md. 2010) (citing *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 666 (D. Md. 2009) (declining to dismiss unjust enrichment claim pled in the alternative where contract terms remained in dispute)); *MTBR LLC v. D.R. Horton, Inc.*, No. RDB-07-3363, 2008 WL 3906768, at \*12 (D. Md. Aug. 22, 2008) (declining to dismiss quasi-contractual claim where parties did not agree that there was a valid agreement covering same subject matter)).

More fundamentally, while the existence of a contract generally bars recovery based on the quasi-contract theory of unjust enrichment, a claim for unjust enrichment may proceed where the defendant challenges whether a contract covers a particular subject matter. "Although a party may not recover under both a theory for breach of contract and unjust enrichment, a plaintiff 'is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute.'" *Hoang v. Georgetown Contractors, Inc.*, No. 08:10-CV-2117-AW, 2010 WL 4485729, at \*3 (D. Md. Nov. 9, 2010) (quoting *Swedish Civil Aviation Admin. v.*

*Project Management Enterprises,* 190 F. Supp. 2d 785, 792 (D. Md. 2002)). "The parties disagree as to their respective contractual liability, and as such, Plaintiff is not precluded from asserting quasi-contract claims in the alternative." *Utility Line Servs., Inc. v. Washington Gas Light Co.,* No. PWG-12-3438, 2013 WL 3465211, at *3 (D. Md. July 9, 2013).

Here, the parties dispute whether the agreement permits BofA to keep interest accruing on Plaintiff's escrow funds despite § 12-109. Additionally, Plaintiff alleges that BofA is unjustly enriched when it generates "float income" off escrowed funds, distinct from the interest owed to her creating a plausible independent basis for this claim to proceed. *See* Complaint ¶¶ 82-86. BofA is therefore not entitled to dismissal of Plaintiff's unjust enrichment claims at this early stage.

C. <u>Plaintiff States A Claim For Violation Of The Maryland Consumer Protection Act.</u>

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair, abusive, or deceptive trade practice[s]" with respect to "[t]he extension of consumer credit." Md. Code Com. Law § 13–303(4). "Unfair, abusive, or deceptive trade practices include any . . . [f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers . . . [or f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code Com. Law § 13–301(1) and (3). "[A]ny person may bring an action to recover for injury or loss . . . as the result of a practice prohibited by this [Act]." Md. Code Com. Law § 13–408(a).

The MCPA "constitutes remedial legislation that is intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers." *Washington Home Remodelers, Inc. v. State, Office of Attorney Gen., Consumer Prot. Div.,* 45 A.3d 208, 219 (Md. 2012). A claim under the MCPA must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Ayres v.*

*Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)).

BofA contends that it made no misrepresentations. Br. at 27-28. Not so. As one of the largest financial institutions in the world, BofA was well-aware that it was obligated to pay interest on funds in Plaintiff's escrow account. Complaint ¶¶ 25, 70. Yet, by its own admission, BofA sent Plaintiff a written notice falsely stating that it was *not* required to pay interest:

> The federal law and the regulations that Bank of America and its subsidiaries are subject to do not require the payment of interest on escrow accounts. Accordingly, you will not receive interest on your escrow account even if your state has a law concerning the payment of interest on escrow accounts.

ECF No. 14-5. This appears to be a form notice that BofA sent to mortgagors. *Id.*; ECF No. 14-3 ¶ 5(b). Plaintiff, who is not an attorney, had no reason to doubt the accuracy of these representations, no reason to believe that BofA's statement was false, and thus no basis to know that BofA was depriving her and members of the putative class of interest on the amounts they paid into BofA escrow accounts to which they were lawfully entitled.[15]

This misrepresentation compounded BofA's separate misrepresentation to Plaintiff in the Deed of Trust that BofA would pay interest on the amounts in Plaintiff's escrow account if "Applicable Law requires interest to be paid on the Funds." ECF No. 14-4 ¶ 3; Complaint ¶¶ 29-30. BofA argues that this particular misrepresentation is not actionable under the MCPA because it appears in the Deed of Trust and, therefore, should constitute a contract claim and not a tort claim. Br. at 28. However, a misrepresentation in a contract can form the basis of an MCPA claim

---

[15] Intentional misrepresentations regarding a mortgage borrower's rights can constitute a violation of the MCPA. *See, e.g., Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 707, 714-15 (D. Md. 2014) (refusing to dismiss MCPA claim alleging that defendants made misrepresentations regarding plaintiffs' right to participate in a foreclosure avoidance and mitigation program pursuant to a class action settlement).

where, as alleged in the Complaint, the defendant never intended to comply with its promise. *See* Complaint ¶ 70; *Meyer v. Vantium Capital, Inc.*, No. WDQ-14-00032, 2014 WL 4267626, at *6 (D. Md. Aug. 27, 2014) (promise to act with the present intent not to so act constitutes a violation of MCPA); *Brooks v. Mortg. Inv'rs Corp.*, No. WDQ-13-1566, 2014 WL 105477, at *5-6 (D. Md. Jan. 8, 2014) (denying motion to dismiss MCPA claim predicated on false promise).[16]

BofA's scheme to retain escrow interest that it was required to pay mortgagors was further facilitated through BofA's practice of sending periodic account statements to mortgagors that misstated the actual amounts owed to BofA by the mortgagors. Complaint ¶¶ 71-74. BofA is well-aware that these statements list inflated amounts of indebtedness that are not offset by the interest BofA owes the mortgagors. *Id.* As a result of these misrepresentations, Plaintiff has been paying BofA *more* than required. Such over-billing, by itself, constitutes a violation of the MCPA. *See, e.g., Healy v. BWW L. Group, LLC*, No. PWG-15-3688, 2017 WL 281997, at *4-5 (D. Md. Jan. 23, 2017) (misrepresentation about amount owed on mortgage resulting in overpayment constitutes a violation of the MCPA).

Nevertheless, BofA argues that there is nothing false or misleading about these account statements because they accurately reflect that no interest was paid to Plaintiff. Br. at 28. BofA further argues that there is no federal or state requirement that account statements must affirmatively state that no interest was paid. *Id.* at 28 n.5. These arguments miss the point. Plaintiff does not allege that the statements were false or misleading because they failed to notify her that she was not being paid interest on escrowed funds. Rather, Plaintiff alleges that the statements

---

[16] BofA's reliance on *Hebbeler v. First Mariner Bank*, No. ELH-17-3641, 2018 WL 3818855, at *7 (D. Md. Aug. 10, 2018), is misplaced, because *Hebbeler* is readily distinguishable. There, the plaintiff failed to allege any misrepresentation and the issue of the harm resulting from the alleged MCPA violation, a wrongful foreclosure, turned solely on whether an event of default occurred. *Id.*

were false and misleading because they inaccurately reflected the actual amounts owed by Plaintiff, which were lower than indicated, because BofA failed to credit Plaintiff for the interest she was owed. BofA certainly does not argue that it has no obligation to provide accurate account statements to its customers. Here, it is alleged that BofA intentionally provided Plaintiff with inaccurate statements to conceal the amounts owed by BofA to Plaintiff and to retain those amounts for itself. Complaint ¶¶ 71-74.

BofA further argues that Plaintiff has failed to sufficiently identify the false and misleading account statements at issue under Fed. R. Civ. P. 9(b). Br. at 28. But the pleading requirements of Rule 9(b) are meant to "ensure[] that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of," to "protect defendants from frivolous suits," to "eliminate fraud actions in which all the facts are learned after discovery," and to "protect[] defendants from harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). None of these concerns are implicated here. BofA has sufficient notice of its alleged unlawful conduct.

It is not one particular account statement that is false or misleading. Rather, *all* statements received by Plaintiff are false and misleading because *none* reflects the true amount of her indebtedness. BofA does not dispute that it sent statements to Plaintiff. Indeed, BofA has access to Plaintiff's account records (since BOA generated these records) and acutely knows its policy is not to pay interest on escrow accounts and to tell its customers that it is not obligated to do so. "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

But for BofA's misrepresentations, Plaintiff would not have paid the amounts she has

actually paid each month on her mortgage. Plaintiff paid *more* than she was supposed to pay to BofA. Those *overpayments* were a result of BofA's false and misleading representations, including, inaccurate account statements that overstated Plaintiff's mortgage obligations. Moreover, those overpayments, which consist of the interest that BofA never paid Plaintiff, constitute damages resulting from Plaintiff's reliance on BofA's misrepresentations.[17]

Finally, Plaintiff's MCPA claim is timely under Md. Code Cts. & Jud. Proc. § 5–101. BofA asserts that Plaintiff's claim is time-barred because she has been aware for over three years that BofA has not been paying interest on amounts in Plaintiff's escrow account. But again, BofA misstates the substance of Plaintiff's claim. Plaintiff does not allege that BofA concealed the fact that it was not paying interest. Rather, Plaintiff alleges that BofA engaged in a deceptive scheme to conceal its obligation to pay interest in order to unlawfully retain amounts owed to Plaintiff. Plaintiff also alleges that BofA concealed the true amounts owed by Plaintiff, causing her to overpay on her mortgage payments. Maryland has adopted the "discovery rule" that provides that the accrual of a cause of action is tolled until the claimant in fact knows or reasonably should know of the wrong committed. *See Windesheim v. Larocca*, 116 A.3d 954, 962–63 (Md. 2015). Plaintiff only recently discovered the scope of BofA's deceptive conduct.

In any event, the statute of limitations could not possibly have expired with regard to interest accrued in the three years immediately preceding the filing of the suit. Nor could it have expired with regard to interest that has accrued since the suit was filed, because BofA continues to

---

[17] Cases cited by BofA to the contrary are inapposite. In *Neal v. Pentagon Fed. Credit Union,* No. ELH-18-451, 2018 WL 5786119, at *24 (D. Md. Nov. 5, 2018), the plaintiff suffered ho harm where funds were applied to his actual debts, which were not overstated. In *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007), where a motion to dismiss MCPA claims was denied, the plaintiff adequately alleged that he would not have purchased his car had he known that the defendant concealed dangerous design defects.

refuse to pay interest. Thus, at most, BofA's statute of limitations defense limits damages, but does not prevent the cause of action altogether. *See Hill v. Hampstead Lester Morton Court Partners, LP*, No. CIV. CCB-12-539, 2013 WL 1314393, at *3 (D. Md. Mar. 28, 2013), *vacated in part on other grounds*, 581 F. App'x 178 (4th Cir. 2014) (citations and internal quotation marks omitted; modification in original) ("The statute of limitations is an affirmative defense that may be decided on a motion to dismiss only in the relatively rare circumstances where facts sufficient to rule on [the] affirmative defense are alleged in the complaint."); *Diamond v. Chase Bank*, No. CIV.A. DKC 11-0907, 2011 WL 3667282, at *2 (D. Md. Aug. 19, 2011) ("The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c) and is not usually an appropriate ground for dismissal.").[18] For this reason alone, BofA's motion to dismiss should be denied.[19]

D.   <u>Plaintiff Respectfully Requests That The Court Dismiss Its TILA Claim Without Prejudice</u>

Plaintiff does not oppose dismissal of Count V without prejudice.

DATED: October 18, 2019                 Respectfully submitted,

/s/ *Hassan Zavareei*
Hassan A. Zavareei
Anna C. Haac
Katherine M. Aizpuru
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

---

[18] "Normally, an affirmative defense such as statute of limitations or laches must be raised by a defendant, who bears the burden of establishing the defense . . .Consequently, a motion to dismiss under Rule 12(b)(6) is ordinarily not the proper vehicle for testing the validity of an affirmative defense." *CX Reinsurance Co. v. Leader Realty Co*., 219 F. Supp. 3d 542, 546 (D. Md. 2016) (citing *Goodman v. PraxAir, Inc*., 494 F.3d 458, 464 (4th Cir. 2007).

[19] To the extent the Court dismisses this or any other claim in the Complaint, in whole or in part, Plaintiff respectfully requests leave to amend her pleadings.

hzavareei@tzlegal.com
ahaac@tzlegal.com
kaizpuru@tzlegal.com

Jonathan M. Streisfeld (*pro hac vice*)
Daniel Tropin (*pro hac vice*)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone No. (954) 525-4100
Facsimile No. (954) 525-4300
streisfeld@kolawyers.com
tropin@kolawyers.com

Todd S. Garber (*pro hac vice*)
Bradley F. Silverman (*pro hac vice*
forthcoming)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
455 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 908-6709
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
**GOLDENBERG SCHNEIDER, L.P.A.**
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202-3604
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com