**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CYNTHIA CLARK, individually and on behalf of
all others similarly situated,

      Plaintiffs,

      v.

BANK OF AMERICA, N.A.,

      Defendant.

Civil Case No.: SAG-18-cv-3672

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO CERTIFY**
**THE COURT'S FEBRUARY 24, 2020 ORDER FOR INTERLOCUTORY APPEAL**
**AND TO STAY FURTHER PROCEEDINGS PENDING INTERLOCUTORY APPEAL**

David L. Permut (Bar # 15111)
GOODWIN PROCTER LLP
1900 N Street NW
Washington, D.C. 20036
T: (202) 346-4000
DPermut@goodwinlaw.com

Mark W. Mosier (admitted *pro hac vice*)
Andrew Soukup  (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
T: (202) 662-6000
mmosier@cov.com
asoukup@cov.com

*Attorneys for Defendant Bank of America, N.A.*

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 4

I.     This Court Should Certify An Interlocutory Appeal. ........................................... 4

     A.    The Order Involves a Controlling Question of Law. ............................... 5

     B.    There Is a Substantial Ground for Difference of Opinion Regarding Federal Preemption of State Laws Like Section 12-109. ....................... 5

          1.    There Is Substantial Ground for Difference of Opinion on the Ultimate Conclusion that Federal Law Does Not Preempt Section 12-109. ........................................................................... 6

          2.    There Is Substantial Ground for Difference of Opinion on the Proper Interpretation of *Barnett Bank*'s "Significantly Interferes" Test. ................................................................................ 8

          3.    There Is Substantial Ground for Difference of Opinion on the Validity of the OCC's Regulations. .......................................... 13

          4.    There Is Substantial Ground for Difference of Opinion on Whether Dodd-Frank Affects the Preemption Analysis. ....................... 17

     C.    An Immediate Appeal May Materially Advance Termination of the Litigation. ............................................................................................... 20

II.    This Court Should Stay All Proceedings In This Court Pending The Second Circuit's Decision. .............................................................................................. 22

CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akopyan v. Wells Fargo Home Mortg., Inc.*,
    215 Cal. App. 4th 120 (2013) ...............................................................................12

*Am. Bankers Ass'n v. Lockyer*,
    239 F. Supp. 2d 1000 (E.D. Cal. 2002)...............................................................9, 10

*In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*,
    958 F. Supp. 1045 (D. Md. 1997) .........................................................................22

*Assoc. of Banks in Ins., Inc. v. Duryee*,
    270 F.3d 397 (6th Cir. 2001) .......................................................................9, 10, 13

*Bank One, Utah v. Guttau*,
    190 F.3d 844 (8th Cir. 1999) ...............................................................................17

*Baptista v. JPMorgan Chase Bank, N.A.*,
    640 F.3d 1194 (11th Cir. 2011) ...........................................................................12

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
    517 U.S. 25 (1996)...................................................................................... *passim*

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
    321 B.R. 147 (D.N.J. 2005) ...................................................................................6

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003)...................................................................................................21

*Campbell v. Specialized Loan Serv., LLC*,
    2014 WL 280492 (D.N.H. Jan. 23, 2014)..............................................................16

*Cline v. Hawke*,
    51 Fed. App'x 392 (4th Cir. 2002) ................................................................14, 15

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) .................................................................................6

*District of Columbia v. Trump*,
    344 F. Supp. 3d 828 (D. Md. 2018).......................................................................22

*Downey v. Wells Fargo Bank, N.A.*,
    2014 WL 3510510 (D. Mass. July 11, 2014)...................................................12, 16

*Epps v. JP Morgan Chase Bank, N.A.*,
  675 F.3d 315 (4th Cir. 2012) ................................................................5

*Fasano v. Fed. Reserve Bank of N.Y.*,
  457 F.3d 274 (3d Cir. 2006)..................................................................5

*Franklin National Bank of Franklin Square v. New York*,
  347 U.S. 373 (1954)......................................................................10, 11

*Gilmore v. Jones*,
  2019 WL 4417490 (W.D. Va. Sept. 16, 2019) .....................................8

*Goodman v. Archbishop Curley High School, Inc.*,
  195 F. Supp. 3d 767 (D. Md. 2016) ..................................................6, 9

*Gutierrez v. Wells Fargo Bank, N.A.*,
  704 F.3d 712 (9th Cir. 2012) ..............................................................12

*Hymes v. Bank of Am.*,
  408 F. Supp. 3d 171 (E.D.N.Y. 2019) .............................................8, 19

*Indep. Bankers Ass'n of Am. v. Heimann*,
  613 F.2d 1164 (D.C. Cir. 1979) ..........................................................16

*Insurance Comm'r of P.R. v. Doral Ins. Agency, Inc.*,
  2006 WL 3196472 (D.P.R. Nov. 2, 2006) ...........................................14

*Int'l Refugee Assist. Project v. Trump*,
  323 F. Supp. 3d 726 (D. Md. 2018) .....................................................22

*Int'l Refugee Assist. Project v. Trump*,
  404 F. Supp. 3d 946 (D. Md. 2019) ........................................6, 22, 23

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974) (en banc).................................................20

*Kennedy v. Villa St. Catherine, Inc.*,
  2010 WL 9009364 (D. Md. June 16, 2010)............................................6

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990)....................................................................5

*L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*,
  2018 WL 1640589 (E.D.N.Y. Apr. 5, 2018) ........................................24

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) .............................................................24

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
　921 F. Supp. 2d 1059 (D. Haw. 2013) ....................................................................5

*Hawaii ex rel. Louis v. HSBC Bank Nev., N.A.*,
　761 F.3d 1027 (9th Cir. 2014) ................................................................................4

*Lusnak v. Bank of Am.*,
　2014 WL 6779131 (C.D. Cal. Oct. 29, 2014) ....................................................7, 19

*Lusnak v. Bank of Am., N.A.*,
　883 F.3d 1185 (9th Cir. 2018) ..............................................................................19

*Lynn v. Monarch Recovery Mgmt., Inc.*,
　953 F. Supp. 2d 612 (D. Md. 2013) .......................................................6, 9, 17, 20

*Martinez v. Wells Fargo Home Mortg., Inc.*,
　598 F.3d 549 (9th Cir. 2010) ................................................................................16

*Maryland v. Universal Elections, Inc.*,
　729 F.3d 370 (4th Cir. 2013) ................................................................................22

*McShannock v. JP Morgan Chase Bank N.A.*,
　2019 WL 955289 (N.D. Cal. Feb. 27, 2019) .........................................................21

*United States ex rel. Michaels v. Agape Sr. Cmty., Inc.*,
　848 F.3d 330 (4th Cir. 2017) ..................................................................................4

*Hood ex rel. Mississippi v. JP Morgan Chase & Co.*,
　737 F.3d 78 (5th Cir. 2013) ....................................................................................4

*Mohawk Inds., Inc. v. Carpenter*,
　558 U.S. 100 (2009) ............................................................................................1, 2

*Monroe Retail, Inc. v. RBS Citizens, N.A.*,
　589 F.3d 274 (6th Cir. 2009) ...................................................................10, 11, 17

*Mueller v. First Nat'l Bank of Quad Cities*,
　797 F. Supp. 656 (C.D. Ill. 1992) ...........................................................................5

*Muniz v. Winn*,
　462 F. Supp. 2d 175 (D. Mass. 2006) ..................................................................7, 8

*In re Mut. Funds Inv. Litig.*,
　2011 WL 3819608 (D. Md. Aug. 25, 2011) ..........................................................22

*Nat'l City Bank of Ind. v. Turnbaugh*,
　463 F.3d 325 (4th Cir. 2006) ................................................................................15

*Oglesby v. Delaware & Hudson Railway Co.*,
180 F.3d 458 (2d Cir. 1999) (per curiam) ...............................................................5

*Parks v. MBNA Am. Bank, N.A.*,
54 Cal. 4th 376 (2012) ...........................................................................................19

*People v. Franklin Nat'l Bank of Franklin Square*,
305 N.Y. 453 (1953) ...............................................................................................11

*Powell v. Huntington Nat'l Bank*,
2015 WL 1980491 (S.D.W. Va. May 1, 2015) ....................................................4, 15

*Powell v. Huntington Nat'l Bank*,
226 F. Supp. 3d 625 (S.D.W. Va. 2016) ..................................................................15

*Ransom v. FIA Card Servs., N.A.*,
562 U.S. 61 (2011) ..................................................................................................18

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................................................................................6

*Rose v. Chase Bank USA, N.A.*,
513 F.3d 1032 (9th Cir. 2008) .................................................................................12

*Saleh v. Titan Corp.*,
580 F.3d 1 (D.C. Cir. 2009) ......................................................................................5

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ...................................................................................13, 14, 15

*Smith v. Wells Fargo & Co.*,
2008 WL 11404524 (S.D.N.Y. Apr. 2, 2008) ..........................................................16

*Smith v. Wells Fargo Bank, N.A.*,
158 F. Supp. 3d 91 (D. Conn. 2016) .......................................................................16

*Sonoco Prods. Co. v. Physicians Health Plan, Inc.*,
338 F.3d 366 (4th Cir. 2003) ....................................................................................5

*SPGGC, LLC v. Ayotte*,
488 F.3d 525 (1st Cir. 2007) .............................................................................12, 17

*Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*,
787 F.3d 296 (5th Cir. 2015) ....................................................................................5

*Stoddard v. Pliva USA, Inc.*,
2013 WL 9675385 (E.D.N.C. Nov. 21, 2013) ...........................................................8

*Sutherland v. Ernst & Young LLP*,
856 F. Supp. 2d 638 (S.D.N.Y. 2012)....................................................................23

*In re TD Bank, N.A.*,
150 F. Supp. 3d 593 (D.S.C. 2015)................................................................10, 13

*TD Banknorth Ins. Agency, Inc. v. Kofman*,
2008 WL 2967644 (D. Me. Aug. 1, 2008)............................................................14

*Tiffany v. Nat'l Bank of Mo.*,
85 U.S. (18 Wall.) 409 (1874) ............................................................................21

*In re Trump*,
874 F.3d 948 (6th Cir. 2017) ..................................................................................6

*United States v. Georgia Pac. Corp.*,
562 F.2d 294 (4th Cir. 1977) ................................................................................22

*United States v. Kotmair*,
2006 WL 4846388 (D. Md. Nov. 29, 2006) ........................................................24

*In re Vitamins Antitrust Litig.*,
2000 WL 33142129 (D.D.C. Nov. 22, 2000) ........................................................6

*Wachovia Bank, N.A. v. Burke*,
414 F.3d 305 (2d Cir. 2005).........................................................................16, 17

*Watters v. Wachovia Bank, N.A.*,
550 U.S. 1 (2007)........................................................................................12, 21

*Weber v. United States*,
484 F.3d 154 (2d Cir. 2007)..................................................................................20

*Wells Fargo Bank of Tex., N.A. v. James*,
321 F.3d 488 (5th Cir. 2003) ........................................................................12, 17

**Statutes**

12 U.S.C. § 1......................................................................................................16

12 U.S.C. § 25b(b)(1)(B) .....................................................................................3

12 U.S.C. § 25b(b)(5)..........................................................................................15

15 U.S.C. § 1639d................................................................................................17

15 U.S.C. § 1639d(g)(3) ...........................................................................7, 18, 19

28 U.S.C. § 1292(b) ...................................................................................1, 5, 20

Cal. Civ. Code § 2954.8(a) ..................................................................................21

Conn. Gen. Stat. § 49-2a(a) ................................................................................21

Iowa Code § 524.905(2) ......................................................................................21

Mass. Gen. Laws ch. 183, § 61 ..........................................................................21

Md. Code Com. Law § 12-109 ..................................................................... *passim*

Me. Stat. tit. 9-a, § 9-305 ...................................................................................21

Minn. Stat. § 47.20, subd. 9 ................................................................................21

N.H. Rev. Stat. Ann. § 397-A:9 ..........................................................................21

Ne. Rev. Stat. Ann. § 100.091 ............................................................................21

Or. Rev. Stat. § 86.245 ........................................................................................21

R.I. Gen. Laws § 19-9-2 ......................................................................................21

Utah Code § 7-17-3 .............................................................................................21

Vt. Stat. tit. 8, § 10404 ........................................................................................21

Wis. Stat. § 138.051(5) ........................................................................................21

**Regulations**

12 C.F.R. § 34.4 ........................................................................................3, 16, 17

OCC, *Bank Activities and Operations; Real Estate Lending and Appraisals*,
    69 Fed. Reg. 1,904-01 (Jan 13, 2004) ......................................................14

OCC, *Office of Thrift Supervision Integration; Dodd-Frank Act Implementation*,
    76 Fed. Reg. 43,549-01 (July 21, 2011) ...................................................14

**Other Authorities**

1 K. Davis, *Administrative Law Treatise* (1958) ................................................16

16 Charles Alan Wright et al., *Federal Practice and Procedure*
    (3d ed. Aug. 2019 update)........................................................................4, 16

OCC Amicus Brief, *Lusnak v. Bank of Am.*,
    No. 14-56755 (filed Apr. 23, 2018), 2018 WL 3702582 .................2, 3, 7

OCC Amicus Brief, *Hymes v. Bank of Am.*,
No. 2:18-cv-02352-RRM-ARL (E.D.N.Y. filed Dec. 4, 2019) ..................................2, 3, 7, 17

State of Maryland Opinion No. 90-025,
75 Md. Op. Atty. Gen. 218, 1990 WL 595325 ..........................................................................8

## INTRODUCTION

A district court may certify an order for immediate appeal when three conditions are met: (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion" on that question of law; and (3) immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  In discussing this rule, the Supreme Court has stated that "district courts should not hesitate to certify an interlocutory appeal" when an order "involves a new legal question or is of special consequence."  *Mohawk Inds., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).  Because the Court's denial of Bank of America's motion to dismiss satisfies the § 1292(b) criteria and involves an important and new legal question, the Court should certify its ruling for interlocutory appeal.  *See* ECF No. 39 ("Order").

The Order satisfies all three criteria for an immediate appeal under § 1292(b).  *First*, it involves a "controlling question of law" because Bank of America's preemption defense involves a pure question of law that would require dismissal of all of Plaintiff's claims.  *Second*, there is "substantial ground for difference of opinion" on this question because, among other reasons, the Court decided a difficult issue of first impression in the Fourth Circuit, and it did so in a way that conflicts with the views of the Office of the Comptroller of the Currency ("OCC"), the federal agency primarily responsible for regulating national banks like Bank of America.  *Third*, an immediate appeal "may materially advance the ultimate termination of the litigation" because all of Plaintiffs' claims must be dismissed if federal law preempts Maryland's Section 12-109.

The Order is also one that the Supreme Court has said courts "should not hesitate to certify."  *Mohawk*, 558 U.S. at 111.  It involves a "new legal question," *id.*, because—as the Court acknowledged—"the Fourth Circuit has not had occasion to address" whether the National Bank Act and its implementing regulations preempt state laws purporting to require national banks to pay interest on mortgage escrow accounts.  Order at 9.  And the Order is "of special consequence."

1

*Mohawk*, 558 U.S. at 111.  In essence, the Order holds that Bank of America could be potentially liable under state law for acting in reliance on a regulation promulgated by its primary federal regulator that specifically addresses the conduct at issue.  As the OCC has acknowledged, this issue is "of fundamental importance to the national banking system," and "lies at the heart" of its duly promulgated preemption regulations that have been informed by years of supervisory experience.  OCC Amicus Br., *Lusnak v. Bank of America*, No. 14-56755 (filed Apr. 23, 2018), 2018 WL 3702582, at *1, 14; *see also* OCC Amicus Br., *Hymes v. Bank of America*, No. 2:18-cv-02352-RRM-ARL, ECF No. 65-2, at 2 (E.D.N.Y. filed Dec. 4, 2019).  Indeed, the OCC has already expressed its view that the similar ruling in *Hymes* should be certified for interlocutory appeal.  *Id.*

Before the parties engage in costly, time-consuming, and possibly unnecessary discovery, the Court should stay the case and certify the following question for immediate appeal to the Fourth Circuit:  "Whether the National Bank Act and implementing regulations preempt state laws like Md. Code Com. Law § 12-109—which purport to require payment of interest on mortgage escrow accounts—as applied to national banks."

## BACKGROUND

Plaintiff is a Bank of America mortgage customer for whom Bank of America provides mortgage escrow services.  Compl. ¶¶ 27–31.  Under her loan agreement, Plaintiff receives escrow services free of charge:  Bank of America collects funds from Plaintiff each month and uses those funds to make tax and insurance payments on her behalf.  ECF No. 32-4, § 3.  The contract is governed by federal and Maryland law.  *Id.* § 16.

Plaintiff filed this putative class action in December 2018, alleging that Bank of America violated a Maryland law providing that a "lending institution" that maintains mortgage escrow accounts must pay interest on the funds held in those accounts.  Md. Code Com. Law § 12-109(b)(1); Compl. ¶¶ 22, 26.  Plaintiff asserted claims for breach of contract; unjust enrichment;

and for violations of Section 12-109, Maryland's Consumer Protection Act, and the federal Truth in Lending Act.  Compl. ¶¶ 45–97.

Bank of America moved to dismiss all claims.  *See* ECF No. 32-1.  Bank of America's principal argument is that each claim fails because the National Bank Act preempts Section 12-109 as applied to national banks.  Section 12-109 prevents Bank of America from offering non-interest-bearing escrow accounts and significantly interferes with Bank of America's power to set the terms for its escrow accounts and to use escrow accounts as a term of credit and risk mitigant.  Section 12-109 therefore prevents Bank of America from exercising its express federal powers under the National Bank Act, in violation of applicable preemption principles.  *See* 12 U.S.C. § 25b(b)(1)(B); *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996).  The OCC's longstanding preemption regulations confirm this result, *see* 12 C.F.R. § 34.4(a), as does the OCC's position in similar cases pending in California and New York.  *See generally* OCC Amicus Br., *Lusnak v. Bank of America*, 2018 WL 3702582; OCC Amicus Br., *Hymes v. Bank of America*, No. 2:18-cv-02352-RRM-ARL, ECF No. 65-2 (E.D.N.Y.).  Because federal law preempts Section 12-109 as applied to Bank of America, any failure to credit Plaintiff's mortgage escrow account with interest is neither a violation of state law nor of the terms of Plaintiff's mortgage agreement.

The Court rejected Bank of America's preemption defense and allowed Plaintiff's state-law claims to proceed.  As the Court recognized, "the Fourth Circuit has not had occasion to address" Bank of America's preemption defense, a question that only "two other jurisdictions have considered."  Order at 9.  To resolve this novel question in the Fourth Circuit, the Court first discussed the analysis from these two jurisdiction—the Ninth Circuit and the Eastern District of New York.  *Id*. at 9–11.  The Court agreed with these prior decisions that the OCC's preemption regulation, 12 C.F.R. § 34.4, "is entitled to minimal deference."  Order at 10.  The Court then

- 3 -

interpreted the Dodd-Frank Act's provisions regulating certain mortgage escrow accounts, ulti-mately adopting an interpretation different from the Ninth Circuit's. *Id.* at 12–14 & n. 4. Finally, the Court held that Section 12-109 is not preempted under the standard articulated in *Barnett Bank* and codified in Dodd-Frank. *Id.* at 14–18. In reaching that conclusion, the Court concluded that Section 12-109 is not preempted because it does not "essentially nullif[y]," "abrogate[]," or "ham-per[] the bank's ability to exercise the relevant federal authority in any form," *id.* at 15, nor would it be "financially ruinous" for national banks to comply, *id.* at 16 n.5.

## ARGUMENT

### I.     This Court Should Certify An Interlocutory Appeal.

National Bank Act preemption issues are particularly suitable for immediate appeal. They often involve difficult questions; present "a pure, controlling question of law" that does not require the court "to delve beyond the surface of the record in order to determine the facts"; and can usually end the litigation. *Cf. United States ex rel. Michaels v. Agape Sr. Cmty., Inc.*, 848 F.3d 330, 341 (4th Cir. 2017); *see also* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed. Aug. 2019 update) ("The difficulty and general importance of the question presented, the probability of reversal, the significance of the gains from reversal, and the hardship on the parties in their particular circumstances, could all be considered."). As a result, courts routinely certify National Bank Act preemption issues for immediate appeal. *See, e.g., Hawaii ex rel. Louis v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1033–34 (9th Cir. 2014); *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 82 (5th Cir. 2013); *Powell v. Huntington Nat'l Bank*, 2015

WL 1980491, at *4 (S.D.W. Va. May 1, 2015); *Mueller v. First Nat'l Bank of Quad Cities*, 797 F. Supp. 656, 664 (C.D. Ill. 1992).[1]  This Court should do the same.

### A.    The Order Involves a Controlling Question of Law.

The first criterion—whether the Order "involves a controlling question of law," 28 U.S.C. § 1292(b)—is easily satisfied here.  The federal preemption issue presents a question of law.  *See Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) ("Whether a state law is preempted by federal law is a legal question.").[2]  And the issue is "controlling" because it can entirely dispose of the case.  *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("a question of law is 'controlling' if reversal of the district court's order would terminate the action"); *see also* Order at 4 (Bank of America's preemption defense "would apply to all of Plaintiff's claims").

### B.    There Is a Substantial Ground for Difference of Opinion Regarding Federal Preemption of State Laws Like Section 12-109.

An immediate appeal is warranted because there is a substantial ground for difference of opinion on the Court's ultimate conclusion that Section 12-109 is not preempted, and also on each step of the Court's analysis leading to that conclusion.

---

[1] The same is true of preemption questions more broadly, both within the Fourth Circuit, *e.g.*, *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 368 (4th Cir. 2003), and in other circuits, *e.g.*, *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015); *Saleh v. Titan Corp.*, 580 F.3d 1, 4 (D.C. Cir. 2009); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 279 (3d Cir. 2006); *Oglesby v. Delaware & Hudson Railway Co.*, 180 F.3d 458, 460 (2d Cir. 1999) (per curiam).

[2] *See also Spong*, 787 F.3d at 304 ("Whether federal law preempts the . . . claims certainly falls within the ambit of 28 U.S.C. § 1292(b)."); *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065–66 (D. Haw. 2013) (permitting interlocutory appeal because National Bank Act preemption raises a "pure question of law").

1.    **There Is Substantial Ground for Difference of Opinion on the Ulti-mate Conclusion that Federal Law Does Not Preempt Section 12-109.**

The Court acknowledged that the preemption question is novel in the Fourth Circuit.  *See* Order at 9.  "[W]hen a matter of first impression also ha[s] other grounds for difference of opin-ion . . . district courts in this circuit have certified the issue for interlocutory appeal."  *Goodman v. Archbishop Curley High School, Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (quoting *Kennedy v. Villa St. Catherine, Inc.*, 2010 WL 9009364, at *2 (D. Md. June 16, 2010)); *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013) (same).  Courts can find "substan-tial grounds" for disagreement if a question is both "novel and difficult."  *Int'l Refugee Assist. Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).  The preemption issue is both novel and difficult and thus worthy of interlocutory appeal.

To decide whether a question of first impression is difficult, a court should "analyze the strength of the arguments in opposition to the challenged ruling."  *In re Vitamins Antitrust Litig.*, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000).  "A substantial ground for difference of opinion exists where reasonable jurists *might* disagree on an issue's resolution, not merely where they have already disagreed."  *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017).  "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclu-sions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  In fact, courts can find a substantial ground for difference of opinion in novel cases "prin-cipally[] *because* precedent bearing on the matter is relatively thin."  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005) (emphasis added).

This requirement is satisfied here.  As the Order demonstrates, resolving the preemption question requires (i) applying *Barnett Bank*'s "prevent or significantly interfere" test for National Bank Act preemption; (2) deciding whether the OCC regulations are valid and enforceable; and (3) interpreting the Dodd-Frank provision codified at 15 U.S.C. § 1639d(g)(3).  There are substantial grounds for disagreement on the Court's analysis of each of these issues.  *See infra* pp. 8–20.

That this issue is difficult is also evidenced by the disagreement it has already generated.  The OCC—the primary regulator of national banks—has expressed the view that the National Bank Act and its regulations preempt state laws like Section 12-109.  As the OCC has explained, requiring compliance with laws like Section 12-109 "risks allowing states to impose 'costly operational and administrative burdens on national banks' lending activities,'" OCC Amicus Br., *Hymes v. Bank of America*, No. 2:18-cv-02352-RRM-ARL, ECF No. 65-2, at 10 (E.D.N.Y.), such that "a proper application of *Barnett*" requires "preemption of the [state] escrow statute," OCC Amicus Br., *Lusnak v. Bank of America*, 2018 WL 3702582, at *9.  Although this Court and two others have disagreed with the OCC, this Court made clear that it did not agree with every aspect of the analysis by these other courts.  *See, e.g.*, Order at 14 n.4 ("This Court does not go as far as the *Lusnak* panel").[3]  The different approaches taken by this Court and the Ninth Circuit reinforce that the preemption issue is difficult.

Courts have also concluded that an interlocutory appeal is warranted where they reach a decision that conflicts with the views of "the relevant administrative agency."  *Muniz v. Winn*, 462 F. Supp. 2d 175, 183–84 (D. Mass. 2006), *rev'd on other grounds sub nom. Muniz v. Sabol*, 517

---

[3] Another court—the *Lusnak* district court—concluded that the National Bank Act preempts state laws requiring payment of interest of mortgage escrow accounts. *See Lusnak v. Bank of Am.*, 2014 WL 6779131, at *3–10 (C.D. Cal. Oct. 29, 2014).  The OCC has endorsed the *Lusnak* district court's analysis.  *See* OCC Amicus Br., 2018 WL 3702582, at *15 ("[t]he district court properly applied *Barnett*").

F.3d 29 (1st Cir. 2008).  An interlocutory appeal is warranted in this circumstance, where "there exists a tangible, and presumably good faith, disagreement between certain of the district judges and" the agency.  *Id.*  That is because the administrative agency has "a legitimate and important role in interpreting and enforcing its organic statutory framework" and "both branches hav[e] co-equal powers of statutory interpretation, absent precedential guidance."  *Id.*  Even the State of Maryland has agreed that Section 12-109 "may not be applied" to federal savings associations "because the Maryland requirement has been preempted by federal law."  State of Maryland Opinion No. 90-025, 75 Md. Op. Atty. Gen. 218, 1990 WL 595325, at *1.  The Court should take the same approach here.

**2.      There Is Substantial Ground for Difference of Opinion on the Proper Interpretation of *Barnett Bank*'s "Significantly Interferes" Test.**

The Court concluded that the National Bank Act does not preempt Section 12-109 by applying *Barnett Bank* and concluding "that § 12-109 does not prevent or significantly interfere" with Bank of America's exercise of its federal banking powers.  Order at 18.  Interlocutory review of this holding is warranted based on uncertainty regarding the proper interpretation of *Barnett Bank*'s "significantly interferes" test, and because this Court's interpretation of the phrase conflicts with decisions of other courts.

*First*, as courts in this circuit recognize, "a substantial ground for difference of opinion exists if there is a 'genuine doubt as to the correct legal standard' to be applied.'"  *Gilmore v. Jones*, 2019 WL 4417490, at *4 (W.D. Va. Sept. 16, 2019); *see also Stoddard v. Pliva USA, Inc.*, 2013 WL 9675385, at *2 (E.D.N.C. Nov. 21, 2013) (similar).  Other courts have already acknowledged the uncertainty around the *Barnett Bank* standard, observing that "[t]he Supreme Court has never explained in detail" what it means for a state law to "significantly interfere[] with" the exercise of national banks' federal powers.  *Hymes v. Bank of Am.*, 408 F. Supp. 3d 171, 194

(E.D.N.Y. 2019); *see also Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1017 (E.D. Cal. 2002) ("There is, however, no authority that provides a yardstick for measuring when a state law 'significantly interferes with,' 'impairs the efficiency of,' 'encroaches on,' or 'hampers' the exercise of national banks' powers.").  An interlocutory appeal is warranted to permit the Fourth Circuit to provide further guidance on the meaning of this test.

*Second*, a "substantial ground for a difference of opinion" exists "when there is substantial doubt that the district court's order was correct," *Goodman*, 195 F. Supp. 3d at 774, and where "courts . . . disagree on a controlling legal issue," *Lynn*, 953 F. Supp. 2d at 624.  Here, conflicting judicial authority creates a substantial doubt whether the Court correctly interpreted the *Barnett Bank* standard.

The Court concluded that Section 12-109's degree of interference with Bank of America's exercise of its federal banking powers is "minimal" because Section 12-109 does not prevent the exercise of federal banking powers "in any form."  Order at 15.  The Court distinguished cases in which state laws "essentially nullified" or "abrogated" federal banking powers, and concluded that Section 12-109 was not preempted because it did not interfere with Bank of America's federal powers to this degree.  *See id*.

The Court's interpretation of the *Barnett Bank* standard conflicts with decisions of other courts, including a district court in this circuit.  By interpreting "significantly interfere[]" to require a "nullifi[cation]" or "abrogat[ion]" of the national bank's federal power, *id*., the Court has largely eliminated any distinction between the "prevent" and "significant interference" prongs of the *Barnett Bank* test.  But these prongs are separate inquiries, and courts have cautioned against interpreting "significantly interfere[]" in a way "that would render the two prongs of the *Barnett Bank* standard redundant."  *Assoc. of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 409 (6th Cir.

- 9 -

2001).  For this reason, the Sixth Circuit dismissed as "unpersuasive" an "attempt to redefine 'significantly interfere' as 'effectively thwart,'" *id.*, and later clarified "that the level of 'interference' that gives rise to preemption under the [National Bank Act] is not very high," *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009).  As another court put it, "the threshold of preemption is in some cases remarkably low."  *Am. Bankers Ass'n*, 239 F. Supp. 2d at 1017.  This Court's interpretation of the *Barnett Bank* standard also creates an intra-circuit conflict:  A South Carolina court has agreed with the Sixth Circuit, holding that it was "not persuaded that 'significant interference' is synonymous with complete prohibition of a national bank's enumerated or incidental power."  *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 610 n.5 (D.S.C. 2015).

This Court reasonably looked to Supreme Court precedent for guidance on interpreting "significantly interfere," but there is reason to question the lessons the Court drew from those cases.  For example, the Court examined the Supreme Court's decision in *Franklin National Bank of Franklin Square v. New York*, 347 U.S. 373 (1954), but the state law at issue there did not have the effect that the Court attributed to it.  The Court stated that the New York law at issue in *Franklin National Bank* "hampered the [national] banks' ability to exercise the relevant federal authority in any form."  Order at 15.  Based on this understanding of the state law, the Court concluded that Maryland's Section 12-109 was a lesser intrusion because it "still allows [Bank of America] to require escrow accounts for its borrowers."  *Id.*

The state law at issue in *Franklin National Bank*, however, did not amount to a "abrogat[ion]" of the bank's power to receive deposits.  *Id.*  Instead, the law allowed national banks to offer savings accounts and to advertise those accounts; it merely prohibited all banks other than state-chartered "mutual savings banks" from using two words ("saving" and "savings") in their advertisements.  *Franklin Nat'l Bank*, 347 U.S. at 378.  This narrow limitation on advertising did

not, "in essence, abrogate[] the bank's authority under the federal statute," nor did it "hamper[]" exercise of federal power "in any form."  Order at 15.  To the contrary, as the New York Court of Appeals explained, every other national bank in New York complied with the law.  *See People v. Franklin Nat'l Bank of Franklin Square*, 305 N.Y. 453, 461 (1953).  These banks avoided using the forbidden terms and instead used "such synonymous expressions as 'special interest account', 'thrift account' and 'compound interest account.'"  *Id.*  This workaround did not hurt the national banks' businesses—and compliance certainly was not "financially ruinous" for these banks.  *Cf.* Order at 16 n.5.  In fact, the evidence showed that "the number of accounts of the 'savings type' has increased greatly in those national banks in the State which have obeyed [the state law], and that those national banks have enjoyed continued prosperity notwithstanding said statute."  *Franklin Nat'l Bank*, 305 N.Y. at 462.

The Supreme Court nevertheless reversed the lower court's finding of no preemption.  *See Franklin Nat'l Bank*, 347 U.S. at 378.  The Supreme Court held that the prohibition on using the words "saving" or "savings" in advertising amounted to a significant interference with a national bank's exercising of its federal powers and therefore was preempted.  *Id.*  For this reason, *Franklin National Bank* supports the Sixth Circuit's view that "the level of 'interference' that gives rise to preemption under the [National Bank Act] is not very high," *Monroe Retail*, 589 F.3d at 283, and calls into question this Court's view that preemption requires "abrogat[ion]" or "nullifi[cation]" of a federal banking power, *see* Order at 15.  *Franklin National Bank* also is central to understanding the "prevent or significantly interfere" test, because *Barnett Bank* relied heavily on *Franklin National Bank* when it explained the broad scope of National Bank Act preemption.  *See Barnett Bank*, 517 U.S. at 33, 34–35.

The Court's treatment of other cases applying *Barnett Bank* also casts doubt on the Court's ruling.  The Court acknowledged that other courts have held "that merely *frustrating* a national bank's federal authority was sufficient to render the relevant state laws preempted."  Order at 17 (emphasis in original).  Indeed, many courts have found National Bank Act preemption when the state law did not amount to "abrogat[ion]" of a federal banking power.  *Cf. id.* at 15.  For example, the Supreme Court has held that state-law registration and inspection requirements, as applied to national banks' subsidiaries, significantly interfere with national banks' mortgage lending powers, even though the national banks could directly exercise their federal banking powers uninhibited by the state laws.  *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 9–10, 15–20 (2007).  The First and Ninth Circuits have similarly held that the National Bank Act preempts state laws even if the state law does not effectively prevent national banks' exercise of federal banking powers.  *See Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1035–38 (9th Cir. 2008) (holding that a state law disclosure requirement significantly interfered with power to loan money on personal security); *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 528–29, 531–34 (1st Cir. 2007) (holding that a state law prohibiting the sale of gift cards of less than $100 with expiration dates or administrative fees significantly interfered with the power to issue such gift cards).  Other courts have reached similar conclusions.[4]

The Court distinguished many of these decisions on the ground that "Congress, in Dodd-Frank, expressed its judgment that national banks can and should adhere to statutes like § 12-109."

---

[4] *See Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 723 (9th Cir. 2012) (finding preemption of transaction posting requirements); *Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal. App. 4th 120, 158 (2013) (finding preemption of transaction posting requirements); *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 (11th Cir. 2011) (finding preemption of check-cashing fee regulations); *Wells Fargo Bank of Tex., N.A. v. James*, 321 F.3d 488, 491 & n.3 (5th Cir. 2003) (same); *Downey v. Wells Fargo Bank, N.A.*, 2014 WL 3510510, at *6 (D. Mass. July 11, 2014) (finding preemption of disclosure requirements).

Order at 17.  But this ground for distinction conflates the two inquiries under *Barnett Bank*.  The "prevent or significantly interferes" test applies only when Congress has not made "an explicit statement that the exercise of [a national bank's] power is subject to state law."  517 U.S. at 33, 34.  The disagreement among courts about how to apply *Barnett Bank*'s "prevent or significantly interferes" test thus cannot be explained by whether Congress expressed its judgment that national banks should comply with state law.  Moreover, there are substantial grounds for differences of opinion on the question whether Congress in fact expressed its judgment that national banks should pay interest on escrow accounts.  *See* Part I.B.4 *infra*.

In short, the meaning of "significantly interfere" in the *Barnett Bank* test is an unsettled question on which courts have reached differing conclusions based on an analysis of the same precedents.  *Compare, e.g.*, *Duryea*, 270 F.3d at 409, *and In re TD Bank, N.A.*, 150 F. Supp. 3d at 610 n.5, *with* Order at 15.  These judicial disagreements about what *Barnett Bank* requires warrant interlocutory review for resolution by the Fourth Circuit.

> **3.  There Is Substantial Ground for Difference of Opinion on the Validity of the OCC's Regulations.**

The Court's conclusion that OCC regulations do not preempt Section 12-109 also warrants interlocutory review.  A substantial ground for difference of opinion exists both on the deference that the regulations should receive under *Skidmore*, and more broadly on the respect due to the OCC as the primary regulator of national banks.

*First*, the Court held that the OCC preemption regulations, and "the agency's current position that § 12-109 is preempted," are "entitled to minimal deference" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Order at 10, 11.  The Court faulted the OCC for "not specifically refer[ring] to state escrow interest laws in any manner."  *Id*. at 11.  That reasoning effectively rejects the OCC's decision to identify preempted state laws by category.  The Court's analysis is

at odds with other courts—including in the Fourth Circuit—that have applied the OCC's preemption regulations without holding the OCC to an onerous standard of considering the specific type of law at issue.  These are substantial grounds for disagreement about what *Skidmore* requires in this context.

In both 2004 and 2011, the OCC promulgated its preemption regulations following a notice-and-comment rulemaking procedure.  *See* OCC, *Bank Activities and Operations; Real Estate Lending and Appraisals*, 69 Fed. Reg. 1,904-01, 1,905 (Jan 13, 2004); OCC, *Office of Thrift Supervision Integration; Dodd-Frank Act Implementation*, 76 Fed. Reg. 43,549-01, 43,549–50 (July 21, 2011).  Both times, the OCC decided against a law-by-law approach, opting instead to "identify categories and/or terms of state laws that are preempted."  76 Fed. Reg. at 43,556.  The OCC considered objections to this categorical approach and provided a reasoned explanation for adopting it.  *Id.*  In fact, the OCC issued its current regulations only after considering "comments from consumer advocacy groups, government agencies, representatives of Congress, associations of state officials, industry trade groups, Federal and state banks and thrifts, and law firms."  76 Fed. Reg. at 43,550.

Given the OCC's reasoned rulemaking process, there is substantial ground for disagreement with the Court's conclusion that no deference in due under *Skidmore*.  When other courts have reviewed OCC preemption determinations, the *Skidmore* analysis has focused on "the thoroughness of the OCC's consideration" and "the validity of its reasoning."  *See, e.g.*, *Cline v. Hawke*, 51 Fed. App'x 392, 397 (4th Cir. 2002).  Where, as here, the OCC "implemented a formal notice-and-comment procedure" and consulted relevant stakeholders when reaching its decision, "the OCC's consideration was thorough."  *Id.*; *see also Insurance Comm'r of P.R. v. Doral Ins. Agency, Inc.*, 2006 WL 3196472, at *6 (D.P.R. Nov. 2, 2006) (adopting *Cline*); *TD Banknorth Ins.*

- 14 -

*Agency, Inc. v. Kofman*, 2008 WL 2967644, at *13 (D. Me. Aug. 1, 2008) (report and recommendation) (same).

Nor can there be doubt about the validity of the OCC's reasoning in this case, given existing Fourth Circuit precedent.  When evaluating the OCC's 2004 regulations, the Fourth Circuit described the OCC's "reasoning" as "compelling."  *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 332 (4th Cir. 2006).  In short, the Fourth Circuit has already held that the OCC's reasoning is valid.  When coupled with the thoroughness of the OCC's rulemaking process, a judge could conclude that the OCC's preemption regulations are entitled to deference under *Skidmore*.

There is also substantial ground for disagreement over the Court's conclusion that the OCC's regulations are not entitled to deference because the OCC did not specifically mention state escrow interest laws.  Order at 11.  Before rejecting the OCC's selected approach, the Court should have, at a minimum, considered whether the agency's decision to adopt a categorical approach was entitled to deference based on the persuasiveness of its reasoning for adopting such an approach.  *Cf. Cline*, 51 Fed. App'x at 397.

The Court's rejection of the categorical approach also conflicts with decisions of other courts, including a district court in this circuit.  *See Powell v. Huntington Nat'l Bank*, 226 F. Supp. 3d 625 (S.D.W. Va. 2016).  In *Powell*, a post-Dodd-Frank case, the plaintiffs challenged a national bank's assessment of late fees.  *Id*. at 628.  The court held that the claims were preempted under the National Bank Act and under the OCC's preemption regulations.  *Id*. at 635.  Applying the Dodd-Frank standard codified at 12 U.S.C. § 25b(b)(5), *id.* at 637, the court held that "the language of the regulation leaves no role for states to legislate in the area of servicing mortgages or scheduling payments due," *id*. at 639.  The court did not question the categorical approach used in the OCC's rulemaking.  Nor did it consider whether the OCC's rulemaking specifically addressed

- 15 -

state laws relating to the late fees that were at issue in the case.  In fact, the court noted that the issue "is not explicitly covered in the OCC's regulation beyond giving national banks the general ability to schedule payments and service mortgages."  *Id.* at 641.  Nevertheless, the court deferred "to the OCC's authorized and reasonable implementation of the [National Bank Act]" and applied the regulations to preempt the state law at issue.  *Id.* at 642 (quotation omitted).  Courts elsewhere in the country have similarly concluded that OCC's categorical regulations preempt state laws, even after Dodd-Frank.[5]  *See Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 105–06 (D. Conn. 2016); *Downey v. Wells Fargo Bank, N.A.*, 2014 WL 3510510, at *6 (D. Mass. July 11, 2014); *Campbell v. Specialized Loan Serv., LLC*, 2014 WL 280492, at *3 (D.N.H. Jan. 23, 2014).

*Second*, the Court's analysis calls into question the OCC's ability to regulate national banks, an issue of "general importance" to the national banking system that warrants interlocutory review.  *See* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed. Aug. 2019 update).  Congress has charged the OCC with the regulation of national banks, 12 U.S.C. § 1, and under that charge the OCC has issued regulations "more intensive than the regulations of any other industry."  *See Indep. Bankers Ass'n of Am. v. Heimann*, 613 F.2d 1164, 1168 n.13 (D.C. Cir. 1979) (quoting 1 K. Davis, *Administrative Law Treatise* 247 (1958)).  To ensure national banks' "financial soundness and ethical practice," the OCC conducts "the closest monitoring and continuous supervision of these institutions."  *Id.* at 1168.  As a result, the OCC has an informed view about the burdens that state regulation can impose on national banks.

---

[5] Other decisions prior to Dodd-Frank likewise applied Section 34.4 without asking whether the OCC carefully considered the specific sub-type of law at issue. *See, e.g.*, *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 556–57 (9th Cir. 2010) (applying Section 34.4 to a state unfair competition law); *Smith v. Wells Fargo & Co.*, 2008 WL 11404524, at *1 (S.D.N.Y. Apr. 2, 2008) (applying Section 34.4 to a claim challenging a fee as misleading).

Whereas the Court declined to defer to the OCC's views because an evaluation of preemption case law "did not implicate the agency's substantive expertise," *see* Order at 10, other courts have recognized that the OCC's preemption determinations in 12 C.F.R. § 34.4 reflect a valid "policy judgment." *See Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 319 (2d Cir. 2005). And this is true for regulations beyond § 34.4. Because of the OCC's regulatory role and informed supervisory experience, courts have deferred to other OCC categorical preemption regulations, which reflect the agency's views on what "its regulations may require . . . as a matter of sound banking practice." *SPGGC, LLC*, 488 F.3d at 531–32; *see also, e.g.*, *Monroe Retail, Inc.*, 589 F.3d at 284 (deferring to OCC's interpretation of its regulation); *Wells Fargo Bank of Tex.*, 321 F.3d at 495 (same); *Bank One, Utah v. Guttau*, 190 F.3d 844, 849 (8th Cir. 1999) (deferring to OCC's conclusion that a state regulation is preempted). Refusing to defer to the OCC on the application of its preemption regulations creates uncertainty within the industry and "risks undermining the Comptroller's role as the primary regulator of national banks." OCC Amicus Br., *Hymes v. Bank of America*, No. 2:18-cv-02352-RRM-ARL, ECF No. 65-2, at 6 (E.D.N.Y.).

The approach adopted in many cases applying § 34.4 and other preemption determinations establishes substantial room for disagreement about the OCC's ability to regulate national banks through broad, categorical judgments about the exercise of federal banking power. For these reasons, there is conflicting authority about the appropriate deference to the OCC's preemption regulations and to the OCC's role in enforcing its regulations more generally.

### 4.     There Is Substantial Ground for Difference of Opinion on Whether Dodd-Frank Affects the Preemption Analysis.

The Court's ruling also rests on an interpretation of a Dodd-Frank provision, 15 U.S.C. § 1639d, that presents difficult questions of first impression in the Fourth Circuit. Here too, "courts . . . disagree" on a potentially "controlling legal issue." *Lynn*, 953 F. Supp. 2d at 624.

The Court acknowledged that there are grounds for difference of opinion in interpreting a key phrase in Section 1639d(g)(3):  "If prescribed by applicable State or Federal law."  15 U.S.C. § 1639d(g)(3).  As the Court noted, its reading of that phrase—and, in particular, its interpretation of "applicable"—differs from the Ninth Circuit's interpretation.  Order at 14 & n.4 (deciding "not [to] go as far as the *Lusnak* panel did" by interpreting "'applicable' to refer to state escrow interest laws where they exist").[6]

There is also room for disagreement regarding how Dodd-Frank affects the preemption analysis.  Plaintiff argued that, consistent with *Lusnak*, Section 1639d(g)(3) expresses Congress's clear and explicit intent that state escrow interest laws are not preempted.  *See* ECF No. 34 at 13 (Section 1639d(g)(3) "demonstrat[es] that Congress does not consider the type of regulation to significantly interfere with national banks' powers as they are intended by Congress.").  But this Court did not adopt that view.  Instead, it concluded that Congress's choice of words "has no connection to preemption, further undercutting the likelihood that Congress referred to preemption in § 1639d(g)(3)."  Order at 14.

There is reason to doubt the Court's ultimate conclusion about preemption given its view that Section 1639d(g)(3) "has no connection to preemption."  *Id.*  The Court construed the silence on preemption as a basis to infer congressional intent *not* to preempt state law.  *See* Order at 17 (citing § 1639d(g)(3) as evidence "that national banks can and should adhere to statutes like § 12-

---

[6] The Court's discussion of whether "applicable" means "capable of being applied" or "relevant," Order at 14, should not affect the preemption analysis.  The Court treated "capable of being applied" and "relevant" as two different definitions of "applicable," but the case on which the court relied treats them as synonymous.  *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (listing definitions of "applicable," including "capable of being applied: having relevance").  Bank of America's argument does not rely on any purported distinction between "capable of being applied" and "having relevance."  In Bank of America's view, a preempted law is neither "capable of being applied" nor "relevant" to a national bank.

109"). But Supreme Court authority supports the contrary view: In the context of National Bank Act preemption, congressional silence means that a national bank's exercise of its federal power is "ordinarily" not subject to state-law limitations. *Barnett Bank*, 517 U.S. at 34 ("[W]here Congress has not expressly conditioned the grant of 'power' upon a grant of state permission, the [Supreme] Court has ordinarily found no such condition applies."). Other courts have read this rule to require that Congress's *grant* of power in the National Bank Act must be "limited . . . to the extent that state law also grants permission," *see, e.g.*, *Parks v. MBNA Am. Bank, N.A.*, 54 Cal. 4th 376, 387 (2012) (quoting *Barnett Bank*, 517 U.S. at 31), which is different from inferring a limitation on federal banking power from congressional statements in entirely different statues. Put another way, this Court should have considered whether Congress expressly required national banks to comply with state law as a condition of holding federal banking power, not whether Dodd-Frank created an "exception" for national banks. Order at 14. Accordingly, the Court's view that Dodd-Frank does not address preemption should have resulted in a determination that Congress has not expressed an intent that national banks are subject to state escrow interest laws.[7]

Four courts have now attempted to reconcile Dodd-Frank with the National Bank Act, ultimately adopting three different interpretations of § 1639d(g)(3).[8] These different approaches show that the question whether Section 1639d(g)(3) requires national banks to comply with state

---

[7] Because there is no "explicit statement" from Congress, the proper analysis is limited to whether state law prevents or significantly interferes with the exercise of federal banking power. *See Barnett Bank*, 517 U.S. at 33–34.

[8] The *Lusnak* district court held that "Section 1639d's plain language" did not "override established rules of preemption in a different statutory scheme," because a preempted law "is not capable of being applied to national banks" and therefore is not "applicable." 2014 WL 6779131, at *9. The Ninth Circuit later concluded that the term "applicable" "refer[s] to state escrow interest laws where they exist." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1195 (9th Cir. 2018). And this Court and *Hymes* adopted yet another interpretation. Order at 14; *Hymes*, 408 F. Supp. 3d at 186–87.

escrow interest laws is one of the "knotty legal problems" that Congress enacted § 1292(b) to address. *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007). The Fourth Circuit has not spoken to the question, but many "courts . . . disagree" about this "legal issue," which highlights why an appeal is warranted. *Lynn*, 953 F. Supp. 2d at 624.

### C.     An Immediate Appeal May Materially Advance Termination of the Litigation.

The last criterion under Section 1292(b) is also met here. An immediate appeal could materially advance termination of the litigation because, if the Fourth Circuit agrees with Bank of America's and the OCC's views on preemption, all of Plaintiff's claims will be dismissed and the case will be over. *See* Order at 4.

This factor strongly supports an interlocutory appeal here given the case's complexity. Section 1292(b) was intended to prevent potentially wasted, protracted litigation "if it could early be determined that there might be no liability" or that "a pretrial order erroneously overrul[ed] a defense going to the right to maintain the action." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc). By potentially ending the litigation, an immediate appeal could obviate the need to engage in (i) extensive (and costly) discovery about borrowers across the state; (ii) contested class certification practice; and (iii) investigation of, and resolution of, dispositive motions raising defenses unique to the named Plaintiff. Even if Bank of America does not prevail on its preemption defense, the Fourth Circuit's final statement on the controlling question would assist in potential settlement discussions, a result which would still fulfill Section 1292(b)'s purpose to "avoid protracted litigation." *See Weber*, 484 F.3d at 159. This potential to substantially accelerate proceedings is sufficient to warrant an immediate appeal.

Moreover, resolving the scope of National Bank Act preemption in this context affects not only Bank of America's operation in Maryland, but all national banks operating throughout the

nation.  The Supreme Court has "recognized the special nature of federally chartered banks" and described "[u]niform rules" as "an integral part of a banking system that needed protection from 'possible unfriendly State legislation.'"  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10 (2003) (quoting *Tiffany v. Nat'l Bank of Mo.*, 85 U.S. (18 Wall.) 409, 412 (1874)).  Generally, "federal control shields national banking from unduly burdensome and duplicative state regulation."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007).  National banks therefore have a strong interest in understanding when they are subject to, and immune from, state-by-state requirements, and an immediate appeal would serve that interest.  Many states across several circuits purport to require banks to pay interest on mortgage escrow accounts.[9]  Appellate court guidance affords greater predictability when national banks structure their escrow servicing operations to comply with controlling law—whether that be the National Bank Act, or state law requirements like Section 12-109.  *Cf. McShannock v. JP Morgan Chase Bank N.A.*, 2019 WL 955289, at *1–2 (N.D. Cal. Feb. 27, 2019) (certifying for immediate appeal an order relating to preemption of California's interest-on-escrow statute under the Home Owners' Loan Act).  If the appellate courts ultimately disagree, then the issue would call for review from the Supreme Court—the only judicial body that can guarantee the uniform, nationwide standard that Congress envisioned for national banks.

---

[9] States with interest-on-escrow statutes are located in the First, Second, Fourth, Seventh, Eighth, Ninth, and Tenth Circuits, which underscores the potential for non-uniform requirements.  *See* Cal. Civ. Code § 2954.8(a); Conn. Gen. Stat. § 49-2a(a); Iowa Code § 524.905(2); Me. Stat. tit. 9-a, § 9-305; Md. Code Com. Law § 12-109; Mass. Gen. Laws ch. 183, § 61; Minn. Stat. § 47.20, subd. 9; Ne. Rev. Stat. Ann. § 100.091; N.H. Rev. Stat. Ann. § 397-A:9; N.Y. G.O.L. § 5-601; Or. Rev. Stat. § 86.245; R.I. Gen. Laws § 19-9-2; Utah Code § 7-17-3; Vt. Stat. tit. 8, § 10404; Wis. Stat. § 138.051(5)

## II.     This Court Should Stay All Proceedings In This Court Pending The Second Circuit's Decision.

In addition to certifying the Order for immediate appeal, the Court should stay proceedings pending the Fourth Circuit's disposition of Bank of America's petition for permission to appeal or, if the petition is granted, of the appeal itself.  "The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)).  "When courts determine the appropriateness of staying proceedings in a given case, three factors must be taken into account: 1) the interest in judicial economy; 2) the hardship to the moving party if the action is not stayed; and 3) the potential damage or prejudice to the non-moving party."  *District of Columbia v. Trump*, 344 F. Supp. 3d 828, 842–43 (D. Md. 2018) (citing *Int'l Refugee Assist. Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018)).  These factors counsel in favor of a stay pending appeal here.

*First*, the interests of judicial economy would not be served by allowing discovery to proceed during an appeal to the Fourth Circuit.  As courts have recognized, where the Fourth Circuit is poised to decide a potentially dispositive issue, "staying proceedings . . . pending the Fourth Circuit's decision" tends to "promote judicial economy."  *See In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *2 (D. Md. Aug. 25, 2011).   In this case, "denial of a stay would deprive [Bank of America] of substantial rights were it ultimately prevail on appeal," because "the type of discovery to which [Bank of America] can be subjected turns upon whether it remains as a party defendant."  *In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*, 958 F. Supp. 1045, 1060 (D. Md. 1997).  Moreover, discovery would "bog [the Court] down in motions practice, with the parties essentially relitigating unsettled legal questions through discovery."  *Int'l Refugee Assist.*

*Project*, 323 F. Supp. 3d at 735. Such a "fraught enterprise" would "steeply tax[] both the parties and this Court," *id.*, and may prove to have been wasted effort if the Fourth Circuit agrees with Bank of America and the OCC. *Cf. Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012) ("[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary.").

Bank of America also has a significant chance of success on the merits of its appeal. As explained above, the Order rests on three debatable conclusions: an interpretation of Dodd-Frank, a determination about the OCC's regulations, and an assessment of *Barnett Bank*'s preemption standard. Reversal on any of these issues could change the outcome here. Although the case involves issues of first impression in the Fourth Circuit, Bank of America's positions have substantial support in the holdings of other courts and from the OCC. *See supra* Part I.B.

*Second*, Bank of America faces substantial harm in the absence of a stay. For one, Bank of America faces the immediate cost of burdensome discovery about customers who may have no viable claims. In similar litigation in New York, the same counsel representing Plaintiff here served sweeping discovery requests—31 requests for production and eight interrogatories with numerous subparts (including one interrogatory with 14 subparts)—that impose significant burdens on Bank of America and its employees. For example, Plaintiff's counsel sought at least 11 years' worth of policies, internal communications, mortgage agreements, and information about Bank of America and its predecessors' mortgage servicing systems. The information sought in the New York case—and likely to be sought here—is far more extensive that the information Bank of America produced in the similar *Lusnak* case in California, which itself took many months and imposed significant costs and burdens to gather. Given the overbroad and burdensome nature of the discovery requests, this Court is likely to be embroiled in significant discovery disputes.

Expert discovery alone will likely consume a significant amount of the parties' resources. In *Lusnak*, Bank of America ultimately produced data about approximately 94 million transaction records for about 2.2 million California borrowers.  This data pull was large, unwieldy, and expensive.  In New York, Plaintiff's counsel has already requested even more data than what Bank of America produced in *Lusnak*.  *None* of these costs and burdens will be necessary if the Fourth Circuit agrees with Bank of America's preemption defense.

Apart from litigation costs, Bank of America faces the prospect of injunctive relief, which would require Bank of America to change its mortgage servicing processes for mortgages in Maryland.  That investment—in addition to any interest that Bank of America pays under a court order—would be an unrecoverable cost in the event of reversal by the Fourth Circuit.  *Cf. L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 2018 WL 1640589, at *3 (E.D.N.Y. Apr. 5, 2018) (imminent and unrecoverable monetary loss can support an irreparable harm showing); *United States v. Kotmair*, 2006 WL 4846388, at *8 (D. Md. Nov. 29, 2006) ("expenditures of time and money to respond" and "lost revenue" are irreparable harms).

*Third*, Plaintiff does not face substantial injury.  Ultimately, Plaintiff seeks to recover unpaid interest that she alleges is due under state law.  A mere delay in a monetary recovery is entitled to little weight in light of Bank of America's chances of success and potential monetary losses.  *Cf. Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (holding that delay in monetary recovery did not outweigh other factors supporting a stay).

## CONCLUSION

The Court should grant this motion, certify the preemption issue for interlocutory appeal, and stay all proceedings in this Court until the Fourth Circuit issues its decision in this matter.

DATED:  March 10, 2020

Respectfully submitted,

By:   /s/ *David L. Permut*

Mark W. Mosier (admitted *pro hac vice*)
Andrew Soukup (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
T: (202) 662-6000
mmosier@cov.com
asoukup@cov.com

David L. Permut (Bar # 15111)
GOODWIN PROCTER LLP
1900 N Street NW
Washington, D.C. 20036
T: (202) 346-4000
DPermut@goodwinlaw.com

*Attorneys for Defendant*
*Bank of America, N.A.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on March 10, 2020, I caused the attached Memorandum in Support of Defendants' Motion to Certify the Court's February 24, 2020 Order for Interlocutory Appeal and to Stay Further Proceedings Pending Interlocutory Appeal to be served via electronic mail on all counsel of record in the above-captioned cases.

DATED:  March 10, 2020                      Respectfully submitted,

By:      /s/ *David L. Permut*
           David L. Permut (Bar # 15111)
           GOODWIN PROCTER LLP
           1900 N Street NW
           Washington, D.C. 20036
           T: (202) 346-4000
           DPermut@goodwinlaw.com

           *Attorney for Defendant Bank of America,*
           *N.A.*