IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CYNTHIA CLARK, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No.: SAG-18-3672 |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Cynthia Clark ("Plaintiff") filed a Complaint on behalf of herself and a putative class of borrowers who entered into mortgage agreements with Bank of America ("BofA"). On February 24, 2020, this Court issued a Memorandum Opinion and Order granting in part, and denying in part, BofA's Motion to Dismiss Plaintiff's claims. ECF 39, ECF 40. Primarily, this Court rejected BofA's contention that the Maryland law substantiating Plaintiff's claims is preempted by the National Bank Act ("NBA"), and by regulations from the Office of the Comptroller of the Currency ("OCC"). In this matter, BofA moves to certify the Court's Order for interlocutory appeal, and to stay the proceedings pending interlocutory review. ECF 42. Plaintiff filed an Opposition, ECF 56, to which BofA filed a reply, ECF 57. Additionally, the Bank Policy Institute and Chamber of Commerce for the United States of America have moved for leave to file an amicus brief, ECF 53, which is GRANTED. I have considered all of the filings, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, BofA's Motion to Certify for Interlocutory Review, and to Stay Further Proceedings, ECF 42, is DENIED.

## I.  FACTUAL BACKGROUND

The facts are derived from Plaintiff's Complaint, ECF 1, and are largely undisputed. BofA is a federally-chartered bank and one of the largest mortgage lenders in the United States. ECF 1 ¶ 14. As part of its mortgage lending practice, BofA lends money to borrowers for the purchase of residential property. *Id.* ¶ 15. These borrowers enter into a mortgage agreement with BofA, which states that borrowers must maintain an escrow account for the payment of property-related expenses, such as property taxes and insurance premiums. *Id.* ¶ 18. To facilitate payment of these expenses, borrowers transfer funds to BofA, for placement into the escrow account. *Id.* ¶ 18.

Plaintiff purchased a house in Westminster, Maryland in or about August, 1995. *Id.* ¶ 27. Although Plaintiff originally financed the purchase with a loan from a different company, she entered into a new mortgage agreement, via a Deed of Trust, with BofA on or about February 13, 2013. *See id.* ¶ 28. The Deed of Trust provided that BofA would pay interest on escrowed funds if "Applicable Law requires interest to be paid on the Funds." *Id.* ¶ 29. Plaintiff has continuously made monthly mortgage payments to BofA, each of which has included funds to be placed in the escrow account. *Id.* ¶ 31. BofA has not paid Plaintiff any interest on Plaintiff's escrowed funds.

## II.  LEGAL STANDARD

BofA moves to certify this Court's order via 28 U.S.C. § 1292(b). A "defendant seeking an interlocutory appeal pursuant to section 1292(b) must show (1) that a controlling question of law exists, (2) about which there is a substantial basis for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Butler v. DirectSAT USA, LLC*, 307 FRD 445, 452 (D. Md. 2015) (citation omitted). The district court may not and should not certify an order unless *all* of the statutory criteria are satisfied. *Id.*

The United States Court of Appeals for the Fourth Circuit has cautioned that § 1292(b) "should be used sparingly" and that "its requirements must be strictly construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)). Interlocutory appeal should not be sought to provide early review of difficult rulings in hard cases. *Lynn v. Monarch Recovery Manage., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013). The decision to certify rests "firmly in the district court's discretion." *Butler*, 307 FRD at 452.

**III.   ANALYSIS**

This case boils down to two critical facts. First, under Maryland law, when lending institutions maintain escrow accounts on behalf of borrowers, the lenders must pay interest on those funds. Md. Code Ann., Com. Law § 12-109(b)(1). Second, BofA concedes that it has not paid interest on Plaintiff's escrow account, even though the law plainly requires it to do so. *See generally* ECF 32-1. Instead, BofA contends that the Maryland statute, § 12-109, is preempted by the NBA, as well as by OCC regulations. BofA moved to dismiss Plaintiff's entire case on this basis, and made additional arguments about each of Plaintiff's individual state law claims. ECF 32-1 (contending that Plaintiff fails to state a claim for unjust enrichment, breach of contract, and for violations of the Truth in Lending Act and Maryland Consumer Protection Act).

In a Memorandum Opinion and Order dated February 24, 2020, this Court primarily denied BofA's Motion to Dismiss. ECF 39, ECF 40.[1] The Court rejected BofA's contentions that § 12-109 is preempted by federal law. Under Supreme Court precedent, as articulated in the seminal case *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32 (1996), the critical question

---

[1] This Court dismissed Plaintiff's claims brought under the Truth in Lending Act. Civ. No. SAG-18-3672, 2020 WL 902457, at *10 (D. Md. Feb. 24, 2020).

regarding preemption — in the context of the NBA — is whether § 12-109 "prevents or significantly interferes" with the ability of a national bank, such as BofA, to exercise its banking powers. The Court explained that answering this question requires a close examination of congressional intent, which, in this case, includes that Congress dramatically changed the landscape of banking regulation by enacting the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Pertinent here, Congress codified in Dodd-Frank a mandate that national banks pay interest on escrow accounts when "prescribed by applicable State or Federal law." *See* 15 U.S.C. § 1639d(g)(3). Despite BofA's arguments to the contrary, this Court concluded that "with the word 'applicable,' Congress 'did not intend to create a preemption-based exception for national banks.'" Civ. No. SAG-18-3672, 2020 WL 902457, at *8 (D. Md. Feb. 24, 2020) (citation omitted). And, in fact, Dodd-Frank expressed a congressional determination that "state statutes requiring payment of interest on escrow accounts are a viable means of consumer protection within the dual regime of federal and state regulation." *Id.*

Furthermore, the Court contrasted § 12-109 with state laws that courts have previously found to be preempted by federal law. *Id.* at *7 (comparing § 12-109 with the laws in *Barnett Bank*, *Franklin Nat'l Bank of Franklin Square v. New York*, 347 U.S. 373 (1954), and *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315 (4th Cir. 2012)). This Court found that the reach of § 12-109 is not comparable to that of the laws at issue in those cases, and, in fact, that § 12-109 will not significantly interfere with BofA's ability to transact real estate loans.

In arriving at this determination, this Court agreed with the conclusions reached by two other federal courts answering precisely the same question. *See Lusnak v. Bank of America*, *N.A.*, 883 F.3d 1185 (9th Cir. 2018); *Hymes v. Bank of America, N.A.*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019). The Courts in *Hymes* and *Lusnak* concluded that state escrow interest laws in New York

4

and California, respectively, which are nearly identical to § 12-109, are not preempted by federal law. Nonetheless, BofA moves to certify an interlocutory appeal of this Court's decision. Thus, the elements of § 1292(b) are addressed below.

### 1. Controlling Question of Law

A "controlling" question of law is one that an appellate court can "rule on… without having to delve beyond the surface of the record in order to determine the facts." *Agape Senior Cmty.*, 848 F.3d at 341. Assessing the preemptive effect of federal law on § 12-109 is a pure question of law, and, indeed, Plaintiff does not contest that this first element is satisfied, ECF 56 at 4.

### 2. Difference of Opinion

However, BofA has failed to satisfy the second part of the § 1292(b) analysis. BofA argued vigorously that § 12-109 is preempted by the NBA and by OCC regulations. Although this Court ultimately found to the contrary, BofA continues to vociferously disagree with that conclusion — as expressed in its request for interlocutory review, *see* ECF 42-1 at 17–19. Further, the Bank Policy Institute and the Chamber of Commerce support BofA's position, and argue that the NBA's preemptive effect after Dodd-Frank "presents a novel and difficult question." ECF 53-1 at 7.

It is clear from the briefing in this case that BofA, and its supporting amici, genuinely believe that state laws requiring lenders to pay interest on escrowed funds are preempted by federal law. Certainly, BofA did not move to dismiss Plaintiff's claims in bad faith, or as a dilatory tactic. Nonetheless, an issue "presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Lynn*, 953 F. Supp. 2d at 624. Here, BofA has not directed this Court to any conflicting decision about the preemptive effect that either OCC regulations or the NBA has on state escrow interest laws. Rather, BofA argues that the analysis conducted by this Court differed in some respects from that employed in *Lusnak* and in *Hymes*. To

be sure, this Court did not adopt *every* portion of the reasoning presented in those cases, including the precise method of statutory interpretation. However, even with respect to statutory interpretation, the Memorandum Opinion expressly noted agreement among the three courts as to the central issue. Civ. No. SAG-18-3672, 2020 WL 902457, at *7 (D. Md. Feb. 24, 2020) (stating that "this Court concurs with the determination, in both *Hymes and Lusnak*, that with the word 'applicable,' Congress 'did not intend to create a preemption-based exception for national banks.'").

Ultimately, this Court's conclusion aligns with the only other two courts that have examined this particular question. In *Lusnak*, the Ninth Circuit concluded that a nearly identical California law is not preempted by the NBA because it does not prevent or significantly interfere with BofA's exercise of its powers. 883 F.3d at 1197 ("In sum, no legal authority establishes that state escrow interest laws prevent or significantly interfere with the exercise of national bank powers"). Similarly, in *Hymes*, Judge Mauskopf found that New York's version of the state escrow requirement "does not 'significantly interfere' with national banks' power to administer mortgage escrow accounts." 408 F. Supp. 3d at 195. This Court made the same determination with respect to § 12-109, and is not aware of any court to have reached a different result. While the analysis undertaken by the courts to address this issue may diverge slightly at times, there is not a difference of opinion as to any "*controlling legal issue.*" *See District of Columbia v. Trump*, 344 F. Supp. 828, 834 (D. Md. 2018) (emphasis added). Accordingly, BofA has failed to satisfy this element of the § 1292(b) analysis.

### 3. Materially Advance the Litigation

The third and final prong is whether an immediate appeal from the order may materially advance termination of the lawsuit. The material advancement requirement is met in "exceptional

circumstances that will avoid protracted and expensive litigation." *Holloway v. City of Va. Beach, Va.*, 2020 WL 1891863, at *2 (E.D. Va. Apr. 16, 2020). BofA contends that an interlocutory appeal could obviate the need for costly discovery, and a complicated motions practice involving class certification and dispositive motions. ECF 42-1 at 20.

Certainly, if the Fourth Circuit were to find that § 12-109 is preempted by the NBA, or by OCC regulations, then all of Plaintiff's claims would likely require dismissal. However, BofA's "arguments… rel[y] on the assumption that [it] will succeed on appeal," thereby "ignoring the requirement that an interlocutory appeal advance litigation regardless of its outcome." *Donlen Trust v. Wayne Srvs. Legacy, Inc.*, 2020 WL 1550579, at *8 (E.D. Va. Apr. 1, 2020) (citing *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, at *5 (4th Cir. 1989) (Table)). If the Fourth Circuit were to determine that § 12-109 is not preempted, then the case would be remanded for further proceedings, which would likely involve the immediate briefing of a class certification motion. Thus, an interlocutory appeal at this time delays the parties from reaching the vital motions practice that is almost certain to materialize. Additionally, this Court is somewhat skeptical that an interlocutory appeal would conserve the colossal amount of resources that BofA suggests. *See* ECF 56 at 13–14 (explaining that discovery should not be burdensome, given the straightforward nature of this case). In any event, given that the second element of the § 1292(b) analysis has not been satisfied, the Court need not make a determination on this issue.

## IV. STAY OF PROCEEDINGS

Because this Court has denied the request to certify for interlocutory appeal, there is no basis upon which to issue a stay of this action. *In re Willis Towers Watson Plc Proxy Litig.*, 2020 WL 923331, at *4 (E.D. Va. Feb. 26, 2020).

## V. CONCLUSION

For the reasons set forth above, BofA's Motion to certify this Court's Order for interlocutory appeal, ECF 42, is DENIED. The Bank Policy Institute and Chamber of Commerce's Motion to file amicus brief, ECF 53, is GRANTED. The Motion for a discovery conference, ECF 64, is DENIED as moot, and a scheduling order will be docketed by the Court. A separate order follows.

Dated: July 9, 2020                                      /s/
                                                         Stephanie A. Gallagher
                                                         United States District Judge