## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CYNTHIA CLARK, individually and on behalf of
all others similarly situated,

      Plaintiffs,

      v.

BANK OF AMERICA, N.A.,

      Defendant.

Civil Case No: 1:18-cv-3672-SAG

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Anna C. Haac
Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Ph.: (202) 973-0900
ahaac@tzlegal.com

Jonathan M. Streisfeld (pro hac vice)
Daniel Tropin (pro hac vice)
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Ph.: (954) 525-4100
streisfeld@kolawyers.com
ostrow@kolawyers.com

Todd S. Garber (*pro hac vice*)
Bradley F. Silverman (*pro hac vice*)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
Ph.: (914) 298-3283

tgarber@fbfglaw.com
bsilverman@fbfglaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS .................................................................................................................. 4

     A.     Plaintiff And The Class Members Entered Into Deeds of Trust With Materially Identical Relevant Provisions. ................................................... 4

     B.     BofA Has Intentionally Ignored Maryland Law And Has Refused To Pay Escrow Interest To Borrowers In Maryland ............................................. 6

     C.     Plaintiff Was Among the Many Affected BofA Customers. ................................ 9

III.    ARGUMENT ...................................................................................................... 10

     A.     Legal Standard. ....................................................................................... 10

     B.     The Claims for Relief ............................................................................. 12

          1.     Breach of Contract. ..................................................................... 12

          2.     Violation of Md. Code, Comm. Law §12-109. ......................... 13

          3.     Violation of the Maryland Consumer Protection Act. ............... 14

     C.     The Requirements of Rule 23(a) Are Satisfied. ..................................... 15

          1.     Numerosity. ................................................................................. 15

          2.     Commonality. .............................................................................. 16

          3.     Typicality. .................................................................................... 18

          4.     Adequacy. .................................................................................... 19

     D.     The Proposed Class Is Ascertainable. .................................................... 21

     E.     The Requirements Of Rule 23(b)(3) Are Satisfied ................................ 22

          1.     Predominance .............................................................................. 22

               a.     Common Liability Questions Will Predominate. ........................... 23

               b.     Each Class Member's Damages Amount is Capable of Calculation By Automated Means. ............................................. 25

          2.     Superiority. .................................................................................. 26

     F.     The Court Should Appoint Plaintiff and Plaintiff's Counsel to Represent the Class. ..................................................................................................... 29

IV.    CONCLUSION .................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Allbritton v. Wiggins*,
  No. 13-00158, 2014 WL 12768317 (E.D. Ark. Mar. 14, 2014) ................................................ 18

*Allen v. Conagra Foods, Inc.*,
  331 F.R.D. 641 (N.D. Cal. 2019) .................................................................................. 15

*Amaya v. DGS Constr., LLC*,
  326 F.R.D. 439 (D. Md. 2018) ............................................................................. 19, 20, 24

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 10, 23, 27, 28

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) .......................................................................................... 11, 23

*Ayala v. U.S. Xpress Enterprises, Inc.*,
  No. EDCV 16-137-GW(KKX), 2017 WL 3328087 (C.D. Cal. July 27, 2017) ...................... 20

*Ayres v. Ocwen Loan Servicing, LLC*,
  129 F. Supp. 3d 249 (D. Md. 2015) ........................................................................... 14

*Baugh v. Fed. Sav. Bank*,
  337 F.R.D. 100 (D. Md. 2020) ...................................................................................... 11

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) ..................................................................................... 16

*Brady v. Basic Research LLC*,
  101 F. Supp. 3d 217 (E.D.N.Y. 2015) ......................................................................... 15

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ...................................................................................... 19

*Brown v. Nucor Corp.*,
  785 F.3d 895 (4th Cir. 2015) ....................................................................................... 11

*Bulmash v. Travelers Indem. Co.*,
  257 F.R.D. 84 (D. Md. 2009) ............................................................................. 17, 19, 24

*Calderon v. GEICO Gen. Ins. Co.*,
  279 F.R.D. 337 (D. Md. 2012) ...................................................................................... 19

*Chado v. Nat'l Auto Inspections, LLC*,
  No. 17-2945, 2018 WL 3420018 (D. Md. July 13, 2018) ........................................ 16, 19, 20

*Clark v. Bank of Am., N.A.*,
  2020 WL 902457 (D. Md. Feb. 24, 2020) ..................................................................... 1, 7

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .............................................................................................. 25, 26

*Consumer Prot. Div. v. Morgan*,
  387 Md. 125 (Md. Ct. App. 2005) ............................................................................... 15

*Cowit v. CitiMortgage, Inc.*,
    No. 12-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013) ...................... 13

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*,
    423 F. App'x 314 (4th Cir. 2011) ................................................................. 2

*Craighead v. Full Citizenship of Maryland, Inc.*,
    No. 17-595, 2018 WL 3608743 (D. Md. July 27, 2018).................... 18, 19, 20

*Cuthie v. Fleet Reserve Ass'n*,
    743 F. Supp. 2d 486 (D. Md. 2010) ........................................................... 20

*Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*,
    375 F.2d 648 (4th Cir. 1967).................................................................... 16

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006)..................................................................... 19

*Dickerson v. United Parcel Serv., Inc.*,
    No. WMN–15–2, 2015 WL 3889975 (D. Md. June 23, 2015) .................... 2

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ................................................................. 13

*Ealy v. Pinkerton Gov't Servs., Inc.*,
    514 F. App'x 299 (4th Cir. 2013)............................................................... 23

*Edelen v. Am. Residential Servs., LLC*,
    No. 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013)........................... 26

*Edmondson v. Eagle Nat'l Bank*,
    336 F.R.D. 108 (D. Md. 2020) ...............................................................11, 12

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014)............................................................... 12, 21

*Foster v. CEVA Freight, LLC*,
    272 F.R.D. 171 (W.D.N.C. Jan. 31, 2011) ............................................... 13

*Gray v. Hearst Comm's, Inc.*,
    444 F. App'x 698 (4th Cir. 2011) ........................................................ 12, 23

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003).........................................................10, 11, 25

*Gunter v. United Fed. Credit Union*,
    No. 15-00483, 2017 WL 4274196 (D. Nev. Sep. 25, 2017) ...................... 13

*Harris v. Hutchinson*,
    209 F.3d 325 (4th Cir. 2000)....................................................................... 2

*Hewlett v. Premier Salons Int'l, Inc.*,
    185 F.R.D. 211 (D. Md. 1997) .................................................................. 18

*Hymes v. Bank of Am., N.A.*,
    408 F. Supp. 3d 171 (E.D.N.Y. 2019) ............................................. 1, 7, 28

*In re Checking Account Overdraft Litig.*,
  286 F.R.D. 645 (S.D. Fla. 2012) ......................................................................... 13, 28

*In re Kirschner Med. Corp. Sec. Litig.*,
  139 F.R.D. 74 (D. Md. 1991) .................................................................................. 16

*In re Med. Capital Sec. Litig.*,
  No. 09-1048, 2011 WL 5067208 (C.D. Cal. July 26, 2011) ..................................... 13

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ................................................................................... 24

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
  325 F.R.D. 136 (D.S.C. 2018) ................................................................ 13, 15, 27, 28

*In re Titanium Dioxide Antitrust Litig.*,
  284 F.R.D. 328 (D. Md. 2012) ................................................................................ 25

*Irwin v. Dep't of Veterans Affs.*,
  498 U.S. 89 (1990) .................................................................................................... 2

*JayKal LED Sols. Inc. v. G-W Mgmt. Servs., LLC*,
  No. 17-1380, 2017 WL 4745450 (D. Md. Oct. 20, 2017) ........................................ 12

*Kivett v. Flagstar Bank*,
  333 F.R.D. 500 (N.D. Cal. 2019) ....................................................................... passim

*Kivett v. Flagstart*,
  No. 18-05131, 2020 WL 726053 (N.D. Cal. Dec. 10, 2020) ..................................... 26

*Luskin's, Inc. v. Consumer Prot. Div.*,
  726 A.2d 702 (1999) .......................................................................................... 15, 16

*Lusnak v. Bank of America, N.A.*,
  883 F.3d 1185 (9th Cir. 2018) ..................................................................... 1, 7, 26, 29

*Minter v. Wells Fargo Bank, N.A.*,
  279 F.R.D. 320 (D. Md. 2012) ............................................................................ 11, 16

*Murfitt v. Bank of Am. NA*,
  No. 13-1182, 2015 WL 13306363 (C.D. Cal. Oct. 8, 2015) ..................................... 24

*Riggleman v. Clarke*,
  No. 17-00063, 2019 WL 1903795 (W.D. Va. Apr. 29, 2019). .................................. 30

*Smith v. Wash. Post Co.*,
  962 F. Supp. 2d 79 (D.D.C. Aug. 23, 2013) ........................................................... 24

*Speaks v. U.S. Tobacco Coop., Inc.*,
  324 F.R.D. 112 (E.D.N.C. 2018) ............................................................................ 19

*Stewart v. Bierman*,
  859 F. Supp. 2d 754 (D. Md. 2012) ....................................................................... 14

*Stillmock v. Weis Markets, Inc.*,
  385 F. App'x 267 (4th Cir. 2010) ........................................................................... 28

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ............................................................... 15

*Todd v. Tempur-Sealy Int'l, Inc.*,
    No. 13-04984, 2016 WL 5746364 (N.D. Cal. 2016) ............................................... 15

*Tucker v. Specialized Loan Servicing, LLC*,
    83 F. Supp. 3d 635 (D. Md. 2015) ............................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................... 23, 25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................... 16

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ............................................................... 10, 20

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ............................................................... 24

## Statutes

Md. Code Ann., Com. Law § 12-109 ............................................................... passim

Md. Code Ann., Com. Law § 13-301 ............................................................... 2, 14, 15

Md. Code Ann., Com. Law § 13-302 ............................................................... 15

## Treatises

5 James Wm. Moore et al., Fed. Prac. & Proc. § 23.02 (3d ed. 1999) ....................................... 10

2 Newberg on Class Actions § 4:49 (5th ed.) ............................................................... 23

2 Newberg on Class Actions § 12.4 (5th ed.) ............................................................... 26

## Rules

Fed. R. Civ. P. 23(a) ............................................................... passim

Fed. R. Civ. P 23(b) ............................................................... passim

Fed. R. Civ. P. 23(c) ............................................................... 29

Fed. R. Civ. P. 23(g) ............................................................... 29-30

## I.    INTRODUCTION

Plaintiff Cynthia Clark ("Plaintiff") respectfully submits this memorandum of law in support of her motion for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). The issues in this case are straightforward and ideally suited for class treatment. As this Court has already held:

> This case boils down to two critical facts. First, under Maryland law, when lending institutions maintain escrow accounts on behalf of borrowers, the lenders must pay interest on those funds. Md. Code Ann., Com. Law § 12-109(b)(1). Second, [defendant Bank of America, N.A. ("BofA")] concedes that it has not paid interest on Plaintiff's escrow account, even though the law plainly requires it to do so.

(ECF No. 65 at 3.) Further, the form deeds of trust entered into by Plaintiff and putative Class members all require BofA to pay interest on funds held in escrow if applicable law so requires. BofA *admits* that it did not pay interest to Plaintiff or the putative Class members and thus did not comply with the statute or the deeds of trust.[1]

Instead, although already rejected by this Court, BofA asserts that this Maryland statute (and all such state statutes requiring interest on funds held in escrow) is preempted by federal law, a predominating common issue that only further favors class certification here. This Court, and every other court that has addressed the issue, have found that such state statutes are not preempted and that BofA must comply with them. *See Clark v. Bank of Am., N.A.*, 2020 WL 902457, at *6 (D. Md. Feb. 24, 2020) (Gallagher, J.); *Lusnak v. Bank of America, N.A.*, 883 F.3d 1185 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 567 (2018); *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 175 (E.D.N.Y. 2019). Yet, BofA continues to refuse to pay escrow interest to Maryland borrowers.

---

[1] *See* ECF No. 41 at ¶ 20 (BofA's Answer) ("BofA did not pay interest to Ms. Clark and the Class members on the funds held in escrow accounts."); *id*. at ¶ 2 ("Bank of America admits that it did not pay interest on the funds held in the escrow account associated with Plaintiff's mortgage and that, for its borrowers with escrow accounts, it did not pay interest to all such borrowers on the funds held in those borrowers' escrow accounts.").

1

Because BofA has ignored and continues to violate the Maryland statute, as well as its contractual obligations to its mortgagors with escrow accounts, Plaintiff asserts claims for herself and the Class for breach of contract; violation of Md. Code Ann., Com. Law § 12-109; and violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301, *et seq*, all of which this Court correctly refused to dismiss (ECF No. 39). With respect to each of these claims, Plaintiff now asks the Court to certify a class under Rule 23(b)(3) consisting of:

> All mortgagors who at any time between July 1, 2008 and the date of class certification (i) were a party to a loan secured by a first deed of trust on any interest in residential real property located in Maryland to which Bank of America, N.A. (collectively, "BofA") was the lending institution as that term is defined in Md. Code Ann., Com. Law § 12-109(a)(2); (ii) for whom was maintained a loan escrow account, as that term is defined in Md. Code Ann., Com. Law § 12-109(a)(3); (iii) with said escrow account serviced by or for BofA; and (iv) who were not annually paid interest on their funds held in escrow in accordance with the statutory formula specified in Md. Code Ann., Com. Law § 12-109(b) (the "Class").[2]

This case is ideally suited for class treatment. Indeed, in granting class certification in a similar case against Flagstar Bank involving nonpayment of escrow interest in violation of a similar California law, the Northern District of California held:

> [T]his is a classic and textbook issue of the class action device. The law required interest to be paid but the savings association did not do so to its borrowers, all allegedly cheated by the savings association. These borrowers now join together to

---

[2] Although Ms. Clark's claims in this case are subject to three-year statutes of limitations under Maryland law, which would take the class period back to November 29, 2015 (i.e., three years before Plaintiff filed this action) (Dkt. 1), Plaintiff respectfully submits that the Court in its discretion should apply equitable tolling principles, and certify a Class that goes back to July 1, 2008, when BofA launched its policy of deliberately defying Maryland law. *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (instructing that "[e]quitable tolling applies . . . . [where] the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)); *see also Dickerson v. United Parcel Serv., Inc.*, No. WMN–15–2, 2015 WL 3889975, at *3 (D. Md. June 23, 2015) (noting equitable tolling is proper "'where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result'" (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

> vindicate their right to interest under the law. The miscellaneous differences thrown out by the savings association are just that — miscellaneous — and cannot obfuscate the main point that the savings association allegedly *cheated* thousands of borrowers out of the interest due to them and pocketed the money for itself. It is hard to imagine a case more worthy of class treatment.

*Kivett v. Flagstar Bank*, 333 F.R.D. 500, 507 (N.D. Cal. 2019). The same is true here.

Similarly here, it is beyond dispute that numerosity is satisfied as the putative class consists of thousands of members. Commonality and predominance are also satisfied because the unlawfulness or unfairness of BofA's actions primarily turn on whether or not Maryland law requires BofA to pay interest on certain mortgage loans, which can be answered through common proof. Fundamentally, the liability issue rises and falls with BofA's preemption defense. All Class members were likewise harmed in the identical way through BofA's policy of refusing to pay interest on funds held in escrow accounts. Furthermore, membership in the Class and each class member's damages can be determined through BofA's own computerized records.[3]

Plaintiff also satisfies typicality. She, like the other Class members, had a loan with BofA secured by a first deed of trust subject to Maryland law requiring the payment of interest if applicable law so required. BofA required her to maintain an escrow account, but she was not paid interest on the funds held in that account.

Adequacy of representation is similarly satisfied. Plaintiff has, and will continue to, prosecute this case on behalf of the Class without any conflict. Further, her counsel are highly experienced class action attorneys, who have prosecuted successful class actions against BofA and other financial institutions.

Finally, superiority is met because of the number of Class members, the relatively small

---

[3] The Expert Report of Arthur Olsen ("Olsen Rep.") (Ex. 1) sets out the methodology for determining class membership and damages through BofA's computerized records. It is consistent with the statutory method that BofA itself applies when paying interest on escrow.

sizes of their individual claims, and their limited ability to individually pursue such claims. Thus, all the requirements of Rules 23(a) and 23(b)(3) have been satisfied such that this Court should find class certification appropriate.

## II.   FACTS

### A.   Plaintiff And The Class Members Entered Into Deeds of Trust With Materially Identical Relevant Provisions.

BofA owns loans secured by residential property in Maryland. ECF No. 41 at ¶¶ 14-15. For those loans, borrowers, including Plaintiff, enter into industry-standard form deeds of trust that each contain materially identical language that requires BofA to comply with applicable Maryland law and thus to pay interest on funds held in escrow accounts.

These standardized form deeds of trust are issued by Fannie Mae/Freddie Mac for Conventional and Veterans Affairs ("VA") loans and by the Federal Housing Administration ("FHA") for its loan type.[4] Specifically, BofA uses form Purchase Money Deeds of Trust for new purchases and Deeds of Trust for refinances to secure its interest in the property. Ex. 2, Deposition of Catherine Strum Dated Feb. 17, 2021 ("Strum Dep.") at 40:21-41:10; 45:16-18; 99:13-100:9.[5] A chart produced by BOA summarizes the deed of trust forms used in Maryland to originate loans during the period of December 2009 to the present, which are representative of the relevant form

---

[4] Fannie Mae, Freddie Mac, the FHA, and the VA are investors that set guidelines for loans eligible to be sold to them by lenders such as BofA and have model deed of trust forms that BofA uses. Ex. 2, Strum Dep. at 88:2-92:15. The VA loans utilize the conventional forms but require a VA-required disclosure on the first page that does not bear on the issues in this case. *Id.* at 91:14-92:15.

[5] ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 2, Strum Dep. at 77:19-78:11;  79:1-80:8;  159:21-163:17. ████████████████████████████████████████████ ██████████████████████████████████████████████████ *Id.*; *see also id.* at 75:3-7, 16-18; 76:5-77:7; 165:14-21. Even for loans underwritten by BofA that did not conform with investor guidelines, it was BofA's practice to use the investor form deeds of trust and not to modify the forms. *Id.* at 93:12-94-1, 16-21; 95:9-11; 95:18-96:4; 97:7-11; 163:19-165:6.

deeds of trust. Ex. 3 (Strum Dep. Ex. 2). Plaintiff also provides the Court specimens of the form deeds of trust to support that the "Definitions" and/or "Uniform Covenants," *i.e.* their contract terms, are materially the same. Ex. 2, Strum Dep. at 92:9-15; 93:6-10; Ex. 4 (BANA-CLARK-0016089-101) (MERS FHA Purchase Money Deed of Trust); Ex. 5 (BANA-CLARK-0016542-554) (FHA Purchase Money Deed of Trust); Ex. 6 (BANA-CLARK-0016522-531) (FHA Deed of Trust); Ex. 7 (BANA-CLARK-0016188-201) (Fannie Mae/Freddie Mac Deed of Trust); Ex. 8 (BANA-CLARK-0016723-736) (MERS Fannie Mae/Freddie Mac Purchase Money Deed of Trust) Ex. 9 (BANA-CLARK-0016117-131) (VA MERS Deed of Trust).

Each deed of trust contains the same material terms. Each has a "Governing Law" provision requiring BofA to comply with "the law of the jurisdiction in which the property is located." *See e.g.*, Ex. 2, Strum Dep. at 110:12-112:12; Ex. 4, ¶15; Ex. 6, ¶14 (BANA-CLARK-0016522-531). Because the mortgaged properties of each class member is in Maryland, Maryland law necessarily applies to each class member's deed of trust. To that end, most deeds of trust contain a term requiring compliance with and defining "Applicable Law." *Id.*[6] In addition, each deed of trust also has an escrow account requirement, some defining the term "Escrow Items" and others just incorporating the mandatory obligation to fund such items.[7] As an example, Plaintiff's 2013 deed of trust contains each of these provisions. *See* Ex. 25 at ¶ (J), 3, 16 (Plaintiff-Clark-000037-54). In

---

[6] Exhibit 4 is an example of a deed of trust containing an "Applicable Law" definition, meaning "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. 4, ¶ (J), 15. The absence of an "Applicable Law" definition in earlier forms is immaterial because of the requirement to comply with Governing Law.

[7] For example, the FHA Deed of Trust Form contains a Definition titled "Escrow Items," and Uniform Covenants, titled "Payment of Principal, Interest, Escrow Items, and Late Charges" and "Funds for Escrow Items." Ex. 4. The same is true for the Conventional and VA forms. Ex. 7; Ex. 9. An earlier FHA form included "Escrow Items" and "Escrow Funds" definitions within the Uniform Covenant, titled "Monthly Payment of Taxes, Insurance, and Other Charges." Ex. 6. The terms of these sections are materially identical across the various standardized forms used by BofA.

addition to originating Maryland mortgage loans, BofA ██████████████████████

███ containing the same relevant contract required by Fannie Mae/Freddie Mac and the FHA.

All Class members had escrow accounts with respect to mortgages on residential property in Maryland. Each month, borrowers would pay an amount into the escrow account that would be used by BofA to pay expenses related to the mortgaged property such as property taxes and insurance. *See, e.g.* Ex. 9.[8] BofA maintains escrow accounts for loans it owns and services, and at times it uses servicers or sub-servicers for other loans it owns who maintain escrow accounts for BofA. *See, e.g.* Ex. 10, Deposition of Jennifer Orriss Dated Feb. 24, 2021 ("Orriss Dep.") at 163:7-13.

**B.    BofA Has Intentionally Ignored Maryland Law And Has Refused To Pay Escrow Interest To Borrowers In Maryland.**

All Class members' deeds of trust require BofA to pay interest on funds held in their escrow accounts if required by applicable law. That promise is found in the "Funds for Escrow Items" covenant stating: "Unless an agreement is made in writing *or Applicable Law requires interest to be paid on the Funds*, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds." Ex. 5 (emphasis added).[9] And Maryland law does, in fact, require the payment of escrow interest.

---

[8] "Borrower *shall pay* to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full a sum (the 'Funds') to provide for payment of amounts due for: (a) *taxes and assessments* and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any: (c) *premiums for any and all insurance required by Lender* under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called 'Escrow Items.'" Ex. 9 (emphasis added).

[9] A deed of trust missing this provision nevertheless obligates BofA to pay interest on escrow accounts due to the Governing Law provision requiring compliance with Maryland law. *See, e.g.* Ex. 6.

Specifically, Maryland Commercial Law Code §12-109(b)(1) provides:

> A lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property and creates or is the assignee of an escrow account in connection with that loan shall pay interest to the borrower on the funds in the escrow account at an annual rate not less than the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as published by the Federal Reserve in "Selected Interest Rates (Daily)--H.15", as of the first business day of the calendar year.[10]

However, BofA ignored the statute, falsely asserting that it is preempted by federal law.[11]

At all relevant times, BofA has been well aware that Maryland state law requires the payment of interest on funds held in escrow accounts.[12] Indeed, federal courts—including this Court—have repeatedly told BofA that state statutes mandating escrow interest are not preempted and that BofA must comply with these statutes. *See generally Lusnak*; *Clark*; *Hymes*. BofA is also aware ██████. ██████████████████████████████.[13] Yet, BofA continues to ignore the Maryland

---

[10] Applicable interest rates include 0.12% in 2014, 0.22% in 2015, 0.57% in 2016, 0.87% in 2017, 1.78% in 2018, and 2.52% in 2019. *See* Ex. 11 (BofA's Response to Second Set of Interrogatories, at No. 9(b) as to rates for 2014-2019). ████████████████████████████████████████

The rates for the other years in the Class Period can be found at https://www.federalreserve.gov/datadownload/Download.aspx?rel=H15&series=f48a890c5a8bc5 73385c54f489ab9577&filetype=spreadsheetml&label=include&layout=seriescolumn&from=01/ 01/2008&to=04/23/2021.

[11] BofA's interrogatory response confirms: "On or after November 1, 2015, Bank of America's policy was to pay interest for loans that were originated by state-chartered entities, or for loans that had previously received interest on escrowed funds from the Bank or a prior servicer. Before 2016, the Bank paid interest on many loans even if payment was not necessarily warranted under the Bank's written policy. In 2016, Bank of America released a procedure that established the following policy: loans originated by Bank of America after January 1, 2016 would not receive interest on escrow regardless of state guidelines, and loans originated prior to January 1, 2016 would continue to receive interest payments if interest had been paid in connection with those loans prior to that date. Bank of America's position was and continues to be that Md. Com. Law Code § 12-109 is preempted by the National Bank Act, and any past payments of interest on escrow were based on a choice by the Bank to minimize customer impact." *See* Ex. 11 at No. 9(a).

[12] *See, e.g.*, Ex. 12 at 11-12 (BANA-CLARK-0016789-817) (████████████████████████ ██████████████████████).

[13] *See* Ex. 10, Orriss Dep. at 165-69 (██████████████████████████████); Ex. 13

statute and to this day refuses to pay Maryland borrowers escrow interest in violation of Maryland law and contrary to this Court's order interpreting applicable law.[14]

Notably, in the past, ██████████████████████████████████

████████████████.[15] (██████████████████████████████████

██. However, ████████████████████████████████████████

██████████████████████████████████.[16]

████████████████████████████████████████████████

████████████████████████████████████████████████

██.[17] ████████████████████████████████████████████

████████████████████████████████████████████████.[18]

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████."[19] ██████████████████████



---

(BANA-CLARK-0000209); Ex. 14 (BANA-CLARK-0008503-05) (██████████████████████ █████████████████████████████).

[14] As a result of the *Lusnak* decision, ██████████████████████████████████ █████████████████████████ Ex. 10, Orriss Dep. at 193-98. However, BofA continues to ignore the Maryland statute.

[15] *See* Ex. 10, Orriss Dep. at 85.

[16] *See* Ex. 10, Orriss Dep. at 84-95, 98-100, 105-107 (████████████████████████ ████████████████████████████████); Ex. 17 ¶¶ 5-7 (BANA-CLARK-0018974-78) (████████████████████████████████████ █████████); Ex. 11 at No. 9(a) (██████████████████); *see also supra* n.8.

[17] Ex. 10, Orriss Dep. at 85.

[18]*See* Ex.13; Ex. 18, Deposition of Jennifer Orriss Dated Jun. 11, 2019 ("*Lusnak* Orriss Dep.") at 58-59, 171-74.

[19] BofA produced the following notice in Ms. Clark's 2013 loan file:

███████████████████████████████████████████████████████████████

████████████.[20] As a result of its continuing violations of Maryland law, BofA has failed to

pay millions, if not tens of millions, to Maryland borrowers.

### C.   Plaintiff Was Among the Many Affected BofA Customers.

Plaintiff is one of the many Maryland borrowers who fell victim to BofA's policy decision

to not pay escrow interest—in violation of Maryland state law—based on its erroneously asserted

federal preemption claim. In connection with her BofA mortgage loans, Plaintiff was required to

maintain a mortgage escrow account.[21] ECF No. 41 at ¶ 18. Yet, since Plaintiff refinanced with

BofA in 2010, BofA has failed to pay her interest on these balances as required by Maryland law.

*Id.* ¶ 2, 20. For example, according to the Bank's data, for the time period from January 2, 2015

through December 31, 2019, Plaintiff should have received $69.40 in escrow interest that was due

to her by Maryland statute, but which BofA intentionally failed to pay in violation of Maryland



Ex. 13. ████████████████████████████████████████████████████. *See*
Ex. 19 (BANA-CLARK-0016203); Ex. 20 (BANA-CLARK-0016043); Ex. 21 (BANA-CLARK-
0004057); Ex. 10, Orriss Dep. at 63-69, 71 (██████████████████████████████████
████████.").

[20] For example, ██████████████████████████████:
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████.
Ex. 22 at 2 (BANA-CLARK-0017592-97).

[21] *See, e.g.*, Ex. 25 at BANA-CLARK-0000922 (██████████████████████████████
██████████████████████████).

law.[22] Moreover, since the filing of the instant lawsuit, BofA has continued to refuse to pay escrow interest due Plaintiff under Maryland law, notwithstanding this Court's order rejecting BofA's preemption claim. ECF No. 39, 65; Ex. 10, Orriss Dep. at 193:5-199:25 (████████████████████ ███████████████████████████████); Ex. 24, Deposition of Kathryn Martin Dated July 10, 2019 ("Martin Dep.") at 32:12-33:1, 34:13-35:11, 36:23-39:1 (████████████████ ███████████████████████████████████████████████████████████████ ███████████████).

## III.    ARGUMENT

### A.    Legal Standard.

"[C]ertification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also 'afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damages actions.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (quoting 5 James Wm. Moore et al., Fed. Prac. & Proc. § 23.02 (3d ed. 1999)). District courts have broad discretion to determine whether to certify a class, and how to thereafter manage it. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997) ("The law gives broad leeway to district courts in making class certification decisions"); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010) (district courts have "wide discretion" in deciding class certification). Courts give Rule 23 a "'liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best service the ends of justice for the affected parties and promote judicial economy.'" *Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 326 (D. Md. 2012) (quoting

---

[22] See Ex. 1, Olsen Rep. ¶ 25. She will also be due interest for prior years which the expert will calculate post-class certification.

*Gunnells*, 348 F.3d at 424).

At the certification stage, merits questions "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013). "[C]ourts must rigorously examine whether plaintiffs have met the prerequisites of Rule 23(a) at the certification stage, an analysis that will often overlap with the merits of a claim." *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015). But "'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Edmondson v. Eagle Nat'l Bank*, 336 F.R.D. 108, 111 (D. Md. 2020) (Gallagher, J.) (quoting *Amgen*, 568 U.S. at 465).

To grant class certification, several criteria must be satisfied. First, the class must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. *Baugh v. Fed. Sav. Bank*, 337 F.R.D. 100, 106 (D. Md. 2020) (Gallagher, J.) (certifying class of borrowers alleging that lender violated Real Estate Settlement Procedures Act (RESPA) by receiving kickbacks); Fed. R. Civ. P. 23(a).

Second, the class action must fall within one of the three categories enumerated in Rule 23(b). Here, Plaintiff seeks to proceed under Rule 23(b)(3), which requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Relevant factors include: "the class members' interests in individually controlling the prosecution or defense of separate actions;" "the extent and nature of any litigation concerning the controversy already begun by or against class members;" "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

11

and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In addition, the Fourth Circuit has held that Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable" or "ascertainable" by reference to objective criteria. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

### B.     The Claims for Relief.

#### 1.     Breach of Contract.

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract...." *JayKal LED Sols. Inc. v. G-W Mgmt. Servs., LLC*, No. 17-1380, 2017 WL 4745450, at *4 (D. Md. Oct. 20, 2017). In Maryland, "[t]he elements of a claim for breach of contract include contractual obligation, breach, and damages." *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (internal quotes omitted). Here, every class member's claim rests on the same "contractual obligation" set forth in BofA's form deeds of trust, the same "breach" of that obligation in the form of BofA refusing to pay escrow interest as required by Maryland law, and the same "damages" equal to the amount of escrow interest that BofA should have paid to the class members under Maryland law.

Courts routinely grant class certification of breach of contract claims arising out of standardized contracts, such as are at issue here. *See, e.g.*, *Gray v. Hearst Comms., Inc.*, 444 F. App'x 698, 702 (4th Cir. 2011) (affirming Rule 23(b)(3) certification of class, in part, because "determination of whether White Directory breached its standard distribution obligation will resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims"); *Edmondson*, 336 F.R.D. at 117 (finding typicality met by putative class seeking RESPA relief because "[d]efendants have not shown that the class representatives' mortgage agreements differ meaningfully from other class members' contracts"); *Foster v. CEVA Freight, LLC*, 272 F.R.D. 171, 174 (W.D.N.C. Jan. 31, 2011) (holding that "existence of a common operating

agreement signed by all members of the class, and of a common set of laws under which the claims of the class will be decided, is sufficient to satisfy Rule 23(a)(2)'s commonality requirement"); *Cowit v. CitiMortgage, Inc.*, No. 12-869, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) ("[C]laims arising from the interpretation of a form contract are particularly suited for class treatment, and breach of contract cases are routinely certified as such."); *In re Med. Capital Sec. Litig.*, No. 09-1048, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (surveying cases to conclude the same); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment.").

For example, in certifying a class in *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, a multidistrict case challenging the type of balance TD Bank used to assess overdraft fees, the court held that common issues predominated because the same form contracts and the same bank policies applied to all consumers, while stressing the importance of finding a uniform interpretation of the bank's contract, applicable to all. 325 F.R.D. 136, 155-57 (D.S.C. 2018) ("In this context, the focus is on the Bank's conduct in relation to the contractual language, and individual customers' 'intent' and 'course of performance' is largely irrelevant to resolving any ambiguity.").[23]

### 2.   Violation of Md. Code, Comm. Law §12-109.

Md. Code, Comm. Law §12-109(b)(1) requires that "[a] lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property

---

[23] *See also, e.g., Gunter v. United Fed. Credit Union*, No. 15-00483, 2017 WL 4274196, at *9 (D. Nev. Sep. 25, 2017); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012), *pet. for leave to appeal denied*, No. 12-90032 (11th Cir. Dec. 13, 2012).

and creates or is the assignee of an escrow account in connection with that loan shall pay interest to the borrower on the funds in the escrow account" at a statutorily specified rate of interest. It is undisputed that BofA did not comply with the statute. Therefore, liability for this violation has already been established in the absence of BofA's preemption defense.

### 3.   Violation of the Maryland Consumer Protection Act.

This Court also denied BofA's motion to dismiss with respect to Plaintiff's MCPA claim. (ECF No. 40.) Of relevance here, the MCPA's prohibition on unfair and deceptive trade practices include both misrepresentations and omissions that tend to deceive. Md. Code Com. Law § 13-301(1) and (3). A claim under the MCPA must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). Each of these elements can be demonstrated on a class-wide basis here.

"An unfair or deceptive practice or misrepresentation" can be established through BofA's uniform policy and/or practice of unlawfully denying mortgagors interest on their escrow funds. Instead of informing its mortgage customers of applicable Maryland law requiring the payment of escrow interest, BofA uniformly omitted this fact, while at the same time representing in word and action that it would and was following the law (or that it was not required to follow Maryland law due to its erroneous claim of preemption). Given BofA's uniform omission and uniform claim that preemption applies to all Class members, class-wide damages can be computed using BofA's historical customer escrow account transactional data just like it will be for the other claims.

Further, reliance can be presumed on a class-wide basis. *See Duffy v. Jerry's Chevrolet, Inc.*, No. 03-C-00-008650, 2001 WL 36140120 (Md. Cir. Ct. Aug. 29, 2001) ("[W]here multiple plaintiffs, standing in the same shoes, are subject to the uniform deceptive practices of defendants,

14

class certification has been held to be appropriate and reliance implied from the circumstances."); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 162, 175 (D.S.C. 2018) (certifying a MCPA subclass after "find[ing] . . . sufficient evidence of the uniformity and materiality of the putative misrepresentations and omissions has been presented to presume class-wide reliance" under the MCPA); *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 667 (N.D. Cal. 2019) (certifying Maryland class under MCPA and citing *Consumer Prot. Div. v. Morgan*, 387 Md. 125 (Md. Ct. App. 2005), for the principle that "individual consumer testimony was not necessary to establish consumer reliance and prove a violation of the statute"); *Brady v. Basic Research LLC*, 101 F. Supp. 3d 217, 237 (E.D.N.Y. 2015) (in discussion of MCPA, noting that pursuant to Md. Code Ann., Com. Law § 13-302, "'[a]ny practice prohibited by this title is a violation of this title, whether or not any consumer has in fact been misled, deceived, or damaged as a result of that practice'" (quoting *Consumer Prot. Div.*, 387 Md. at 163); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 484 (C.D. Cal. 2012) (finding presumption of reliance acceptable under the MCPA because: (1) "the plain language of the statute suggests an objective test by defining '[u]nfair or deceptive trade practices' to include a '[f]ailure to state a material fact if the failure . . . tends to deceive,'" as "'tend to deceive' implies an objective test" (quoting Md. Code Ann., Com. Law § 13-301(3)); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-04984, 2016 WL 5746364, at *6-7 (N.D. Cal. 2016) (finding reliance for MCPA claim can be decided using the reasonable consumer standard, in part, through citation to *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 713 (1999), which found that under the MCPA "'it is the probability that the deceptive practice affected the customer's decision that makes the misrepresentation material'" (quoting *Luskin's*, 353 Md. 335, 358 (1999)).

C.   **The Requirements of Rule 23(a) Are Satisfied.**

1.   **Numerosity.**

To satisfy the numerosity requirement, Plaintiff must show that the class is so numerous

that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While impracticability of joinder is not determined by a numerical test alone, a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991). *See also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014). Indeed, the Fourth Circuit has upheld the certification of a class with as few as 18 members. *See Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Here, the numerosity requirement is easily satisfied. Based on data produced by BofA, the Class contains ███████ of members. Ex. 1, Olsen Rep. at ¶ 17.

### 1.      Commonality.

"To establish commonality, the party seeking certification must 'demonstrate that the class members have suffered the same injury' and that their claims 'depend upon a common contention.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "'That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Dukes*, 564 U.S. at 350). However, commonality "is not defeated by minor differences in the underlying facts of an individual case." *Chado v. Nat'l Auto Inspections, LLC*, No. 17-2945, 2018 WL 3420018, at *6 (D. Md. July 13, 2018) (internal quotes omitted). All that is required is "one individual common issue shared among class members." *Id.* "Thus, the commonality requirement is not a high bar[.]" *Minter*, 274 F.R.D. at 533.

This Court has already held that this case "boils down to two critical facts" (ECF No. 65), which involve class-wide applicable law and evidence. Specifically, this action challenges BofA's systemic policy of ignoring Md. Com. Law Code § 12-109(b)(1), as well as its own contractual obligation to comply with that statute. Core legal and factual questions that will drive the resolution

of the claims here include:

  a.  Did Md. Com. Law Code § 12-109(b)(1) require BofA to pay escrow interest to Class members and did BofA violate that statute?

  b.  Did BofA, in fact, fail to pay such escrow interest to Class members?

  c.  Did BofA's failure to follow Md. Com. Law Code § 12-109(b)(1) breach Class members' form deeds of trust?

  d.  Did BofA's failure to follow Md. Com. Law Code § 12-109(b)(1) constitute an unfair, abusive, or deceptive trade practice under the Maryland Consumer Protection Act, Md. Com. Law Code § 13-301, et seq.?

  e.  Should BofA be ordered to pay damages to the Class in the amount of the unpaid escrow interest?

  f.  Should BofA be required to pay pre-judgment interest to the Class?

  BofA's liability ultimately hinges on answers to just two questions, both of which are common to the Class and well-suited to class-wide adjudication. First, was BofA required by either Md. Com. Law Code § 12-109(b)(1) or its contracts with borrowers to pay escrow interest? This is a common legal question that the Court can answer in one fell swoop for the Class. *See Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 88 (D. Md. 2009) (commonality satisfied where claim raised common question of whether defendant was required to pay the class members interest under a statutory interest requirement). The viability of BofA's preemption defense for defying the statute is a common legal question that will also yield a common answer for the Class.

  Second, did BofA, in fact, pay mortgage escrow interest to the Class at the statutorily required rates? We already know the answer to be "no." BofA already answered this common factual question by admission in its Answer. ECF No. 41 (paragraph 2: "Bank of America admits

that it did not pay interest on the funds held in the escrow account associated with Plaintiff's mortgage and that, for its borrowers with escrow accounts, it did not pay interest to all such borrowers on the funds held in those borrowers' escrow accounts."); (paragraph 20: "Bank of America admits that it did not pay interest to Plaintiff on the funds held in her escrow account."); *see also Allbritton v. Wiggins*, No. 13-00158, 2014 WL 12768317, at *8 (E.D. Ark. Mar. 14, 2014) ("Because defendants admit that Lifespring did not pay any of its employees their accrued PTO upon termination of their employment with Lifespring, the members of the proposed class will not need to present evidence that varies from member to member to make a prima facie showing; rather, the same evidence–defendants' admission–will suffice for each member to make a prima facie showing, thereby making it a common question for purposes of Rule 23(b)(3).").

These same two common questions will drive the resolution of all of Plaintiff's and Class members' claims. Commonality is thus readily satisfied.

### 2.   Typicality.

"The typicality requirement concerns whether the named plaintiffs' claims are aligned and consistent with those of the class." *Craighead v. Full Citizenship of Maryland, Inc*., No. 17-595, 2018 WL 3608743, at *3 (D. Md. July 27, 2018) (citing Fed. R. Civ. P. 23(a)(3)). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Hewlett v. Premier Salons Int'l, Inc*., 185 F.R.D. 211, 217 (D. Md. 1997). A named plaintiff's claim is typical if it "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Craighead*, 2018 WL 3608743, at *3 (quoting *Speaks v. U.S. Tobacco Coop., Inc*., 324 F.R.D. 112, 136 (E.D.N.C. 2018)). "Typicality is satisfied when the plaintiffs and the class have an interest in prevailing on similar legal claims." *Calderon v. GEICO Gen. Ins. Co*., 279

F.R.D. 337, 346 (D. Md. 2012) (internal quotes omitted).

It is axiomatic that the named plaintiff's claims need not be "perfectly identical or perfectly aligned" with the claims of other class members, so long as his or her interest in prosecuting the case "simultaneously tend[s] to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006); *see also Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 447 (D. Md. 2018) ("These claims do not have to be factually or legal[ly] identical, but the class claims should be fairly encompassed by those of the named plaintiffs.") (citing *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 344 (4th Cir. 1998)). Accordingly, where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Chado*, 2018 WL 3420018, at *6 (internal quotes omitted).

Typicality is satisfied here because Plaintiff's claims and those of the Class are based on BofA's same course of conduct, the same legal theories, and the same injury: BofA failed to credit their escrow accounts with interest in violation of Maryland law and the deeds of trust, and also violated the MCPA. *See Bulmash*, 257 F.R.D. at 88 ("This same course of conduct by Travelers— Travelers' failure to pay statutory interest when it paid a claim more than thirty days after receipt— leads to the claims of all class members. The same legal theory concerning the requirements of Sections 19-505 and 19-508 exists for all class members."). The "facts and theories underlying Plaintiff['s] claims will mirror those of other [class] members." *Amaya*, 326 F.R.D. at 449. Plaintiff's claims are therefore typical of the claims of the Class.

### 3.    Adequacy.

Rule 23(a)(4) requires that a class representative "'fairly and adequately protect the interests of the class.'" *Ward*, 595 F.3d at 179-80 (quoting Rule 23(a)(4)). Representation is

adequate if "'(1) the named plaintiffs' interests are not opposed to those of other class members, and (2) the plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.'" *Chado*, 2018 WL 3420018, at *7 (quoting *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 499 (D. Md. 2010)). Under the first prong, the Court must "ascertain whether [plaintiffs] are part of the putative class with legal interests aligned with those of the class, and whether they and the class members suffered similar injury." *Craighead*, 2018 WL 3608743, at *5. A conflict of interest between a named plaintiff and the putative class will only defeat the adequacy requirement if it is "fundamental." *Id.* Regarding the second requirement, "'[a]bsent contrary proof, class counsel is presumed competent and sufficiently experienced to prosecute the action on behalf of the class.'" *Chado*, 2018 WL 3420018, at *7 (quoting *Cuthie*, 743 F. Supp. 2d at 499).

Here, the interests of Plaintiff and the other Class members are aligned. There are no intra-class conflicts, let alone a fundamental one, and all Class members share the same interest in holding BofA accountable for its non-payment of escrow interest and obtaining the appropriate relief. Plaintiff suffered the same type of violations as other members of the Class and has appropriate incentive to seek those damages on behalf of the Class. Moreover, Plaintiff has retained counsel with extensive experience prosecuting class actions and other complex litigation, including class actions against lenders on behalf of mortgagors. *See* Exs. 26-29, Declarations of Anna Haac, Jonathan Streisfeld, Todd Garber, and Jeffrey Goldenberg; *see also Ayala*, No. EDCV 16-137-GW(KKX), 2017 WL 3328087, at *12 (C.D. Cal. July 27, 2017) ("Class Plaintiff has demonstrated that he has selected qualified counsel and that he and said counsel do not suffer from interests antagonistic to the remainder of the class.").

Plaintiff and proposed Class Counsel have also demonstrated their commitment to the Class by vigorously prosecuting this case for several years and they remain fully committed to

20

vigorously prosecuting this case on behalf of the Class going forward. *See* Ex. 16, Declaration of Cynthia Clark; Exs. 26-29. Ms. Clark has been actively involved and in regular communication with her counsel during the litigation, and has been responsive in providing documents and information for discovery responses and pleadings. Plaintiff has no conflicts of interest and is prepared to place the interests of the class above her own. Ex. 16. She will continue to oversee the attorneys and participate in the prosecution of this action. *Id.*

> **D.**    **The Proposed Class Is Ascertainable.**

In addition to the express requirements of Rule 23(a), the Fourth Circuit has held that Rule 23 "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co*., 764 F.3d at 358. Under this "ascertainability" requirement, a "class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id*. "The plaintiffs need not be able to identify every class member at the time of certification." *Id.* However, the class must be defined by objective criteria, and there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the definition. *Id.*

> Again, the proposed Class is defined as:
>
> All mortgagors who at any time between July 1, 2008 and the date of class certification (i) were a party to a loan secured by a first deed of trust on any interest in residential real property located in Maryland to which Bank of America, N.A. (collectively, "BofA") was the lending institution as that term is defined in Md. Code Ann., Com. Law § 12-109(a)(2); (ii) for whom was maintained a loan escrow account, as that term is defined in Md. Code Ann., Com. Law § 12-109(a)(3); (iii) with said escrow account serviced by or for BofA; and (iv) who were not annually paid interest on their funds held in escrow in accordance with the statutory formula specified in Md. Code Ann., Com. Law § 12-109(b).

Accordingly, there are clear, objective criteria that determine whether a given borrower is a Class Member. Membership in the class based on this objective criteria can be determined from BofA's historical loan and transactional data for each borrower, with BofA already having produced

██████████████████. Olsen Rep. at ¶ 19, 22-24. Additional discovery necessary for the identification of class members can occur following class certification, including for loans that were serviced for BofA during the Class Period.

Because the proposed Class can be identified using an administratively feasible methodology and objective criteria, the ascertainability requirement is satisfied.[24] Indeed, in connection with the *Lusnak* settlement distribution, Plaintiff's expert, who was appointed as Calculation Advisor with the agreement of BofA, used the same BofA historical loan and transactional data to identify settlement class members and calculate unpaid escrow interest owed to each. *See* Ex. 15, *Lusnak* Settlement Agreement at ¶¶ 1.2, 3.4.

### E.       The Requirements Of Rule 23(b)(3) Are Satisfied

Fed. R. Civ. P. 23(b)(3) authorizes certification where (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Here, both criteria are met.

#### 1.       Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This balancing test of common and individual issues is qualitative, not quantitative." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013). "Rule 23(b)(3) does *not* require plaintiff seeking

---

[24] ████████████████████████████████████████
████████████████████████████████████████.

class certification to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members." *Amgen*, 568 U.S. at 469 (emphasis in original; internal quotes omitted). Predominance is met when the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues, such that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Gray v. Hearst Comm's, Inc.*, 444 F. App'x 698, 700-01 (4th Cir. 2011); *see also* 2 Newberg on Class Actions § 4:49 (5th ed.) ("[T]he predominance test is meant to help courts identify cases in which aggregate treatment would be efficient.").

Here, the predominance test is easily satisfied because the two core questions that will drive the resolution of the action are common to the Class and amenable to class-wide adjudication through common sources of proof.

### a.      Common Liability Questions Will Predominate.

Plaintiff challenges, on behalf of the putative Class, BofA's deliberate, years-long policy of not paying escrow interest on Maryland residential mortgages despite the clear language in Md. Com. Law Code § 12-109(b)(1). Two common questions – one legal, one factual – will necessarily predominate the adjudication of all the claims in this case. Again, the central *legal* question is whether Md. Com. Law Code § 12-109(b)(1) and/or the Class members' deeds of trust require BofA to pay escrow interest. This common question of law can be answered by the Court through the straightforward application of the language of the relevant statute and standardized contract forms all requiring compliance with state law. *See Bulmash*, 257 F.R.D at 90 (common question predominated where claim was that defendant systematically did not pay interest required under

state statute); *Amaya v. DGS Constr.*, LLC, 326 F.R.D. 439, 450 (D. Md. 2018) ("uniform policy that, if found to be invalid, would provide common grounds for relief across the whole class"); *Smith v. Wash. Post Co.*, 962 F. Supp. 2d 79, 91 (D.D.C. Aug. 23, 2013) ("[C]ourts have found that facts predominate when interpretation of a form contract is at issue, noting that the claims are virtually identical because they arise from the same contractual language."). The Court's denial of the motion to dismiss forecasts the Court's ability to answer the common legal question.

The central *factual* question—whether BofA, in fact, did not pay the interest—is likewise common and well-suited to class-wide adjudication through a common source of proof. BofA's failure to pay the escrow interest is not disputed and will be proven through: (a) BofA's admissions of non-payment;[25] (b) ███████████████████████████████████████████████████████████████████████; (c) ██████████████████████████████████████████████████████████████████████ (*See, e.g.,* Ex. 23, "Interest on Escrow (IOE) Rate – Validate," BANA-CLARK-0001283); and (d) expert testimony from Plaintiff's expert, Arthur Olsen, summarizing his analysis of BofA's historical loan and transactional data, ████████████████████████████████████████████████

---

[25] *See also In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ("[T]he fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of predominance analysis. Even resolved questions continue to implicate the 'common nucleus of operative facts and issues' with which the predominance inquiry is concerned. Just as much as do contested issues, resolved issues bear on the key question that the analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." (citations omitted)); *Murfitt v. Bank of Am. NA*, No. 13-1182, 2015 WL 13306363, at *9 (C.D. Cal. Oct. 8, 2015) ("[T]he fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of predominance analysis.") (citation omitted); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000) ("[T]he fact that an issue has been resolved on summary judgment does not remove it from the predominance calculus.").

████████████████████████. Following class certification, Mr. Olsen will apply his methodology to all of the data produced by BofA to identify everyone in the Class who should be provided a class notice, and Plaintiff will submit a proposed notice plan to the Court.[26]

**b.    Each Class Member's Damages Amount is Capable of Calculation By Automated Means.**

Importantly, "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys … predominance, or otherwise forecloses class certification." *Gunnells*, 348 F.3d at 427-28. To the contrary, "Rule 23 explicitly envisions class actions with such individualized damage determinations." *Id.*; *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 349 (D. Md. 2012) (similar); *see also Tyson Foods*, 136 S. Ct. at 1045 (holding that a class action "may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses") (citation omitted). Accordingly, damages calculations pose no barrier to the predominance finding. At the certification stage, Plaintiff must merely present a feasible damages method "consistent with [her] liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-36 (2013).

Here, Plaintiff seeks damages equal to the amount of escrow interest that should have been paid pursuant to § 12-109(b)(1), plus prejudgment interest.[27] This can be calculated for each Class Member on a loan-by-loan basis using BofA's historical data for each loan and the methodology prescribed by statute ████████████████████. *See* Newberg on Class Actions § 12:4 (5th ed.) ("[T]he fact that there may be thousands or millions of such

---

[26] BofA may claim it does not possess all servicing data for escrow accounts maintained for BofA by its servicers or sub-servicers for a limited number of loans. But it should have custody or control of that information as the owner of the loans.

[27] *See* § 12-109(b)(1) (specifying rate of "not less than the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as published by the Federal Reserve in 'Selected Interest Rates (Daily) -- H.15', as of the first business day of the calendar year").

damage calculations does not defeat the conclusion that common issues predominate; it is black-letter class action law that such damage calculations do not render the common liability issue nonpredominant."); *Edelen v. Am. Residential Servs., LLC*, No. 11-2744, 2013 WL 3816986, at *7 (D. Md. July 22, 2013) (determination of individual damages based on defendants' records were merely "computations" not requiring "separate mini-trials").

The report of Plaintiff's expert, Mr. Olsen, sets forth the methodology by which such calculations may be made, which is consistent with Maryland law and is ███████████████

████████████████████████████████████████████████████. *See* Ex. 1, Olsen Rep. at ¶¶ 19(g), 23-25. This measure directly fits Plaintiff's theory of liability—*i.e.*, that BofA failed to pay these same amounts in violation of Maryland law. *Comcast Corp.*, 569 U.S. at 35. In addition, Mr. Olsen can similarly calculate pre-judgment interest for each Class member's damages amount, which continues to run. BofA, in fact, agreed to the appointment of Mr. Olsen as "Calculation Advisor" in connection with the settlement of the *Lusnak* matter. *See* Ex. 15, *Lusnak* Settlement Agreement ¶¶ 1.2, 3.4(d). In this role, Mr. Olsen used the same type of class loan and transactional data produced by BofA in this case to calculate the amount of escrow interest owed to settlement class members in California. *See id.*; *see also* Ex. 1, Olsen Rep. at ¶¶ 20-21. Mr. Olsen also served as the plaintiffs' expert in *Kivett v. Flagstar*, in which the court adopted his damages and pre-judgment interest calculations in granting plaintiff summary judgment. *See* No. 18-05131, 2020 WL 7260531, at *4-6, 13 (N.D. Cal. Dec. 10, 2020). As here and in *Lusnak* and *Kivett*, Mr. Olsen was able to follow state law and the defendant bank's own practice, to calculate escrow interest owed "with near mathematical certainty," as well as pre-judgment interest. *Id.* at *13. Predominance is thus easily satisfied.

     **2.**     **Superiority.**

Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a

class action is "superior to other available methods for fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615. It requires the court to consider four factors: (1) the interests that members of the class have in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) difficulties likely encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Each factor weighs in favor of certification here. It is not economically feasible for individual class members to bring separate actions. The costs of individual litigation greatly outweigh the modest amounts each individual class member is owed. "In other words, for most class members the only realistic alternative to a class action is no action at all." *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 162 (D.S.C. 2018). Indeed, as evidenced by the $▮▮▮ that Plaintiff's expert calculated Ms. Clark was owed for the years 2015-2019 (Ex. 1, Olsen Rep. at ¶ 25),[28] the size of each class member's individual damages would be dwarfed by the expense of prosecuting an individual case, and thus class members are unlikely to pursue individual claims. *Id.* ("The vast majority of class members have a *de minimis* interest in individually controlling the prosecution of their available balance claims because the monetary value of their damages would be dramatically outweighed by the cost of litigating an individual case."). "[T]he low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010).

---

[28] Two additional years of escrow interest to account for 2013 and 2014 on Plaintiff's current loan will not change this calculus, should the Court certify a class dating back farther than 2015 as requested. Nor will the inclusion of prejudgment interest.

With respect to the second factor, Plaintiff is unaware of any other action commenced by a Maryland borrower of BofA.[29] With respect to the third factors, courts look to whether certification in this Court would lead to duplicative results or place the controversy in an inconvenient forum. *See* Fed. R. Civ. P. 23(b)(3)(C). Certifying a class in this action will avoid duplicative results by unifying numerous common issues of law and fact. "'Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.'" *In re TD Bank*, 325 F.R.D. at 162 (quoting *In re Checking Account Overdraft Litig.*, 286 F.R.D. at 659). Nor is this forum inconvenient. Rather, it would be far more efficient for the judicial system and the parties to have a single adjudication, instead of multiple separate cases about the same issues. *Amchem*, 521 U.S. at 615.

As for the fourth factor, this case poses no significant or unusual manageability problems. In fact, given that BofA uniformly refused to pay escrow interest to the Class as a matter of company policy, there may not even need to be a trial in this case because liability and damages might be adjudicated on a motion for summary judgment, as it was in *Kivett*, 2020 WL 7260531 at *14. In that case, the court found Flagstar liable for violation of California's law requiring escrow interest to be paid and subsequently held damages could be determined on summary judgment using calculations performed by Mr. Olsen, the same expert Plaintiff has retained here. At the very least, the threshold central legal question of what the statute requires can be decided by the Court without a trial. Even if the Court ultimately determines that a trial is necessary, it

---

[29] Plaintiff is aware of two other actions pending in the Eastern District of New York, in which the New York putative class plaintiffs have asserted the right to pursue similar claims on behalf of a multi-state class that, if certified, could include Maryland BofA borrowers. Those cases survived motions to dismiss, but are the subject of an interlocutory appeal to the Second Circuit Court of Appeals. *Hymes*, 408 F. Supp. 3d at 175. The pendency of those cases do not defeat this superiority factor.

would be quick and efficient because the dispute centers on the application of a single Maryland statute and both liability and damages can be adjudicated using common sources of proof.

In short, class treatment is not only the superior method for adjudication of the Class Members' claims, but also for all practical purposes the *only* method for fairly and efficiently litigating their claims. Accordingly, the "superiority" test is satisfied.

In addition to the contested certification decision in *Kivett* discussed above, in *Lusnak*, which involved virtually identical claims brought on behalf of a class of California borrowers against BofA, the court certified a settlement class and found that the class satisfied all requirements of Rules 23(a) and 23(b)(3). *See Lusnak v. Bank of America, N.A*., No. 14-01855, ECF No. 117 ¶ 6 (order granting preliminary approval of settlement class); ECF No. 130 ¶ 8 (order granting final approval of settlement class). Just as the requirements of Rules 23(a) and 23(b)(3) were met in *Lusnak*, they are met here.

**F.     The Court Should Appoint Plaintiff and Plaintiff's Counsel to Represent the Class.**

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In evaluating proposed class counsel, the court considers: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). "The inquiry focuses on whether counsel is competent, dedicated, qualified, and experienced enough to appropriately conduct the litigation as a class action." *Riggleman v. Clarke*, No. 17-00063, 2019 WL 1903795, at *2 (W.D. Va. Apr. 29, 2019).

Here, undersigned proposed Class Counsel have extensive experience litigating class

actions, are knowledgeable about the applicable law, have been vigorously prosecuting this case on behalf of the Class for more than two years, and remain fully committed to doing so going forward. Ex. 26-29. Plaintiff respectfully requests that the Court appoint them as Class Counsel pursuant to Rule 23(g)(1).

Likewise, Plaintiff has also been actively involved, provided information, devoted substantial time, and remains fully committed to prosecuting this case on behalf of the Class. Ex. 16. She is well-suited to serve as class representative and respectfully requests that the Court appoint her to represent the Class.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion and enter an Order certifying the proposed Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appoint Plaintiff as class representative, and appoint her counsel as Class Counsel.

Dated: April 28, 2021                         Respectfully submitted,

*/s/ Anna C. Haac*

Anna C. Haac
Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Ph.: (202) 973-0900
ahaac@tzlegal.com
hzavareei@tzlegal.com

Jonathan M. Streisfeld (pro hac vice)
Daniel Tropin (pro hac vice)
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Ph.: (954) 525-4100
streisfeld@kolawyers.com

ostrow@kolawyers.com

Todd S. Garber (*pro hac vice*)
Bradley F. Silverman (*pro hac vice*)
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
Ph.: (914) 298-3283
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiff and Putative Class*