**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CYNTHIA CLARK, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Case No: 1:18-cv-3672 (SAG) |
| v. | |
| BANK OF AMERICA, N.A., | |

**[REDACTED] MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

i

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ...............................................................................................................................7

I.      Legal Standard ................................................................................................................7

II.     Section 12-109 Affords a Private Right of Action to Ms. Clark .....................................7

        A.      Section 12-109 Was Enacted for the Special Benefit of Maryland Borrowers ..............8

        B.      There is Implicit Intent to Imply a Remedy for Maryland Borrowers. .........................9

        C.      Implying a Private Right of Action is Consistent With the Legislative Scheme. ........10

III.    BofA is Not Entitled to Summary Judgment on Plaintiff's MCPA Claim. ..............................12

        A.      Plaintiff Has Not Waived or "Disavowed" Omission-Based
                Claims or Affirmative Misrepresentation-Based Claims Based on
                BofA's Periodic Statements ..........................................................................................13

        B.      Plaintiff's MCPA Claim Does Not Rest on a "Mere" Breach of Contract ..................15

        C.      Plaintiff's MCPA Claim Does Not Rest on an Innocent Mistake of Law. ...................16

        D.      Plaintiff's MCPA Claim is Not Barred by Statute of Limitations ................................21

        E.      Plaintiff Relied on BofA's Deceptive Conduct By Making Monthly Payments ..........23

IV.     BofA is Not Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim ...........24

        A.      The Notice-And-Cure-Provision Is Inapplicable To Plaintiff's Claims. .....................24

        B.      Any Notice To Cure Would Have Been Futile. ............................................................26

CONCLUSION ..........................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*78/79 York Assocs. v. Rand,*
175 Misc. 2d 960 N.Y.S.2d 619 (1998) ............................................................22

*Accord City of New York v. Tavern on the Green Intl. LLC,*
351 F. Supp. 3d 680 (S.D.N.Y. 2018) ...........................................................28

*Allstate Ins. Co. v. Pitts,*
2019 WL 1980287 (D. Md. May 3, 2019) ......................................................18

*Ayres v. Ocwen Loan Servicing, LLC,*
129 F. Supp. 3d 249 (D. Md. 2015) ........................................................ 12, 21

*Baker v. Montgomery Cty.,*
427 Md. 691 (Ct. App. 2012) ..........................................................................8

*Baltimore Scrap Corp. v. David J. Joseph Co.,*
No. L–96–827, 1996 WL 720785 (D. Md. 1996) .........................................20

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.,*
822 F. Supp. 2d 505 (D. Md. 2011) ...............................................................24

*Bezmenova v. Ocwen Fin. Corp.,*
2013 WL 386948 (D. Md. July 23, 2013) .....................................................15

*Bocchini v. Gorn Mgmt Co.,*
69 Md. App. 1 (1986) ....................................................................................15

*Cantero v. Bank of America, N.A.,*
No. 1:18-cv-04157 (E.D.N.Y.) ......................................................................28

*Casey v. Geek Squad Subsidiary Best Buy Stores, LP,*
823 F.Supp.2d 334 (D. Md. 2011) .................................................................13

*Chavis v. Blibaum Assoc., P.A.,*
246 Md. App. 517 (2020) ...............................................................................18

*Clark v. Bank of Am., N.A.,*
2020 WL 902457 (D. Md. Feb. 24, 2020) .......................................................2

*Dave & Buster's, Inc. v. White Flint Mall, LLP,*
616 Fed. Appx. 552 (4th Cir. 2015) ...............................................................22

*Estep v. Fed. Home Loan Mortg. Corp.,*
2014 WL 1276495 (S.D.W. Va. Mar. 27, 2014) ...........................................26

*Fangman v. Genuine Title, LLC,*
447 Md. 681 (Ct. App. 2016) ................................................................ 8, 9, 11

*First Union Nat'l Bank v. Steele Software Sys. Corp.,*
154 Md. App. 97 (2003) .................................................................................16

*Forest Capital, LLC v. Pearsall,*
725 Fed. Appx. 239 (4th Cir. 2018).................................................................22

*Gerber v. First Horizon Home Loans Corp.,*
    2006 WL 581082 (W.D. Wash. Mar. 8, 2006) ...................................................26

*Giotta v. Ocwen Fin. Corp.,*
    2016 WL 4447150 (N.D. Cal. Aug. 24, 2016) ...................................................26

*Gorby v. Weiner,*
    2014 WL 4825962 (D. Md. Sept. 23, 2014) ....................................................26

*Grand Jury Subpoena: Under Seal,*
    415 F.3d 333 (4th Cir. 2005) ........................................................................21

*Hall's Reclamation, Inc. v. Apac Carolina, Inc.,*
    103 F.3d 117 (4th Cir. 1996) .........................................................................16

*Hebbler v. First Marine Bank,*
    2018 WL 3818855 (D. Md. Aug. 10, 2018) ............................................... 15, 24

*Hill v. Nationstar Mortg. LLC,*
    2015 WL 4478061 (S.D. Fla. July 2, 2015) ....................................................26

*Hymes v. Bank of Am., N.A.,*
    408 F. Supp. 3d 171 (E.D.N.Y. 2019) ........................................................ 2, 28

*ITyX Sols., AG v. Kodak Alaris Inc.,*
    2018 WL 2392004 (D. Mass. May 25, 2018) ..................................................28

*John & Cher v. Howard Bank,*
    2021 WL 2226195 (D. Md. June 2, 2021) .........................................................7

*Kemp v. Nationstar Mortg. Ass'n,*
    248 Md. App. 1 (Ct. Spec. App. 2020) ...........................................................11

*Kivett v. Flagstar Bank,*
    333 F.R.D. 500 (N.D. Cal. 2019) ...................................................................28

*Litz v. Maryland Dep't of Env't,*
    434 Md. 623 (2013).......................................................................................23

*Lusnak v. Bank of America, N.A.,*
    883 F.3d 1185 (9th Cir. 2018) ............................................................. 2, 5, 27

*MacBride v. Pishvaian,*
    402 Md. 572, 937 A.2d 233 (2007)....................................................21, 22, 23

*Marx v. Gen. Revenue Corp.,*
    568 U.S. 371 (2013) .....................................................................................19

*McShannock v. JP Morgan Chase Bank N.A.,*
    354 F. Supp. 3d 1063 (N.D. Cal. 2018) .........................................................26

*Mitchell v. U.S. Bank Nat'l Ass'n,*
    No. CV PX-17-1805, 2018 WL 4679949 (D. Md. Sept. 28, 2018)....................21

*Nagashima v. Busck,*
    541 So. 2d 783 (Fla. Dist. Ct. App. 1989) ......................................................17

*Nat'l Conversion Corp. v. Cedar Bldg. Corp.*,
　23 N.Y.2d 621 (1969) ........................................................................................................16

*Niyaz v. Bank of Am.*,
　2011 WL 63655 (E.D. Va. Jan. 3, 2011) ............................................................................26

*Pfendler v. PNC Bank, Natl. Assn.*,
　2018 WL 2688502 (W.D. Pa. June 5, 2018) ......................................................................26

*Rhodes v. E.I. du Pont de Nemours & Co.*,
　657 F.Supp.2d 751 (S.D.W.Va.2009) .................................................................................23

*Richards v. NewRez LLC*,
　2021 WL 1060286 (D. Md. Mar. 18, 2021) ............................................................... 25, 26

*Schmidt v. Wells Fargo Home Mortg.*,
　2011 WL 1597658 (E.D. Va. Apr. 26, 2011, *aff'd*, 482 F. Appx. 868 (4th Cir. 2012) ......................25

*Scott v. Bodor, Inc.*,
　571 N.E.2d 313 (Ind. Ct. App. 1991) ................................................................................18

*Scull v. Groover*,
　435 Md. 112 (2013) .................................................................................................. 8, 9, 11

*Shell Oil Co. v. Parker*,
　265 Md. 631(1972) .............................................................................................................23

*Slacum v. Trust Co.*,
　163 Md. 350 (1932) ............................................................................................................15

*Sonnenberg v. Sec. Mgmt. Corp.*,
　325 Md. 117 (1992) ............................................................................................................15

*Staley v. Americorp Credit Corp.*,
　164 F. Supp. 2d 578 (D. Md. 2001) .....................................................................................8

*Stovall v. SunTrust Mortg., Inc.*,
　2011 WL 4402680 (D. Md. Sept. 20, 2011) ......................................................................25

*SumCo Eco-Contracting, LLC v. Ellicott Dredges, LLC*,
　2021 WL 2649799 (D. Md. June 28, 2021) ......................................................................26

*Teal Bay Alliances, Inc. v. Southbound One, Inc.*,
　2014 WL 1630211 (D. Md. Apr. 21, 2014) .......................................................................20

*Travis v. Knappenberger*,
　204 F.R.D. 652 (D. Or. 2001) ...........................................................................................17

*United States v. Buckingham*,
　301 F. Supp. 3d 547 (D. Md. 2018) ..................................................................................20

*United States v. Cohn*,
　303 F. Supp. 2d 681 (D. Md. 2003) ..................................................................................20

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
　901 A.2d 106 (Del. 2006) ..................................................................................................17

*Williams v. Big Picture Loans, LLC,*
    No. 3:17-CV-461, 2019 WL 1983048 (E.D. Va. May 3, 2019) ...........................................20

## Statutes

15 U.S.C. § 1639d(g)(3) ..................................................................................................... 1, 19

Md. Code Ann., Com. Law § 12-114 ..........................................................................................10

Md. Com. Law Code § 12-109 .........................................................................................passim

Md. Com. Law Code § 12-109(b)(1) .................................................................................. 1, 3, 25

## Other Authorities

37 Am. Jur. 2d Fraud and Deceit § 104 ................................................................................ 16, 18

59 Opinions of the Attorney General 458, 464 (1974) ...................................................... 9, 10

75 Md. Op. Atty. Gen. 223 (1990) ...................................................................................9, 10, 11

Maryland Civil Pattern Jury Instructions 11:1 (5th ed.) .................................................... 15, 16

Restatement (First) of Torts § 545 (1938) ................................................................................16

Restatement (Second) of Torts § 545 (1977) ...................................................................16, 17, 18

## Rules

12 C.F.R. § 34.4 ........................................................................................................................13

D. MD. LOCAL RULE 105.2.c ....................................................................................................2

FED. R. CIV. P. 9(B) ..................................................................................................................15

FED. R. CIV. P. 56(A) ..................................................................................................................7

FED. R. CIV. P. 56(c)(1) ..............................................................................................................7

**INTRODUCTION**

Bank of America, N.A. ("BofA"), a mortgage lender, regularly requires borrowers to maintain escrow accounts to cover payments for property taxes and insurance on mortgaged properties. It collects the funds from borrowers in advance, holds them in escrow, and then directly pays property taxes and insurance premiums when they become due. Because the escrowed funds remain the borrower's money until actually paid out, Maryland requires lenders to pay interest on the funds. *See* Md. Com. Law Code § 12-109. The statute provides in relevant part:

> A lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property and creates or is the assignee of an escrow account in connection with that loan shall pay interest to the borrower on the funds in the escrow account at an annual rate not less than the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as published by the Federal Reserve in "Selected Interest Rates (Daily) -- H.15", as of the first business day of the calendar year.

Md. Com. Law Code § 12-109(b)(1).

BofA does not comply with this statute and does not pay interest on funds in escrow accounts to borrowers like Plaintiff Cynthia Clark ("Clark" or "Plaintiff"). BofA does not dispute that it is a § 12-109 "lending institution". Nor does BofA dispute that the accounts at issue in this case are § 12-109 "escrow account[s]." Nor does BofA dispute that other national banks, including its direct competitors, comply with § 12-109 and other similar state escrow interest statutes.

Nevertheless, BofA contends that it need not follow § 12-109 because the National Banking Act of 1864 (the "NBA") and regulations promulgated pursuant to it by the Office of the Comptroller of Currency ("OCC") preempt such statutes. But BofA is incorrect. Preemption is a matter of Congressional intent and in 2010 Congress specifically enacted 15 U.S.C. § 1639d(g)(3), which states: "If prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. § 1639d(g)(3). This Court and every

1

other court that has considered the issue has rejected BofA's preemption defense. *See, e.g., Lusnak v. Bank of America, N.A.*, 883 F.3d 1185 (9th Cir. 2018), *cert. denied*, 139 S.Ct 567; *Clark v. Bank of Am., N.A.*, 2020 WL 902457, at *6 (D. Md. Feb. 24, 2020) (Gallagher, J.); *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 175 (E.D.N.Y. 2019).

Yet, this Court's decision that BofA is not excused from Maryland's escrow interest statute has not been enough to prompt BofA to comply with § 12-109. Instead, BofA continues to refuse to pay escrow interest to Maryland borrowers and now brazenly asserts that it is entitled to summary judgment against Ms. Clark for reasons that would apply equally to every member of the putative class she seeks to represent. In short, BofA asks this Court to deny Maryland borrowers the ability to give this Court's order any practical effect. BofA's arguments are without merit, and its motion should be denied.

Plaintiff separately calls for this Motion to be denied based on D. Md. Local Rule 105.2.c, which the Court cited in its July 9, 2020 scheduling order, *See* ECF No. 67 at 4 ("If more than one party intends to file a summary judgment motion, the provisions of Local Rule 105.2.c apply."), and which provides: "In a two-party case, if both parties intend to file summary judgment motions, counsel are to agree among themselves which party is to file the initial motion. After that motion has been filed, the other party shall file a cross-motion accompanied by a single memorandum (both opposing the first party's motion and in support of its own cross-motion), the first party shall then file an opposition/reply, and the second party may then file a reply." D. Md. L.R. 105.2.c. BofA filed its Motion on June 9, 2021 without notice to Plaintiff and agreement by both parties as to "which party is to file the initial motion." *See id.* Plaintiff raised this violation with BofA, who refused to stay the Motion. As such, BofA's Motion should also be denied on this basis.[1]

---

[1] Further, the one-way intervention rule prohibits Plaintiff from seeking summary judgment before class certification, so BofA not only files its Motion in breach of D. Md. L.R. 105.2.c but also while Plaintiff cannot file a cross-motion for summary judgment—contrary to what the rule contemplates.

## BACKGROUND

The relevant facts at issue are not complicated. As this Court previously explained, the two most critical facts are:

> First, under Maryland law, when lending institutions maintain escrow accounts on behalf of borrowers, the lenders must pay interest on those funds. Md. Code Ann., Com. Law § 12-109(b)(1). Second, [BofA] concedes that it has not paid interest on Plaintiff's escrow account, even though the law plainly requires it to do so.

(ECF No. 65 at 3.) BofA's moving papers nevertheless attempt to muddy the water by cobbling together random snippets of testimony to minimize the value of escrow interest and paint BofA's actions in a favorable light. For instance, BofA asserts that its use of escrow accounts is a "'benefit to the borrowers.'" Mot. at 3 (internal citation omitted). But regardless of whether Plaintiff found her escrow account "helpful" as BofA contends, *see id.*, that does not change BofA's duty under Maryland law to pay Plaintiff interest on her escrowed funds.

BofA also cherry-picks Plaintiff's testimony to falsely suggest that escrow interest is unimportant to her[2] because she didn't ask BofA,[3] Mortgage American Bankers,[4] or her new mortgage

---

[2] BofA misconstrues Plaintiff's testimony in claiming that the interest rate was the only factor contributing to her decision to refinance in 2013. Mot. at 5. Rather, Plaintiff only testified that she could not recall other considerations. *See* Ex. 1, Cynthia Clark Dep. at 91:4-9 (Q: "Was there any other terms of your mortgage loans that were important to you . . . . when you refinanced your mortgage with Bank of America in 2013?" A: "I don't know."); *id.* at 91:10-19 (replying "no" when asked if she could "think of anything else that was important" to her 2013 decision to refinance other than the mortgage rate). And as BofA later admits, Plaintiff ultimately refinanced with BofA at a ***higher*** interest rate than the alternative she considered. *See* Mot. at 5 (citing Clark Dep. 107:19-108:4).

[3] Plaintiff testified that she did not recall whether she had asked BofA whether she would receive escrow interest. *See* Ex. 1, Clark Dep. at 65:4-8 (Q: "Do you recall whether you asked Bank of America whether you would receive interest on your escrow account if any escrow account was established?" A: "No."); *id.* at 79:7-11 (Q: "Do you recall asking Bank of America whether you would be paid interest on any escrow account that was established in connection with your 2010 mortgage loan?" A: "No.").

[4] Although Plaintiff's consideration of an alternate mortgage lender is immaterial, BofA mischaracterizes Plaintiff's testimony in an effort to frame Plaintiff as indifferent to her escrow account and escrow interest. Mot. at 5. Although Plaintiff agreed that "[s]he never asked whether Mortgage American Bankers would require her to set up an escrow account," *id.*, she did so "[b]ecause

lender[5] whether she would receive interest on escrow funds. *See* Mot. at 3-5, 7. But Ms. Clark explained that would only have been because "[she] didn't believe that was an option that [she] had." *See* Clark Dep. at 97:12-14. And in any event, the subjective value Plaintiff put on escrow interest is immaterial as it does not undergird any claim in this litigation.

What is material and undisputed is that BofA required Ms. Clark to establish an escrow account in connection with her 2005, 2010, and 2013 refinances. *See* Mot. at 3-5; Answer (ECF No. 41) ¶¶ 1, 18, 31, 56, 93; ECF No. 100-17, Clark Decl. ¶ 2. Plaintiff also does not dispute that BofA paid Plaintiff some amount of escrow interest in connection with her 2005 mortgage.[6] There is thus likewise no dispute that BofA knows how to comply with § 12-109 because BofA previously paid interest to borrowers like Plaintiff and had a policy to do so prior to its merger with Countrywide in 2008. *See* Opp. to Mot. for Class Certification (ECF No. 108) ("Since 2008, Bank of America's written policy has generally provided that it will not pay interest on escrow accounts established for mortgage loans that the Bank itself originated."); *see also* Ex. 2, Orriss Dep. at 44:20-22 ████████████

████████████████████████████████████████████████████████████

---

I assumed that a mortgage escrow account was always necessary when you had a mortgage." Clark Dep. at 96:18-97:5. Likewise, although Plaintiff speculated that she probably did not ask Mortgage America Bankers whether she would receive interest on escrowed funds, *see* also Clark Dep. at 97:7-14 (explaining that Plaintiff probably did not ask Mortgage America Bankers about escrow interest because "[she] didn't believe that was an option that [she] had"). Her testimony thus does not show indifference toward whether she would be paid escrow interest.

[5] Contrary to BofA's depiction, Mot. at 7, Plaintiff did not ask her new lender whether it would pay escrow interest not because of indifference, but because: "We [Plaintiff and her daughter] purchased this house together and I let her handle everything because I was so busy." Clark Dep. at 32:6-10. Indeed, Plaintiff moved to Georgia just *the week before* her deposition. *See* Clark Dep. at 10:4-5, 32:7-8.

[6] BofA has refused to date to provide a complete accounting through documents and testimony of the escrow interest, tax forms, and account statements Plaintiff received for the years prior to 2013. Indeed, when BofA's designated Rule 30(b)(6) witness was asked whether Plaintiff was paid interest in any year prior to 2013, BofA's counsel improperly directed the witness not to answer on privilege grounds. *See* Ex. 2, Orriss Dep. at 31:21-36:4. However, the Court's scheduling order specifically contemplates additional merits discovery following a class certification decision. ECF No. 74.

Indeed, BofA admits in its Answer that it "was aware of state and federal laws concerning mortgage escrow accounts and that Bank of America knew that it did not pay interest on the funds held in all mortgage escrow accounts, including Plaintiff's." ECF No. 41 ¶ 70.

However, contrary to BofA's suggestion that its policy change to withhold escrow interest was a legal decision, BofA's corporate representative testified ███████████████, which BofA now seeks to justify *post hoc*. *See* Ex. 3 Deposition of J. Orriss Tr. in *Lusnak v. Bank of Am., N.A.* (Case No. 2:14-cv-01855-GW (AJW) (C.D.C.A.)) at 103:3-23 (explaining ████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████).[7]

Plaintiff also agrees that BofA stopped paying her escrow interest pursuant to its classwide policy that this Court has held violated Maryland law.[8] *See* Mot. at 4; Dkt. 39. It is further undisputed that BofA sent "monthly and other periodic statements to Plaintiff," which did "not reflect the payment of interest on the funds held in [Plaintiff's] mortgage escrow account[]." *See* Answer (Dkt. 41) ¶¶ 71, 73-74, 93. *See also* Ex. 4 (BofA Your Home Loan Account Statement – 12/1/2016); Ex. 5 (Notice Concerning Your Escrow Account); Ex. 6 (BofA Updated Escrow Analysis – 8/15/2014); Ex. 7 (BofA Escrow Account Disclosure Statement – 8/1/2016). As to these statements, Ms. Clark testified that she assumed that the "figures" were accurate. Ex. 1, Clark Dep. at 149:21-152:4. She thus made payments according to these statements, effectively overpaying ████████████████ █████████████████████████████████████████████████ *See* ECF No. 102,

---

[7] BofA has steadfastly refused to permit discovery into the bases for its decision to stop paying escrow interest.

[8] Documents available to Plaintiff suggest that BofA may have stopped paying her escrow interest in connection with her 2010 refinancing.  However, BofA has improperly refused pre-2013 discovery on privilege grounds. *See infra* n.6.

Expert Rep. of Arthur Olsen ¶ 25.[9]

BofA faults Plaintiff for not contacting it to ask why it stopped paying interest. Mot. at 4-6. But BofA misleadingly assumes Plaintiff had full knowledge of the escrow interest she was not receiving in violation of § 12-109, which the evidentiary record does not bear out. BofA self-servingly omits Plaintiff's reasons for not contacting BofA about its escrow interest policy: "If the law requires the bank to pay interest, but the bank was not paying interest, I really didn't understand that . . . so I needed to consult with an attorney," and "I wasn't sure how all this works." Ex. 1, Clark Dep. at 138:9-13, 138:22-139:1. And even after securing counsel, the record indicates that any effort to complain would have been futile given BofA's blanket refusal to ever pay interest to borrowers like Plaintiff—even where complaints are made, lawsuits are initiated, and court orders finding that BofA must comply with § 12-109 are issued. *See* section IV.B, *infra*; *see also* Plaintiff's Reply in Support of Motion for Class Certification, ECF No. 114 at 16-17.

BofA claims that Plaintiff should have been put on notice that BofA does not pay escrow interest based on its tax forms, annual escrow account disclosure statements, and "Escrow Account Review" documents. Mot. at 3-5. As a threshold matter, the record shows that BofA's statements, forms, and disclosures were far from transparent on the issue of escrow interest. *See* Exs. 4-7. But regardless, under the continuing violations doctrine, Plaintiff is entitled to damages going back three years from the filing of her lawsuit, or November 29, 2015, regardless of whether she previously had constructive knowledge of her claims. In any event, this Court cannot conclude as a matter of undisputed fact that Plaintiff had such constructive knowledge. To the contrary, this Court should reject outright BofA's request to impute such knowledge to Plaintiff based on piecing together various

---

[9] Although BofA asserts that Plaintiff made delinquent payments and that BofA advanced expenses for Plaintiff, Mot. at 6, both facts are immaterial to Plaintiff's claims because she ultimately paid off her loan in April 2021 as BofA acknowledges, Mot. at 7, and thus fully performed her material contractual obligations, leaving intact BofA's obligation to pay escrow interest.

obscure, misleading, and contradictory communications regarding escrow interest.[10]

In short, BofA fails to carry its burden of showing as a matter of undisputed fact that it is entitled to summary judgment on Plaintiff's claims. BofA's motion should accordingly be denied.

## ARGUMENT

### I.     Legal Standard

"Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' The moving party bears the burden of showing that there is no genuine dispute of material facts." *John & Cher v. Howard Bank*, 2021 WL 2226195, *2 (D. Md. June 2, 2021) (citation omitted). BofA does not establish absence of a genuine dispute of material fact supporting summary judgment here. First, its Background is rife with unsubstantiated or false facts that do not satisfy Fed. R. Civ. P.'s 56 mandate that "[a] party asserting that a fact cannot be . . . disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A)-(B). And the facts BofA does offer with citation to the evidentiary record are immaterial to the dispositive legal issues. *See* Fed. R. Civ. P. 56(a). "In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, 'in the light most favorable to the party opposing the motion.'" *John & Cher*, 2021 WL 2226195 at *2 (citation omitted).

### II.    Section 12-109 Affords a Private Right of Action to Ms. Clark.

BofA is wrong to claim that there is no private right of action for violations of § 12-109. The

---

[10] If the Court is inclined to give any weight to BofA's argument that pre-2010 communications with Plaintiff can be contrasted with post-2010 communications, Plaintiff respectfully asks that the Court allow discovery into BofA's pre-2013 communications, which BofA has to date refused to produce based on an improper claim of privilege. *See infra* n.6.

three-part test for finding an implied private right of action is satisfied here. That test requires this Court to consider (1) whether Ms. Clark is "'one of the class for whose []special benefit the statute was enacted'"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Scull v. Groover*, 435 Md. 112, 121-22 (2013) (internal citation omitted).

### A. Section 12-109 Was Enacted for the Special Benefit of Maryland Borrowers.

BofA does not dispute that Ms. Clark is a member of the class for whose special benefit § 12-109 was enacted. Mot. at 9. She is so because Maryland's General Assembly enacted a law requiring a certain class of residential borrowers, including Ms. Clark, to be paid interest on their escrow account balances. This is not a case where a litigant is seeking to have a court imply a private right of action for "a statute that was designed to confer only a general benefit on the public at large." *Staley v. Americorp Credit Corp.*, 164 F. Supp. 2d 578, 580 (D. Md. 2001). Thus, the cases that BofA cites, where the Assembly simply passed a law of general public benefit, are distinguishable.[11]

"If a statute's language provides a right to a particular class of persons, there is *a strong inference* that the legislature intended the statute to carry an implied cause of action." *Baker*, 427 Md. at 711 (emphasis added). Here, lending institutions are required to pay a direct monetary benefit to Maryland borrowers whose loans are secured by a first deed of trust on residential real property where the lender requires an escrow account. BofA admits that the General Assembly imposed requirements for the

---

[11] *See Fangman v. Genuine Title, LLC*, 447 Md. 681, 721-22, 725 (Ct. App. 2016) (finding no private right of action because anti-kickback law "does not, and was not intended or designed to, protect a specific class of persons"); *Baker v. Montgomery Cty.*, 427 Md. 691, 697 (Ct. App. 2012) ("general welfare statute that does not benefit a particular class of persons, let alone Petitioners"). In contrast, the court in *Staley* found that a "comprehensive licensing scheme" was "'designed to protect [a] sub-group of the public'" because it was "meant to protect borrowers." *Staley*, 164 F. Supp. 2d at 581 (internal citation omitted). So too, § 12-109 was enacted to protect borrowers who directly benefit from escrow interest they are entitled to receive.

administration of escrow accounts, particularly the payment of interest to borrowers at a prescribed rate, yet feigns that no special benefit is created by § 12-109. Mot. at 9.[12] BofA is wrong. Indeed, the Maryland Attorney General has stated that this requirement creates "statutorily granted rights [that] are inherent in the mortgage." 59 Opinions of the Attorney General 458, 464 (1974). Ms. Clark fits in the § 12-109 class of borrowers who directly benefit from the interest credited to their escrow accounts. The first factor is satisfied.

**B.  There is Implicit Intent to Imply a Remedy for Maryland Borrowers.**

As to the second factor, "[c]ourts discern . . . whether a private cause of action was intended by analyzing the language of the statute to identify its purpose and intended beneficiaries, reviewing the statute's legislative history, and determining whether the statute provides otherwise an express remedy." *Fangman*, 427 Md. at 710. Ms. Clark acknowledges § 12-109 does not expressly state that a private cause of action exists. However, as even BofA acknowledges, "'legislative silence is not conclusive.'" Mot. at 9 (quoting *Scull*, 435 Md. at 123)). There is also no express legislative intent to *deny* such a private right of action to consumers or any indication in the statute that the legislature intended the Attorney General, rather than consumers, to enforce the escrow interest rights conferred by the statute. Surely the legislature intended there to be some mechanism for the statute to be enforced. Otherwise, lenders could ignore the General Assembly's command with impunity. *See* 75 Md. Op. Atty. Gen. 223 (1990) ("The escrow interest requirement was intended as a pro-consumer provision permitting borrowers to derive at least some benefit from idle funds previously invested wholly for the benefit of the lender."). Indeed, there is no better example than this case as to why a private right of action is needed to vindicate the legislature's intent given that BofA continues to

---

[12] In contrast, the anti-kickback law at issue in *Fangman* only indirectly benefited consumers. 447 Md. at 704-705 ("For example, the prohibition in RP § 14-127(c)(1) is not phrased along the lines of 'all consumers of settlement services have the right to have kickback-free settlement services.'").

blatantly flout Maryland law despite this Court's order rejecting BofA's preemption defense.

Furthermore, the structure of the relevant subtitle of the Maryland Code supports implying such a right. Subtitle 1 of Title 12 of the Maryland Code independently regulates the *interest that borrowers pay to lenders*, and it separately addresses the *interest that lenders must pay to borrowers* with escrow accounts in three statutes: Md. Code § 12-109, § 12-109.1, and § 12-109.2. In 1990, the Maryland Attorney General addressed the structure of Subtitle 1:

> Chapter 420 included two additional provisions. The first required all banks and thrift institutions to pay interest on certain first mortgage escrow accounts after June 1, 1974, the provision now found at CL § 12-109.
>
> . . . .
>
> The escrow interest requirement *was intended as a pro-consumer provision permitting borrowers to derive at least some benefit from idle funds previously invested wholly for the benefit of the lender*. The Attorney General stated that this requirement creates "statutorily granted rights [that] are inherent in the mortgage." 59 Opinions of the Attorney General 458, 464 (1974).

75 Md. Op. Atty. Gen. 223 (1990) (emphasis added).

The Court should thus reject BofA's comparison to the express statutory usury remedy in Subtitle 1 applicable to the interest that borrowers pay lenders. Mot. at 10 (Md. Code Ann., Com. Law § 12-114). When the lender fails to pay the borrower the statutorily required escrow interest, the "pro-consumer provision permitting borrowers to derive at least some benefit from idle funds previously invested wholly for the benefit of the lender" should afford those borrowers a statutory remedy. 75 Md. Op. Atty. Gen. 223. As noted above, the escrow account statutes in Subtitle 1 operate independently of the other statutes in that subtitle.

### C. Implying a Private Right of Action is Consistent With the Legislative Scheme.

The final factor also supports finding a private right of action. BofA basically ignores this factor. Section 12-109's purpose is to compensate borrowers who are required by their lenders to escrow funds. Lenders want to ensure property taxes and insurance are paid, making borrower funds

idle until the lender pays them. 75 Md. Op. Atty. Gen. 223. When the borrower is not paid statutorily required interest, as here, a private right of action should exist. It is entirely consistent with the legislative scheme.

Contrast § 12-109's direct focus on the lender-borrower relationship with what the Maryland Court of Appeals observed in *Scull*, where it did not find an implied private right of action for an HMO-insured to challenge balance billing. As the court explained, the statutory scheme at issue in *Scull* "largely concern[ed] the structure and operation of health maintenance organizations, not the billing practices of health care providers. In that sense, the statute is intended to confer a general benefit on the public at large by providing a foundation for a particular form of health care coverage." 435 Md. at 123.[13] Here, by contrast, § 12-109 is not concerned about the broader structure of lending institutions, but about a duty flowing from lenders to borrowers in the context of certain residential mortgages. A private cause of action is perfectly consistent with that.

Indeed, an implied private right of action is especially consistent with the legislative scheme because there exists no other remedy. In *Fangman*, the court found from the "plain language and legislative history, we have no difficulty in concluding that [anti-kickback law's] purpose was criminal in nature, and not to create an implied private right of action on behalf of a specified protected class of individuals." 447 Md. at 716 (violation of statute is a misdemeanor). Unlike in *Fangman* where the statute was clearly intended to be enforced through criminal proceedings, § 12-109 is not a criminal law. In the absence of implying a private right of action, there would be *no mechanism* for enforcing § 12-109's command. "Principles of statutory interpretation do not require us to apply the text of a statute rigidly where that application leads to absurd or inconsistent results." *Kemp v. Nationstar Mortg. Ass'n*, 248 Md. App. 1, 28 (Ct. Spec. App. 2020). *Kemp* specifically recognized an implied right of action

---

[13] Notably, the *Scull* court recognized that HMO members could bring an action under Maryland's Consumer Protection Act to enforce the violation of the balance billing prohibition. 435 Md. at 132.

"against assignees, endorsees, or transferees who receive the debt with notice of usury, insofar as it *prohibits* a civil claim or plea of usury against assignees, endorsees, or transferees of a debt if they received the debt instrument *without* notice of usury in the instrument's creation or assignment." *Id.* at 18 (emphasis in original).

Based on the foregoing, the Court should conclude that Ms. Clark has a § 12-109 claim. Indeed, given that, as BofA concedes, legislative silence alone is insufficient to conclude no private right of action exists, it is difficult to imagine another statute silent on its face where the factors more clearly weigh in favor of finding such a right.

## III.   BofA is Not Entitled to Summary Judgment on Plaintiff's MCPA Claim.

To state a Maryland Consumer Protection Act ("MCPA") claim, a plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015). The Court has already determined that BofA's failure to pay interest on escrowed funds satisfies all three elements. *See* ECF No. 39 at 19. As the Court recognized in denying BofA's motion to dismiss, Plaintiff asserts that "BofA agreed, in the Deed of Trust, that it would 'comply with applicable state and federal law,'" yet "sent a separate notice stating that it was not required to pay interest on escrow accounts." *Id.* at 19-20 (quoting Complaint, ECF No. 34 at 28). The Court further recognized that "if BofA failed to uphold its legal obligation to pay interest on escrow accounts, then the periodic statements issued to Plaintiff may have misstated or inflated her level of indebtedness." *Id.* at 20. In other words, Plaintiff plausibly "allege[s] that BofA was well-aware of its legal obligation to pay interest and, despite this knowledge, supplied contradictory information to consumers via the Deed of Trust, separate notice, and periodic account statements" and that Plaintiff "relied on the misrepresentation by continuing to pay the incorrect amounts, thereby causing actual injury." *See* ECF No. 39 at 20-21. BofA raises several arguments why it is nevertheless entitled to summary judgment on Plaintiff's MCPA claim.

None are persuasive.

### A. Plaintiff Has Not Waived or "Disavowed" Omission-Based Claims or Affirmative Misrepresentation-Based Claims Based on BofA's Periodic Statements.

BofA asserts that Plaintiff cannot proceed on an omission theory because she did not include an omission theory in her complaint. Mot. at 11 (citing *Casey v. Geek Squad Subsidiary Best Buy Stores, LP*, 823 F.Supp.2d 334, 359 (D. Md. 2011).[14] But in so arguing, BofA ignores Plaintiff's allegations, which clearly allege that BofA failed to include (i.e., omitted) the interest it owed to consumers in its periodic statements. *See, e.g.*, Complaint, ECF No. 1 ¶73 ("[A]s part of its scheme, BofA knowingly and intentionally sends . . . monthly and other periodic statements to borrowers that are false or misleading because they *do not includ*e applicable interest amounts on escrowed funds" (emphasis added)"); *id.* at ¶ 74 ("Further, as part of its scheme, BofA knowingly and intentionally sends . . . monthly and other periodic statements to borrowers that are false or misleading because they *do not accurately reflect* off-setting amounts of escrow interest owed by BofA to borrowers." (emphasis added)).

BofA next falsely asserts that Plaintiff cannot proceed on either an omission-based theory[15] or an affirmative misrepresentation-based theory premised on BofA's account statements or escrow statements because Plaintiff "disavowed" them in discovery, such that Plaintiff's MCPA claim now

---

[14] Even if Plaintiff failed to articulate an omission theory of liability in her complaint (she did), BofA's reliance on *Casey* is misplaced. In that case, the plaintiff purported to assert an entirely new cause of action in its summary judgment briefing without seeking leave of court to amend the complaint. Here, the Complaint clearly asserts a claim under the MCPA and alleges the factual basis for that claim, regardless of whether one characterizes the theory of liability as affirmative misrepresentation-based, omission-based, or both.

[15] BofA also argues that any omission-based state law claim would be preempted. Mot. at 11 n.2 (citing 12 C.F.R. § 34.4 ("A national bank may make real estate loans … without regard to state law limitations concerning … Disclosure and advertising….."). However, that regulation specifically provides that state laws concerning "Torts" (i.e., consumer fraud laws) are "not inconsistent with real estate lending powers of national banks and apply to national banks to the extent consistent with [*Barnett Bank*]." 12 C.F.R. § 34.4(b)(2).

rests "exclusively" on her Deed of Trust. Mot. at 11-12, n.3. But far from disavowing Plaintiff's allegations, Plaintiff's discovery response explicitly incorporated the allegations by reference. *See* Def.'s Exhibit 13 at 5 ("Plaintiff further refers Defendant to the well-pleaded allegations in her Complaint"). BofA likewise mischaracterizes Plaintiff's testimony. Plaintiff was not asked whether she was pursuing an omission-based theory of liability (a question of legal strategy more appropriately addressed to counsel than a class representative in the first place). Rather, during a particularly argumentative line of questioning, BofA asked Plaintiff to identify specific "statements" or "representations" BofA made that she thought were false or misleading. Ex. 1, Clark Dep. 146:14-19. Plaintiff responded, "there is a law that the bank is supposed to pay interest on escrow" and that "if you do business with a bank and the bank represents that it's going to follow the law in the state where you are doing business and it does not, then that's misleading. . . ." *Id.* at 147:5-9. Unsatisfied by Plaintiff's answer, BofA asked "how *exactly* did [BofA] engage[] in deceptive acts or practices." *Id.* at 149:13-16 (emphasis added). Plaintiff responded, "I would have to leave that to an attorney to describe according to what is written in the law. I don't think I can articulate that." *Id.* at 149:18-20.

Nor did Plaintiff "admit[]" that her account statement was accurate, as BofA suggests. Mot. at 12 n. 3. Rather, she testified that she "assume[d] it's accurate. The payments, the numbers, I have to assume it's accurate…." Clark Dep. 151:14-16. *See also id.* at 152:1-4 ("I never had a reason to question the, what was set forth on the statement as far as being accurate. The numbers are probably accurate, the dates."). When read in proper context, it is clear that Plaintiff testified that she had no cause to question the specific "numbers" and "dates" related to her "payments" reflected on the statements when she received them. She did not "disavow" her allegation that the statements were misleading insofar as they failed to include applicable interest owed on escrowed funds.[16]

---

[16] BofA similarly mischaracterizes Plaintiff's testimony when it asserts that she "testified that she never received [the Notice Concerning Your Account]." Mot. at 11. Plaintiff testified that she was not sure whether she received it and that it was not in her files, not that she definitively never received it. *See*

**B. Plaintiff's MCPA Claim Does Not Rest on a "Mere" Breach of Contract.**

BofA argues that its failure to pay interest is merely a breach of contract and that "a breach-of-contract cannot give rise to an MCPA claim." Mot. at 12. As a threshold matter, neither of the cases BofA cites support such a proposition. *See Hebbler v. First Marine Bank*, 2018 WL 3818855, at *7 (D. Md. Aug. 10, 2018) (dismissing MCPA claim for failure to comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard where plaintiff failed to allege how, where, or when the defendant lender allegedly promised to apply forbearance agreement payments to mortgage balance); *Bezmenova v. Ocwen Fin. Corp.*, 2013 WL 386948, at *6 (D. Md. July 23, 2013) (dismissing MCPA claim for failure to comply with Fed. R. Civ. P. 9(b)'s heightened pleading standard where plaintiffs failed to allege details regarding who precisely made the alleged misrepresentations or how they induced the plaintiff to make a harmful consumer choice). Indeed, fraud claims often arise from contractual relationships. *See, e.g.,* Maryland Civil Pattern Jury Instructions 11:1 (5th ed.), Comment 3 ("Fraud can arise out of an existing contract relationship as where a party to a contract is induced to take or refrain from taking an action which that party has a right to take." (citing *Bocchini v. Gorn Mgmt Co.*, 69 Md. App. 1 (1986)).[17]

Plaintiff asserts more than just a mere breach of contract. She accurately contends that BofA engaged in an unfair or deceptive practice by entering into an agreement requiring BofA to "comply with applicable state and federal law" without the intention of doing so, and then sending Plaintiff misleading and inflated periodic statements inducing her to overpay on her loan. "Although an action

---

Clark Dep. 110:14-16 ("Q: Have you seen this document before today? A: I don't know."); 111:5-8 ("Q: Do you recall whether this document was given to you when you closed on your 2013 mortgage loan? A: I do not.").

[17] *See, e.g., Bocchini*, 69 Md. App. at 21 ("Where a dispute occurs with respect to a term or condition or the nature or adequacy of the performance required and one party knowingly makes a false statement of his intention to perform, intending thereby to induce the other to take or refrain from taking some action that he has a right to take or not to take under the circumstances, we see no reason why such a false statement cannot serve as the basis of an action for deceit…."); *Slacum v. Trust Co.*, 163 Md. 350, 352–53 (1932); *Sonnenberg v. Sec. Mgmt. Corp.*, 325 Md. 117 (1992) (reversing dismissal of MCPA and breach of contract claims based on seller's failure to disclose).

for fraud may not rest on a statement about future events, a person may commit fraud if he or she enters an agreement to do something, without the present intention of performing." Maryland Civil Pattern Jury Instructions 11:1 (5th ed.), Comment 6 (citing *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 134-135 (2003) (a party's conduct in entering a contractual commitment to use "best efforts," without intent to perform, can be the basis of an action for fraud). *See also Hall's Reclamation, Inc. v. Apac Carolina, Inc.*, 103 F.3d 117 (4th Cir. 1996) ( "While a mere violation of a contract does not support a fraud claim …, entering into a contract without the present intention of rendering performance under the contract does…." (internal quotes and cites omitted)). Here, the evidence shows BofA promised to comply with applicable state law having no intention of complying with § 12-109. That is fraud.

### C.  Plaintiff's MCPA Claim Does Not Rest on an Innocent Mistake of Law.

BofA next asserts that a mistake of law cannot give rise to an MCPA claim. Mot. at 13. However, "the law has outgrown the over-simple dichotomy between law and fact in the resolution of issues in deceit." *Nat'l Conversion Corp. v. Cedar Bldg. Corp.*, 23 N.Y.2d 621, 627 (1969) (citing Restatement (First) of Torts § 545 (1938)). Today, courts recognize that "[i]f a misrepresentation as to a matter of law includes, expressly or by implication, a misrepresentation of fact, the recipient is justified in relying upon the misrepresentation of fact to the same extent as though it were any other misrepresentation of fact." Restatement (Second) of Torts § 545 (1977). *See also* 37 Am. Jur. 2d Fraud and Deceit § 104 ("A representation of mixed law and fact may constitute the basis for an action in fraud if it amounts to an implied assertion that facts exist that justify the conclusion of law which is expressed and the other party would ordinarily have no knowledge of the facts."). "Thus the statement that the maker has good title to land, although in form one of a legal conclusion, ordinarily will be understood to assert the existence of those conveyances or other events necessary to vest good title in him." Restatement (Second) of Torts § 545 (1977), Comment c. "So likewise a statement that one

16

mortgage has priority over another may imply an assertion that one was made before the other; and a statement that a corporation has the legal right to do business in a state may carry with it an assurance that it has as a matter of fact taken all of the steps necessary to be duly qualified." *Id.*[18]

Accordingly, when BofA represented that it would follow all applicable state laws and then later represented that it was not required to pay escrow interest, those statements amounted to an implied assertion that facts exist that justify BofA's conclusion of law. *See, e.g., Travis v. Knappenberger*, 204 F.R.D. 652 (D. Or. 2001) (refusing to dismiss fraud claim based on allegations that employer knowingly misrepresented to plaintiffs that there were independent contractors); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106 (Del. 2006) (plaintiff purchaser of life insurance policies for tax benefits stated fraud claims against life insurers for failing to disclose that policies would not achieve tax benefits (even though policyholder stated in letter of understanding that policyholder relied on its own tax advisors) because the failure to inform policyholder that the plans deviated from industry standards was misrepresentation of implied fact); *Nagashima v. Busck*, 541 So. 2d 783, 784 (Fla. Dist. Ct. App. 1989) (seller's statement that the property complied with all local ordinances was primarily misrepresentation of fact, not law).

Even a statement of pure legal opinion may be actionable where, as here, the statement is material and the party making the representation purports to have "special knowledge" or has reason to expect that the recipient will rely on the opinion. *See* Restatement (Second) of Torts §545(2);

---

[18] *See also* Restatement (Second) of Torts § 545 (1977), Comment B ("A statement that a statute has been enacted or repealed or that a particular court has decided thus and so on a particular state of facts is as much a representation of fact as a statement that an automobile has a steering gear of a specified pattern…. The rules that determine the liability for a fraudulent misrepresentation of these matters of law are the same as those determining liability for the fraudulent misrepresentation of any other fact."); *id.* at Illustration 2 ("A, seeking to sell frozen fish to B, fraudulently informs B that there is no legal maximum price on frozen fish. B reasonably understands A to assert that government authorities regulating prices have not established any maximum price for the commodity, although they have in fact done so. In reliance on the implied assertion, B buys the fish from A and suffers pecuniary loss. A is subject to liability to B.").

Restatement (Second) of Torts § 542. In other words, "[a] representation of domestic law may constitute fraud where it is accompanied by some inequitable conduct on the part of the person making it which induces the other party to rely and act thereon." 37 Am. Jur. 2d Fraud and Deceit § 103. "[R]elief may be granted because of such a misrepresentation where there is a relation of trust and confidence between the parties or where the speaker has, or professes to have, superior knowledge of the law." *Id.* "Thus the ordinary layman dealing with a real estate or insurance agent may be justified in relying upon the agent to know enough about real estate or insurance law to give a reliable opinion on the simpler problems connected with it." Restatement (Second) of Torts § 545 (1977), Comment d. *See also, e.g., Scott v. Bodor, Inc.*, 571 N.E.2d 313, 320 (Ind. Ct. App. 1991) (recognizing that while misstatements of law generally do not form basis for fraud claim, "special skill or knowledge" exception applied to defendant insurance agent). Here, when a national mortgage lender like BofA tells a layperson like Plaintiff (1) that BofA will comply with all applicable state law and (2) that Maryland state law does not require BofA to pay escrow interest, the layperson is justified in relying on those statements.

BofA nevertheless contends that it "'cannot be liable under the MCPA for asserting a legal position on a novel issue of law, which turned out to be incorrect.'"  Mot. at 13 (quoting *Chavis v. Blibaum Assoc., P.A.*, 246 Md. App. 517, 535 (2020)). As a threshold matter, opinions of the Maryland Court of Special Appeals are not "controlling appellate decisions." *Allstate Ins. Co. v. Pitts*, 2019 WL 1980287, at *2 (D. Md. May 3, 2019). And there is substantial basis for questioning whether *Chavis* accurately reflects Maryland law insofar as the Court of Appeals has granted certiorari to review it.  *See Chavis v. Blibaum & Assoc., P.A.*, 471 Md. 100 (2020).  Presumably, if the Court of Appeals found the lower court's reasoning sound, it would not have bothered accepting the appeal.

More fundamentally, *Chavis* is distinguishable because BofA's refusal to pay escrow interest does not involve a "novel issue of law."  Whatever uncertainty that might have previously existed as

to the congressional intent regarding the applicability of state escrow interest laws like § 12-109 to national banks was eliminated in 2010 when Congress enacted 15 U.S.C. § 1639d(g)(3), which provides: "*If prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law.*" 15 U.S.C. § 1639d(g)(3) (emphasis added). Congress's enactment of Section 1639d(g)(3) removed any possible doubt that enforcement of state escrow interest laws is fully consistent with (and not in conflict with) national banks' powers as Congress intends those powers. Certainly, no compelling showing can be made that Congress intended for § 12-109 to be preempted when the language of Dodd-Frank confirms the exact opposite. BofA's argument—that § 12-109 is preempted because § 12-109 is not "applicable" because § 12-109 is preempted—is entirely circular. It also renders § 1639d(g)(3) a legal nullity because if all state escrow interest statutes are preempted as BofA contends, then there are no "applicable" state escrow interest statutes, and § 1639d(g)(3) would never apply to anything. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 392-93 (2013) ("Under this most basic of interpretative canons, . . . [a] statute should be constructed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citations and internal quotation marks omitted)).

Tellingly, multiple federal courts—including the Ninth Circuit—have rejected BofA's preemption argument; yet BofA continues to flout state mortgage escrow interest statutes. Again, BofA should have started paying escrow interest upon passage of § 1639d(g)(3). Instead, BofA continued to withhold escrow interest through the present, and that decision (which it sustained even after two other courts rejected its preemption argument) erases any possibility that it is merely a good faith actor trying its best to interpret the law.

If the Court is inclined to give any weight to BofA's mistake of law argument, Plaintiff respectfully requests discovery into BofA's privileged communications to test this defense. BofA's 97-

page privilege log is rife with communications that BofA describes as containing legal advice regarding federal preemption. BofA withheld these as attorney-client and/or work product privileged despite its corporate representative's deposition admission that the decision to cease paying escrow interest was a financial one made "from a cost perspective." *See* Background *supra*. This testimony alone should be enough to reject BofA's defense, but BofA's innocent mistake of law argument directly puts at issue its related privileged communications.

This Court should thus find BofA waived these privileges over related documents by proffering such a defense, one that is akin to a good faith or reliance on counsel defense. *See, e.g., Teal Bay Alliances, Inc. v. Southbound One, Inc.*, 2014 WL 1630211, at *2 (D. Md. Apr. 21, 2014) ("'When a party asserts an advice of counsel defense, it waives the attorney-client privilege with respect to all communications to and from counsel concerning the transaction for which counsel's advice was sought.'" (internal citation omitted)); *see id.* at *2 ("the assertion of an advice-of-counsel defense can also waive work-product immunity"). *See also Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2019 WL 1983048, at *8-9 (E.D. Va. May 3, 2019) (suggesting a party may expressly or implicitly waive the privilege "by arguing that he had a good faith belief that he was following the law"); *United States v. Cohn*, 303 F. Supp. 2d 681 (D. Md. 2003) ("when a party 'raises an issue which can only be effectively rebutted by inquiry into an attorney-client communication,' the 'advice of counsel' is placed at issue and attorney client privilege is typically deemed waived" (internal citation omitted)).

This Court should not let BofA propagate unchecked "as a sword to prove [its] case" its assertion that it acted and communicated to consumers in good faith its preemption position based on the advice of counsel, while at the same time assert privilege over related communications "as a shield to prevent disclosing harmful information.'" *United States v. Buckingham*, 301 F. Supp. 3d 547, 558 (D. Md. 2018); *see also Baltimore Scrap Corp. v. David J. Joseph Co.*, No. L–96–827, 1996 WL 720785, at *24 (D. Md. 1996) (privilege is justifiably waived when it would be inequitable to permit party to

use it as a sword and shield). This is especially so because "the privilege is not favored by federal courts and is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." (internal citation and quotation marks omitted)). *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338-39 (4th Cir. 2005). In sum, it would be illogical to let BofA exploit the attorney-client and work-product privileges by arguing a mistake of law defense in its Motion but mask communications key to understanding its credibility.

The law is clear and has been clear for more than a decade, but BofA dogmatically refuses to comply. That is an unfair or deceptive practice proscribed by the MCPA.

**D.  Plaintiff's MCPA Claim is Not Barred by Statute of Limitations.**

As the Court previously recognized, "at a minimum," Plaintiff states an actionable cause of action for violation of the MCPA in connection with periodic statements issued in "the three years immediately preceding the filing of this lawsuit." ECF No. 39 at 21. That is because "each misrepresentation by a defendant is a new violation of the MCPA … for the purpose of the statute of limitations analysis." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015); *see also Mitchell v. U.S. Bank Nat'l Ass'n*, No. CV PX-17-1805, 2018 WL 4679949, at *6 (D. Md. Sept. 28, 2018) (same). Thus Plaintiff's MCPA claim is not barred by the statute of limitations, as BofA maintains.

BofA nevertheless contends that Plaintiff "should have realized that [BofA] would not pay her interest on her escrowed funds by the time she received her first escrow account statement in August 2014, more than four year before she filed this lawsuit." Mot. at 16. But Plaintiff did not so realize (nor does BofA point to any evidence otherwise).

Regardless, BofA fails to take into account the continuing harm doctrine, which tolls the statute of limitations in situations where there are ongoing violations of a potential plaintiff's rights. *MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233, 235 (2007). Under this doctrine, "violations that are

continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time." *Id.* at 584. In *MacBride*, the plaintiff brought a claim against her landlord for damages stemming from the poor living conditions of the apartment she rented from him. *Id.* at 575-76. At issue was whether the plaintiff's MCPA claim was barred by the three-year statute of limitations. *Id.* at 576. Finding that the doctrine did not apply to the plaintiff's claim, the court explained that "[c]ontinuing violations that qualify under this theory are continuing unlawful acts, for example a monthly over-charge of rent, not merely the continuing effects of a single earlier act." *Id.* at 584 (distinguishing *78/79 York Assocs. v. Rand*, 175 Misc. 2d 960, 672 N.Y.S.2d 619 (1998) (tenant's claim for rent overcharge accrues on ongoing basis with each month's payment of unlawful rent)). Unlike the *Rand* plaintiff who alleged he was overcharged on a monthly basis, the *MacBride* plaintiff sought damages arising from the deteriorating condition of her apartment—"the continuing *ill effects* from the original alleged violation, and not a series of acts or course of conduct…." *Id.* at 585 (emphasis in original). Because the only qualifying misstatements were made at the lease's inception and there were no ongoing unlawful acts, the continuing harm doctrine did not apply.

Here, however, Plaintiff does not allege continuing effects of a single earlier act as in *MacBride*. Rather, she seeks to recover overcharges that accrued on an ongoing monthly basis due to BofA's ongoing course of conduct of sending misleading statements. *See also Dave & Buster's, Inc. v. White Flint Mall, LLP*, 616 Fed. Appx. 552, 556-57 (4th Cir. 2015) (distinguishing *MacBride* and finding continuing harm doctrine applicable under Maryland law: "The situation here does not involve the 'continuing effects of a single earlier act.' . . . . but rather an adverse course of *conduct* that Dave & Buster's engaged in every day the competing facility was open for business . . . ." (emphasis in original)); *Forest Capital, LLC v. Pearsall*, 725 Fed. Appx. 239, 240 n.* (4th Cir. 2018) (citing *Litz*—"which discuss[es] tolling of statute of limitations for continuous tortious actions under Maryland law"—to "note that because Forest Capital's claim of tortious interference stems from allegations of Pearsall's continuous course

of conduct in violation of the parties' February 21, 2014 settlement agreement, the statute of limitations is tolled"). Accordingly, the continuing harm doctrine applies and the statute of limitations is tolled.

As for BofA's argument that Plaintiff should have realized that BofA would not pay her interest on her escrowed funds by the time she received her first escrow account statement in August 2014, it is of no import. The Court of Appeals of Maryland has expressly "disavowed" as *dicta* language in *McBride* suggesting that the continuing harm doctrine does not toll the statute of limitations where the plaintiff knew or should have known of the injury or harm sooner:

> This dictum in *MacBride* effectively—and inadvertently—eliminated the continuing harm doctrine. The purpose of the continuing harm doctrine is to avoid punishing a plaintiff "because one or more [violations] occurred earlier in time" ... when such violations "are continuing in nature." 402 Md. at 584, 937 A.2d at 240; *see, e.g., Shell Oil Co. v. Parker*, 265 Md. 631, 634–36, 291 A.2d 64, 66–67 (1972) (holding that where Plaintiffs' harm, which had persisted for five or six years and which Plaintiffs knew about for that duration, was "continuing in nature" and their right to bring suit was "not barred by the three year Statute of Limitations for the continuing violation during the three year period prior to the filing of the action"). **A potential plaintiff's knowledge of the harm, therefore, is inconsequential.** To be sure, "the discovery rule does not impede the operation of the continuing-tort doctrine[,]" *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F.Supp.2d 751, 761 (S.D.W.Va.2009), *aff'd in part, appeal dismissed in part,* 636 F.3d 88 (4th Cir. 2011), and the **continuing harm doctrine tolls the statute of limitations regardless of a potential plaintiff's discovery of the wrong**.

*Litz v. Maryland Dep't of Env't*, 434 Md. 623, 647 n.9 (2013) (emphasis added). Because the continuing harm doctrine applies regardless of whether Plaintiff knew or should have known that BofA would not pay interest, BofA's argument fails.

### E. Plaintiff Relied on BofA's Deceptive Conduct By Making Monthly Payments.

BofA's reliance argument fares no better. As explained in Plaintiff's class certification briefing, each deed of trust contains the same material terms requiring BofA to comply with Maryland law, which uniformly required BofA to pay escrow interest. Yet, BofA sent periodic account statements to Plaintiff and the Class members that failed to include applicable interest amounts owed. *See* ECF No.

41 ¶ 71 ("Bank of America admits that its periodic statements to Plaintiff and some other mortgage borrowers do not reflect the payment of interest on the funds held in certain mortgage escrow accounts."). Because the statements failed to accurately reflect off-setting amounts of escrow interest owed by BofA, they misstated and inflated Plaintiff's and the Class members' level of indebtedness and were therefore false and misleading. By making the inflated payments reflected on misleading statements, Plaintiff and each Class member necessarily relied on BofA's deceptive conduct and were financially harmed.

Apart from arguing unpersuasively in a footnote that Plaintiff "disavowed" any MCPA claim based on the monthly statements, Mot. at 12 n.3, BofA fails to address Plaintiff's theory of reliance. This is especially curious considering the Court has already found it sufficient to support an MCPA claim. *See* ECF No. 39 at 20-21 (denying motion to dismiss MCPA claim, noting that Plaintiff alleges that she "relied on the misrepresentation by continuing to pay the incorrect amounts, thereby cause actual injury"). Instead, BofA's moving papers focuses on a red herring, arguing that Plaintiff's primary motivation in choosing to obtain a mortgage from BofA was the loan's interest rate, not escrow interest. Mot. at 17-18. Because Plaintiff necessarily relied on the misleading statements by making the inflated payments, reliance is satisfied.[19]

## IV. BofA is Not Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim.

### A. The Notice-And-Cure-Provision Is Inapplicable To Plaintiff's Claims.

BofA also erroneously asserts that Plaintiff's contract claim must be dismissed for failure to provide a formal notice-and-cure. But notice-and-cure is inapplicable to Plaintiff's breach-of-contract

---

[19] Notably, as BofA's own authority recognizes, "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Hebbeler v. First Mariner Bank*, No. CV ELH-17-3641, 2018 WL 3818855, at *7 (D. Md. Aug. 10, 2018). Whether a misrepresentation substantially induces a consumer's choice is ordinarily a question of fact for the trier of fact. *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011).

claim for the same reason it is inapplicable to her other claims. BofA acknowledges that such provisions are inapplicable to statutory claims, such as Plaintiff's MCPA claim and § 12-109(b) claim. *See Richards v. NewRez LLC*, 2021 WL 1060286, at *21 (D. Md. Mar. 18, 2021); *Stovall v. SunTrust Mortg., Inc.*, 2011 WL 4402680, at *7 (D. Md. Sept. 20, 2011). This is because "claims that exist independent of a contractual agreement between the parties, such as allegations of deceptive trade practices, are not subject to the notice and cure provisions that might otherwise apply." *Richards*, 2021 WL 1060286, at *21; *see also Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3-4 (E.D. Va. Apr. 26, 2011, *aff'd*, 482 F. Appx. 868 (4th Cir. 2012) ("notice-and-cure provisions do not extend to claims based on deceptive business practices").

To that end, for this same reason, the notice-and-cure provision is also not applicable to Plaintiff's contract claim. Plaintiff's deed of trust provides that:

> Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.

*See* Plaintiff's 2013 Deed of Trust ¶ 3, ECF No. 109-4A at 3 Further, "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." *Id.* ¶ 16. "Applicable law" is incorporated into the terms of the deed of trust. However, "Applicable law"—namely, § 12-109(b)—exists independent of any contractual agreement between the parties, and BofA would have a duty to pay interest regardless of whether the "Applicable law" was expressly incorporated into the deed of trust.

The deed of trust establishes that, as a default, BofA is not obligated to pay interest, but BofA acknowledges that it will comply with any law to the contrary. A requirement to comply with statutory law necessarily arises independently from the contract. Therefore, the notice-and-cure provision is not applicable to Plaintiff's contract claim. Indeed, it would make little sense to hold that a notice-and-cure provision is inapplicable to a statutory duty, but is applicable to the breach of that same statutory

duty where a defendant promises not to violate the statute that it is already obligated to obey.[20]

Further, while BofA may read the notice-and-cure provision differently, if this provision is ambiguous, it must be construed against BofA as the drafter of the document. *SumCo Eco-Contracting, LLC v. Ellicott Dredges, LLC*, 2021 WL 2649799, at \*8 (D. Md. June 28, 2021).[21]

### B. Any Notice To Cure Would Have Been Futile.

Even if the notice-and-cure provision is applicable to Plaintiff's contract claim, BofA is still not entitled to summary judgment because a notice to cure would have been futile. "[T]he law does not require a futile act." *Gorby v. Weiner*, 2014 WL 4825962, at \*5 (D. Md. Sept. 23, 2014). Here, any effort to get BofA to cure its breach would have been futile. There is clear evidence of that futility.

---

[20] *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018), *rev'd on other grounds and remanded*, 976 F.3d 881 (9th Cir. 2020) involved a substantially similar escrow interest provision referencing "Applicable Law." There, the court found that, "[t]he Deeds of Trust, by incorporating [applicable law], arguably require Chase to pay escrow interest to Plaintiffs. Thus, there is a fair argument that Chase's alleged non-payment of escrow interest is not 'pursuant to' the Deeds of Trust, and Plaintiffs were therefore not required to give notice before bringing this suit." 354 F. Supp. 3d at 1072. The court also found that this statutory duty was "not 'owed by reason of' the Deeds of Trust." *Id.*

[21] Cases cited by BofA are distinguishable because they did not involve a breach of any contractual provision requiring compliance with existing statutory law. *Pfendler v. PNC Bank, Natl. Assn.*, 2018 WL 2688502, at \*1-2 (W.D. Pa. June 5, 2018), *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at \*1 (S.D. Fla. July 2, 2015), and *Giotta v. Ocwen Fin. Corp.*, 2016 WL 4447150, at \*1 (N.D. Cal. Aug. 24, 2016) involved fees that allegedly were not reasonable or appropriate under the circumstances and, therefore, violated consumer protection laws or constituted RICO Act violations. None of those cases involved allegations that the fees violated any other statutory requirement, or constituted breaches of a contractual provision requiring compliance with existing statutory law. *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082, at \*1 (W.D. Wash. Mar. 8, 2006) involved fees that allegedly were not permitted under the agreement and constituted violations of consumer protection laws, but there was no allegation that the fees violated any other statutory requirement or violated any contractual provision requiring compliance with statutory requirements. *Estep v. Fed. Home Loan Mortg. Corp.*, 2014 WL 1276495, at \*3 (S.D.W. Va. Mar. 27, 2014) involved alleged contractual breaches based upon the failure by the defendant to provide certain notices, but not based upon any violation of statutory law or a contractual provision requiring compliance with statutory law. Indeed, *Estep* did not involve any statutory claims. *Id.* at \*3. In *Niyaz v. Bank of Am.*, 2011 WL 63655, at \*1 (E.D. Va. Jan. 3, 2011), a *pro se* action brought to forestall a foreclosure, it is not clear how any agreement was allegedly breached, but nothing suggests a violation of a provision requiring compliance with existing law. Finally, in *Richards*, 2021 WL 1060286, at \*1-3, which also involved allegedly improper fee charges, there was no breach of contract claim.

In *Lusnak*, a case with virtually identical allegations against BofA, the plaintiff provided notice to cure, but BofA did not cure or change its policies. *See* Ex. 8 ¶¶ 6-7 (Supp. Dec. of Donald M. Lusnak ISO Plaintiff's Mot. for Class Certification and Plaintiff's Opposition to Def.'s Mot. for Summ. J.) (explaining that after sending BofA a letter on Dec. 27, 2011 "inquiring about this issue [BofA's legal duty to pay escrow interest]," "the bank told me that it was not required by law to pay this interest"). Ultimately, the Ninth Circuit ruled that BofA was obligated to pay interest on funds held in escrow accounts. *See Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1197 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 567 (2018). Yet, BofA did not start paying borrowers within the Ninth Circuit until the Supreme Court denied certiorari.  However, to this day, BofA continues to refuse to pay interest to borrowers outside the Ninth Circuit. *See* ECF No. 100-12, BofA's Answers and Objections to Plaintiff's Second Set of Interrogatories, Resp. to Interrogatory No. 9, at 5-6 ("Bank of America's position was and continues to be that Md. Com. Law Code § 12-109 is preempted by the National Bank Act."). ██████████████████████████████████████████████████████████████████████████.[22] Yet, Defendant still refuses to pay interest to complaining borrowers.

The present action was filed almost ten months after the *Lusnak* decision (and also after the Supreme Court denied certiorari in *Lusnak*), at a time when it had become clear that Defendant was unwilling to pay escrow interest to borrowers like Plaintiff. Indeed, additional evidence of futility is the fact that, after this action was initiated, instead of paying Plaintiff the interest to which she was entitled, Defendant has continued to litigate against Plaintiff for almost three years, spending vast amounts in attorneys' fees and legal costs. Certainly a notice to cure had zero likelihood of causing BofA to reverse course given that BofA continues to refuse to pay escrow interest to Plaintiff and

---

[22] *See, e.g.*, Ex. 9 (complaint log BANA-CLARK 0006891) ████████████████████████████
████████████████████████████████████████████████████████████████████████████████████

other Maryland borrowers notwithstanding this Court's decision that BofA has no preemption excuse for violating Maryland law. Similarly, two other post-*Lusnak* actions involving similar claims are currently pending against BofA in the Eastern District of New York. Yet, BofA has made no effort to resolve those actions and, instead, has engaged in years of costly litigation.[23]

In *Kivett v. Flagstar Bank*, 333 F.R.D. 500 (N.D. Cal. 2019), another case involving a mortgage lender that failed to pay escrow interest, the court found class members' failure to provide notice to cure did not raise individualized issues because such failure "is excusable on the ground of futility" where the defendant "has never shown a single instance of curing after receiving notice" from the named plaintiffs. 333 F.R.D. at 504-05 (granting class certification). *Accord City of New York v. Tavern on the Green Intl. LLC*, 351 F. Supp. 3d 680, 692-93 (S.D.N.Y. 2018) (defendant's "continued infringement even *after* the suit was commenced makes clear that [defendant] never would have availed itself of the opportunity to cure") (emphasis in the original).

Critically, here, futility is a fact issue that cannot be resolved on a motion for summary judgment. *See, e.g., ITyX Sols., AG v. Kodak Alaris Inc.*, 2018 WL 2392004, at *12 (D. Mass. May 25, 2018) (denying summary judgment where "even assuming that Kodak did not comply with the notice and opportunity to cure requirements of the termination provision, there is a triable issue of fact concerning whether compliance would have been futile"). Here, Plaintiff has presented substantial evidential that a notice to cure would have been futile. At the same time, BofA has not presented *any* evidence to the contrary. Tellingly, BofA does not even argue that, had notice been given, it would have cured its violation of Maryland state law. At a minimum, there are questions of

---

[23] *Hymes v. Bank of America, N.A.*, No. 2:18-cv-02352 (E.D.N.Y.), and *Cantero v. Bank of America, N.A.*, No. 1:18-cv-04157 (E.D.N.Y.), are consolidated cases that have been pending for almost three years. In those cases, the court agreed with this Court and with the Ninth Circuit that state escrow interest laws are not preempted by federal law. *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 175 (E.D.N.Y. 2019). Yet, BofA continues to refuse to pay escrow interest.

fact that preclude summary judgment.

### C. Plaintiff May Recover Damages for Interest Not Paid Prior to November 2015.

Contrary to BofA's assertion, Plaintiff has never conceded that she cannot recover damages prior to November 29, 2015. The only reason Plaintiff's expert computed damages from 2015 onward is because BofA has not yet produced loan data pre-dating 2015. *See* ECF No. 113 at 3. That BofA now disingenuously seeks to use this to its benefit is surprising given that the parties expressly agreed to limit expert reports to issues material to class certification, with additional merits discovery to be conducted post-class certification, as reflected in the Court's stipulated order. *See* ECF No. 73. In the event the Court agrees equitable tolling applies here and certifies the putative class, it is uncontroverted that BofA will be able to produce loan data pre-dating 2015 as it produced similar data in *Lusnak*.

## <u>CONCLUSION</u>

For the foregoing reasons, BofA's Motion for Summary Judgment should be DENIED with regard to all claims except unjust enrichment and injunctive relief.[24]

---

[24] Plaintiff does not oppose the grant of summary judgment on Plaintiff's claim for unjust enrichment or for injunctive relief.

DATED: August 9, 2021                          Respectfully submitted,

*/s/ Anna C. Haac*
Anna C. Haac (D. Md. # 28383)
Hassan A. Zavareei (D. Md. # 18489)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Ph.: (202) 973-0900
ahaac@tzlegal.com
hzavareei@tzlegal.com

Jonathan M. Streisfeld (*pro hac vice*)
Daniel Tropin (*pro hac vice*)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Ph.: (954) 525-4100
streisfeld@kolawyers.com
ostrow@kolawyers.com

Todd S. Garber (*pro hac vice*)
Bradley F. Silverman (*pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Ph.: (914) 298-3283
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
**GOLDENBERG SCHNEIDER, L.P.A**.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiff*