## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CYNTHIA CLARK, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-18-3672 |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Cynthia Clark ("Plaintiff") filed a Complaint on behalf of herself and a putative class of borrowers who entered into mortgage agreements with Bank of America ("BofA"), alleging, *inter alia*, that BofA is liable for failure to pay interest on escrow accounts established in connection with such agreements.  Pending before this Court is BofA's Motion for Summary Judgment, ECF 105.  The issues have been fully briefed, ECF 108, 122, 127, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, BofA's Motion for Summary Judgment will be granted.[1]

### I.   FACTUAL BACKGROUND

The facts described herein are viewed in the light most favorable to the Plaintiff as the non-moving party.

In or about August, 1995, Plaintiff purchased a house in Westminster, Maryland.  ECF 1 ¶ 27.  Although Plaintiff originally financed her purchase with a loan from a different company, she refinanced her mortgage in 2005 with BofA as her new lender.  ECF 105 at 3.  When she did so,

---

[1] As a result of the rulings made herein, Plaintiff's motion for class certification, ECF 100, will be denied as moot, as will the motion for leave to file a surreply relating to that motion, ECF 118.

BofA established an escrow account on Plaintiff's behalf.  ECF 105-3 at 55:21-56:14 (Ex. 1, Clark Dep.).  These escrow accounts are commonly used by mortgage lenders such as BofA "to require that part of the borrower's monthly payments be set aside to make tax and insurance payments on the borrower's behalf."  ECF 105 at 2 (citing H.R. Rep. No. 111-94, at 53 (2009).  At closing, Plaintiff signed an "Escrow Reserve Account or Waiver Agreement," which stated that Plaintiff would receive interest on her escrow account.  ECF 105-4 (Ex. 2).  Consistent with these representations, BofA paid Plaintiff interest on the escrowed funds.  BofA provided periodic statements that reflected the accrual of interest to Plaintiff's escrow account.  ECF 105-7 (Ex. 5).  These interest payments were consistent with Maryland law, which requires lending institutions to pay specified amounts of interest on escrow account funds established in connection with a loan secured by residential first mortgages or first deeds of trust.  Md. Com. Law Code § 12-109.

In March of 2010, Plaintiff refinanced her mortgage loan with BofA.  ECF 105 at 4.  As with her 2005 refinancing, BofA established an escrow account in connection with Plaintiff's new mortgage loan.  *Id.*  Unlike her prior loan, however, BofA did not pay interest on funds in the escrow account established in 2010.  *Id.*  BofA's failure to pay interest on Plaintiff's escrowed funds resulted from an internal policy shift implemented at some point between Plaintiff's 2005 and 2010 closings.  *See id.* (citing ECF 105-12 at 44:20-45:1 (Ex. 10, Orriss Dep.)).  BofA instituted its revised policy notwithstanding Md. Code, Comm. Law § 12-109.

In February, 2013, Plaintiff again refinanced her mortgage agreement with BofA.  Plaintiff executed the mortgage agreement, in the form of a deed of trust (the "Deed of Trust"), on February 13, 2013.  ECF 109-4 (Ex. A, Plaintiff's 2013 Deed of Trust).  The Deed of Trust included several provisions relevant to this action.  First, the Deed of Trust provided that BofA would comply with "applicable state and federal law."  *Id.* ¶ 16.  Second, it specified that "[u]nless an agreement is

made in writing or Applicable Law requires interest to be paid on the [Escrow] Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds." *Id.* ¶ 2.  Finally, the Deed of Trust stipulated that neither borrower nor lender would commence judicial action for an alleged breach of any provision without first notifying the other party of the alleged breach and giving that party a reasonable period to take corrective action.  *Id.* ¶ 20.  Around the time the Deed of Trust was executed, Plaintiff also may have received a document that BofA provided to some borrowers at closing titled Notice Concerning Your Escrow Account ("Escrow Account Notice").  ECF 105-7 (Ex. 11).  The Escrow Account Notice stated in relevant part that "[t]he federal law and regulations that Bank of America and its subsidiaries are subject to do not require the payment of interest on escrow accounts."  ECF 105-7 (Ex. 11).

In August, 2014, Plaintiff received an Escrow Account Disclosure Statement ("Annual Escrow Statement") from BofA, which summarized the activity in her escrow account, and reflected that no interest had been paid on her escrowed funds.  ECF 109-4 (Ex. C, 2014 Escrow Account Disclosure Statement).  Plaintiff received a similar Annual Escrow Statement in August of 2015, which again reported that interest had not accrued on the funds held in her escrow account. *Id.* at Ex. D.  Plaintiff received similar Annual Escrow Statements in August of 2016, August of 2017, and August of 2018.  *Id.* at Ex. E-G.

At some point, while reviewing one of her Annual Escrow Statements, Plaintiff noticed that interest was not accruing on her escrowed funds.  Plaintiff filed this lawsuit in November, 2018 on behalf of herself and a putative class, alleging claims against BofA in connection with its failure to pay interest.

## II.    LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a "scintilla of evidence" in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial."  *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the

4

light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In her opposition, Plaintiff argues that BofA's motion should be denied for noncompliance with local rules requiring that "[i]n a two-party case, if both parties intend to file summary judgment motions, counsel are to agree among themselves which party is to file the initial motion." ECF 123 at 2 (citing Loc. R. 105.2 (D. Md. 2021). Crucially, Plaintiff does not assert that she intended to seek summary judgment. Nor could she. As Plaintiff admits, the one-way intervention rule prohibits her from seeking summary judgment before class certification. *Id.* at 2 n.2. Under these circumstances, there is no basis for concluding that BofA's motion was improper or untimely. *See Lupo v. JPMorgan Chase Bank, N.A.*, 2015 WL 5714641, at *12 (D. Md. Sept. 28, 2015) (Local Rule 105.2.c does not apply where "there is no indication that Plaintiff sought to file for summary judgment as well.").

## III.  DISCUSSION

### A.  Breach of Contract (Count I)

Maryland law allows parties to recover on claims for breach of contract. *See, e.g.*, *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 934 (Md. Ct. Spec. App. 2007). In Count I, Plaintiff contends that BofA breached its contract by failing to pay interest on her escrow account as required by Maryland law, despite language in the Deed of Trust stating that BofA would comply with all applicable law.[2] ECF 1 ¶ 45-51; *see also* ECF 123 at 25 (citing ECF 109-4 (Ex. A, Plaintiff's 2013 Deed of Trust, ¶ 16). The Deed of Trust also contains a notice-and-cure provision, which provides in pertinent part that:

---

[2] As defined in the Deed of Trust, applicable law is "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders." ECF 109-4.

> Neither Borrower nor Lender may commence . . . any judicial action . . . that alleges that the other party has breached any provision of . . . this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

ECF 109-4 (Ex. A, Plaintiff's 2013 Deed of Trust, ¶ 20).  The parties do not dispute that Plaintiff failed to fulfill the notice-and-cure provision before filing this suit.  *See* ECF 105-1 at 19-20; *see also* ECF 105-3 at 137:12-22 (Ex. 1, Clark Dep.).  BofA argues that, due to Plaintiff's undisputed noncompliance with the notice-and-cure provision, it is entitled to summary judgment on Count I. Plaintiff, for her part, asserts that the notice-and-cure provision is inapplicable because: (1) BofA's alleged breach arises from an underlying violation of statutory law; (2) the provision is ambiguous and must be construed against BofA as the drafter; and (3) any notice would have been futile.  ECF 123 at 24, 26.  Plaintiff's arguments on each of these points fail, and this Court will address them each in turn.

### i.   Notice-and-Cure Provision

It is well established under Maryland law that "where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused." *Laurel Race Course, Inc. v. Regal Constr. Co.*, 274 Md. 142, 333 (1975).  Accordingly, "[w]hen claims arise from actions taken pursuant to the contract or agreement at issue, a valid notice and cure provision is a precondition to the suit."  *Richards v. NewRez LLC*, 2021 WL 1060286, at *21 (D. Md. 2021) (quoting *Taub v. World Financial Network Bank*, 950 F. Supp. 2d 698, 702 (S.D.N.Y. 2013)).  A notice-and-cure provision, however, is only a precondition to claims arising from the contract itself, not from allegations of statutory violations or deceptive business practices. *Id.* at 22 ("'[w]hen claims arise from actions taken pursuant to the contract or agreement at issue,

a valid notice and cure provision is a precondition to the suit,' but where a plaintiff 'alleges that the [mortgage] agreement violated federal law,' a 'notice and cure provision does not apply[.]'") (internal citations omitted); *see also Stovall v. SunTrust Mortg.*, Inc., 2011 WL 4402680, at *7 (D. Md. Sept. 20, 2011). Courts have therefore determined that a valid notice-and-cure provision may foreclose a breach of contract claim, but not other claims that exist independent of the contract. *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082, at *3 (W.D. Wash. 2006) (dismissing a borrower's breach of contract claim for failure to comply with a notice-and-cure provision, but sustaining a state Consumer Protection Act claim because "allegations of deceptive business practices[] clearly exist[] independent of any contract between the parties").

Here, Plaintiff does not dispute that Count I of her complaint pleads a breach of contract claim, specifically BofA's failure to adhere to contractual provisions requiring it to comply with all applicable state and federal laws. *See* ECF 1 at 8. Plaintiff now asserts, however, that her self-styled breach of contract claim is actually a statutory claim because the allegedly breached contractual provision is one which pledges general adherence to applicable law. *See* ECF 123 at 25 ("The deed of trust establishes that, as a default, BofA is not obligated to pay interest, but BofA acknowledges that it will comply with any law to the contrary. A requirement to comply with statutory law necessarily arises independently from the contract."). This argument proves too much. Under Plaintiff's theory, any claim for breach of contract, which also violated a federal or state law, would be vaulted to a privileged hybrid status. Such claims would enjoy an unlimited private right of action (regardless of whether the underlying statute created one) and could be

remedied by contract-style damages; even so, these claims would be unbounded by any of the provisions or conditions precedent detailed in the contract itself.[3]

The law simply does not support Plaintiff's argument. Indeed, the cases Plaintiff marshals in her opposition brief are inapposite. Several of these cases stand for the proposition that a notice-and-cure provision does not bar purely statutory claims or independent allegations of deceptive business practices. *See* ECF 123 at n.20-21 (citing *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018) (holding that a notice-and-cure provision did not bar causes of action under California's Unfair Competition Law)); *see also Richards v. NewRez LLC*, 2021 WL 1060286, at *22 (D. Md. Mar. 18, 2021) (sustaining claims under the Real Estate Settlement Procedures Act and Fair Debt Collection Practices Act despite a notice-and-cure provision); *Stovall v. SunTrust Mortg., Inc.*, 2011 WL 4402680, at *7 (D. Md. Sept. 20, 2011) (declining to dismiss claims alleging deceptive business practices); S*chmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011) (holding that a notice-and-cure provision did not bar claims under the Virginia Consumer Protection Act, Fair Debt Collections Practices Act, Truth in Lending Act, or for common law fraud). This Court does not contest such a conclusion. Rather, it merely observes that claims brought to enforce a contract must generally adhere to conditions precedent to filing suit that are detailed in the contract. Plaintiff's attempts to differentiate her claim from caselaw establishing this proposition are unsuccessful. *See, e.g.*, *Gerber v. First Horizon Home Loans Corp*., 2006 WL 581082, at *1-2 (W.D. Wash. Mar. 8, 2006) (distinguishing between plaintiff's causes of action for breach of contract and the Washington Consumer Protection Act and dismissing the breach of contract claim for failure to satisfy its notice

---

[3] Moreover, Plaintiff does not confront the argument that if her breach of contract claim is, in fact, merely a disguised statutory claim, then it is necessarily duplicative of her statutory claims in Counts II and III. *See* ECF 1 at 8-9.

provision); *Estep v. Fed. Home Loan Mortg. Corp.*, 2014 WL 1276495, at *4 (S.D.W. Va. Mar. 27, 2014) (granting motion for summary judgment where a notice-and-cure provision barred Plaintiff's contract claims).

This Court finds that there is no dispute that the notice-and-cure provision applies to Plaintiff's claim that BofA violated the Deed of Trust.

### ii.    Ambiguity

After asserting that the notice-and-cure provision is inapplicable, Plaintiff also conclusorily argues that "while BofA may read the notice-and-cure provision differently, if this provision is ambiguous, it must be construed against BofA as the drafter of the document." ECF 123 at 25. This argument puts the cart before the horse. A notice-and-provision clause does not become ambiguous merely because a litigant resists its enforcement. Absent any evidence to substantiate her assertion that the clause is ambiguous, Plaintiff's claim in this regard must fail.

### iii.    Futility

Plaintiff finally argues that the notice-and-cure provision is excused because any notice to BofA would have been futile. ECF 123 at 26. In an attempt to establish the legal principle necessarily undergirding this argument—that under Maryland contract law, a condition precedent to filing suit may be excused upon a showing of futility—Plaintiff quotes one sentence from a single case from federal court in this District. *See id.* ("Even if the notice-and-cure provision is applicable to Plaintiff's contract claim, BofA is still not entitled to summary judgment because a notice to cure would have been futile. '[T]he law does not require a futile act.' *Gorby v. Weiner*, 2014 WL 4825962, at *5 (D. Md. Sept. 23, 2014).").

Plaintiff's argument fails on several counts. First, Plaintiff has not established that Maryland law recognizes a futility defense to contractual notice-and-cure provisions. The sole

legal authority cited in Plaintiff's opposition, ECF 123, occurred in a wholly different context, a derivative action brought by plaintiff on behalf of a company of which he was a shareholder. *Gorby*, 2014 WL 4825962, at *5.  The Court in *Gorby* was not expounding upon a principle of Maryland contract law, but rather discussing a specific exception to the statutory requirement that a shareholder make demand for remedial action on corporate directors before instituting a derivative suit.  *See id.*  Indeed, neither Plaintiff nor Defendant has proffered Maryland law establishing a futility exception outside the context of derivative shareholder lawsuits.  *See*  ECF 123 at 26-29; ECF 127 at 16 (citing *Oliveira v. Sugarman*, 226 Md. App. 524, 542 n.11 (shareholder derivative lawsuit); *Werbowsky v. Collomb*, 362 Md. 581, 620 (2001) (shareholder derivative lawsuit); *City of New York v. Tavern on the Green International LLC*, 351 F. Supp. 3d 680 (S.D.N.Y. 2018) (2016) (recognizing futility defense in contract governed by New York law); *Kivett v. Flagstar Bank*, 333 F.R.D. 500, 505 (N.D. Cal. 2019) (finding a notice-cure provision inapplicable to a California statutory claim and pausing to note that the provision may be excused for futility in any event); *Stricklin v. Fortuna Energy, Inc.*, 2014 WL 2619587, at *4 (N.D.W. Va. June 12, 2014) (rejecting a futility defense in contract governed by West Virginia law).  Simply put, Plaintiff has not brought authority to this Court's attention that justifies the application of a limited, corporate common law doctrine to Plaintiff's contract claim.  *See, e.g.*, *Werbowsky*, 362 Md. 581, 620 (2001) ("[T]here exists a limited futility exception to requirement of demand for remedial action prior to shareholder's derivative action").

Second, and more fundamentally, Plaintiff has not established a genuine dispute of material fact even under her own proffered futility standard.  *See Gorby*, 2014 WL 4825962, at *5 (explaining that demand was futile because it would have been "impossible for [plaintiff] to garner the required majority approval for a derivative suit."); *Werbowsky*, 362 Md. at 607 ("the trend

since then has been to enforce more strictly the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception"); *id.* at 620 ("the futility exception . . . [is] a very limited exception, to be applied only when the allegations or evidence clearly demonstrate [futility] in a very particular manner.").  Plaintiff provides no evidence sufficient to raise a dispute that it would have been "impossible" to cure her grievance through notice to BofA.  *See Gorby*, 2014 WL 4825962, at *5.  Plaintiff attempts to demonstrate that notice in her particular case would have been futile because BofA has been subject to—or has been found liable in— similar actions in other courts.  *See* ECF 123 at 127 (citing *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1197 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 567 (2018); *Hymes v. Bank of America, N.A.*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019); *Cantero v. Bank of America, N.A.*, No. 1:18-cv-04157 (E.D.N.Y.); *Kivett*, 333 F.R.D. 500, 505 (N.D. Cal. 2019)).  Jurisdictions recognizing a futility excuse in contract actions, however, have rejected attempts to establish futility by reference to unrelated lawsuits.  *Pfendler v. PNC Bank, Nat'l Ass'n*, 2018 WL 2688502, at *4 (W.D. Pa. June 5, 2018).  Plaintiff's argument that futility is also evidenced by BofA's failure to repay her interest since the commencement of this suit is similarly unavailing.  *See Garay*, 2020 WL 10823745, at *6 (S.D. Fla. Aug. 7, 2020) ("just because a defendant did not cure after the litigation proceedings started does not mean that a defendant would not have cured the alleged breach if provided notice of the threat of litigation") (citing *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 905 (11th Cir. 2000).  Plaintiff's final argument—that futility can be inferred from BofA logs showing that several customers complained about, or threatened litigation over, the lack of interest on escrowed funds—presents a closer case.  *See* ECF 123 at 27, 27 n.22 (citing ECF 124-6).  Crucially, however, Plaintiff adduces no evidence as to the resolution of these complaints, nor does she offer facts to substantiate the assertion that "Defendant still refuses to pay interest to

complaining borrowers."  *Id*.  By contrast, BofA proffers uncontroverted evidence suggesting that multiple complaining customers did subsequently receive interest.  ECF 127 at 17 (citing Ex. 5 ("Pierce Decl."), ¶¶ 5, 7.).

Plaintiff fails to adduce evidence to raise a genuine issue of fact, or to establish as a matter of law, that the notice-and-cure provision contained in her Deed of Trust is excused, or is inapplicable, to her breach of contract claim.  BofA is therefore entitled to summary judgment on Count I.

### B.  Md. Com. Law Code § 12-109 (Count II)

In Count II of her complaint, Plaintiff alleges that BofA violated Md. Com. Law Code § 12-109 by failing to pay interest on funds held in an escrow account pursuant to her residential property mortgage agreement.  Section 12-109 provides in relevant part that:

> A lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property and creates or is the assignee of an escrow account in connection with that loan shall pay interest to the borrower on the funds in the escrow account at an annual rate not less than the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as published by the Federal Reserve in "Selected Interest Rates (Daily)—H.15", as of the first business day of the calendar year.

§ 12-109(b)(1).

In its earlier memorandum opinion denying BofA's motion to dismiss, this Court joined the Ninth Circuit, *Lusnak*, 883 F.3d 1185, and a New York federal district court, *Hymes*, 408 F. Supp. 3d 171, in rejecting BofA's contention that federal law preempts state laws requiring the payment of interest on escrow funds.  ECF 38 at 4-18.  At this juncture, BofA does not argue that federal preemption entitles it to summary judgment.  *See* ECF 123 at 8-9 (stating that "[w]hether federal law preempts state interest-on-escrow laws remains unsettled" and noting that a federal district court recently authorized an interlocutory appeal).  Rather, BofA asserts that it is entitled to summary judgment on Count II because § 12-109 does not authorize a private right of action.

Under Maryland law, a "private cause of action . . . does not exist simply because a claim is framed that a statute was violated and a plaintiff or class of plaintiffs was harmed by it." *Baker v. Montgomery Cty.*, 427 Md. 691, 709 (2012) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). An alleged violation of Maryland statute may only be maintained as a private cause of action if such a right was created by the legislature, either expressly or by implication. *Id*. at 710. Neither Plaintiff nor BofA disputes that § 12-109 contains no express private remedy. *See* ECF 107 at 8; ECF 123 at 7-8. Instead, the parties dispute whether § 12-109 contains an implied private right of action.

Maryland utilizes a three-part test to determine whether a statute implies a private right to sue: "First, is the plaintiff 'one of the class for whose special benefit the statute was enacted[.]' Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" *Baker*, 427 Md. at 709 (quoting and adopting a modified version of the test enunciated in *Cort v. Ash*, 422 U.S. 66, 78 (1975)). In applying the test, the central inquiry remains "whether [the legislative body] intended to create, either expressly or by implication, a private cause of action." *Id.* at 710 (internal citations omitted).

Under Maryland law, the test for an implied cause of action is an exacting one. Indeed, Plaintiff identified no cases in which Maryland courts recognized a private right of action where one was not contemplated in the plain text of the statute. *See, e.g.*, *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 376 n.8 (2010) (where "the legislature has intended to create a private cause of action for violations of a statute, it has done so explicitly.") Applying the three-part test according to Maryland law below, this Court finds that § 12-109 does not confer a private right of action.

i.    **Class of Beneficiaries**

The first factor—whether the statute was created for the special benefit of persons—weighs in favor of finding a private right of action.  "In determining whether a private right of action is to be implied, the Maryland Court of Appeals has distinguished between those statutes designed to confer a general benefit on the public at large and those designed to protect a particular subgroup of the public or to preserve or create individual rights."  *IVTX. Inc. v. United Healthcare of the Mid–Atlantic, Inc.*, 112 F. Supp. 2d 445, 447 (D. Md. 2000).  "A private right of action will not be implied from a statute that was designed to confer only a general benefit on the public at large."  *Staley v. Americorp Credit Corp.*, 164 F. Supp. 2d 578, 580 (D. Md. 2001) (citing *Sugarloaf Citizens Ass'n, Inc. v. Gudis*, 78 Md. App. 550, 554 (Md. Ct. Spec. App. 1989).

Section 12-109 provides in part that "[a] lending institution which lends money secured by a first mortgage or first deed of trust on any interest in residential real property . . . shall pay interest to the borrower on the funds in the escrow account."  By its terms, the statute does not expressly specify a class for whose benefit it was enacted.  Nevertheless, the statute is crafted such that it inures only to the benefit of a discrete class of borrowers.  Section 12-109 is not aimed at the welfare of the general public.  Rather, in enacting § 12-109, the General Assembly imposed specific restrictions upon lending institutions only with regards to escrow accounts created in connection with residential borrowers whose loans are secured by first mortgages or deeds of trust. In so doing, the General Assembly created statutory rights to benefit a discrete class of persons to which Plaintiff belongs.

### ii.    Legislative Intent

The second factor—legislative intent and history—militates against finding a private right of action.  "Where the legislative history does not indicate any discussion whatsoever as to whether a statute gives rise to such a right, the fact that the ordinance is silent would weigh heavily against an intent ... to create a private cause of action."  *Sugarloaf*, 78 Md. App. at 557; *see also Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112, 123 (2013) ("While legislative silence is not conclusive, this certainly weighs against finding a private right of action.").  This Court discerns no intent on the General Assembly's part regarding the creation or denial of a private right of action to enforce § 12-109.  *See* ECF 123 at 9.  Plaintiff emphasizes an opinion from the Maryland Attorney General, which observed that § 12-109 was intended as a pro-consumer provision.  ECF 123 at 9 (quoting 75 Md. Op. Atty. Gen. 223 (1990)).  This statement, however, bears little relevance to inquiries into the mechanisms of enforcement that the General Assembly contemplated for this undisputedly pro-consumer statute.  The silence of the legislative record, although not determinative, weighs against recognizing a private right of action.

### iii.    Legislative Scheme or Purpose

Finally, implying a private right of action does not appear consistent with the underlying purposes of the larger statutory scheme.  *See Scull*, 435 Md. at 123.  The predecessor to § 12-109 was enacted as part of Chapter 420 of the Laws of Maryland 1975, a chapter primarily concerned with usury regulations.  *See* 75 Md. Op. Atty. Gen. 223, 224 (Aug. 7, 1990) ("the main purpose of [Chapter 420] was to allow residential first mortgage lenders to charge interest at a higher rate than otherwise allowable if certain conditions were met.").  Upon reorganizing various credit regulations in 1975, the legislature recodified and incorporated § 12-109 into Subtitle 1 of Title 12 of the Maryland Commercial Law Article.  *Id.*  Section 12-109 is one of three escrow sections

included in Subtitle 1, none of which include a private right of action.  *See* §§ 12-109 – 12-109.2.

The absence of a private remedy to enforce § 12-109—or any escrow section—is particularly

conspicuous when compared to the remainder of Subtitle 1.  For instance, § 12-111(b) specifies

that private actions for usury[4] must be brought within six months after a loan is satisfied but makes

no mention of a statute of limitations for an escrow action.  Section 12-114(b)(1) also outlines

available remedies for usury violations but provides no remedies for escrow violations.  Finally,

§ 12-112 does not contemplate any escrow actions, but specifies that private actions for usury shall

not be permitted against assignees of a mortgage who have no notice of any usury.  The legislature

clearly knew how to include private remedies in  Subtitle 1 where it intended to do so.  *See Staley*

*v. Americorp Credit Corp.*, 164 F. Supp. 2d 578, 581 (D. Md. 2001) (finding that the provision of

private remedies for certain sections of the statute weighed against finding an implied private

remedy in other sections.).  Instead, the lack of a private remedy in § 12-109 is consistent with a

statutory scheme principally concerned with usury.[5]

Plaintiff's reliance on *Kemp* is misplaced.  248 Md. App. 1 (Ct. Spec. App. 2020), *aff'd in*

*part, rev'd in part sub nom. Nationstar Mortg. LLC v. Kemp*, 2021 WL 3828679 (Md. Aug. 27,

2021).  *See* ECF 123 at 11-12 ("*Kemp* specifically recognized an implied right of action…").  The

Court in *Kemp* was not considering an implied private right of action.  The case instead centered

on whether § 12-121—a provision in Subtitle 1 that limits the fees that may be charged for real

---

[4] Section 12-109 does not fall within Subtitle 1's definition of usury, which is "the charging of interest by a lender in an amount which is greater than that allowed by this subtitle."  § 12-101.

[5] It is also notable that, despite omitting civil or criminal enforcement mechanisms for § 12-109, the Maryland General Assembly did create criminal penalties for knowing and willful violations of a different escrow section, § 12.109-2.  *See* § 12-122 (rendering knowing and willful violations of § 12-109.2—which prohibits service fees for the maintenance of escrow accounts—guilty of a misdemeanor).  The specific imposition of criminal penalties for only one of the Subtitle 1's escrow sections lends further credence to the argument that the lack of specified penalties for violations of § 12-109 constituted a deliberate choice.

property inspections ("Inspection Fees Provision")—also applied to a lender's assignee. *Id*. at 8. The Inspection Fees Provision is a usury provision, and as such, has a private right of action with a six-month statute of limitations. *See* § 12-111(b) (specifying a six-month limitation for private actions for usury). Moreover, as a usury provision, the Inspection Fees Provision is also subject to § 12-112, which prohibits private actions against assignees who take without notice of any usury. Against this backdrop, the Court in *Kemp* drew the obvious logical implication that insofar as § 12-112 only barred private actions against assignees without notice of usury, it did not foreclose private actions against assignees who have notice of usury. *Kemp*, 248 Md. App. at 18. The court did not imply a cause of action that was not contemplated by the text of the statute. It merely observed that a private right, which was enumerated in § 12-111(b), and inoperative against a certain class of assignees by operation of § 12-112, remained viable against assignees falling outside that protected class. *See id*. Here, by contrast, no private right is afforded to or against any class of persons for a violation of § 12-109.

Plaintiff finally insists that "an implied private right of action is especially consistent with the legislative scheme because there exists no other remedy." ECF 123 at 11. This argument fails for two reasons. First, Plaintiff cites no legal authority for her contention that a right of private action should be implied merely because the statute is silent as to any enforcement mechanism. Plaintiff instead extrapolates this proposition from cases that stand for the inverse principle: that where alternative remedies exist, no private right should be inferred. *See id*. (citing *Fangman v. Genuine Title*, LLC, 447 Md. 681, 716 (2016)). This Court is not persuaded that because statutory enforcement mechanisms militate against a private right of action, a lack of specified statutory remedies necessarily dictates a private right of action. Second, and more importantly, Plaintiff offers no evidence showing that § 12-109 is otherwise unenforceable. Plaintiff does not suggest

that the Office of the Attorney General of Maryland is powerless to enforce Subtitle 1 in its capacity as the chief legal officer of the state. Nor does Plaintiff contest that—like the statute in *Scull*, 435 Md. at 132—violations of § 12-109 involving unfair or deceptive practices may be subject to private action under the Maryland Consumer Protection Act ("MCPA"), § 13-301.

In sum, "the lack of discernible legislative intent to create an implied cause of action in the plain language and structure of the statute, its legislative history, or some other legitimate and reliable source cements the conclusion" that the General Assembly, in enacting § 12-109, did not contemplate an implied private cause of action. *Baker*, 427 Md. at 714. BofA is therefore entitled to summary judgment on Count II.

### C. Md. Com. Law Code § 13-301 (Count III)

In Count III of her complaint, Plaintiff alleges that BofA engaged in unfair, abusive, or deceptive trade practices in violation of the MCPA, § 13-301. Specifically, Plaintiff alleges that the following documents included actionable misrepresentations or omissions: the February, 2013, Deed of Trust; the Escrow Account Notice that BofA may have given Plaintiff at closing; and Annual Escrow Statements sent to Plaintiff in August 2014, August 2015, August 2016, August 2017, and August 2018.

To state an MCPA claim, a plaintiff must allege "(1) an unfair or deceptive practice . . . that is (2) relied upon, and (3) causes them actual injury." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015). The MCPA defines unfair or deceptive practices to include both misrepresentations, § 13-301(1), and material omissions, § 13-301(3).[6]

---

[6] In its briefs, BofA made much of Plaintiff's supposed waiver or disavowal of an omission theory, § 13-301(3), for her MCPA claim, arguing that she could only proceed on a misrepresentation theory, § 13-301(3). *See, e.g.*, ECF 105 at 11 ("Plaintiff cannot proceed on an omission theory. She did not allege that theory in her complaint, *see* ECF No. 1 ¶¶ 62-78, and so cannot maintain that claim now."). BofA's contention is unpersuasive. Plaintiff's complaint plausibly alleged violations of MCPA, § 13-301, *et seq.*, without reference to the specific subsection under which her claim would ultimately fall. At the pleading

An MCPA claim must be filed "within three years from the date it accrues." Md. Code Cts & Jud. Proc. § 5-101; *Master Fin., Inc. v. Crowder*, 409 Md. 51, 64 (2009). Under Maryland law, a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631 (Md.1981); *see also Windesheim v. Larocca*, 116 A.3d 954, 962 (Md. 2015) ("[the] discovery rule [] tolls the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury.").

Plaintiff filed suit in November 2018: roughly five years after executing the February 2013 Deed of Trust, four years after receiving her first Annual Escrow Statement reflecting no interest on her escrowed funds, and more than three years after receiving a second Annual Escrow Statement detailing similar information. Based on these undisputed facts, Defendant claims that it is entitled to summary judgment because Plaintiff's MCPA claim is untimely. Plaintiff raises two main arguments in opposition. First, Plaintiff argues that alleged MCPA violations arising from documents she received during her February, 2013, closing remain viable under the doctrine of continuing harm. ECF 123 at 21. Second, Plaintiff asserts in the alternative that BofA is, at a minimum, liable for MCPA violations in connection with her 2016, 2017, and 2018 Annual Escrow Statements because "each misrepresentation by a defendant is a new violation of the MCPA . . . for the purpose of the statute of limitations analysis." *Id.* (citing *Ayres*, 129 F. Supp. 3d 249, 272 (D. Md. 2015)). As detailed below, Plaintiff's arguments on each point lack merit. Viewing all facts in the light most favorable to Plaintiff, this Court finds that there is no genuine

---

stage, such precision was not necessary. *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) ("The fundamental command of the Federal Rules of Civil Procedure is 'never to exalt form over substance.' . . . technical pleading irregularities . . . are excusable 'as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party.'") (internal citations omitted); *Arfons v. E. I. Du Pont De Nemours & Co.*, 261 F.2d 434, 435 (2d Cir. 1958) ("It is now well established that dismissals for mere technical defects or ambiguities in pleadings are not favored.").

dispute that MCPA violations allegedly occurring in February 2013 are time barred, and that her

Annual Escrow Statements do not contain actionable misrepresentations or omissions.[7]

### i.   Closing Documents

Plaintiff argues that BofA is liable under the MCPA for alleged misrepresentations in the

mortgage documents it provided to Plaintiff at closing in February 2013.  These documents

undisputedly included a Deed of Trust, executed by Plaintiff on February 13, 2013, which stated

in relevant part that BofA shall not be required to pay Plaintiff any interest or earning on escrow

funds, "[u]nless an agreement is made in writing or Applicable Law requires interest to be paid on

the Funds."  ECF 109-4 (Ex. A, Plaintiff's 2013 Deed of Trust, ¶ 3).  Plaintiff contends that BofA

entered into the mortgage agreement despite having no intention of complying with Maryland law

requiring interest to be paid on escrow accounts, and in doing so, violated the MCPA.

BofA argues that any potential MCPA claim arising from the February 2013 Deed of Trust

is foreclosed by Maryland's statute of limitations, which bars actions filed more than three years

after a plaintiff in fact knew, or reasonably should have known, of the wrong.  Md. Code Cts &

Jud. Proc. § 5-101; *Poffenberger*, 290 Md. 631 (Md.1981).  BofA states that Plaintiff should have

known of the alleged wrong by August, 2015, after receiving two consecutive Annual Escrow

---

[7] Plaintiff also argues that an Escrow Account Notice, which may have been provided to her at closing, also contained misrepresentations in violation of the MCPA.  This Escrow Account Notice cannot serve as the basis for Plaintiff's MCPA claims.  First, Plaintiff does not provide facts demonstrating that she ever received a copy of this document.  BofA proffered evidence that Plaintiff could not produce this document, despite testifying that she retained a complete copy of all documents provided to her at closing; BofA further highlighted Plaintiff's testimony that she could not recall receiving the document.  ECF 107 at 11-12.  To counter this showing, Plaintiff merely asserts that "Plaintiff testified that she was not sure whether she received it and that it was not in her files, not that she definitively never received it."  ECF 123 at 14 n.16.  Plaintiff cannot meet her burden by raising the unsubstantiated possibility that she received a copy of the Escrow Account Notice.  Second, even assuming she did receive the Escrow Account Notice, Plaintiff cannot—nor does she attempt to—credibly allege reliance on a document which she does not recall receiving, and which she admittedly did not retain.

Statements that did not reflect any interest payments. *See* ECF 109-4 (Ex. C, 2014 Escrow Account Disclosure Statement; Ex. D, 2015 Escrow Account Disclosure Statement). Although Plaintiff contends that she did not, in fact, realize that no interest was accruing, she does not meaningfully dispute that she should have discovered the alleged violations through a diligent review of her Annual Escrow Statements. *See* ECF 123 at 21. Instead, Plaintiff argues that the statute of limitations is inapplicable due to the continuing harm doctrine.

The continuing harm doctrine tolls the statute of limitations in cases of ongoing or continuous violations. *MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233, 240 (2007) ("violations that are continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time."). The continuing harm doctrine is applicable to "a series of acts or course of conduct . . . that would delay the accrual of a cause of action to a later date." *Id.* at 241 (citing *Duke Street Ltd. P'ship v. Bd. of Cty. Comm'rs*, 112 Md. App. 37, 52 (1996)). Paradigmatic examples of continuing harm include a longstanding nuisance, or monthly overcharges of rent. *Id.* at 241. Importantly, the continuing harm doctrine does not extend merely to the continuing effects of a single earlier act. *Id.* (rejecting the continuing harm doctrine because the deteriorating conditions of plaintiff's apartment were merely the continuing ill effects from an original alleged violation, and not a series of acts or course of conduct); *see also Alston v. Hormel Foods Corp.*, 273 Neb. 422, 426 (2007) ("this 'continuing tort doctrine' requires that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period."). Where the continuing harm doctrine applies, the statute of limitations is tolled regardless of whether the plaintiff should have discovered the alleged injury. *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 647 n.9 (2013).

Plaintiff argues that the Deed of Trust was merely the first in an ongoing series of violations. ECF 123 at 22 ("Here, however, Plaintiff does not allege continuing effects of a single earlier act as in *MacBride*.  Rather, she seeks to recover overcharges that accrued on an ongoing monthly basis due to BofA's ongoing course of conduct of sending misleading statements.").  As discussed in greater detail below, however, Plaintiff fails to show that her Annual Account Statements were misleading, such that they could form the basis of an ongoing series of violations. Moreover, Plaintiff adduces no evidence that she actually was overcharged on an ongoing monthly basis or that the failure to pay interest changed her monthly payment at all.  Plaintiff's expert, in estimating damages, does not offer any approximation of losses incurred as a result of allegedly inflated payments; damages are instead calculated solely on the basis of the accruing value of unpaid interest.  *See* ECF 127-Ex. 2 ("Olsen Rep."), ¶¶ 22–25; ECF 127-Ex. 3 ("Olsen Dep.") at 66:15-68:7.  Damages arising from the lack of interest on escrowed funds are the result of a single act—the initial placement of the Plaintiff's escrow funds in a non-interest bearing account.  It may well be true that the amount of interest allegedly owed to Plaintiff grew with each subsequent year. This rising figure, however, is evidence only of the continuing ill effects of a single alleged violation, not a continuing course of conduct.

Because the continuing harm doctrine is inapplicable, any MCPA claim based on the February 2013 Deed of Trust had to be filed within three years of when Plaintiff in fact knew or reasonably should have known that the documents contained actionable misrepresentations or omissions.  *See Poffenberger*, 290 Md. at 631.  Put differently, Plaintiff's November 2018 claim is time barred unless she offers facts sufficient to raise a genuine issue that she should not have discovered the lack of interest before November of 2015.  Plaintiff fails to satisfy her burden. Plaintiff does not contest that in August of 2014, she received an Annual Escrow Statement that

reflected no accrued interest.  ECF 109-4 (Ex. C, 2014 Escrow Account Disclosure Statement).

Plaintiff undisputedly received a similar Annual Escrow Statement in August of 2015.  *Id.* (Ex. D,

2015 Escrow Account Disclosure Statement).  A review of these statements reasonably should

have put Plaintiff on notice of an alleged violation.  Indeed, although Plaintiff cannot recall the

exact date, she testified that these Annual Escrow Statements were in fact the eventual source of

her discovery.  *See* ECF 105-3 at 127:9-14  (Ex. 1, Clark Dep.) ("[A]t some point I must have

looked at my escrow statement and noticed that there was no interest and wondered about that.

I'm not, I'm not referring to a review recently.  This was several years ago.  So—but I can't say

exactly when or how.").  Plaintiff's opposition only avers that she did not have actual knowledge

of the alleged violations before November of 2015.  ECF 123 at 21.  This may be the case.  Even

so, Plaintiff fails to establish a triable issue as to whether she should have learned of the alleged

violations before November of 2015.  As such, MCPA claims arising from the February 2013 Deed

of Trust are time barred.

### ii.    Annual Escrow Statements

Plaintiff contends that even if her earlier claims are time barred, BofA remains liable for

MCPA violations arising from the Annual Escrow Statements issued in the three years

immediately preceding the filing of this lawsuit.  ECF 123 at 21.  Plaintiff's argument fails,

however, because she adduces no evidence that the Annual Escrow Statements issued in 2016,

2017, or 2018 included any unfair or deceptive statements, much less ones that she relied upon to

her detriment.

Plaintiff claims that the Annual Escrow Statements sent to her by BofA in August of 2016,

August of 2017, and August of 2018 included actionable omissions because "BofA failed to

include (i.e., omitted) the interest it owed to consumers in its periodic statements."  ECF 123 at 13

(citing ECF 1 ¶ 2). Put differently, Plaintiff argues that the Annual Escrow Statements contained material omissions because they failed to reflect interest that was not, in actuality, accruing to her account. This argument misses the mark. The MCPA defines an actionable omission as the "[f]ailure to state a material fact if the failure deceives or tends to deceive." § 13-301(3). Such omissions are considered material if "a significant number of unsophisticated consumers likely would not have made the disputed choice had the commercial entity not omitted the information in question." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 534 (D. Md. 2011). Plaintiff adduces no evidence to show that the Annual Escrow Statements omitted any accurate material information regarding her account, much less that this lack of information rendered the Annual Escrow Statements deceptive or misleading. By Plaintiff's own admission, her Annual Escrow Statements correctly reflected that her account was not accruing interest; the statements themselves are not rendered deceptive by the mere fact that Plaintiff believes such interest is owed.

Plaintiff's contentions that there were misrepresentations in her Annual Escrow Statements falls similarly flat. A material misrepresentation is a "[f]alse, falsely disparaging, or misleading oral or written statement . . . which has the capacity, tendency, or effect of deceiving or misleading consumers." § 13-301(1). Plaintiff produces no evidence to substantiate her assertions that the Annual Escrow Statements were false, misleading, or deceptive. To the contrary, Plaintiff provides evidence suggesting that the statements were accurate. *See* ECF 123 at 14 ("The payments, the numbers, I have to assume it's accurate . . . I never had a reason to question the, what was set forth on the statement as far as being accurate. The numbers are probably accurate, the dates.") (quoting ECF 105-3 at 151:14-16; 152:1-4 (Ex. 1, Clark Dep).

Even assuming that the Annual Escrow Statements included some omission or misrepresentation, they still cannot serve as a basis for her MCPA claim, because Plaintiff offers no evidence of detrimental reliance.  *See Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (explaining that a plaintiff must allege that the unfair or deceptive practice caused detrimental reliance).  In her opposition to summary judgment, Plaintiff argues that "[b]y making the inflated payments reflected on misleading statements, Plaintiff and each Class member necessarily relied on BofA's deceptive conduct and were financially harmed."  ECF 123 at 24. Plaintiff points to no evidence, however, to substantiate the assertion that her payments were somehow inflated as a result of BofA's failure to pay interest to her escrow account.  Tellingly, Plaintiff produces no estimate—and offers no damages calculation—of losses incurred due to inflated monthly payments.  ECF 127-2 at ¶¶ 22–25 (Ex. 2, Olsen Rep.); ECF 127-3 at 66:15-68:7 (Ex. 3, Olsen Dep.).  By contrast, BofA offers evidence tending to show that Plaintiff's monthly payments were unaffected by the payment or nonpayment of interest to her escrow account.  ECF 127 at 12 (describing the calculation of funds earmarked for an escrow account, which is set according to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2609(a), and asserting that Plaintiff's negative escrow account indicated that payments may have been lower than optimal) (citing ECF 109-4 (Bernal Decl. ¶¶ 9–10).  In light of such evidence, Plaintiff's bare conclusion that her payments were inflated is insufficient to create a genuine dispute of material fact as to her alleged reliance.

This Court finds that there is no triable issue as to actionable unfair or deceptive practices surrounding the issuance of Plaintiff's Annual Escrow Statements.  Because Plaintiff's claims

arising from BofA's conduct in February 2013 are time barred, BofA is also entitled to summary judgment on Count III.[8]

### D.  Unjust Enrichment (Count IV)

In Count IV of her complaint, Plaintiff alleged that BofA was unjustly enriched when it used the amounts that it was obligated to pay as interest to consumers "to generate float income from itself."  ECF 1 at 11.  A claim for unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable.  *Hill v. Cross Country Settlements*, LLC, 936 A.2d 343, 351 (Md. 2007).

In its motion for summary judgment, BofA argues that there are no facts to support a theory that such float income was generated, nor is there evidence to suggest that BofA inequitably benefitted from placement of Plaintiff's funds in a non-interest-bearing account.  *See* ECF 105 at 22-23 (arguing that in exchange for depositing escrowed funds with BofA, Plaintiff received the use of an escrow account, which she admittedly found helpful, and received advanced expenses when her escrow account balance was insufficient to cover her taxes and fees) (citing Clark Dep. 55:21-56:14; Bernal Decl., ¶¶ 9-10 & Ex. H at 1.).

Plaintiff offers no evidence to show that summary judgment should be denied on Count IV.  In fact, Plaintiff does not appear to contest its entry, which will be granted.  *See* ECF 123 at 29.

---

[8] The application of the statute of limitations also renders moot Plaintiff's request for additional discovery, which was set forth in its opposition brief.  ECF 123 at 19-20.  Such a request is properly presented to the Court upon a filing of an affidavit pursuant to pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery.  *See also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).  The absence of such an affidavit would be a sufficient independent reason to deny the request.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF 105, is GRANTED as to all claims.  Plaintiff's Motion for Class Certification, ECF 100, and the related Motion for leave to file Surreply, ECF 108, are DENIED as moot.  A separate Order of Judgment follows.


Dated:  September 22, 2021                                    _____/s/_____
                                                                                    Stephanie A. Gallagher
                                                                                    United States District Judge